## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JACK TELL; NATASHA TORKZABAN; MORGAN SALISBURY; OPAL MORRIS; HENRY FARTHING; SUZANA KENNEDY; NAOMI SUI PANG; A.T., a minor, by and through her parents DAVE TELL and HANNAH TELL; and P.M., a minor, by and through her parents MARGARET WEISBROD MORRIS and JONATHAN MORRIS,<br><br>          *Plaintiffs*,<br><br>     v.<br><br>LAWRENCE BOARD OF EDUCATION, a political subdivision of the State of Kansas; LAWRENCE USD 497, a political subdivision of the State of Kansas; and GREG FARLEY, in his individual capacity,<br><br>          *Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:_____<br><br><br>**VERIFIED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS**<br><br><br>**JURY TRIAL DEMANDED** |

Mark P. Johnson (Kan. No. 22289)
Harrison M. Rosenthal (Kan. No. 28894)
Jacob S. Margolies (Kan. No. 29470)

DENTONS US LLP

4520 Main St., Ste. 1100
Kansas City, MO 64111
Phone: (816) 460-2400
Fax: (816) 531-7545
mark.johnson@dentons.com
harrison.rosenthal@dentons.com
jacob.margolies@dentons.com

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

PARTIES ................................................................................................................... 6

    I.     Plaintiffs ................................................................................................... 6

    II.    Defendants ............................................................................................... 8

JURISDICTION AND VENUE .................................................................................. 9

FACTUAL ALLEGATIONS ..................................................................................... 10

    I.     Defendants Authorized a Sweeping, Suspicionless Monitoring Program. ........... 10

    II.    The District's Technology and Standards ............................................. 12

    III.   The Lawrence Public Schools' Acceptable Use Policy. ....................... 17

    IV.   Gaggle Obstructed Student Journalism ............................................... 19

    V.    The District Searched and Seized Morris's and Farthing's Personal Effects ....... 20

    VI.   The Students Met With District Representatives Who Falsely Promised That Journalism Students Would No Longer Be Subject to Gaggle Search and Seizure. ........................................................................................... 25

    VII.  Gaggle Obstructed Suzana Kennedy's Investigation Into Its Methodology and Implementation .............................................................................. 29

    VIII.  Kennedy's Investigation Uncovered That Gaggle Deters Students from Reporting Mental Health Concerns, Thereby Creating and Exacerbating the Very Problems the District Claimed it Would Remedy ......................... 32

INJURIES TO PLAINTIFFS ..................................................................................... 34

CAUSES OF ACTION .............................................................................................. 36

    FIRST CLAIM

    Violation of Fourth Amendment (Declaratory Relief) Unreasonable Search, Unreasonable Seizure 42 U.S.C. § 1983 (All Plaintiffs against all Defendants) ........................................................................................... 36

SECOND CLAIM
> Violation of Fourth Amendment (Injunctive Relief) Unreasonable Search, Unreasonable Seizure 42 U.S.C. § 1983 (Plaintiffs A.T. and P.M. against Defendants Board and District) ........................................................................ 38

THIRD CLAIM
> Violation of Fourth Amendment (Damages) Unreasonable Search, Unreasonable Seizure 42 U.S.C. § 1983 (All Plaintiffs against all Defendants) ................................................................................................................. 39

FOURTH CLAIM
> Violation of First Amendment (Declaratory Relief) Freedom of Speech, Freedom of Press 42 U.S.C. § 1983 (All Plaintiffs against all Defendants) ......... 41

FIFTH CLAIM
> Violation of First Amendment (Injunctive Relief) Freedom of Speech, Freedom of Press 42 U.S.C. § 1983 (A.T. and P.M. against Defendants District and Board) ................................................................................................ 42

SIXTH CLAIM
> Violation of First Amendment (Damages) Freedom of Speech, Freedom of Press 42 U.S.C. § 1983 (All Plaintiffs against all Defendants) ........................... 44

SEVENTH CLAIM
> Violation of First, Fourth, and Fourteenth Amendments (Declaratory Relief) Vagueness 42 U.S.C. § 1983 (All Plaintiffs against the District and Board) ..................................................................................................................... 45

EIGHTH CLAIM
> Violation of First, Fourth, and Fourteenth Amendments (Declaratory Relief) Overbreadth 42 U.S.C. § 1983 (All Plaintiffs against the District and Board) ..................................................................................................................... 46

PRAYER FOR RELIEF ................................................................................................. 48

DEMAND FOR JURY TRIAL ...................................................................................... 48

## INTRODUCTION

1.      This case challenges the Lawrence, Kansas, School District's ("the District" or "USD 497") decision and policy to subject all students to round-the-clock digital surveillance—scanning their files, flagging their speech, and removing their creative work from access, often without any notice, suspicion of suspected wrongdoing, or meaningful recourse. Through its use of Gaggle, a third-party monitoring platform, the District has since November 2023 conducted suspicionless searches and seizures of student expression on a scale and scope that no court has ever upheld—and that the Constitution does not permit.

2.      The Defendants' adoption and application of Gaggle constitutes a facial violation of the First Amendment and, as applied to Plaintiffs, a violation of their First Amendment rights. The District's use of Gaggle has also violated Plaintiffs' Fourth Amendment rights by causing searches of their protected content without reasonable suspicion, and the seizure of Plaintiffs' protected content.

3.      In November 2023, USD 497 and its Board of Education implemented the use of Gaggle, a third-party software that scans all student emails, documents, and other files on school-issued accounts and devices, which the students must use if they wish to obtain the education the District is obligated to provide to them. Gaggle operates without any individualized suspicion or case-specific review. Once flagged, student content is initially reviewed by Gaggle contractors whose training and qualifications are unknown to the District—they are not District employees nor are they subject to any oversight by the District. Only if the Gaggle review identifies the content as "suspect" do District officials review the content and, in some cases, remove the content entirely from student accounts—all without students' knowledge, notice, or opportunity to contest.

4.      Soon after the District launched Gaggle, the creative contents of numerous art, journalism, and photography students were flagged, many of those students were interrogated, and

their original images were removed. Although the flagged artwork did not contain nudity or violate school policy in any way, student work was seized without warning. Students discovered their files were missing only after comparing school accounts to personal backups. One student was compelled to describe every image in her art portfolio to school administrators. Students recovered their seized work only after months of advocacy.

5.      Gaggle surveillance also disrupted the work of student journalists at *The Budget* and the *Free Press*, the award-winning student publications at Lawrence High School and Lawrence Free State High School, respectively. Through Gaggle, student journalists' work product is subject to prior review, and, as shown through the students' investigative reporting, prior restraint.

6.      The District and Gaggle—acting at the District's behest—do not merely infringe students' Fourth and First Amendment rights—they do so in a way that actively undermines the very safety concerns the District claims to address. Acting with the District's knowledge, Gaggle automatically and unilaterally seizes student materials containing an undisclosed list of "trigger words" or phrases, without regard to context. This sweeping censorship extends to all student documents and content within the Google Workspace/Suite on District platforms. As a result, when students use their school-issued accounts to seek help or report concerns—particularly about mental health—Gaggle frequently intercepts and seizes those communications before they can reach their intended recipients, including teachers, counselors, and even parents. Such censorship denies some students the help they may need, contrary to Defendants' articulated purpose for using Gaggle.

7.      Student journalism editors raised concerns with District administrators that Gaggle surveillance was impeding their ability to report on matters of public concern—activity protected

by the First Amendment. After months of advocacy, the District purportedly granted a limited exemption from file scanning within the journalism Google Drive. But in practice, the District has continued to monitor, seize, and remove student journalists' emails, where most of their work was drafted, stored, and exchanged.

8.      When *The Budget*'s editor-in-chief investigated via requests under the Kansas Open Records Act why Gaggle continued to operate in violation of the purported exemption for student journalism, the findings responsive to her requests were, ironically, suppressed—apparently unbeknownst to the District officials tasked with responding to the requests—*by Gaggle*. Like the fox guarding the henhouse, Gaggle prevents parties from learning about how and when it operates. The District was made aware of Gaggle's actions with respect to student journalists, but took no action to eliminate the problem.

9.      The Supreme Court established more than 50 years ago that America's students do not "shed their constitutional rights . . . at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). This includes their First Amendment rights to speech and expression, *id.*, and their Fourth Amendment rights against unreasonable search and seizure. *New Jersey v. T.L.O.*, 469 U.S. 325, 333 (1985). And the Court has been clear: unless a school search is "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place," the search is unconstitutional. *Id.* at 341–42 (internal quotation marks and citation omitted). School officials must have "reasonable suspicion" that their search will "raise a moderate chance of finding evidence of wrongdoing." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364 (2009).

10.     Defendants are engaged in drag-net searches and seizures of all students' protected expression without any suspicion that students are violating the law or school rules or engaging in

any sort of wrongdoing whatsoever. Defendants' policy and use of Gaggle are not only unconstitutional under *Tinker*, *T.L.O.*, and their progeny, but actually cut against Defendants' stated purpose of helping students struggling with mental health by blocking emails to teachers, other faculty, and even parents regarding the same.

11.    Plaintiffs include two groups of students. Jack Tell, Natasha Torkzaban, Morgan Salisbury, Opal Morris, Henry Farthing, Suzana Kennedy, and Naomi Sui Pang were students at Lawrence High School when Gaggle was first deployed in 2023. They experienced direct interference with their journalistic, artistic, and/or creative works and suffered harm to their ability to engage in protected expression. Plaintiffs A.T. and P.M. are current students at Lawrence High School and Lawrence Free State High School, respectively, who suffer similar harms on an ongoing basis and whose school-issued accounts remain subject to continuous, unjustified, and illegal surveillance.

12.    Gaggle operates through artificial intelligence that flags items for review. Gaggle moderators conduct a brief contextual review to determine the propriety of the content at issue and quarantine the item unless the flag is deemed a false positive. In its first six months of operation, Gaggle flagged 285,863 items for review and labeled 1,096 as "actionable incidents." The District has never informed students of the standards governing these flags, what content may be removed, or what triggers a review. Such opacity forces students to weigh the risk of discipline and file deletion each time they write, store, or share work on District platforms. Their protected speech and expression is chilled by the constant surveillance of the District and Gaggle.

