IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JACK TELL; NATASHA TORKZABAN; MORGAN SALISBURY; OPAL MORRIS; HENRY FARTHING; SUZANA KENNEDY; NAOMI SUI PANG; A.T., a minor, by and through her parents DAVE TELL and HANNAH TELL; and P.M., a minor, by and through her parents MARGARET WEISBROD MORRIS and JONATHAN MORRIS, <br><br>*Plaintiffs*, <br><br>v. <br><br>LAWRENCE BOARD OF EDUCATION, a political subdivision of the State of Kansas; LAWRENCE USD 497, a political subdivision of the State of Kansas; and GREG FARLEY, in his individual capacity, <br><br>*Defendants*. | Case No.: 2:25-cv-02428-KHV-GEB <br><br> Hon. Kathryn H. Vratil <br><br> **ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiffs move under Fed. R. Civ. P. 65 for an emergency temporary restraining order and preliminary injunction enjoining Defendants Lawrence USD 497, the Lawrence Board of Education, and those bound by Rule 65(d)(2) from (i) enforcing or reimposing a prior restraint forbidding *The Budget* (the Lawrence High School student newspaper) and its editor-in-chief, A.T., from reporting on this lawsuit or related District conduct; and (ii) taking or threatening adverse employment action against *The Budget*'s faculty adviser, Abbi Epperson-Ladd, on account of such reporting. In support thereof, Plaintiffs state as follows:

1. Plaintiff A.T. is the editor-in-chief of *The Budget*, the Lawrence High School student newspaper. (A.T. Decl. ¶ 1.)

2. On the morning of August 14, 2025, The Budget's journalism adviser, Abbi Epperson-Ladd, told A.T. that several weeks earlier Lawrence High School Principal Quentin Rials issued a directive that neither *The Budget* nor its student reporters may report on this lawsuit, and that Principal Rials directed her to consult the District's lawyer. (A.T. Decl. ¶ 2.)

3. Epperson-Ladd further told A.T. that, after Principal Rials issued the directive, a person Epperson-Ladd understood to be a District administrator reiterated to her by telephone that neither *The Budget* nor its student reporters may report on this lawsuit. (A.T. Decl. ¶ 2.)

4. When A.T. stated that *The Budget* intended to report on the lawsuit and related Gaggle coverage, Epperson-Ladd directed A.T. not to report because "the District told me 'no,' and I don't want to go against that." (A.T. Decl. ¶ 3.)

5. That same morning, A.T. asked to meet with Principal Rials to verify the prohibition and to request the name of the District's attorney. Rials's secretary directed A.T. to Assistant Principal Mike Gillman. (A.T. Decl. ¶ 4.)

6. Assistant Principal Gillman told A.T. he could not discuss anything related to the lawsuit or Gaggle reporting and doubted that Principal Rials would do so either. (A.T. Decl. ¶ 5.)

7. A.T. overheard Principal Rials's secretary informing Rials of the nature of A.T.'s meeting request; Principal Rials declined to meet with A.T. (A.T. Decl. ¶ 6.)

8. That afternoon, attorney Bradley R. Finkeldei, communicating on the District's behalf, confirmed by telephone to the undersigned Harrison M. Rosenthal that (1) Principal Rials issued a directive prohibiting The Budget and its student reporters from reporting on this lawsuit; (2) Epperson-Ladd enforced that directive in a face-to-face discussion with A.T.; and (3) the restriction was later lifted such that *The Budget* and A.T. are free to report on Gaggle and this

lawsuit without restriction. (Ex. A (email chain dated Aug. 14–15, 2025) ("Finkeldei–Rosenthal Emails").)

9. That evening, A.T. drafted an initial story on the lawsuit and Gaggle surveillance that A.T. intended to publish the next day. (A.T. Decl. ¶ 7.)

10. The morning of August 15, when A.T. arrived for journalism class, Epperson-Ladd told A.T. that she had unilaterally set a meeting for A.T. with a teachers-union representative. Epperson-Ladd stated the purpose of the meeting was "to suggest other options besides publishing" and to "offer some other courses of action, like reaching out to other reporters," and that she wanted A.T. to "hear out the representative" before publishing. (A.T. Decl. ¶ 8.)

