IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JACK TELL, NATASHA TORKZABAN, MORGAN SALISBURY, OPAL MORRIS, HENRY FARTHING, SUZANA KENNEDY, NAOMI SUI PANG, A.T., a minor, by and through her parents DAVE TELL and HANNAH TELL and P.M., a minor, by and through her parents MARGARET WEISBROD MORRIS and JOHNATHAN MORRIS,<br><br>          Plaintiffs,<br><br>v.<br><br>LAWRENCE BOARD OF EDUCATION, LAWRENCE USD 497 and GREG FARLEY, in his individual capacity,<br><br>          Defendants. | Case No. 2:25-cv-02428-KHV-GEB |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO PARTIALLY DISMISS PLAINTIFFS' COMPLAINT**

      Defendants Lawrence Board of Education (the "School Board"), Lawrence USD 497 (the "School District"), and Greg Farley present this Memorandum in Support of Their Motion to Partially Dismiss Plaintiffs' Complaint. Defendants bring their Motion and Memorandum in Support under both Federal Rule of Civil Procedure 12(b)(6) (for failure to state a claim) and Rule 12(b)(1) (for lack of subject matter jurisdiction).

**ARGUMENT**

**I.    Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)**

      When challenging subject matter jurisdiction through a Rule 12(b)(1) motion to dismiss, Defendants are not limited to the Complaint's allegations. Instead, the Court has discretion to consider "affidavits, other documents, and a limited evidentiary hearing" to aid in deciding these

1

matters. *See Demster v. City of Lenexa, Kansas*, 352 F. Supp. 2d 1165, 1169–70 (D. Kan. 2005).[1] This Court may evaluate whether subject matter jurisdiction exists at any time. See Fed. R. Civ. P. 12(h)(3).

Standing requires that the plaintiff have a "personal stake in the outcome of the case." *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 895 F. Supp. 1463, 1468 (D. Kan. 1995). Standing exists if two requirements are met: (1) Plaintiffs have suffered a distinct and palpable injury; and (2) Plaintiffs demonstrate a causal link between the claimed injury and the challenged conduct. *Id.* (cleaned up) (quoting *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). Plaintiffs can satisfy the second requirement by showing that "there is a substantial likelihood that the relief sought will address the claimed injury." *Id.* Standing is an element of subject matter jurisdiction, and therefore may be challenged through a Rule 12(b)(1) motion. *See Hill v. Vanderbilt Cap. Advisors, LLC*, 702 F.3d 1220, 1224–25 (10th Cir. 2012).

Similarly, mootness requires a live controversy to exist between the parties at all stages of the litigation, including appellate review. *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007). Federal courts have "no power to give opinions … or declare principles of law which cannot affect the matter in issue in the case before it." *Id.* If no live controversy exists, then the action is moot and this Court will lack subject matter jurisdiction. *Id.* Courts recognize two types of mootness—constitutional and prudential. *Bacote v. Fed. Bureau of Prisons*, 119 F.4th 808, 812 (10th Cir. 2024). Constitutional mootness occurs when the case "ceases to present a real and substantial controversy with respect to which specific relief may be fashioned." *Id.* Prudential mootness

---

[1] In accordance with Rule 12(d), Defendants submit the Declaration of Jeanice Swift (Exhibit A) in support of its Motion to Partially Dismiss with respect to the Rule 12(b)(1) grounds only. Defendants ask the Court to disregard this declaration with respect to the Rule 12(b)(6) grounds in order to avoid treating this Motion as a motion for summary judgment under Rule 56.

permits this Court to refuse to grant relief in its discretion if Plaintiffs "failed to demonstrate a cognizable danger of recurrent violation beyond a mere possibility." *Id.* at 813. In a suit for declaratory or injunctive relief, a case may be moot if no "continuing, present adverse effects" exist. *Id.* at 812. Mootness is an element of subject matter jurisdiction, and therefore may be challenged through a Rule 12(b)(1) motion. *Smith v. Becerra*, 44 F.4th 1238, 1247 (10th Cir. 2022).

