# EXHIBIT D



Mark P. Johnson
Partner

mark.johnson@dentons.com
D   +1 816-460-2424

Harrison M. Rosenthal
Managing Associate

harrison.rosenthal@dentons.com
D   +1 816-460-2582

Dentons US LLP
4520 Main Street
Suite 1100
Kansas City, MO  64111-7700
United States

dentons.com

May 31, 2024

**Via Federal Express and Email**

Kelly Jones, Board President
Lawrence USD #497
110 McDonald Drive
Lawrence, Kansas 66044
Kelly.Jones@usd497.org

Re:   **Demand to Cease and Desist Operation of Gaggle Monitoring and Mitigate Constitutional Harm**

Dear Professor Jones:

This firm represents Natasha Torkzaban, Morgan Salisbury, Maya Smith, and Jack Tell, all of whom are students at Lawrence High School. We write to demand that the School District cease and desist from the ongoing and illegal search and seizure of students' digital effects and chilling of students' speech and expression. We refer to the CONTRACT FOR SERVICES beginning August 1, 2023 (the "Contract"), between Gaggle.Net, Inc. ("Gaggle"), and Unified School District No. 497, Douglas County, Kansas ("Lawrence Public Schools" or the "District"). The Contract, in pertinent part, provides "Gaggle shall monitor email, message communications, documents, and other file types" connected to District technology infrastructure.

We are directing this letter to you in your capacity as Board President of Lawrence USD 497 because our clients informed us that when you met with them several weeks ago and asked for the name and contact information of their attorneys that you would contact us. That has not happened, so we are initiating contact.

The Contract as exercised through District policy and practice violates provisions of the First, Fourth, and Fourteenth Amendments to the United States Constitution and related provisions of Kansas State law. We are particularly troubled by statements indicating the District's awareness of these Constitutional violations and its decision to proceed with disregard for students' rights. Our clients have met with representatives of the District several times, and at each meeting they made clear that the District's use of Gaggle violates their rights. Although we strongly believe that the District is acting unlawfully, we offer the District the opportunity to mitigate the irreparable harm it has been inflicting on our clients, and a potential class of similarly situated student plaintiffs, before taking legal action.[1] We would be pleased to work with the District to resolve the existing problems and move away from use of Gaggle or other products providing similar services.

I.   **Background**

In August 2023, the District contracted with Gaggle—which the District stated to be "a digital surveillance tool that helps school districts manage student safety on school-provided devices and platforms by

---

[1] The recitation here reflects our understanding of the pertinent facts. We appreciate that you may have additional information to offer and invite you to share it with us.

Puyat Jacinto & Santos ► Link Legal ► Zaanouni Law Firm & Associates ► LuatViet ► For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms



May 31, 2024
Page 2

dentons.com

monitoring student accounts to identify and flag those who may be struggling and need help."[2] The District has assured students that "Gaggle cannot and does not monitor personal devices or any personal accounts, including but not limited to internet usage and web browsing, calls, texts, emails, and social media posts on personal devices or accounts."[3] The District further assured faculty that "Gaggle also does not monitor teacher and staff accounts."[4] We are concerned that those representations are not entirely accurate.

Regarding privacy concerns, one Board member stated "[i]f you're going to be using an account provided by the district, on the district device, using district resources that operate on the district's internal network, your expectation of privacy should be much lower than if you're using your own account."[5] Speaking on the same issue, the District's director of technology said, "That can be looked at as spying, but really it is not, because we own it. We're not looking into phones, we're not looking into a personal device that people walk on campus with, we don't do any of that because it's not possible for us to do."[6] Again, we are concerned that these statements do not reflect the District's actual legal obligations toward its students and faculty, and that any form or statement that the District requires students and faculty to sign in which these issues are addressed use language and are obtained in a manner that render them unenforceable.

We understand that the monitoring of student activities involves not only District-employed personnel, but also persons either employed by or contracted by Gaggle, so the monitoring involves student and faculty content being reviewed not only by District personnel, but also by non-District private individuals of unknown expertise, training, and experience. It appears that the District has, at least in part, "farmed out" the process of monitoring student and faculty content, and making decisions whether any of that content should be flagged for further consideration.

As an example of the use of Gaggle, days after the District implemented Gaggle, Lawrence High School administrators summoned nearly an entire class of Portfolio and AP Photography students to their offices to investigate student work product Gaggle improperly flagged for "nudity."[7] Those students learned that the District, in addition to actively searching their district-provided laptops (which the District requires students to use to access, obtain, and perform all assignments for all of their classes), emails, files, and documents—without any evidence of student wrongdoing—had actually *seized* their digital effects. The photography students were only able to discern which images the District had seized by comparing the content of duplicate storage systems to what remained on their school accounts.[8] One student was forced "to explain in detail every single photo," which made her worry about "what I'm creating and what issues it could provide with administration."[9] The District returned the students' images only after months of pushback from the students.[10] As one faculty member put it, "What is going into someone else's work where they are supposed to have a right to be able to voice something, I think is a little scary."[11]

The District's search, seizure, and chilling of student expression is *more* than a little scary. It is wholly illegal and violates students' basic civil liberties.