13.    Students are required to use District-managed servers and IT infrastructure for, among other things, journalism, photography, academic writing, personal expression, course readings and assignments, and all other aspects of their education. There is no meaningful way to

opt out of the District's surveillance regime without forfeiting access to a full and equal public education. With the District's knowledge and approval, Gaggle's monitoring is sweeping, invasive, and continuous—it tracks students' access to District servers and monitors activity off-campus, outside school hours, and without even a modicum of individualized suspicion. District policies mandate use of these platforms for course participation but provide no means for students to avoid surveillance while still receiving the education to which they are entitled.

14.     Plaintiffs seek damages, as well as injunctive and declaratory relief, both for the harms already suffered and to prevent further injury. The District's surveillance regime violates well-established constitutional protections applicable in the school setting, including the Fourth Amendment's limits on suspicionless searches and seizures and the First Amendment's prohibitions on policies and practices that chill protected student speech.

15.     Defendants' use of Gaggle is excessive, unconstitutional, and antithetical to the values the Bill of Rights was designed to protect. By subjecting students to hundreds of thousands of searches and untold numbers of secret seizures each school year, the District has transformed its schools into a miniature surveillance state in the heart of Kansas. Rather than teaching civic responsibility, the District has conditioned students to fear speech, suppress thought, and self-censor their creative and journalistic work. Gaggle deletes protected content without notice, polices student expression, and reinforces a single message: Big Brother is watching. Unsurprisingly, this regime has chilled student speech—particularly journalism—by deterring even lawful expression out of fear of being flagged, interrogated, or erased. This lawsuit asks the Court to do what the District would not: draw the constitutional line that should never have been crossed.

## PARTIES

I.    **Plaintiffs**

16.    Plaintiff Jack Tell is 18 years or older, a citizen of the United States, and a domiciliary of Douglas County, Kansas. At all times relevant to this Complaint, Tell was a student enrolled in Lawrence USD 497 and served as co-editor-in-chief of *The Budget*, the Lawrence High School student newspaper.

17.    Plaintiff Natasha Torkzaban is 18 years or older, a citizen of the United States, and a domiciliary of Johnson County, Kansas. At all times relevant to this Complaint, Torkzaban was a student enrolled in Lawrence USD 497, domiciled in Douglas County, Kansas, and served as co-editor-in-chief of *The Budget*.

18.    Plaintiff Morgan Salisbury is 18 years or older, a citizen of the United States, and a domiciliary of Douglas County, Kansas. At all times relevant to this Complaint, Salisbury was a student enrolled in Lawrence USD 497 and served as an editor of *The Budget*.

19.    Plaintiff Opal Morris is 18 years or older, a citizen of the United States, and a domiciliary of Douglas County, Kansas. At all times relevant to this Complaint, Morris was a student enrolled in Lawrence USD 497 and actively involved in the District's visual arts programs.

20.    Plaintiff Henry Farthing is 18 years or older, a citizen of the United States, and a domiciliary of Douglas County, Kansas. At all times relevant to this Complaint, Farthing was a student enrolled in Lawrence USD 497 and actively involved in the District's visual arts programs. Farthing earned regional recognition in the 2025 Scholastic Art and Writing Awards, receiving a Gold Key, a Silver Key, and an Honorable Mention in photography—placing among the top 5% of submissions. Farthing was also selected as a winner in the national YoungArts competition, making Farthing the only public school student in the country to receive the honor in photography that year.

21.     Plaintiff Suzana Kennedy is 18 years or older, a citizen of the United States, and a domiciliary of Douglas County, Kansas. At all times relevant to this Complaint, Kennedy was a student enrolled in Lawrence USD 497 and served as co-editor-in-chief of *The Budget*. Kennedy was named class valedictorian and Kansas Student Journalist of the Year in 2025—reporting on issues including student privacy.

22.     Plaintiff Naomi Sui Pang is 18 years or older, a citizen of the United States, and a domiciliary of Douglas County, Kansas. At all times relevant to this Complaint, Sui Pang was a student enrolled in Lawrence USD 497 and served as connections manager between *The Budget* and *The Lion's Roar*, the Lawrence High School video production team. Sui Pang received the Kansas Association of Broadcasters' award for best sports feature, placed sixth in the state in the Kansas Scholastic Press Association's Sports Hype Video category, and earned top-five placements in two video categories at the eMagine Media Festival.

23.     Plaintiffs Tell, Torkzaban, Salisbury, Morris, Farthing, Kennedy, and Sui Pang are suing because Defendants have violated their Fourth Amendment rights against unreasonable search and seizure and their First Amendment rights by censoring protected expression.

24.     Plaintiff A.T. is a seventeen-year-old student at Lawrence High School, where she serves as the second-year editor-in-chief of *The Budget*. At all times relevant to this Complaint, A.T. was a student enrolled in Lawrence USD 497. A.T. is a 4.0 student, ranked first in her class, a varsity lettered athlete, and the sitting Board President of the Honor Moon nonprofit organization. A.T. is also a recipient of the AP Scholar with Distinction Award. A.T. lives with her parents Hannah Tell and Dave Tell in Douglas County, Kansas. Hannah Tell and Dave Tell bring this action on behalf of their minor daughter, A.T.

25.     Plaintiff P.M. is a seventeen-year-old student at Lawrence Free State High School, where she served as co-news-editor-in-chief and now as co-news manager of the *Free Press*, Lawrence Free State High School's award-winning student newspaper. At all times relevant to this Complaint, P.M. was a student enrolled in Lawrence USD 497. P.M. lives with her parents Margaret Weisbrod Morris and Jonathan Morris in Douglas County, Kansas. Margaret Weisbrod Morris and Jonathan Morris bring this action on behalf of their minor daughter, P.M.

26.     Plaintiffs A.T. and P.M. are suing because Defendants are violating their Fourth Amendment rights against unreasonable search and seizure and their First Amendment rights by censoring protected expression. Plaintiffs A.T. and P.M. oppose Gaggle surveillance and want to use the District's Student Google Drive and Google Workspace without unreasonable search, seizure, and censorship of their protected expression.

## II.    Defendants

27.     The District is a political subdivision of the State of Kansas located in Douglas County, with its headquarters located at 110 McDonald Drive, Lawrence, Kansas, 66044. It operates two public high schools and one virtual K-12 school—Lawrence High School, Lawrence Free State High School, and Lawerence Virtual School—and is responsible for implementing Board policy, including policies governing student technology use, digital surveillance, and privacy. At all times relevant to this Complaint, the District implemented the challenged Gaggle surveillance program and, at all times relevant to this Complaint, has overseen and enforced that program.

28.     Defendant Lawrence Board of Education (the "Board") is a political subdivision of the State of Kansas and is the governing body of the District. The Board conducts its regular and periodic meetings at the District's Educational Support Center located at 110 McDonald Drive, Lawrence, Kansas 66044. The Board has final decision making authority for the District and is

responsible for approving contracts, allocating funds, and adopting policies, including those related to the use of student surveillance software. The Board approved the contract with Gaggle.Net, Inc., and authorized its implementation across District-managed platforms.

29.    Defendant Greg Farley is employed by the District as an Assistant Principal at Lawrence High School and, in that role, implements District policy with the District's knowledge and authorization. At all times relevant to this Complaint, Farley exercised authority to interrogate students based on Gaggle-flagged content, participated in the seizure of student expressive work, and compelled students to justify their protected expression.

30.    At all times relevant to this Complaint, Farley acted under color of state law. Plaintiffs sue Farley in his individual capacity for conduct not authorized by, and inconsistent with, his official duties as Assistant Principal of Lawrence High School. Farley's actions, as alleged herein, violated clearly established constitutional rights of which a reasonable school official would have known.

31.    Acting under the authority of his position, Farley personally interrogated Plaintiffs Opal Morris and Henry Farthing after Gaggle flagged their photography assignments. During these interrogations—conducted in the presence of other District employees—Farley accused Morris and Farthing of uploading images containing indecent exposure and child pornography. Both students denied the accusations and offered to open and review the flagged images with Farley. Farley refused to examine the images himself, instead compelling Plaintiffs' to recall and describe minute visual details of their work from memory—an exercise calculated to intimidate and chill their lawful, protected artistic expression.

## JURISDICTION AND VENUE

32.    This Court has federal question jurisdiction under 28 U.S.C. § 1331 and jurisdiction for civil rights violations under 28 U.S.C. § 1343 because Plaintiffs' claims arise under the First,

Fourth, and Fourteenth Amendments to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.

33.     Venue is proper in the U.S. District Court for the District of Kansas (the "Court") under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Lawrence, Kansas, which is located in this federal district.

## FACTUAL ALLEGATIONS

### I.    Defendants Authorized a Sweeping, Suspicionless Monitoring Program.

34.     On or about August 1, 2023, the District and Gaggle.Net, Inc., executed a Contract for Services (the "Contract"). A true and correct copy of the Contract is attached hereto as Exhibit A.

35.     The Contract provides, in part, "Gaggle shall monitor email, message communications, documents, and other file types subject to certain file size limitations within third-party services . . ." (Ex. A at 10.)

36.     The Contract has a three-year term, from August 1st, 2023, to July 31st, 2026.

37.     Under the Contract, the District agreed to pay Gaggle three annual payments of $59,961.25 for Year 1, $51,162.25 for Year 2, and $51,162.25 for Year 3. (Ex. A at 3.)

38.     The Board publishes meeting agendas and materials at https://go.boarddocs.com/ks/usd497/Board.nsf/Public.

39.     On or about August 28, 2023, the Board published an agenda item titled "Purchase of Gaggle Software," which is publicly available at https://go.boarddocs.com/ks/usd497/Board.nsf/goto?open&id=CUWR6N6A4EBE, (the "August 28 Agenda"). A true and correct copy of the August 28 Agenda is attached hereto as Exhibit B.

40.     The August 28 Agenda describes Gaggle as "a digital surveillance tool that helps school districts manage student safety on school-provided devices and platforms by monitoring

student accounts to identify and flag those who may be struggling and need help. Gaggle Safety Management uses trained safety experts and an algorithm to provide real-time analysis and review of students' use of collaboration platforms for email and schoolwork. Safety experts evaluate flagged content and notify school officials about references to self-harm, depression, drug use, and violent threats." (Ex. B at 2.)