11. A.T. observed that Epperson-Ladd was visibly worried. Epperson-Ladd stated she was "very concerned," had already been called for a meeting with administration, and wanted to be careful. A.T. understood this to mean that administration was pressuring Epperson-Ladd to quash the story or face adverse consequences. As a result, A.T.'s speech and reporting were and remain chilled. (A.T. Decl. ¶ 9.)

12. After speaking with Epperson-Ladd, A.T. met with teacher Jeff Plinsky, who identified himself as representing the teachers' union. Plinsky told A.T. that she has "constitutional rights to do what you want to do," but urged A.T. to "keep in mind that a young teacher with no due process protections … could [be] fire[d] … tomorrow for no reason," explaining that "for the first three years of a teacher's contract, they do not have to give a reason to fire a teacher." (A.T. Decl. ¶ 10.)

13. When A.T. asked whether Epperson-Ladd is protected by K.S.A. 72-7209 *et seq.*, Plinsky responded that while she is protected by statute, "that just means they can't say that they

3

are firing her for these press problems … they can just say we're firing her because we don't like her." (A.T. Decl. ¶ 11.)

14. A.T. understood this interaction to mean the District is substantially likely to terminate Epperson-Ladd's employment because of A.T.'s reportage, using a pretext to justify adverse action. (A.T. Decl. ¶ 12.)

15. Plinsky further stated, in substance, that Epperson-Ladd is "in a really tough place," expressed fear that the District could "fire her, not replace her, and let *The Budget* die," and that "her being able to find a job after that is pretty tough." (A.T. Decl. ¶ 13.)

16. Plinsky suggested that A.T. send materials to a reporter at the *Lawrence Times* so that Epperson-Ladd could tell administration, "I have done what the admin has asked me to do." (A.T. Decl. ¶ 14.)

17. Plinsky acknowledged that the administration had rescinded the prior restraint the day before, but he remained concerned for Epperson-Ladd's continued employment. (A.T. Decl. ¶ 15.)

18. Plinsky warned A.T. that administrators might say to Epperson-Ladd, "if you can't control your editors, we want you out of the building," and told A.T. to "understand there are consequences to other people's lives" if she exercised her constitutional rights. (A.T. Decl. ¶ 16.)

19. A.T. left the interaction upset and felt her right to publish was chilled. (A.T. Decl. ¶ 17.)

20. Although Principal Rials's directive was rescinded, its practical effect persists: A.T. is being pressured that, if the story runs, she will be responsible for Epperson-Ladd's termination. (A.T. Decl. ¶ 18.)

4

21. District officials and agents may not engage in viewpoint-based suppression of A.T.'s right to report and publish about her filing a lawsuit, which is itself protected expression.

22. No administrator has identified any libel, obscenity, incitement, promotion of criminal or suspension/expulsion-level conduct, or any content-linked reasonable forecast of a material and substantial disruption tied to A.T.'s reportage. (A.T. Decl. ¶ 19.)

23. As a direct and proximate result of the District's no-reporting directive and subsequent pressure, reporting and publication about the lawsuit are halted and remain chilled. (A.T. Decl. ¶¶ 17, 20.)

24. A.T. faces an untenable choice: remain silent to protect her adviser's employment or exercise her constitutional right to publish and risk being blamed for her adviser's termination. (A.T. Decl. ¶ 21.)

25. The prior restraint and related pressure have chilled A.T.'s editorial judgment and *The Budget* staff's newsgathering and publishing decisions on a matter of public concern. (A.T. Decl. ¶ 22.)

26. Despite the District's assurances, the restraint's effects remain. Absent court relief, A.T. and similarly situated student journalists feel constrained from publishing coverage of the lawsuit. (A.T. Decl. ¶ 23.)

## LEGAL STANDARD

A temporary restraining order and a preliminary injunction share the same four-factor test: (1) likelihood of success on the merits; (2) irreparable harm; (3) the balance of equities; and (4) the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Verlo v. Martinez*, 820 F.3d 1113, 1126–27 (10th Cir. 2016). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Verlo*,

820 F.3d at 1127 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976*)); see also Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012) ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). Disfavored injunctions—mandatory relief, alterations of the *status quo*, or relief that affords essentially the ultimate remedy—require heightened showings. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258–59 (10th Cir. 2005). Such is not the case here. Plaintiffs seek prohibitory relief preserving the status quo of lawful student reporting and barring ongoing prior restraint. To the extent any aspect is mandatory (e.g., written withdrawal/circulation), it restores the *status quo ante*—the pre-restraint condition—and is warranted even under *Schrier*.