### A.     Several Plaintiffs Have Already Graduated

Tenth Circuit courts have repeatedly found that students may not bring claims for injunctive and declaratory relief after they have graduated. *See Lane v. Simon*, 495 F.3d 1182, 1186–87 (10th Cir. 2007) (former students' First Amendment Freedom of Press claims moot because they "have graduated"); *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 548 (10th Cir. 1997) (constitutional claims for injunctive and declaratory relief moot after the student graduated); *Case v. Unified Sch. Dist. No. 233*, 908 F. Supp. 864, 873 (D. Kan. 1995) (former students and parents lacked standing to seek declaratory and injunctive relief under the First and Fourteenth Amendments for a school district's decision to remove certain media from school libraries because these students no longer had free access to the school district's libraries during media center night).

These courts have also found that the "capable of repetition, yet evading review" mootness exception does not apply because a graduated student is not likely to reenter school and again face the complained-of action or policy. *See Fischbach v. New Mexico Activities Ass'n*, 38 F.3d 1159, 1161 (10th Cir. 1994) (the exception did not apply because "since [plaintiff] has graduated, there is no reason to suspect that either he or his parent will again be subjected to the actions of [defendant]"); *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1225 (10th Cir. 2009)

(the exception did not apply because no reasonable expectation that a graduated student would again face the challenged policy).

Plaintiffs' requests for injunctive and declaratory relief for Jack Tell, Natasha Torkzaban, Morgan Salisbury, Opal Morris, Henry Farthing, Suzana Kennedy, and Naomi Sui Pang are moot, and these individuals lack standing to seek such relief. Each of them are at least 18 years old and are former students in the School District. *See* Doc. 1 at ¶¶ 16–22. These Plaintiffs do not allege that they are currently enrolled in the School District or are currently suffering ongoing harms to their constitutional rights. Instead, they allege only past enrollment and harm. *See* Doc. 1 at ¶ 23. Additionally, the School District's own records show that each of these individuals have already graduated from high school. Exhibit 1, Declaration of Jeanice Swift. Therefore, none of these Plaintiffs are entitled to injunctive or declaratory relief because none of them will ever again be subject any School District action or policy—whether related to Gaggle or not.

### B. The School District Has Decided to Stop Using Gaggle to Monitor Students.

Additionally, the School District has decided to stop using Gaggle to monitor students. Exhibit 1, Declaration of Jeanice Swift. All of Plaintiffs' claims for injunctive and declaratory relief against all Defendants are premised on Gaggle's usage. *See* Doc. 1 at 214–15, 223–24, 227, 246–47, 256–57, 272, 283. Therefore, all of these claims are moot, and Plaintiffs have no standing to bring them, because the School District plans to no longer use Gaggle anyway.

Therefore, this Court lacks subject matter jurisdiction over all claims by Plaintiffs Jack Tell, Natasha Torkzaban, Morgan Salisbury, Opal Morris, Henry Farthing, Suzana Kennedy, and Naomi Sui Pang. And this Court lacks subject matter jurisdiction over all claims for injunctive and declaratory relief against all Defendants. Therefore, these claims should be dismissed.

## II.     Failure to State a Claim Under Rule 12(b)(6)

### A.     Qualified Immunity (Greg Farley Only)

"Qualified immunity is meant to protect public servants—"all but the plainly incompetent or those who knowingly violate the law"—from the burdens of lawsuits." *Gilmore v. Beveridge*, No. 222CV02032HLTRES, 2022 WL 17082681, at *4 (D. Kan. Nov. 18, 2022). "[Q]ualified immunity protects officials from liability unless the plaintiff shows (1) the defendant's violation of a constitutional right; and (2) that the right the official violated was "clearly established" at the time of the challenged conduct." *M.C. Through Chudley v. Shawnee Mission Unified Sch. Dist. No. 512*, 363 F. Supp. 3d 1182, 1202–03 (D. Kan. 2019).

This Court must resolve the qualified immunity defense "at the earliest possible stage of litigation." *Id.* at 1203 (internal quotation marks omitted). "Where qualified immunity is raised in a motion to dismiss, a court analyzes the issue based on the allegations in the complaint." *Gilmore v. Beveridge*, No. 222CV02032HLTRES, 2022 WL 17082681, at *4 (D. Kan. Nov. 18, 2022). Because vicarious liability is inapplicable to Section 1983 claims, the Court must consider only the conduct specifically attributable to Mr. Farley. *See id.* at *5.