---

[2] Lawrence USD 497 Board of Education, *Agenda, Purchase of Gaggle Software* (Aug. 28, 2023), https://go.boarddocs.com/ks/usd497/Board.nsf/goto?open&id=CUWR6N6A4EBE.

[3] Lawrence USD 497, *Safety Information & Resources: Gaggle*, https://www.usd497.org/Page/16711 (last visited May 20, 2024).

[4] *Id.*

[5] Jack Tell, *Is AI the Answer? New Lawrence School District Software Aims to Prevent Suicide and Self-Harm*, THE BUDGET (Nov. 10, 2023), https://www.lhsbudget.com/news/2023/11/10/is-ai-the-answer-new-lawrence-school-district-software-aims-to-prevent-suicide-and-self-harm/.

[6] *Id.*

[7] Maya Smith, *Art Students Push Back Against Potential Gaggle Censorship*, THE BUDGET (Feb. 9, 2024), https://www.lhsbudget.com/news/2024/02/09/art-students-push-back-against-potential-gaggle-censorship/.

[8] *Id.*

[9] *Id.*

[10] Cuyler Dunn, *Lawrence Journalism Students Convince District to Reverse Course on AI Surveillance They Say Violates Freedom of Press*, LAWRENCE TIMES (Apr. 18, 2024), https://www.lawrencetimes.com/education/lawrence-journalism-students-reverse-ai-surveillance/.

[11] Smith, *supra* note 7.



## II. The District's Policy and Practice Violates Students' Fourth Amendment Rights

The Fourth Amendment to the United States Constitution provides, in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Fourth Amendment applies to searches in the public school context because "school officials act as representatives of the State, not merely as surrogates for the parents." *New Jersey v. T.L.O.*, 469 U.S. 325, 336 (1985). A school district is required to demonstrate "reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *Id.* at 342. School searches must be reasonably related in scope to the circumstances justifying the inference. *Id.* The "reasonable suspicion" standard is met if there is a "moderate chance" of finding evidence of student wrongdoing. *Safford Unified School District No. 1 v. Redding*, 557 U.S. 364, 371 (2009).

Here, the District, through Gaggle, is conducting universal, round-the-clock searches and seizures of all students' personal digital effects without any evidence of wrongdoing, let alone any reasonable suspicion. Through our clients' reporting, we know Gaggle scans files not owned by District accounts and scans student-edited files owned by teachers—contradicting your above-mentioned assurances.[12] The District requires students to use District-issued laptops. <u>The fact that the District owns the laptops and attendant software the students use does not absolve it from the requirement to have reasonable suspicion of student wrongdoing to justify its Fourth Amendment intrusions.</u>[13] Our federal law is clear: When a student uses school devices for pedagogical purposes, the school must have "reasonable cause" or "reasonable suspicion" to justify any search and/or seizure of student-generated content. *Zamora v. Pomeroy*, 639 F.2d 662, 670 (10th Cir. 1981); *Singleton v. Bd. of Educ. USD 500*, 894 F. Supp. 386, 391 (D. Kan. 1995) (joint control over school property requires that "the school ha[ve] legally sufficient grounds" to justify its search). Furthermore, because District policy effectively prohibits students from opting out of Gaggle's surveillance and still receive equal educational opportunities, the District's practices may also violate the Equal Protection Clause of the Fourteenth Amendment.[14]

## III. The District's Policy and Practice Violates Students' First Amendment Rights

The First Amendment to the United States Constitution provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. It is axiomatic that neither students nor teachers "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate," and school administrators cannot employ overbroad policies or practices that chill core protected speech. *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 506 (1969). Although the Court recognized limited exceptions to this broad ruling "in light of the special characteristics of the school environment," *id.*, too often those exceptions are treated as if they were the rule. In *Tinker*, the Court held that student speech is presumptively protected <u>unless</u> it falls into two narrow categories: it either substantially disrupts the school

---

[12] Natasha Torkzaban, Morgan Salisbury, Maya Smith & Jack Tell, *Fighting for Our Rights: Gaggle & USD 497*, THE BUDGET (Apr. 18, 2024), https://www.lhsbudget.com/news/2024/04/18/fighting-for-our-rights-gaggle-usd-497/.

[13] Indeed, if the District took that position arising out of its ownership of the devices, why has it required students to sign waivers of their rights in order to use the devices (putting to the side the fact that the waivers are ineffective and unenforceable)?