41.    The District began using Gaggle to monitor student activities in November 2023.

42.    At about the same time, the District published a webpage titled "Gaggle Frequently Asked Questions" (the "Gaggle FAQs"), which is publicly available at https://www.usd497.org/parents-and-students/resources/safety-information-and-resources/gaggle. A true and correct copy of the Gaggle FAQs is attached hereto as Exhibit C.

43.    The Gaggle FAQs state, in relevant part, "Gaggle cannot and does not monitor personal devices or any personal accounts, including but not limited to internet usage and web browsing, calls, texts, emails, and social media posts on personal devices or accounts. Gaggle also does not monitor teacher and staff accounts." (Ex. C.)

44.    Despite these assurances, students reported that Gaggle flagged email communications accessed via personal devices, including messages sent from personal phones through school-issued Gmail accounts. Students also reported that Gaggle flagged content stored in Google Drive folders not intended for school assignments, such as personal writings and draft editorials.

45.    Students further reported that Gaggle was being used to monitor teachers' emails and communications, contrary to the District's public representations. Emails between teachers and students, such as those of the journalism advisor Barbara Tholen, would be scanned and subsequently seized and removed based on the content of such emails.

46.     On May 31, 2024, counsel for Plaintiffs sent a demand letter to the District, detailing constitutional concerns and demanding that the District cease its use of Gaggle. A true and correct copy of the May 31 letter is attached hereto as Exhibit D.

47.     On June 17, 2024, counsel for the District responded, asserting that the District's use of Gaggle was lawful and that the District would not alter its use of Gaggle. A true and correct copy of the District's June 17 response is attached hereto as Exhibit E.

48.     Despite this notice and opportunity to cure, the Board voted on July 8, 2024, to renew its Gaggle contract for the 2024–2025 school year at a cost of $53,000. The Board voted 6–1 in favor of renewal. A true and correct copy of the July 8, 2024 meeting agenda is attached hereto as Exhibit F, and a true and correct copy of the minutes memorializing the vote after private discussion are attached hereto as Exhibit G.

## II.    The District's Technology and Standards

49.     At all times relevant to this Complaint, the District has provided students with iPads or MacBooks for use in completing coursework, accessing educational materials, and communicating with teachers and staff.

50.     Students using iPads are instructed to use Manager, a District-approved version of the Apple App Store, to download applications, including Google Suite products. Students may also access Google applications through a web browser, bypassing Manager entirely. Students using MacBooks—primarily those involved in journalism activities—typically access Google Suite tools such as Google Classroom and Google Drive via a browser, most commonly Google Chrome. All student access to Google services is linked to accounts within the District-managed Google Workspace domain.

51.     These platforms are tied to each student's unique District-managed account and are subject to continuous monitoring and scanning, including by Gaggle. Content created or stored

within these accounts—regardless of the device used—is monitored in real time by Gaggle and remains accessible to the District through its administrative control over the Google Workspace for Education environment.

52.    The District published and made available the Student Handbook on the District's website at https://www.usd497.org/parents-and-students/resources/calendars-2024-2025-clone. A true and correct copy of the 2024–2025 Student Handbook is attached hereto as Exhibit H.

53.    The Handbook contains a section titled "Computer Use," which links to the "Complete Board Policy IIBG." (Ex. H at 10.) A true and correct copy of the Complete Board Policy IIBG is attached hereto as Exhibit I.

54.    The Complete Board Policy IIBG provides, in relevant part:

Use of District Computers
Computer systems are for educational and professional use. All information created or accessed by staff and students may be subject to monitoring without notice by district administrators and/or school staff when appropriate. Students and staff shall be informed annually of the district's acceptable use policy. The district retains the right to impose disciplinary measures on any student. These measures may include expulsion of students and termination of staff for a violation of this policy.

* * *

Privacy Rights
Employees and/or students shall have no expectation of privacy when using district email, other official communication systems, or computer applications. Any email, computer application, or information in district computers or computer systems may be subject to monitoring without notice by the administration and/or school staff when appropriate. The district retains the right to duplicate any information created by employees or students in a computer system or on any hard drive.

* * *

Email - Students
Email messages shall be used only for approved educational purposes, and appropriate language must be used in all messages. Students are expected to use the system following guidelines approved by teachers and/or the administration.

* * *

13

Responsibilities

The superintendent shall oversee the district system.

Principals shall approve building-level activities, ensure proper training in the requirements of this policy, and establish a system to ensure adequate supervision of students and maintain executed user agreements.

District staff may develop regulations including a student disciplinary code. Those regulations and agreements are to be published annually in each student and staff handbook.

(Ex. I.)

55.     The Complete Board Policy IIBG does not state that Gaggle and Gaggle-employed personnel will access the students' content. (*Id.*).

56.     Further, under "Computer Use," the Handbook includes a section titled "Use Of Personal Technology Devices," which links to the "Complete Board Policy IIBGD." (Ex. H at 10.)

57.     The Complete Board Policy IIBGD provides, in relevant part: "Students and staff bringing and using personal, non-district-issued technology devices to district buildings shall follow the guidelines as stated in the District Acceptable Use Policy." (Ex. J.)

58.     The Handbook includes a section titled "Fees (Student)," which provides, in relevant part:

The school board approved the 2024-2025 fee schedule on July 8, 2024. It includes Instructional Fees for books, materials, and digital resources of $100 for K-5, $150 for 6-12, and $115 for Lawrence Virtual School (LVS). Device Fees for iPads and MacBooks are $15 for K-8, and $25 for 9-12.

(Ex. H at 14.)

59.     While students of the District, Plaintiffs Tell, Torkzaban, Salisbury, Morris, Farthing, Kennedy, and Sui Pang were required, and Plaintiffs A.T. and P.M. are currently required to use District-managed accounts, platforms, and servers—each governed by the District's no-privacy policies—in order to obtain the educational services provided by the District, including required assignments, teacher feedback, class participation, and peer collaboration.

14

60.    An enrolled student who declines a District-issued device must still access the District-managed platforms such as Google Docs, Google Classroom, and District email in order to complete required assignments, receive teacher feedback, participate in class, and collaborate with peers.

61.    Thus, enrolled students using personal devices are still subject to Gaggle surveillance because they must access these District-managed platforms.

62.    Plaintiffs cannot/could not refuse or decline the privacy terms imposed by the District without forfeiting access to the basic tools of their public education, including access to the District-managed platforms.

63.    Plaintiffs cannot/could not withhold consent to the District's surveillance practices without jeopardizing their education.

64.    The Handbook includes a section titled "Intellectual Property," which links to the "Complete Board Policy JT." (Ex. H at 19.) A true and correct copy of the Complete Board Policy JT is attached here to as Exhibit K.

65.    The Complete Board Policy JT provides, in relevant part:

> The board recognizes the importance of creating an environment that encourages student innovation in creating and developing high-quality materials as part of their educational experience. *Publications, articles, materials, models, and other items produced by students will be owned by the student* unless the work is produced at the district's request for its use.
>
> If the work is being produced on behalf of the district, the superintendent will apply for copyrights and patents when deemed appropriate. Students will be expected to cooperate in the district's efforts.
>
> The board and the student may agree to share ownership of such intellectual property. When ownership is shared, neither the board nor the student will attempt to copyright or patent such items without the knowledge and consent of the other party.

(Ex. K, emphasis added.)

66.    The Handbook includes a section titled "Investigation and Interrogation (Student Rights to have parents present)," which provides, in relevant part:

> Administrators, other school staff, and school resource officers (SROs) may at times need to interview students to gather facts about something that occurred, such as a policy violation. An interview is an informal procedure to obtain information. Interrogation is when a law enforcement officer is formally questioning a suspect alleged to have been involved in a crime, such as to garner a confession. If an SRO is speaking with a student about involvement in a suspected or alleged crime, a parent/guardian will be notified to be present.

(Ex. H at 19.)

67.    The Investigation and Interrogation section links to the "Complete Board Policy JCAC." (Ex. H at 19.) A true and correct copy of the Complete Board Policy JCAC is attached hereto as Exhibit L.

68.    The Complete Board Policy JCAC provides, in relevant part:

> Principals (or a designee) or others designated by the superintendent, may conduct investigations and question students about infractions of school rules or the student conduct code . . .
>
> <u>Taking Students Into Custody</u>
> Students shall not be voluntarily released by school officials to law enforcement authorities unless the student has been placed under arrest or taken into custody by law enforcement or the Kansas Department for Children and Families (DCF) pursuant to a lawfully issued warrant. If a student is taken into custody by a school resource officer, or any other law enforcement persons, for any reason other than being the alleged victim of abuse or neglect, school administrators shall contact the parent or guardian. Notification efforts shall be documented.

(Ex. L.)

69.    The Handbook includes a section titled "Personal Belongings," which provides, in relevant part:

> Students should not bring money to school other than for lunches or other school related activities. *Students are discouraged from bringing toys, electronic equipment, and other personal property to school unless it is for a special school activity.* The school will not assume responsibility for lost personal property.

(Ex. H at 20, emphasis added.)

70.    The Handbook includes a section titled "Safe Schools Information, Searches: Property," which links to the "Complete Board Policy JCAB." (Ex. H at 22.) A true and correct copy of the Complete Board Policy JCAB is attached here to as Exhibit M.

71.    The Complete Board Policy JCAB provides, in relevant part:

> Principals are authorized to search property if there is reasonable suspicion that district policies, rules, or directives are being violated. All searches shall be carried out in the presence of another adult witness. Any person other than the principal conducting a search of a student's locker or property shall do so only with the consent of and in the presence of the principal, unless circumstances require immediate action in order to preserve the security and safety of staff and students.

> District property, including lockers, is under the supervision of the principal. Students shall have no expectation of privacy when utilizing district property, including lockers. Lockers shall be subject to random searches without prior notice or reasonable suspicion.

> The combinations and/or keys to all locker locks shall be in the possession of the principal and stored in a place designed to guard against unauthorized access or use. The principal may search any locker at any time without notice. Students shall not place locks, other than those approved by the school, on any locker.