## ARGUMENT

### I. Plaintiffs are Likely to Succeed on the Merits.

#### A. Kansas law squarely protects student press from content-based suppression.

The Kansas Student Publications Act protects "the liberty of the press in student publications," and forbids suppression "solely because [content] involves political or controversial subject matter." K.S.A. 72-7211(a). Editorial control resides with student editors, not administrators, subject only to narrow exceptions: libel/slander/obscenity; material that commands or promotes criminal or suspension/expulsion-level conduct; or material that causes a material and substantial disruption of normal school activity. K.S.A. 72-7211(c), (d); *see* K.S.A. 72-7210(b) (defining "student publication"). The District's categorical directive banning any reporting about this lawsuit—which is itself protected expression—is content-based and untethered to any statutory exception. It is unlawful on its face under Kansas law. *Cf. Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988) (baseline federal standard for school-sponsored speech); Kansas has codified greater protection.

**B.     The directive is an unconstitutional prior restraint.**

A blanket ban on reporting about a pending lawsuit is a paradigmatic prior restraint and content-based restriction, "the most serious and the least tolerable infringement" on First Amendment rights. *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); see also *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558–59 (1975). Even within schools, officials may regulate student expression only upon a content-specific showing that speech "would materially and substantially disrupt" schoolwork or invade the rights of others. *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 513 (1969). Here, administrators identified no libel, obscenity, incitement, unlawful conduct, or content-linked reasonable forecast of material disruption tied to any article. (A.T. Decl. ¶ 19.) The District's no-coverage directive thus fails strict scrutiny and violates *Tinker* even under intermediate standards.

**C.     The District's own public record confirms the subject's public importance.**

This lawsuit concerns the District's adoption and use of the Gaggle surveillance program and its effects on student speech, privacy, and press—matters the Board itself publicly described and implemented (contract term beginning Aug. 1, 2023; Board agenda materials describing Gaggle as a "digital surveillance tool"; District-reported initial flag volumes). In addition, the controversy has already drawn regional and national media attention, underscoring the strong public interest in timely, uncensored reporting by the student press. Suppressing coverage of these issues curtails reporting on matters of substantial public concern.

**II.    Plaintiffs Face Irreparable Harm Absent Immediate Relief.**

A prior restraint inflicts *per se* irreparable injury. *Elrod*, 427 U.S. at 373; *Verlo*, 820 F.3d at 1127; *Awad*, 670 F.3d at 1131. The restraint and ensuing pressure have already halted and chilled A.T.'s reporting and *The Budget*'s editorial decisions. (A.T. Decl. ¶¶ 9, 17, 20, 22.) Each day

student journalists are deterred from reporting is a day the public loses timely information on a matter of broad interest.

## III. The Balance of Equities Favors Plaintiffs.

Enjoining a categorical prior restraint—and unlawful threats to teacher employment—impose no legally cognizable harm on the District. Plaintiffs seek only to publish lawful journalism; the District remains free to address particular content that fits a statutory exception, supported by content-specific findings. By contrast, continued censorship burdens core speech.

## IV. The Public Interest Supports Immediate Injunctive Relief.

Protecting First Amendment rights "is always in the public interest." *Verlo*, 820 F.3d at 1127. The public has a compelling interest in robust reporting on governmental policies and judicial proceedings, including by the student press.

## V. The District's Purported Rescission of the Directive Does Not Moot This Issue.

"The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012). An action challenging an illegal practice is only mooted by voluntary cessation of the practice "if two conditions are satisfied: '(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1115 (10th Cir. 2010) (quoting *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979)). Further, an action is not mooted by the voluntary cessation of the practice being challenged if the underlying controversy on which the action is based continues. *See Petersen v. Talisman Sugar Corp.*, 478 F.2d 73, 78 (5th Cir. 1973) ("Where 'the underlying

8

question persists and is agitated by the continuing activities and program' of the defendant, a controversy is not moot.") (quoting *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 179 (1968)).

"The party asserting mootness bears the '"heavy burden of persua[ding] the court that the challenged conduct cannot reasonably be expected to start up again.'" *Rio Grande*, 601 F.3d at 1116 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). In determining whether the cessation of a practice moots a challenge to same, the court may consider (1) the good faith of the defendant's announced intention to discontinue the challenged activity, (2) the effectiveness of the discontinuance, and (3) the character of the past violation. *Rhodes v. Weinberger*, 388 F. Supp. 437, 440 (E.D. Pa. 1975) (citing *United States v. W. T. Grant Co.*, 345 U.S. 629 (1953)).