To show that a constitutional right is "clearly established," Plaintiffs must show that, "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate." *Zorn v. City of Marion, Kansas*, 774 F. Supp. 3d 1279, 1304 (D. Kan. 2025) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63, 138 S.Ct. 577, 199 L.Ed.2d 453 (2018)). The purpose of this rule is to give government officials "breathing room to make reasonable but mistaken judgments about open legal questions." *M.C. Through Chudley v. Shawnee Mission Unified Sch. Dist. No. 512*, 363 F. Supp. 3d 1182, 1202–03 (D. Kan. 2019). These cases must not define the clearly established right "extremely abstract[ly]"

5

or "at a high level of generality." *Id.* Plaintiffs "must identify a case where an offic[ial] acting under similar circumstances as [Farley] was held to have violated." *Id.* at 1206–07 (internal quotation marks omitted). Stated another way, "precedent is considered on point if it involves materially similar conduct or applies with obvious clarity to the conduct at issue." *Irizarry v. Yehia*, 38 F.4th 1282, 1294 (10th Cir. 2022). Plaintiff has the "burden to convince court that defendants violated a clearly established right, and failure to do so entitles judgment for defendants." *Stevenson v. Hannigan*, No. 92-3425-DES, 1993 WL 502415, at *1 (D. Kan. Nov. 30, 1993). "Although there need not be a case directly on point, the clearly established law must be particularized to the facts of the case." *Tachias v. Sanders*, 130 F.4th 836, 844 (10th Cir. 2025) (internal quotation marks omitted). Generally, a right is not "clearly established" unless a Supreme Court decision, a Tenth Circuit decision, or the "clearly established weight of authority" show that the law is as Plaintiffs maintain. *Ullery v. Bradley*, 949 F.3d 1282, 1291 (10th Cir. 2020).

Plaintiffs bear the burden to establish both prongs of the qualified immunity test—and if they fail, Defendants are entitled to qualified immunity. *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016). Qualified immunity applies to damages claims only. *Spiehs v. Larsen*, 728 F. Supp. 3d 1190, 1214 (D. Kan. 2024).

Plaintiffs fail to establish either prong of the qualified immunity test for Greg Farley. The only specific allegations that Plaintiffs make about Mr. Farley are as follows:

- He questioned "Plaintiffs Opal Morris and Henry Farthing after Gaggle flagged their photography assignments." Doc. 1 at ¶¶ 31, 99–119.

- He accused Morris and Farthing of "uploading images containing indecent exposure and child pornography" to their School District Google accounts. Doc. 1 at ¶¶ 31, 103.

- He refused to permit Morris to pull up the images at issue, but then questioned her about the details of those photos. Doc. 1 at ¶¶ 109–10.

- He did not contact her parents about this questioning. Doc. 1 at ¶ 111.

6

- He had not seen the offending images, but based his accusations on Gaggle's flagging of the images. Doc. 1 at ¶ 114.

The remaining allegations are either unsupported generalities or legal conclusions. Additionally, Plaintiffs do not allege any of the following facts:

- That Mr. Farley at any time failed to act as his superiors directed him to;

- That Mr. Farley ever saw the images in question;

- That Mr. Farley ever determined for himself or on behalf of the School District that the images in question constituted indecent exposure or child pornography;

- That Mr. Farley—or anyone else—prohibited the students from contacting their parents or an attorney;

- That Mr. Farley sought to obtain a confession from any of the students;

- That Mr. Farley personally searched—or commanded the students to provide access to those devices—in order to view the images or other materials;

- That Mr. Farley personally decided to delete the allegedly offending materials from School District devices or platforms[2]; or

- That Mr. Farley or anyone else disciplined these students for the alleged indecent exposure or child pornography on their devices.

However, because Plaintiffs' Complaint does not allege any ongoing actions by Mr. Farley, all claims against him should be dismissed because of qualified immunity.

### 1. **Plaintiffs fail to show that Greg Farley violated their constitutional rights.**

Plaintiffs cannot show that Greg Farley violated either their First or Fourth Amendment rights as alleged in Plaintiffs' Complaint.