[14] LAWRENCE PUBLIC SCHOOLS, PARENT GUIDE TO 1:1 TECHNOLOGY, USD 497, https://www.usd497.org/Page/11487 (last visited May 24, 2024) ("A family may not opt-out of receiving a device for student's use at home as many assignments will require a computer to complete. All students will use a device at school even if they do not take it home"); LAWRENCE PUBLIC SCHOOLS, STUDENT ACCEPTABLE USE POLICY (AUP), USD 497 (Sept. 2019), https://www.usd497.org/site/handlers/filedownload.ashx?moduleinstanceid=5141&dataid=20183&FileName=Computer%20Use%20Form.pdf ("Students will expect, without prior notice, any and all usage of the district network and internet access, including, but not by way of limitation, e-mail transmissions and receptions to be subject to review. Any information gathered during monitoring may be copied and or stored").



May 31, 2024
Page 4

environment or it invades the rights of other students at school. *Id.* at 513.

Here, the District has implemented a surveillance program that surveils and chills all student speech without any evidence of disruption or student-rights invasions, as evidenced by our clients' reporting.[15] While "educating and supporting students' social-emotional health and well-being, such as teaching them healthy ways to cope with intense emotions and handle the ups and downs of everyday life"[16] is a well-intentioned and important goal, the District is not "immune from the demands of the Constitution." *303 Creative, LLC v. Elenis*, 143 S. Ct. 2298, 2312 (2023). See also *Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*, No. 22-2927, 2023 WL 6330394, at *4 (8th Cir. Sept. 29, 2023) ("A school district cannot avoid the strictures of the First Amendment simply by defining certain speech as 'bullying' or 'harassment.'"). The District's actions violate the First Amendment by creating an impermissible chilling effect on free speech through an overbroad policy of 24-hour monitoring that suppresses a substantial amount of protected student expression. The District is chilling constitutionally protected expression because students are unclear as to Gaggle's guidelines regarding what content will be searched, seized, and subject to investigation. See *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) ("Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." (internal quotation marks and citation omitted)).

As related to our clients as journalists, the surveillance frustrates freedom of reportage and likely violates Kansas shield laws[17] and the Kansas Student Publications Act.[18] The First Amendment prevents school administrators from assuming such expansive powers of oversight and censorship. The Supreme Court has recognized that "educating the young for citizenship," and protecting their constitutional freedoms while doing so, is necessary "if we are not to strangle the free mind at its source and teach youth to discount important principles of our government as mere platitudes." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 634, 637 (1943).

The overbroad and unclear guidelines of Gaggle's monitoring policies create an environment of uncertainty and fear, discouraging students from engaging in protected speech and following customary journalistic practices. Such actions not only undermine the fundamental principles of free speech and press, they also impose an unlawful chilling effect on students' constitutional rights. Therefore, the District's practices are both overreaching and unconstitutional.

## IV.    Demand to Cease Violating Students' Civil Liberties

In light of the District's ongoing and illegal search and seizure of students' digital effects and the chilling of students' speech and expression, we request that the District cease from these unconstitutional practices. The District's current surveillance policy, as implemented through Gaggle, violates the First, Fourth, and Fourteenth Amendments, as well as related protections under Kansas State law. The District's policy and practice are overly broad, lack reasonable suspicion, and create an impermissible chilling effect on protected student expression.

We request a substantive response to this letter no later than Monday, June 10, 2024. Failure to address these concerns will compel us to pursue legal action on behalf of our clients and a class of similarly situated student plaintiffs.

On the other hand, if the District is interested in working with us to resolve this matter cooperatively, we

---

[15] Smith, *supra* note 7.
[16] Lawrence USD 497, *supra* note 3.
[17] K.S.A. 60-480, *et seq.*
[18] K.S.A. 72-7211, *et seq.*

Case 2:25-cv-02428-KHV-GEB   Document 23-5   Filed 11/17/25   Page 6 of 6


May 31, 2024
Page 5

dentons.com

believe arrangements can be made to that effect.

We look forward to hearing from you.

<p align="center">*   *   *</p>

Lawrence Public Schools, its administrators, employees, agents, and all other persons or entities acting on its behalf, are hereby directed to preserve and retain all documents, communications, data, and electronically stored information related to the foregoing. This includes, but is not limited to, emails, internal communications, meeting notes, reports, user logs, audit trails, and any other records that pertain to the operation and impact of such monitoring systems or practices on students. Destruction, alteration, or concealment of any such evidence, whether intentional or accidental, may constitute spoliation of evidence and can result in severe legal consequences. Nothing in this letter shall be construed to modify, limit, or waive any rights or remedies available to our clients or potential clients, whether under contract, law, or equity. All such rights and remedies are expressly reserved.

Sincerely,

Mark P. Johnson
Partner

Harrison M. Rosenthal
Managing Associate

US_ACTIVE\127048310