* * *

> Searches of Property by Law Enforcement
> If a law enforcement officer desiring to search a student's locker or property has a search warrant, the principal shall permit the search which shall be made in the presence of the principal.

> Prohibited items found during the search shall remain in the custody of either the principal or the law enforcement officer. If any items are turned over to law enforcement officials, the principal shall receive and retain a receipt for the items.

(Ex. M.)

## III.    The Lawrence Public Schools' Acceptable Use Policy.

72.    The District provides a Student Acceptable Use Policy ("AUP") for student use of computer technology. The AUP was provided to and signed by students at the end of the eighth grade while registering for high school classes. A true and correct copy of the AUP is attached hereto as Exhibit N.

73.    The District required Plaintiffs to sign the AUP while Plaintiffs were under 18 years old.

74.    Under the heading "Expectations for All Students," the AUP provides that students will "[u]se technology for educational purposes, and students will *not* "[h]ave any expectation of privacy when using any district owned device (computer, tablet, iPad, etc.) at school or a school related function or with respect to email, files or directories." (Ex. N.)

75.    Under the heading "Additional Expectations for Students with Personally Assigned Computing Devices," the AUP provides that students will "[r]egularly save any information stored on a district device to assigned cloud storage directory," "[e]xpect any district device to be regularly inspected for inappropriate material," and expect "e-mail transmissions and receptions to be subject to review." Such section further provides that "[a]ll such information and/or files shall be and remain the property of the school district and no user shall have any expectation of privacy regarding the use of the device(s), district network, or the district's Internet." (Ex. N.)

76.    Under the heading "Student Use of Personal Mobile Devices at School or School-Related Activities," the AUP provides that "[s]tudents may use personal mobile devices in the manner directed by building staff and administration" and "[s]tudents may, but are not required or expected to, bring a personal mobile device to school or school-related activities." (Ex. N.)

77.    The AUP provides "Consequences for AUP Violations" including suspension from use of district technology, suspension or expulsion from school, and any other consequence outlined in the Student Handbook. (Ex. N.)

78.    Under District policy, students are prohibited from using school internet services or transmitting documents without signing the AUP.

79.     In practice, student access to District-managed platforms is often provisioned automatically upon enrollment.

80.      As a result, students may gain access to District-managed platforms prior to signing the AUP, but such use would nonetheless constitute a violation of District policy.

81.     Plaintiffs, by refusing to sign the AUP, would forfeit access to a full and equal public education.

## IV.    Gaggle Obstructed Student Journalism

82.     At Lawrence High School and Lawrence Free State High School, student journalists are, and at all times relevant to this Complaint, were, required to house their research, writing, and other journalistic materials on school-issued accounts, thereby subjecting them to Gaggle searches and seizures.

83.     Shortly after the District's implementation of Gaggle, Plaintiff-student journalists working for *The Budget* noticed that various materials were being seized by Gaggle, such that the materials at issue disappeared from their school-issued accounts and were unavailable to them.

84.     Gaggle's seizure of Plaintiffs' journalistic materials extended to materials that were not inappropriate or otherwise in violation of any District policies.

85.     The repeated seizures of Plaintiffs' journalistic materials interfered with Plaintiff-student journalists' work for *The Budget*.

86.     Plaintiff-student journalists were obstructed to the point that the journalism teacher and adviser of *The Budget*, Barbara Tholen, interceded with District officials on their behalf.

87.     Tholen devoted significant time and effort to bringing Gaggle's repeated flagging and seizure of student materials to the attention of District officials, advising District officials that such seizures were impermissible and were adversely impacting *The Budget*. She pleaded with District officials to limit and/or discontinue the use of Gaggle with respect to student journalism.

88.     To continue *The Budget*'s work, Plaintiffs Tell and Torkzaban, as editors-in-chief of *The Budget*, moved all journalistic materials and endeavors to Tholen's school-issued account in an effort to eliminate interference from Gaggle.

89.     The student journalists at *The Budget* could continue drafting and publishing newspapers only by having Tholen provide access to her personal account to all student journalists and conducting all work only in that account.

90.     Notwithstanding the students' and Tholen's efforts, Plaintiffs Tell, Torkzaban, Salisbury, and Kennedy were unable to publish at least four editions of *The Budget* due to Gaggle's interference.

91.     Because Tholen's time and attention were diverted by Gaggle-related disruptions and her efforts to advocate for her students' rights, she was unable to timely review several articles submitted for publication. As a result, *The Budget* was unable to publish work that otherwise would have run, directly impairing Plaintiff-student journalists' ability to report and share news.

## V.     The District Searched and Seized Morris's and Farthing's Personal Effects

92.     In early 2024, District administrators summoned art, journalism, and photography students to the front office at Lawrence High School for questioning.

93.     Among those summoned were Plaintiffs Opal Morris and Henry Farthing.

94.     Farthing was attending an Advanced Placement United States history course at Lawrence High School when two security officers approached and instructed Farthing to accompany them to the front office. The security guards refused to provide an explanation for Farthing's removal from class.

95.     Opal Morris was attending a videography class when two security officers entered the classroom and instructed her to accompany them to the front office. The security guards refused to provide an explanation for Morris's removal from class.

96.     Upon independently arriving at the front office, Morris and Farthing observed several classmates from their photography course already present and waiting, in addition to student journalists and art students.

97.     Notably, one student in the front office was not an art, journalism, or photography student. Morris and Farthing later determined that student was the model for an art student's painting which had been flagged and seized by Gaggle.

98.     Neither Morris nor Farthing felt free to leave during the encounter.

99.     Farley then asked, "Who wants to go first?"

100.    Morris volunteered to "go first," and she was ordered into a private meeting room with Farley and other administrators.

101.    Once her private meeting with Farley and other administrators commenced, Morris inquired why she was pulled out of class and why she was summoned to the front office.

102.    Farley informed Morris that it was due to "some images on your device."

103.    Farley then accused Morris of having photos or documents on her computer that constituted indecent exposure or child pornography.

104.    The production of or possession of child pornography is a crime under K.S.A. 22-5510.

105.    When Morris responded that she did not have any such materials, Farley asked whether she had uploaded anything to her device that day.

106.    Morris responded that she had uploaded a photography assignment that included a picture of one of her friends who was fully clothed and wearing a spaghetti-strap tank top.

107.    Spaghetti-strap tank tops are permitted under the District's dress code.

108.    Morris then asked if she could pull up the images she had uploaded that day to prove that she had not uploaded any documents that constituted indecent exposure or child pornography.

109.    Farley told Morris that she could not do so, but then proceeded to interrogate Morris regarding the very photographs he refused to examine or allow Morris to access.

110.    Farley required Morris to recall and explain from memory minute details regarding the photographs she had taken, but she was not allowed to view or display those photos.

111.    Morris is not aware of any effort by District officials to contact her parents regarding her detention and interrogation by Assistant Principal Farley. On information and belief, no District official, including faculty, attempted to notify or involve Morris's parents before or during the investigative meeting in which she was accused of uploading inappropriate images. Neither of Morris's parents were present for the meeting.

112.    Meanwhile, in the room where the remaining students were still waiting, administrators told the group that their images had been flagged by Gaggle for indecent exposure and child pornography.

113.    Notwithstanding their accusation, as with Morris, administrators did not show students the flagged content or explain what rule, if any, had been violated, nor were the students' parents contacted or present in the meeting.

114.    Administrators, including Farley, admitted they had not seen the content at issue, but rather, that they were informed second-hand by Gaggle that the content had been flagged.

115.    As with Morris, Farthing and other students were asked whether they had uploaded anything to their District Google Drives that might have triggered an alert.

116.    No student was given notice of discipline, nor were they told what specific file(s) had been flagged.

117.    Farthing and the other students were then individually called into meetings with administrators where they were each questioned further regarding their conduct. None of the parents of those students was present during these meetings and, on information and belief, none of the parents were contacted before these meetings, nor was any attempt made to contact the parents.

118.    The students were eventually sent back to class.

119.    By investigating Opal Morris and Henry Farthing for protected speech and accusing them of possessing child pornography, Defendant Farley demonstrated reckless and callous indifference to Plaintiffs' constitutional rights, which a reasonable official would have known.

120.    After the incident, Morris and Farthing discovered that multiple digital photographs had been removed from their school accounts.

121.    Morris determined that the flagged content consisted of original artistic photographs taken and uploaded for class assignments.

122.    Specifically, the flagged content included the following images, which are partially obscured below to protect student privacy:





123.    The photographs had been stored on District-managed platforms and were no longer accessible through Morris's and Farthing's school-issued accounts.

124.    Morris, Farthing, and other students later confirmed the seizures by comparing their school accounts to independent backup drives.

125. At no point were students notified that their files had been removed or offered an opportunity to contest the action.

126. Morris was subsequently required to meet with District staff and explain each image in her photography portfolio.

127. This compelled review of her work made Morris concerned that future assignments would trigger additional scrutiny, interrogations, deletions, and/or discipline.

128. Only after months of student advocacy did the District restore the removed images.

## VI. The Students Met With District Representatives Who Falsely Promised That Journalism Students Would No Longer Be Subject to Gaggle Search and Seizure.

129. In the weeks following the summoning of students to the front office in 2024, and in light of the District's and Gaggle's ongoing obstruction of student journalism, Plaintiffs Tell, Torkzaban, and Salisbury requested a meeting with District Director of Technology David Vignery.

130. Vignery refused to meet with the students until March 2024, citing personal scheduling conflicts.

131. On or about March 6, 2024, Plaintiffs Tell, Torkzaban, and Salisbury met with Vignery, Superintendent Anthony Lewis, and other senior District administrators to voice their concerns about Gaggle surveillance.

132. Present at the March 6 meeting was David Cunningham, an attorney with the Kansas Association of School Boards, who introduced himself at the outset of the meeting by stating: "I'm David Cunningham, I'm an attorney with the Kansas Association of School Boards and provide legal services to the District."

133. Plaintiffs Tell, Torkzaban, and Salisbury did not expect the presence of the District's legal counsel at the March 6 meeting. Had Defendants informed Plaintiffs that

Defendants' counsel would be present, Plaintiffs would have brought legal representation of their own.