Here, the District's purported rescission of the directive to journalism students not to report on the instant lawsuit does not moot the controversy at issue in this Motion. Indeed, less than three hours after the District confirmed in writing that neither it nor any District official "will prohibit, delay, condition, or otherwise restrain any student journalist or journalism adviser from reporting on" this lawsuit (Finkeldei–Rosenthal Emails, Ex. A (Aug. 15, 2025, 8:04 a.m. CT)), a District teacher, Jeff Plinsky, met with A.T. and pressured her not to publish an article regarding the lawsuit, citing potential adverse consequences to her adviser (A.T. Decl. ¶¶ 10–16; see also ¶¶ 8–9, 17–18). In other words, the District's purported rescission not only failed to "completely and irrevocably eradicate[] the effects of the alleged violation," but has failed to do so even temporarily.

It cannot be said with any degree of confidence—let alone the requisite assurance—"that there is no reasonable expectation that the alleged violation will recur." Indeed, the violation continues at this very moment in practice, if not officially, as the District continues to pressure A.T.

and other student journalists not to report on this lawsuit. Moreover, the District has a history of publicly making false promises to student journalists, only to renege or fail to ever honor same. Specifically, the District falsely promised Plaintiffs and other student journalists that they would be exempt from Gaggle surveillance and seizures. *See* Complaint [Docket No. 1], ¶¶ 129-159. It was the District's failure to honor such promise—a failure that continues to this day—that is among the circumstances that necessitated this lawsuit in the first place.

The District's purported rescission of its directive to student journalists not to report on this lawsuit has not mooted the instant controversy. The District continues to obstruct student journalists, including A.T., from reporting on this case in practice, even if not by official policy. Moreover, A.T. has been expressly pressured that publishing coverage could result in her adviser's termination and that she would be blamed for it, chilling her speech. (A.T. Decl. ¶¶ 10–13, 16, 18, 21.) Yet, even if the Court were to conclude that the District has ceased this practice, such voluntary cessation has not mooted the issue. Indeed, it cannot "be said with assurance that there is no reasonable expectation that the alleged violation will recur" nor that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Based on the foregoing, the Court should grant this Motion.

## REQUESTED RELIEF

Plaintiffs respectfully request that the Court enter a Temporary Restraining Order and set this matter for an expedited preliminary-injunction hearing, providing that the Court:

A.     Enjoin Defendants Lawrence USD 497 and the Lawrence Board of Education—and all persons in concert or participation with them who receive actual notice of the order, *see* Fed. R. Civ. P. 65(d)(2)—from prohibiting, delaying, conditioning, or otherwise restraining *The Budget*'s reporting, commentary, or distribution regarding this lawsuit or related

      District conduct, except upon a content-specific written finding that particular material falls within one of the narrow statutory exceptions in K.S.A. 72-7211(c), supported by content-specific facts.

B. Prohibit Defendants from directing, pressuring, coercing, or encouraging any student journalist or journalism adviser to refrain from lawful reporting on this lawsuit or related District conduct by reference to adverse consequences (including consequences to the adviser's employment), including through mandatory or arranged meetings intended to dissuade publication; provided that nothing herein prevents content-neutral guidance consistent with K.S.A. 72-7209 to -7211.

C. Prohibit Defendants from taking, threatening, initiating, or continuing any adverse employment action against journalism adviser Abbi Epperson-Ladd—or any adviser to *The Budget*—because of (i) student journalists' lawful newsgathering, reporting, editing, or publication regarding this lawsuit or related District conduct; or (ii) the adviser's good-faith adherence to the Kansas Student Publications Act. For purposes of this relief, "adverse employment action" includes termination, non-renewal, discipline, negative evaluation, involuntary transfer or reassignment, reduction in duties or stipend, or any action that would deter a reasonable employee from supporting protected student speech.

D. Maintain the adviser's employment *status quo* pending further order of the Court.

E. Require Defendants, within 24 hours of entry of this Order, to (1) withdraw in writing any prior directive forbidding reporting on this lawsuit; and (2) circulate K.S.A. 72-7209 through 72-7211, together with this Order, to relevant central-office and LHS administrators and journalism staff.