---

[2] Though Plaintiffs' Complaint alleges that "participated in the seizure of student expressive work," Doc. 1 at ¶ 29, the Complaint provides no further details to support this conclusory allegation.

a. First Amendment

Plaintiffs cannot prevail on their First Amendment claims against Mr. Farley because the images at issue are not "speech" under the First Amendment. Child pornography is not protected speech under the First Amendment. *United States v. Stevens*, 559 U.S. 460, 471, 130 S. Ct. 1577, 1586, 176 L. Ed. 2d 435 (2010). Additionally, Plaintiffs' Complaint fails to adequately allege that Mr. Farley in any way restricted Plaintiffs' speech. The Complaint never alleges that Mr. Farley commanded Plaintiffs to delete the images or deleted them himself. He merely questioned them about the information he received—that Gaggle, a third-party service, flagged their materials as indecent exposure and child pornography. *See* Doc. 1 at ¶¶ 31, 99–119.

Even if the images were First Amendment "speech," the First Amendment permits banning them as vulgar, lewd, indecent, and sexually explicit. In fact, the Supreme Court has previously found a school district justified in suspending and otherwise disciplining a student who used "an elaborate, graphic, and explicit sexual metaphor" in a speech to other students. *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 678, 106 S. Ct. 3159, 3161, 92 L. Ed. 2d 549 (1986). The Court found that "it is a highly appropriate function of public school education to prohibit the use of vulgar and offensive terms in public discourse." *Id.* As a result, schools could freely prohibit "vulgar," "lewd," "indecent," or "sexually explicit" by students without violating the First Amendment. *Id.* at 685. Tenth Circuit courts have interpreted *Fraser* to permit schools to restrict such speech "without a showing of material and substantial disruption" under the First Amendment. *See M.C. Through Chudley v. Shawnee Mission Unified Sch. Dist. No. 512*, 363 F. Supp. 3d 1182, 1195 (D. Kan. 2019).

Even if the images do not fall under Fraser, Defendants could permissibly prohibit them. To establish a First Amendment violation, Plaintiffs will need to satisfy either the *Hazelwood v. Hulmeier* standard (for public school student speech that is school-sponsored) or the *Tinker v. Des Moines* standard (for public school student speech generally). *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 35–36 (10th Cir. 2013). Under *Hazelwood*, schools may restrict student speech if the restrictions "are reasonably related to legitimate pedagogical concerns." *Id.* at 36. Under *Tinker*, schools may restrict student speech if the school "reasonably forecasted that the speech would cause substantial disruption to the school environment." *Id.*

Under either standard, restrictions of Plaintiffs' images did not violate the First Amendment. Identifying and preventing crimes—as Plaintiffs acknowledge child pornography possession and production are, Doc. 1 at ¶ 104—is reasonably forecasted to prevent substantial disruption to the school environment. And preventing the production, possession, and sharing of potentially illegal and compromising images of minors is reasonably related to legitimate pedagogical concerns.

b.   Fourth Amendment

Under the Fourth Amendment, a "search" occurs when "an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Hill*, 805 F.3d 935, 937 n.1 (10th Cir. 2015). Mr. Farley did not engage in a "search" of Plaintiffs' materials because he never asked them to show him those materials, nor did he seek to inspect their devices, Google platforms, or other materials. The question, then, is whether Mr. Farley engaged in an impermissible "seizure" of the students when he detained them for questioning.

Under the Fourth Amendment, a search or seizure in a public school is appropriate if it is "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." *Couture v. Bd. of Educ. of Albuquerque Pub. Sch.*, 535 F.3d

9

1243, 1250 (10th Cir. 2008); *Edwards For & in Behalf of Edwards v. Rees*, 883 F.2d 882, 884 (10th Cir. 1989). A search is "justified at its inception" when "there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *A.M. v. Holmes*, 830 F.3d 1123, 1158 (10th Cir. 2016). A search remains appropriate if it is "permissible in its scope" by using measures "reasonably related to the objectives of the search and not excessively intrusive." *Id.* at 1160.