134.    At the March 6 meeting, District Mental Health Coordinator Kiley Luckett told Plaintiffs Tell, Torkzaban, and Salisbury that Plaintiffs were "valuing their constitutional rights above the mental health of their peers."

135.    At the meeting, Plaintiffs Tell, Torkzaban, and Salisbury asked for a resolution to the ongoing surveillance.

136.    District spokesperson Julie Boyle told Plaintiffs Tell, Torkzaban, and Salisbury at the meeting that she had only recently learned of the issue.

137.    District internal correspondence produced in response to request under the Kansas Open Records Act revealed that Boyle had been informed about the matter months earlier.

138.    In light of Gaggle's arbitrary seizure of journalistic materials, Plaintiff Torkzaban, as part of her reporting for *The Budget*, investigated what types of communications would trigger flagging and seizure by the District's Gaggle surveillance.

139.    On March 29, 2024, as part of her reporting for *The Budget*, Plaintiff Torkzaban sent an email to journalism advisor Barbara Tholen, simulating a student with a mental health issue.

140.    In her email, Torkzaban stated as follows, "Hey Barb, The meeting today had me stressed, really worried about my mental health. Was too busy to talk to you in class, but sometimes you have to test the waters."

141.    Tholen never received Torkzaban's email because, on information and belief, it was flagged and seized by Gaggle and the District pursuant to the surveillance program.

142.    On or about March 29, 2024, Plaintiffs Tell, Torkzaban, and Salisbury again met with District officials.

143.    Prior to the March 29 meeting, Plaintiffs Tell, Torkzaban, and Salisbury, caught off guard by the presence of the District's counsel at the March 6 meeting, informed the District that Plaintiffs were arranging to bring their own counsel, to which District spokesperson Julie Boyle responded, "there will be no need."

144.    Plaintiffs Tell, Torkzaban, and Salisbury understood Boyle's comment to mean that the District would not bring its counsel to the March 29 meeting.

145.    David Cunningham, the District's attorney, was present at the March 29 meeting alongside senior District administrators.

146.    Attorney Cunningham, advocating on behalf of Defendants, made the following exchange:

> **Plaintiff Torkzaban:** And in the Shawnee Mission case, [student journalists] were actually able to ultimately publish their work, but that is not the reason why they were damaged. They were damaged because their reporting process was compromised.
>
> **Attorney Cunningham:** *I'm* saying there's no evidence to suggest that your reporting efforts are being compromised in any way.
>
> **Plaintiff Tell:** But the student press . . . .
>
> **Attorney Cunningham:** I'm not here to debate this! We're not in court . . . *Tinker v. Des Moines* is a perfect example of that. You know, the court's going to balance the interests. If you *read* the case and you *understand* balancing, the court's balancing the interests of First Amendment rights versus the administration's right to control the environment . . . . I understand you disagree with that, and I'm okay. That's why we have courts.

147.    On information and belief, the District brought an experienced school attorney to the March 6 and March 29 meetings to advance its institutional interests and protect itself from legal exposure, including in response to Plaintiffs' ongoing constitutional injuries.

148.    The District failed to provide advance notice of Attorney Cunningham's attendance at either meeting, depriving Plaintiffs of a meaningful opportunity to secure counsel or otherwise prepare for what became an adversarial dialogue concerning Plaintiffs' ongoing constitutional injuries.

149.    By positioning legal counsel against unrepresented student journalists in closed-door meetings about protected speech, the District created a fundamental imbalance that chilled Plaintiffs' expression and discouraged further advocacy concerning Plaintiffs' ongoing constitutional injuries.

150.    On information and belief, the District's decision to involve legal counsel in these meetings—without warning and in the presence of unrepresented students—was undertaken in retaliation for Plaintiffs' constitutionally protected activity and intended to deter Plaintiffs' opposition to the Gaggle surveillance regime.

151.    One week after the March 29 meeting, the District informed the student journalists that their files would be exempted from Gaggle scanning.

152.    In April 2024, the District purported to remove Gaggle scanning from approximately 160 accounts used by journalism students at Lawrence High School.

153.    On information and belief, the District did not actually remove Gaggle surveillance from those devices.

154.    The District has never disclosed to the students and staff subject to surveillance what content is subject to review, removal, or flagging under the Gaggle program. The District reiterated the purpose of the program was to flag and catch threats to student safety.

155.    Upon information and belief, the review process for student content includes individuals contracted and/or employed by Gaggle whose training, qualifications, and experience are not disclosed to the students.

156.    On information and belief, the District has itself never known the identity, training, or qualification of any of those Gaggle contractors or employees. They are anonymous to the District, and on information and belief, the District has never asked Gaggle to identify those persons.

157.    On or about April 19, 2024, Plaintiffs Tell, Torkzaban, and Salisbury met with District Board President Jones and Board members serving on the District's policy committee.

158.    At the meeting, Plaintiffs discussed their concerns related to Gaggle's effect on First Amendment speech and press protections and Fourth Amendment protections against unreasonable searches and seizures.

159.    Plaintiffs who are existing District students remain subject to 24-hour monitoring of their District-managed accounts with no opportunity to opt out or limit the surveillance's scope.

## VII.    Gaggle Obstructed Suzana Kennedy's Investigation Into Its Methodology and Implementation

160.    In light of the arbitrary seizure of journalistic materials, and in her second year as co-editor-in-chief of *The Budget*, Plaintiff Suzana Kennedy, in the fall of 2024, began investigating Gaggle. Kennedy was at the time a senior at Lawrence High School.

161.    On October 4, 2024, Kennedy emailed Janice Dunn, Board Clerk; Julie Boyle, Executive Director of Communications for the District; and Cynde Frick, Executive Director of Finance for the District, requesting information about Gaggle under the Kansas Open Records Act § 45-215 *et seq*.

162.    Specifically, Kennedy requested the following public records:

- Possible Student Situations (PSS) by date and type;

- Any Gaggle Safety Audit data performed by Gaggle for the School District;

- Any internal documents collected by the District to verify if PSS incidents flagged by Gaggle were verified as critical incidents or false alarms;

- Documents concerning Gaggle flagged incidents referred to law enforcement and whether those incidents were false alarms; and

- Any District documents about disciplinary actions prompted by Gaggle alerts.

163. In her email, Kennedy noted that "[t]he Kansas Open Records Act requires a response time within three business days. If access to the records we are requesting will take longer than that time period, please contact us with information about when we might expect copies or the ability to inspect the requested records."

164. Boyle responded to Kennedy, informing Kennedy that the District would provide the requested materials by the end of the following week (*i.e.*, October 11, 2024).

165. On October 10, 2024, Boyle emailed Kennedy, notifying her that the District would require additional time to respond to her request, and that she "anticipate[d] a new timeline of October 16."

166. On October 17, 2024, having received no materials responsive to her request, Kennedy emailed Boyle once again to request an update.

167. Boyle responded that the Board was "still working on it toward our goal of getting you information tomorrow."

168. On October 21, 2024, still having received no materials responsive to her request, Kennedy emailed Boyle once again to request an update.

169.    On November 13, 2024, still having received no response to her prior email, Kennedy emailed Boyle again to request an update.

170.    On November 19, 2024, still having received no response to her prior email, Kennedy emailed Boyle yet again to request an update.

171.    On November 22, 2024, Boyle emailed Kennedy, providing the requested materials and informing her that the Board had sent the materials to Kennedy on October 18, 2024, in addition to re-sending such materials to Kennedy in response to her follow-up request on October 21, 2024.

172.    Specifically, Boyle wrote that she was "curious whether Gaggle is preventing you from receiving my emails because of the nature of the words in the data you requested. This will be the third time I have sent it to you. I'm going to try placing the Excel spreadsheet in a Google folder to see if that makes a difference in you being able to access it. I am also copying Mrs. Tholen; she should be able to receive it."

173.    Boyle's suspicion proved accurate. Unbeknownst to Kennedy or Boyle at the time, Gaggle had flagged and seized Boyle's emails, such that they were never received by Kennedy until Tholen was copied.

174.    Student investigations of Gaggle and discussions of its methodology were flagged and censored by Gaggle, apparently without the District's knowledge, pursuant to the duties the District expected Gaggle to perform.

175.    On information and belief, the District did not ask Gaggle why it had flagged and seized Boyle's emails.

176.    Gaggle's seizure of Boyle's emails to Kennedy demonstrates that student-journalists' purported exemption from Gaggle, as committed to by the Board in April 2024, had not actually been implemented.

177.    Indeed, in Tholen's response to Boyle's November 22 email, Tholen stated:

I am still working under the assumption that USD 497 intends for journalism students NOT to be surveilled by Gaggle. I've never been convinced that the solution was actually working. But since district administrators have celebrated that solution publicly more than once, I can only assume that everyone is on board with ensuring this fix actually works… Gaggle is also supposed to *not* flag the journalism and video students at both high schools… Certainly, if a Kansas Open Records Request about a district vendor was prevented from being delivered by that same vendor, I'd have a lot of questions.

## VIII.    Kennedy's Investigation Uncovered That Gaggle Deters Students from Reporting Mental Health Concerns, Thereby Creating and Exacerbating the Very Problems the District Claimed it Would Remedy

178.    The documents requested by Plaintiff Kennedy pursuant to her open records request demonstrate that Gaggle's methodology was and is fundamentally flawed.

179.    The documents provided to Kennedy by the Board include a spreadsheet of incidents (the "Gaggle Seizures Spreadsheet") in which Gaggle seized materials from school-issued accounts. A true and correct copy of that Gaggle Seizures Spreadsheet is attached hereto as Exhibit O.

180.    With respect to each incident of seizure reflected in the Gaggle Seizures Spreadsheet, the spreadsheet lists the key words and phrases that triggered the  seizures.

181.    Key words and phrases that trigger Gaggle seizure include: (1) "called me a"; (2) "called her a"; (3) "very uncomfortable"; (4) "my mental health"; (5) "care about myself"; (6) "I'm not good enough"; (7) "get suspended"; (8) "been struggling"; (9) "call me fat"; (10) "tell her to stop"; (11) "zaza"; (12) "are you safe"; (13) "mental breakdowns"; (14) "anxiety attack"; (15) "do this anymore"; (16) "you need to stop"; (17) "bra"; (18) "roll up"; (19) "want to be happy"; (20)

"hurt so bad"; and (21) "just leave me alone[.]" *See* Gaggle Seizures Spreadsheet, "Keywords" Column, Rows 36, 99, 106, 121, 122, 134, 142, 186, 233, 320, 332, 476, 541, 625, 798, 967, 975, 976, 989, 1011, 1021.