F.    Set an expedited preliminary-injunction briefing schedule and hearing on or before the TRO's expiration under Rule 65(b)(2).

G.    Waive security or set it in a nominal amount under Fed. R. Civ. P. 65(c).

H.    Grant such other and further relief as the Court deems just and proper.

**Dated:** August 15, 2025

Respectfully submitted,

**DENTONS US LLP**

*/s/ Harrison M. Rosenthal*
Mark P. Johnson (Kan. No. 22289)
Harrison M. Rosenthal (Kan. No. 28894)
Jacob S. Margolies (Kan. No. 29470)

4520 Main Street, Suite 1100
Kansas City, Missouri 64111-7700
Telephone: (816) 460-2400
Facsimile: (816) 531-7545
mark.johnson@dentons.com
harrison.rosenthal@dentons.com
jacob.margolies@dentons.com

*Counsel for Plaintiffs*

## CERTIFICATE OF REASONABLE EFFORTS TO GIVE NOTICE OF TRO AND OF CONFERENCE

Pursuant to Fed. R. Civ. P. 65(b)(1)(B), I certify as follows:

On August 14, 2025, at approximately 2:49 p.m. CT, I emailed a copy of Plaintiffs' verified complaint to Bradley R. Finkeldei (bfinkeldei@stevensbrand.com) of Stevens & Brand, L.L.P., and David C. Cunningham (dcunningham@kasb.org) of the Kansas Association of School Boards, who had previously represented the District's interests regarding the issues described in the complaint. In that email, I informed Messrs. Finkeldei and Cunningham that Plaintiffs intended to file a temporary restraining order and preliminary injunction later that day and asked whether Defendants had a position on the requested relief.

At 4:45 p.m. CT, Mr. Finkeldei replied: "the district administration has directed the LHS staff to lift any restriction they placed in the budget related to this story. LHS budget, and your client are free to write on this lawsuit without restriction," and noted that attorney Alan L. Rupe had been appointed by insurance to represent the Defendants in this case. Later, at 9:03 p.m. CT, I sent a follow-up email memorializing a telephone discussion earlier that afternoon during which Mr. Finkeldei confirmed that (1) Principal Quentin Rials issued a directive prohibiting The Budget and its student reporters from reporting on this lawsuit; (2) Journalism Adviser Abbi Epperson-Ladd enforced that directive in a face-to-face discussion with one of our client-plaintiffs; and (3) the restriction had been lifted such that The Budget and our client were free to report on Gaggle and this lawsuit without restriction. In the same email, I requested that, by Sunday, August 17, 2025 at 5:00 p.m. CT, the District circulate among counsel a joint motion and proposed consent order memorializing the rescission, committing to non-retaliation, and affirming compliance with the Kansas Student Publications Act with an expedited show-cause mechanism. Finkeldei–Rosenthal Emails, Ex. A.

On August 15, 2025, at 8:04 a.m. CT, Mr. Finkeldei emailed: "I can confirm your second paragraph," and stated that Mr. Rupe would handle issues related to the litigation. Finkeldei–Rosenthal Emails, Ex. A. Later that morning, at approximately 9:30 a.m. CT, my client informed me of her interaction with Ms. Epperson-Ladd.

Immediately after filing Plaintiffs' temporary restraining order and preliminary injunction motion, I sent a copy of the motion and supporting materials to Messrs. Finkeldei and Rupe by email. Plaintiffs are also making efforts to personally serve each Defendant with process and a copy of Plaintiffs' Motion and proposed order.

In light of the ongoing and irreparable harm to Plaintiffs' First Amendment rights, Plaintiffs respectfully request immediate consideration. Plaintiffs have provided notice and conferred as described above.

/s/ *Harrison M. Rosenthal*
Harrison M. Rosenthal
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 15, 2025, a true and correct copy of the foregoing was e-filed with the Court's CM/ECF system, which will send notice to all counsel of record who have entered an appearance in this action, and a true and correct copy was also sent by electronic mail to:

Bradley R. Finkeldei, Stevens & Brand, L.L.P. (bfinkeldei@stevensbrand.com)

Alan L. Rupe, Lewis Brisbois Bisgaard & Smith LLP (Alan.Rupe@lewisbrisbois.com)

/s/ *Harrison M. Rosenthal*
Harrison M. Rosenthal
*Counsel for Plaintiffs*

US_ACTIVE\131013602