Mr. Farley's involvement in any alleged Fourth Amendment seizure of Plaintiffs was both justified at its inception and permissible in its scope. It was justified at its inception because Gaggle's flagging provided reasonable grounds to suspect that the students questioned had violated the law and the School District's rules by possessing and/or producing indecent exposure and/or child pornography. Questioning the students about these materials was imminently justified. Additionally, Plaintiffs fail to allege any facts that show that the search was not permissible in scope. They do not allege that they were prevented from contacting their parents or an attorney before or during the questioning. They do not allege that they were threatened with adverse action if they did not cooperate. And they do not allege that they were detained for an unreasonable period of time or under other unreasonable conditions.

### 2. Plaintiffs fail to show that any right that Greg Farley allegedly violated was "clearly established."

At a minimum, Plaintiffs must show, for purposes of qualified immunity, that is it clearly established that public school officials may not non-coercively question a student who is reasonably suspected of possessing child pornography on a school-provided device or platform. Plaintiffs cannot do so.

### a. First Amendment

Defendants have found no Supreme Court decision, Tenth Circuit decision, or weight of circuit court authority suggesting that Plaintiffs' position is clearly established. In fact, as discussed previously, the relevant law establishes that child pornography does not enjoy First Amendment protection and may be restricted without First Amendment problems—particularly in a school setting. Plaintiffs' own Complaint acknowledges that Gaggle—a third-party combination of AI and human reviewers—flagged the students' materials for indecent exposure and child pornography. Doc. 1 at ¶¶ 12, 112, 114. Given this flagging, it was not clearly established that Mr. Farley should not detain and question students suspected of possessing images depicting indecent exposure and child pornography. *See also Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1228 (10th Cir. 2001) (it was not clearly established that a prior restraint occurred if public officials removed suspected child pornography from public circulation without a prior adversarial hearing); *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1009 (5th Cir. 2023) (school principal was entitled to qualified immunity because a school football player had no clearly established right to protection from discipline for sending a racial expletive to a student at a rival school via Snapchat); *R.L. v. Cent. York Sch. Dist.*, 183 F. Supp. 3d 625, 647 (M.D. Pa. 2016) (school superintendent was entitled to qualified immunity because student had no clearly established right to suggest via Facebook post that a bomb might go off at the school); *Bowler v. Town of Hudson*, 514 F. Supp. 2d 168, 183 (D. Mass. 2007) (school officials were entitled to qualified immunity because high school student group had no clearly established right to provide access to links showing gruesome murders and beheadings by terrorists); *Jackson v. Ladner*, 626 F. App'x 80, 89 (5th Cir. 2015) (school officials were entitled to qualified immunity because student group had no clearly established right to send "threatening and offensive" messages to a cheer squad teammate using social media).

11

### b. Fourth Amendment

As explained above, Defendants have found no Supreme Court decision, Tenth Circuit decision, or weight of circuit court authority suggesting that Plaintiffs' position is clearly established.

Additionally, at least one Tenth Circuit Court has addressed qualified immunity in the context of questioning a student for an alleged crime under the Fourth Amendment. The Court found that the allegedly coercive, threatening questioning of a minor student, who was detained for more than two hours and not allowed to contact her parents, did not violate clearly established Fourth Amendment rights. *Foley v. Carlsbad Mun. Sch.*, No. 1:09-CV-01147-RB-GBW, 2011 WL 13286401, at *7 (D.N.M. Jan. 24, 2011). Because the allegations concerned marijuana distribution at the school, the school faced a clear and present danger, and was entitled to qualified immunity. *Id.* at *1, 7.

Some other decisions also support Defendants' position that Plaintiffs' alleged rights were not clearly established. *See Wyatt v. Fletcher*, 718 F.3d 496, 503–04 (5th Cir. 2013) (school coach was entitled to qualified immunity on Fourth Amendment seizure claim based upon the coach's questioning of a student athlete inside a locked locker room even though the coach allegedly shouted and used "intimidating gestures"); *Jain v. Bd. of Educ. of Butler Sch. Dist. 53*, 366 F. Supp. 3d 1014, 1020–21 (N.D. Ill. 2019) (school administrators were entitled to qualified immunity despite allegedly interrogating a nine-year-old student without alerting his parents, yelling at him and accusing his parents of helping him cheat on a test, leading the student to feel scared, to shake, and to sweat).