182.    Many of the key words and phrases that trigger Gaggle seizure are protected speech under the First Amendment.

183.    On information and belief, any documents or emails containing any of the foregoing words or phrases (or one of numerous additional words or phrases yet to be identified) were and will be seized by Gaggle and disappear from school-issued accounts, effectively censoring students and imposing a moratorium on the use of any of the foregoing words and phrases, among others, regardless of the context.

184.    However, even more egregious than Gaggle's gratuitous and overbroad censorship of the foregoing words and phrases at the District's behest is the fact that Gaggle is effectively self-defeating, assuming the articulated purpose of Gaggle is accurate, *i.e.*, to identify possible student mental health issues.

185.    As demonstrated by the seizure of Torkzaban's March 29, 2024 email to Tholen, and by Boyle's repeated emails to Kennedy, Gaggle flags and seizes emails (and any other files) that contain one of any number of terms unrelated to mental health, indicating that the effect of Gaggle is to stifle protected student speech. Gaggle took, and is taking, such action at the District's behest and under the District's authority.

186.    Consequently, any student who reaches out to faculty—or indeed, to anyone—via their school-issued accounts to seek help or to report issues with their own or anyone else's mental health will be thwarted by Gaggle, which will flag and seize any such communications before they are received by the intended recipient(s).

187.    Such a methodology belies the District's assertion that Gaggle is "a digital surveillance tool that helps school districts manage student safety on school-provided devices and platforms by monitoring student accounts to identify and flag those who may be struggling and need help." (Ex. B.)

188.    This is neither a past nor a theoretical problem. Upon information and belief, as recently as April 2025, a student's email to his parents was seized by Gaggle.

189.    Neither the District nor the Board have articulated any government interest that would ever be served by seizing and blocking communications between students and their parents.

190.    At all times relevant to this Complaint, Defendants were or should have been aware that their actions were unconstitutional and violated clearly established constitutional rights of which a reasonable official would have known.

## INJURIES TO PLAINTIFFS

191.    Defendants' implementation and use of Gaggle violated Plaintiffs' Fourth Amendment rights by subjecting Plaintiffs to unreasonable searches and seizures without any individualized suspicion or reasonable grounds to believe any Plaintiffs had violated the law or school rules.

192.    Defendants' implementation and use of Gaggle violated Plaintiffs' First Amendment rights by chilling protected expression. District policy with respect to Gaggle is vague and overbroad insofar as it suppresses a substantial amount of lawful and protected student speech without justification.

193.    Because Defendants failed to articulate clear standards regarding what content would be flagged, reviewed, seized, or otherwise declared impermissible, Plaintiffs refrained from engaging in protected expression, including journalism and creative work, in order to avoid investigation or discipline.

34

194.    Plaintiffs A.T. and P.M. are current students in the District and remain subject to ongoing Fourth Amendment injuries because Defendants continue to conduct suspicionless searches and seizures of Plaintiffs' digital effects through round-the-clock Gaggle surveillance of their District-managed accounts, including emails, documents, and cloud-stored files.

195.    Plaintiffs A.T. and P.M. likewise suffer ongoing First Amendment injuries. As a direct and proximate result of Gaggle surveillance, these Plaintiffs have self-censored by refraining from creating and saving lawful, non-disruptive, expressive content—such as original photography, creative writing, academic writing, and/or journalistic drafts—to their District-issued devices and accounts.

196.    This chilling effect is neither abstract nor speculative; Plaintiffs A.T. and P.M. know from experience that their protected expression has triggered investigations, deletions, and ostensible justifications. The lack of clear standards and notice further compounds the deterrent effect, as Plaintiffs cannot reasonably predict what speech will result in review, removal, or discipline.

197.    But for Defendants' implementation and maintenance of Gaggle surveillance, Plaintiffs A.T. and P.M. would continue to engage in protected speech on District-managed platforms without fear of investigation or loss of their work product.

198.    The District's Gaggle surveillance exposes Plaintiffs A.T. and P.M. to a credible and imminent threat of future investigation, discipline, and deletion of their work. It also inflicts a present harm by forcing students to choose between self-censorship and risking loss of access to education.

199.    Defendants' policy places all current students, including Plaintiffs A.T. and P.M., in continuing danger of direct constitutional injury by subjecting their private communications,

expressive works, and academic materials to real-time review, removal, and scrutiny by unknown third-party actors and District personnel—all without judicial oversight or procedural safeguards.

## CAUSES OF ACTION

### FIRST CLAIM
**Violation of Fourth Amendment (Declaratory Relief)**
**Unreasonable Search, Unreasonable Seizure**
**42 U.S.C. § 1983**
**(All Plaintiffs against all Defendants)**

200.    Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

201.    The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const,. amend. IV.

202.    It is clearly established that the Fourth Amendment's prohibition against unreasonable searches and seizures applies to actions taken by public schools and persons acting on behalf of public schools. *New Jersey v. T.L.O.*, 469 U.S. 325, 333 (1985).

203.    It is clearly established that students have legitimate expectations of privacy, which must be balanced against the school's need to maintain an environment in which learning can take place. *New Jersey v. T.L.O.*, 469 U.S. at 326.

204.    It is clearly established that in a school setting, a search of joint student-school property such as a locker and the interference with the property inside of that joint property without reasonable suspicion constitutes an unlawful search and seizure under the Fourth Amendment. *Zamora v. Pomeroy*, 639 F.2d 662, 670–71 (10th Cir. 1981).

205.    The Plaintiffs' "publications, articles, materials, models and other items" uploaded to and stored on the Student Google Drive and Google Workspace are recognized as their intellectual property under official District policy.

36

206.    The District's and Board's policy and practice of using Gaggle to scan the contents of the Student Google Drive and Google Workspace constitutes an unlawful search under the Fourth Amendment.

207.    The District's and Board's policy and practice of using Gaggle to unilaterally seize the contents of the Student Google Drive and Google Workspace constitutes an unlawful seizure under the Fourth Amendment.

208.    The District's and Board's use of Gaggle to scan and unilaterally seize the contents of Plaintiffs' Student Google Drive and Google Workspace was not justified at its inception, as the searches and seizures were not based on any suspicion of any individual student wrongdoing. Rather, Plaintiffs' files were scanned and seized prior to any suspicion of an infraction.

209.    The District's and Board's use of Gaggle to scan and unilaterally seize Plaintiffs' drafts, communications, and pending publications were and are unlawful searches and seizures under the Fourth Amendment.

210.    The District's and Board's use of Gaggle to scan and unilaterally seize Plaintiffs' drafts, communications, and pending publications was not justified at its inception as the searches and seizures were not based on any suspicion of any individual student.

211.    The District's and Board's use of Gaggle to scan and unilaterally seize Morris's and Farthing's artistic photographs constituted an unlawful search and seizure under the Fourth Amendment.

212.    The District's and Board's use of Gaggle to scan and unilaterally seize Morris's and Farthing's artistic photographs was not justified at its inception as the searches and seizures were not based on any reasonable suspicion of any individual student.

213.    Defendant Farley's search of the belongings and his interrogation of Opal Morris and Henry Farthing were not based on reasonable suspicion at their inception, as the search was not based on any suspicion of any individual student.

214.    Defendants' policy and practice of using Gaggle constitutes an unreasonable search and seizure of Plaintiffs' property, files and communications. Accordingly, all Plaintiffs are entitled to declaratory judgment recognizing that Defendants abridged Plaintiffs' Fourth Amendment Rights.

215.    Plaintiffs are entitled to declaratory judgment that the District's use of Gaggle violates the Fourth Amendment.

## SECOND CLAIM
### Violation of Fourth Amendment (Injunctive Relief)
### Unreasonable Search, Unreasonable Seizure
### 42 U.S.C. § 1983
### (Plaintiffs A.T. and P.M. against Defendants Board and District)

216.    Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

217.    The District's and Board's policy and practice of conducting Gaggle monitoring constitutes an unlawful abridgment of the Fourth Amendment right to be free from unreasonable searches and unreasonable seizures.

218.    The District's and Board's policy and practice of conducting Gaggle monitoring constitutes an ongoing abridgment of Plaintiffs A.T.'s, and P.M.'s Fourth Amendment rights to be free from unreasonable searches and unreasonable seizures.

219.    As described above, Plaintiffs A.T. and P.M. are likely to succeed on their claim for declaratory judgment that Defendants' policy and practice of conducting Gaggle monitoring constitutes unlawful suppression of their Fourth Amendment rights to be free from unreasonable searches and seizures.

220.    As a direct and proximate result of the District's and Board's policies and actions, Plaintiffs A.T. and P.M. have suffered and continue to suffer irreparable injuries, including being deprived of their constitutional right to be free from unreasonable searches and seizures.

221.    The denial of constitutional rights is an irreparable injury *per se. Elrod v. Burns*, 427 U.S. 347, 373 (1976).

222.    Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their Fourth Amendment rights.

223.    Without injunctive relief, the District and Board will continue to violate Plaintiffs' Fourth Amendment rights by impermissibly monitoring, scanning, and seizing their files, communications, and digital content housed on the Student Google Drive and Google Workspace.

224.    The ongoing damage to Plaintiffs' Fourth Amendment rights outweighs the injury that the District and Board will suffer if injunctive relief is granted.

225.    The District and Board would not suffer any harm if injunctive relief were granted, as Gaggle only creates and exacerbates the problems it purports to remedy, as described above.

226.    Granting injunctive relief to Plaintiffs will advance the public interest, as the public interest favors the protection of constitutional rights.

227.    Plaintiffs are entitled to an order enjoining the District from using Gaggle on any of its students.

### THIRD CLAIM
**Violation of Fourth Amendment (Damages)**
**Unreasonable Search, Unreasonable Seizure**
**42 U.S.C. § 1983**
**(All Plaintiffs against all Defendants)**

228.    Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

229.    Defendants' policy and practice of conducting Gaggle monitoring constituted an unlawful abridgment of Plaintiffs' Fourth Amendment rights to be free from unreasonable searches and unreasonable seizures as explained in Claim I.