### B.     Duplicative Pleading (School Board Only)

Multiple District of Kansas courts have previously dismissed claims against school boards when the school districts were also sued. *Rubio v. Turner Unified Sch. Dist. No. 202*, 453 F. Supp. 2d 1295, 1300–01 (D. Kan. 2006); *M.T. v. Olathe Pub. Sch. USD 233*, No. 17-2710-JAR-GEB, 2018 WL 1847036, at *3 (D. Kan. Apr. 18, 2018). This was because "the board of education is merely the governing body of the school district and is not a separate legal entity," meaning that "any judgment against the board necessarily is against the school district." *Rubio*, 453 F. Supp. 2d at 1300; *see also M.T.*, 2018 WL 1847036, at *3. As a result, "a claim against a sub-unit of a school district is the equivalent of a suit against the school district itself" and is therefore "duplicative." *Rubio*, 453 F. Supp. 2d at 1300; *see also M.T.*, 2018 WL 1847036, at *3.

Plaintiffs bring all of their claims against both the School District and the School Board. Doc. 1 at i-ii. Therefore, their claims against the School Board are duplicative, and all claims against the School Board should be dismissed.

### C.     Injunctive and Declaratory Relief (All Defendants)

Both declaratory and injunctive relief are remedies, not separate causes of action. *See Steede v. Freight Logic, Inc.*, No. 25-2136-DDC-TJJ, 2025 WL 1360733, at *8 (D. Kan. May 9, 2025) (both injunctive and declaratory relief are remedies, not claims); *Brickert v. Deutsche Bank Nat'l Tr. Co.*, 380 F. Supp. 3d 1127, 1141 (D. Colo. 2019) (same); *Parrish v. Farmers Ins. Co., Inc.*, No. 21-CV-00280-GKF-SH, 2021 WL 11728147, at *2 (N.D. Okla. Sept. 9, 2021) (declaratory relief is a remedy, not a claim).

However, Plaintiffs' Complaint treats declaratory and injunctive relief as separate claims. Plaintiffs' First and Fourth Claims are for declaratory relief, while their Second and Fifth Claims are for injunctive relief. Doc. 1 at i–ii. Instead of seeking multiple types of relief under one claim, Plaintiffs bring three different claims under the First Amendment and three under the Fourth

Amendment—one for each of damages, injunctive relief, and declaratory relief. *Id.* This Court should nevertheless dismiss the First, Second, Fourth, and Fifth claims, which merely seek injunctive and declaratory relief for claims Plaintiff already pleaded separately.

### D.     Punitive Damages (School Board and School District Only)

Section 1983 does not permit punitive damage awards against municipalities. *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1307 (10th Cir. 2003). Plaintiffs nevertheless seek to obtain punitive damages against all Defendants. *See* Doc. 1 at ¶¶ 233, 264; pg. 48. Therefore, this Court should dismiss Plaintiffs' request for punitive damages against the School Board and the School District from their Complaint.

## CONCLUSION

Therefore, Defendants request this Court to (1) dismiss all claims by Plaintiffs Jack Tell, Natasha Torkzaban, Morgan Salisbury, Opal Morris, Henry Farthing, Suzana Kennedy, and Naomi Sui Pang against any and all Defendants; (2) dismiss all claims for injunctive or declaratory relief by all Plaintiffs against all Defendants; (3) dismiss all claims for damages by all Plaintiffs against Defendant Greg Farley; (4) dismiss all claims by all Plaintiffs against Defendant the School Board; (5) dismiss Plaintiffs' punitive damage request against the School District and School Board; and grant all further relief as the Court deems just and proper.

/s/ Alan L. Rupe
Alan L. Rupe, KS #08914
Jared D. Harpt, KS #30005
LEWIS BRISBOIS BISGAARD & SMITH LLP
1605 N. Waterfront Parkway, Suite 150
Wichita, KS 67206
Telephone:  (316) 609-7900
Facsimile:   (316) 462-5746
alan.rupe@lewisbrisbois.com
jared.harpt@lewisbrisbois.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on October 27, 2025, I filed the above Defendants' Memorandum in Support of Defendants' Motion to Partially Dismiss Plaintiffs' Complaint using the Court's CM/ECF system which will send notification to all counsel of record.

/s/ Alan L. Rupe
Alan L. Rupe