230.    As a direct and proximate result of the Defendants' policies and actions, Plaintiffs have suffered and/or will continue to suffer injury, including the continued usage of Gaggle to search and seize their files and communications. Plaintiffs are entitled to actual and compensatory damages against Defendants in an amount to be proven at trial.

231.    As a direct and proximate result of Defendants' actions, Plaintiffs were deprived of their constitutional rights to be free from unreasonable searches and seizures and journalistic materials that directly affected their work for their publications. Plaintiffs are entitled to actual and compensatory damages against Defendants in an amount to be proven at trial.

232.    As a direct and proximate result of Defendants' actions, Plaintiffs Morris and Farthing were deprived of their constitutional rights to be free from unreasonable searches and seizures and suffered damage to their reputations, mental anguish, emotional distress, humiliation, and public embarrassment. Plaintiffs were deprived of their constitutionally protected property rights in their artistic expression. Plaintiffs are entitled to actual and compensatory damages against Defendants in an amount to be proven at trial.

233.    All Defendants acted with reckless and callous disregard and were indifferent to Plaintiffs' clearly established Fourth Amendment rights. Accordingly, punitive damages are appropriate to punish Defendants for abridging Plaintiffs' constitutional rights and to deter similar violations in the future.

234.    Plaintiffs are entitled to damages in an amount to be determined at trial.

## FOURTH CLAIM
### Violation of First Amendment (Declaratory Relief)
### Freedom of Speech, Freedom of Press
### 42 U.S.C. § 1983
### (All Plaintiffs against all Defendants)

235.    Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

236.    The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

237.    It is clearly established that students do not shed their constitutional rights to freedom of speech or expression at the schoolhouse gates. *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969).

238.    It is clearly established that the First Amendment's protections extend beyond the spoken word to include symbolism and artistic expression. *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995).

239.    All Plaintiffs' speech and expression uploaded to and stored in the District-managed platforms are protected by the First Amendment.

240.    Plaintiffs Tell, Torkzaban, A.T., Kennedy, Sui Pang, Salisbury, and P.M.'s student journalism materials, including drafts, communications, and pending publications are protected by the First Amendment and are recognized by official Board policy as belonging to them.

241.    Plaintiffs Morris's and Farthing's artistic expression in their photography is protected by the First Amendment and is recognized by official Board policy as belonging to them.

242.    The District's and Board's use of Gaggle to flag and remove Plaintiffs' protected content constitutes a prior restraint and is implemented without any forecast or determination that

the regulated speech would disrupt classwork, involve any substantial disorders, or invade the rights of others.

243.    The District's and Board's use of Gaggle to monitor, flag, and remove Plaintiffs' protected expression is not justified by any legitimate pedagogical interest or sufficient governmental concern.

244.    The District's and Board's use of Gaggle to flag and remove Plaintiffs Tell, Torkzaban, A.T., Kennedy, Sui Pang, and Salisbury's protected content pertaining to their journalistic endeavors functioned as prior restraint and were without any forecast or determination that the regulated speech would disrupt classwork, involve any substantial disorder, or invade the rights of others.

245.    The District's and Board's use of Gaggle to flag and remove Plaintiffs Morris's and Farthing's photography and artistic expression functioned as prior restraint and were without any forecast or determination that the regulated expression would disrupt classwork, involve any substantial disorder, or invade the rights of others.

246.    Plaintiffs' First Amendment rights were violated by use of Gaggle to flag and remove Plaintiffs' protected expression. Accordingly, Plaintiffs are entitled to declaratory judgment recognizing that Defendants abridged Plaintiffs' First Amendment rights.

247.    Plaintiffs are entitled to declaratory judgment that the District's use of Gaggle violates the First Amendment.

**FIFTH CLAIM**
**Violation of First Amendment (Injunctive Relief)**
**Freedom of Speech, Freedom of Press**
**42 U.S.C. § 1983**
**(A.T. and P.M. against Defendants District and Board)**

248.    Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

249.    Defendants' actions violated all Plaintiffs' First Amendment rights for the reasons stated in Claim IV.

250.    As a direct and proximate result of the District's policies and actions, Plaintiffs A.T. and P.M. suffered and continue to suffer irreparable injury, including Defendants' use of Gaggle to limit protected First Amendment expression, which continues to restrict and chill their speech so long as the use of Gaggle continues.

251.    As a direct and proximate result of Defendants' actions, Plaintiffs A.T. and P.M. have suffered irreparable injury. These injuries include being deprived of their constitutional rights to freedom of expression by Gaggle's censorship of journalistic materials and the chilling effect such censorship has produced on publication of *The Budget*. Such injuries are ongoing, as the District continues in 2024-2025 to use Gaggle censorship.

252.    Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their First Amendment rights.

253.    Without injunctive relief against Defendants and their use of Gaggle, Defendants' suppression of Plaintiffs' First Amendment rights will continue.

254.    The threatened continuing violation of Plaintiffs' First Amendment rights outweighs the injury if any, that the Defendants will suffer if injunctive relief is granted.

255.    Indeed, Defendants would not suffer any harm if injunctive relief were granted, as Gaggle only creates and exacerbates the problems Defendants purport to remedy by using Gaggle, as described above.

256.    Granting injunctive relief to Plaintiffs will advance the public interest, as the public interest favors the protection of constitutional rights.

257.     Plaintiffs are entitled to an order enjoining the District from using Gaggle on any of its students.

### SIXTH CLAIM
**Violation of First Amendment (Damages)**
**Freedom of Speech, Freedom of Press**
**42 U.S.C. § 1983**
**(All Plaintiffs against all Defendants)**

258.     Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

259.     Defendants' actions violated Plaintiffs' constitutional rights for the reasons set forth herein.

260.     As a direct and proximate result of the District's policies and actions, Plaintiffs have suffered and/or continue to suffer injury, irreparable injury, including Defendants' use of Gaggle to limit protected First Amendment expression, which continues to restrict and chill their speech so long as the use of Gaggle continues.

261.     As a direct and proximate result of Defendants' actions, Plaintiffs Tell, Torkzaban, A.T., Kennedy, Sui Pang, and Salisbury have suffered injury, including being deprived of their constitutional rights to freedom of expression from Gaggle's censorship of journalistic materials and the chilling effect the censorship produced on their student publications.

262.     As a direct and proximate cause of the Defendants' actions, Plaintiffs Morris and Farthing were deprived of their rights guaranteed by the First Amendment and suffered damage to their reputations, mental anguish, emotional distress, humiliation, and public embarrassment. Plaintiffs were deprived of their constitutionally protected artistic expression.

263.     Plaintiffs are entitled to actual and compensatory damages against Defendants in an amount to be proven at trial.

264.     All Defendants acted with reckless and callous disregard and were indifferent to Plaintiffs' clearly established First Amendment rights. Accordingly, punitive damages are appropriate to punish Defendants for abridging Plaintiffs' constitutional rights and to deter similar violations in the future.

265.     Plaintiffs are entitled to damages in an amount to be determined at trial.

**SEVENTH CLAIM**
**Violation of First, Fourth, and Fourteenth Amendments**
**(Declaratory Relief)**
**Vagueness**
**42 U.S.C. § 1983**
**(All Plaintiffs against the District and Board)**

266.     The First and Fourteenth Amendments to the Constitution prohibit government restrictions on speech that fail to provide members of the public fair notice of what constitutes prohibited conduct.

267.     A government policy is unconstitutionally vague if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.

268.     The District's and Board's Gaggle surveillance policy is vague because it fails to provide parents and students with sufficient information to know what is restricted or what is required of them so that they may act accordingly.

269.     The District's and Board's Gaggle surveillance policy is vague because its prohibition on "references to self-harm, depression, drug use, and violent threats" fails to provide parents and students sufficient information to know what is restricted or what is required of them so that they may act accordingly.

270.     The District's and Board's Gaggle surveillance policy is vague because it does not provide precision and guidance so that those enforcing the policy on the District's behalf do not act in an arbitrary or discriminatory way.

45

271.    The District's and Board's Gaggle surveillance policy, which fails to provide parents and students sufficient information to conform their conduct to the requirements of the law, chills Plaintiffs and other students from engaging in protected First Amendment speech because students must self-censor protected expression to avoid triggering an unlawful search and seizure of their property and expression.

272.    Plaintiffs are entitled to a declaration under 28 U.S.C. § 2201 that the District's and Board's Gaggle surveillance policy is unconstitutionally vague and therefore violates the First, Fourth, and Fourteenth Amendments.

**EIGHTH CLAIM**
**Violation of First, Fourth, and Fourteenth Amendments**
**(Declaratory Relief)**
**Overbreadth**
**42 U.S.C. § 1983**
**(All Plaintiffs against the District and Board)**

273.    Plaintiffs re-allege and re-incorporate the preceding paragraphs as though fully set forth herein.

274.    The First Amendment to the Constitution prohibits government action that regulates substantially more speech than the Constitution allows to be regulated.

275.    "[A] law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (internal quotation marks omitted and citation omitted).

276.    The District's use of Gaggle is substantially overbroad because it reaches and regulates a significant amount of protected First Amendment speech and expressive conduct— including non-harmful, non-disruptive, non-invasive speech that is of no legitimate concern. As alleged herein, the District, through its application, use, and reliance on Gaggle, has seized student

content and property protected by both the First and Fourth Amendments, demonstrating the overbreadth of the District's seizures and related actions.

277. The District's and Board's use of Gaggle reaches and regulates a greater volume of protected First Amendment expression in proportion to any legitimate purpose.

278. The District's and Board's use of Gaggle reaches and regulates a greater volume of permissible expression in proportion to any legitimate purpose by censoring messages containing innocuous phrases such as "called me a," "called her a," "very uncomfortable," and "my mental health".

279. The District's and Board's use of Gaggle reached a substantial amount of protected expression by censoring and seizing Plaintiffs Tell, Torkzaban, A.T., Kennedy, Sui Pang, and Salisbury's drafts and journalistic works, and thereby limiting the production of *The Budget*'s publications.

280. The District's and Board's use of Gaggle reached and regulated a substantial amount of protected expression by flagging and seizing photos created by Plaintiff Morris, depicting outfits complying with official school dress code policy.

281. To the extent the District's use of Gaggle has any constitutionally permissible application in terms of protecting students from harm, the District's use of Gaggle is so broad that it chills a substantial amount of constitutionally protected speech.

282. The District's use of Gaggle chills Plaintiffs and other students from engaging in the full array of their protected First Amendment expression.

283. Plaintiffs are entitled to a declaration under 28 U.S.C. § 2201 that the District's use of Gaggle is substantially and unlawfully overbroad and therefore violates the First and Fourth Amendments.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court enter judgment against Defendants and issue the following relief:

A.    Declare that Defendants' use of Gaggle surveillance violates the First, Fourth, and Fourteenth Amendments;

B.    Enter a permanent injunction enjoining Defendants from using Gaggle surveillance;

C.    Award Plaintiffs compensatory, nominal, and punitive damages;

D.    Award Plaintiffs their attorneys' fees under 42 U.S.C. § 1988;

E.    Award Plaintiffs their costs; and

F.    Award such other relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

In compliance with Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury on all issues so triable, at the federal district courthouse in Kansas City.

**Dated:** August 1, 2025

Respectfully submitted,

**DENTONS US LLP**

*/s/ Mark P. Johnson*
Mark P. Johnson (Kan. No. 22289)
Harrison M. Rosenthal (Kan. No. 28894)
Jacob S. Margolies (Kan. No. 29470)

4520 Main Street, Suite 1100
Kansas City, Missouri 64111-7700
Telephone:  (816) 460-2400
Facsimile:  (816) 531-7545
mark.johnson@dentons.com
harrison.rosenthal@dentons.com
jacob.margolies@dentons.com

*Counsel for Plaintiffs*

## <u>VERIFICATION OF JACK TELL</u>

Pursuant to 28 U.S.C. § 1746, I, JACK TELL, declare as follows:

1.      I am a Plaintiff in the present case and a citizen of the United States of America.

2.      I have read the foregoing Verified Complaint for declaratory and injunctive relief.

3.      I have personal knowledge of the factual allegations in paragraphs 13, 16, 23, 44–45, 49–52, 59–63, 72–73, 78–91, 129–136, 142–146, 148–149, 151-152, 154, 157–158, 191–193, and 205 of the Verified Complaint and know them to be true.

4.      I verify under penalty of perjury that the foregoing is true and correct.

Executed on July 30, 2025

_____

Jack Tell

## **VERIFICATION OF NATASHA TORKZABAN**

Pursuant to 28 U.S.C. § 1746, I, NATASHA TORKZABAN, declare as follows:

1.      I am a Plaintiff in the present case and a citizen of the United States of America.

2.      I have read the foregoing Verified Complaint for declaratory and injunctive relief.

3.      I have personal knowledge of the factual allegations in paragraphs 13, 17, 23, 44–45, 49–52, 59–63, 72–73, 78–91, 129–136, 138–140, 142–146, 148–149, 151-152, 154, 157–158, 185, 191–193, and 205 of the Verified Complaint and know them to be true.

4.      I verify under penalty of perjury that the foregoing is true and correct.

Executed on July 30 , 2025

Natasha Torkzaban

## <u>VERIFICATION OF MORGAN SALISBURY</u>

Pursuant to 28 U.S.C. § 1746, I, MORGAN SALISBURY, declare as follows:

1.    I am a Plaintiff in the present case and a citizen of the United States of America.

2.    I have read the foregoing Verified Complaint for declaratory and injunctive relief.

3.    I have personal knowledge of the factual allegations in paragraphs 13, 18, 23, 44–45, 49–52, 59–63, 72–73, 78–87, 89–91, 129–136, 142–146, 148–149, 151-152, 154, 157–158, 191–193, and 205 of the Verified Complaint and know them to be true.

4.    I verify under penalty of perjury that the foregoing is true and correct.


Executed on July <u>30</u>, 2025


_____

Morgan Salisbury

**VERIFICATION OF OPAL MORRIS**

Pursuant to 28 U.S.C. § 1746, I, OPAL MORRIS, declare as follows:

1.     I am a Plaintiff in the present case and a citizen of the United States of America.

2.     I have read the foregoing Verified Complaint for declaratory and injunctive relief.

3.     I have personal knowledge of the factual allegations in paragraphs 13, 19, 23, 49–

52, 59–63, 72–73, 78–81, 92–93, 95–103, 105–111, 114, 116, 118, 120–128, 154, 191–

193, and 205 of the Verified Complaint and know them to be true.

4.     I verify under penalty of perjury that the foregoing is true and correct.

Executed on July 30th 2025

Opal Morris

## <u>VERIFICATION OF HENRY FARTHING</u>

Pursuant to 28 U.S.C. § 1746, I, HENRY FARTHING, declare as follows:

1.      I am a Plaintiff in the present case and a citizen of the United States of America.

2.      I have read the foregoing Verified Complaint for declaratory and injunctive relief.

3.      I have personal knowledge of the factual allegations in paragraphs 13, 20, 23, 49–52, 59–63, 72–73, 78–81, 92–94, 96–100, 112–118, 120, 123–125, 128, 154, 191–193, and 205 of the Verified Complaint and know them to be true.

4.      I verify under penalty of perjury that the foregoing is true and correct.

Executed on July 30, 2025

_____
Henry Farthing

## <u>VERIFICATION OF SUZANA KENNEDY</u>

Pursuant to 28 U.S.C. § 1746, I, SUZANA KENNEDY, declare as follows:

1.      I am a Plaintiff in the present case and a citizen of the United States of America.

2.      I have read the foregoing Verified Complaint for declaratory and injunctive relief.

3.      I have personal knowledge of the factual allegations in paragraphs 8, 21, 23, 49–52, 59–63, 72–73, 78–87, 89–91, 137, 154, 160–174, 176–181, 185, 191–193, and 205 of the Verified Complaint and know them to be true.

4.      I verify under penalty of perjury that the foregoing is true and correct.

Executed on July 31, 2025

                                                                            _____
                                                                            Suzana Kennedy

## <u>VERIFICATION OF NAOMI SUI PANG</u>

Pursuant to 28 U.S.C. § 1746, I, NAOMI SUI PANG, declare as follows:

1.      I am a Plaintiff in the present case and a citizen of the United States of America.

2.      I have read the foregoing Verified Complaint for declaratory and injunctive relief.

3.      I have personal knowledge of the factual allegations in paragraphs 13, 22–23, 49–52, 59–63, 72–73, 78–82, 154, 191–193, and 205 of the Verified Complaint and know them to be true.

4.      I verify under penalty of perjury that the foregoing is true and correct.

Executed on July <u>30</u> , 2025

_____

Naomi Sui Pang

**VERIFICATION OF A.T.**

Pursuant to 28 U.S.C. § 1746, I, A.T., declare as follows:

1.      I am a minor (under 18 years old).

2.      My parents are Dave Tell and Hannah Tell.

3.      I am a Plaintiff in the present case and a citizen of the United States of America.

4.      I have read the foregoing Verified Complaint for declaratory and injunctive relief.

5.      I have personal knowledge of the factual allegations in paragraphs 13, 24, 26, 49–52, 59–63, 72–73, 78–82, 154, 159, 191–199, and 205 of the Verified Complaint and know them to be true.

6.      I verify under penalty of perjury that the foregoing is true and correct.


Executed on July 30, 2025

_A.T._

_____

A.T.

## <u>VERIFICATION OF DAVE TELL</u>

Pursuant to 28 U.S.C. § 1746, I, DAVE TELL, declare as follows:

1.　　I am over the age of 18 and competent to testify.

2.　　I am the parent of A.T., the minor Plaintiff identified in the foregoing Verified Complaint, and authorize the filing of this Verified Complaint.

3.　　I verify under penalty of perjury that the foregoing is true and correct.


Executed on July 30, 2025


*Dave Tell*

———————————————

Dave Tell

## <u>VERIFICATION OF HANNAH TELL</u>

Pursuant to 28 U.S.C. § 1746, I, HANNAH TELL, declare as follows:

1.      I am over the age of 18 and competent to testify.

2.      I am the parent of A.T., the minor Plaintiff identified in the foregoing Verified Complaint, and authorize the filing of this Verified Complaint.

3.      I verify under penalty of perjury that the foregoing is true and correct.

Executed on July 30, 2025

*Hannah Tell*

_____

Hannah Tell

## **VERIFICATION OF P.M.**

Pursuant to 28 U.S.C. § 1746, I, P.M., declare as follows:

1.     I am a minor (under 18 years old).

2.     My parents are Margaret Weisbrod Morris and Jonathan Morris.

3.     I am a Plaintiff in the present case and a citizen of the United States of America.

4.     I have read the foregoing Verified Complaint for declaratory and injunctive relief.

5.     I have personal knowledge of the factual allegations in paragraphs 13, 25–26, 49–52, 59–63, 72–73, 78–82, 154, 159, 191–199, and 205 of the Verified Complaint and know them to be true.

6.     I verify under penalty of perjury that the foregoing is true and correct.


Executed on July 30, 2025


_____

                                                P.M.

## <u>VERIFICATION OF MARGARET WEISBROD MORRIS</u>

Pursuant to 28 U.S.C. § 1746, I, MARGARET WEISBROD MORRIS, declare as follows:

1.      I am over the age of 18 and competent to testify.

2.      I am the parent of P.M., the minor Plaintiff identified in the foregoing Verified

Complaint, and authorize the filing of this Verified Complaint.

3.      I verify under penalty of perjury that the foregoing is true and correct.


Executed on July 31, 2025


Margaret Weisbrod Morris

## <u>VERIFICATION OF JONATHAN MORRIS</u>

Pursuant to 28 U.S.C. § 1746, I, JONATHAN MORRIS, declare as follows:

1.      I am over the age of 18 and competent to testify.

2.      I am the parent of P.M., the minor Plaintiff identified in the foregoing Verified Complaint, and authorize the filing of this Verified Complaint.

3.      I verify under penalty of perjury that the foregoing is true and correct.

Executed on July___, 2025

Jonathan Morris