**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

JACK TELL, NATASHA TORKZABAN,
MORGAN SALISBURY, OPAL MORRIS,
HENRY FARTHING, SUZANA KENNEDY,
NAOMI SUI PANG, ASHLYN TELL; and
P.M., a minor, by and through her parents
MARGARET WEISBROD MORRIS and
JOHNATHAN MORRIS,

          Plaintiffs,

v.

LAWRENCE BOARD OF EDUCATION, a
political subdivision of the State of Kansas;
LAWRENCE USD 497, a political subdivision
of the State of Kansas; GREG FARLEY, in his
individual capacity, and QUENTIN RIALS, in
his individual capacity,

          Defendants.

Case No. 2:25-cv-02428-KHV-GEB

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION**
**TO PARTIALLY DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

    Defendants Lawrence Board of Education (the "School Board"), Lawrence USD 497 (the

"School District"), Greg Farley, and Quentin Rials (collectively "Defendants") present this

Memorandum in Support of Their Motion to Partially Dismiss Plaintiffs' First Amended

Complaint. Defendants bring their Motion and Memorandum in Support under both Federal Rule

of Civil Procedure 12(b)(6) (for failure to state a claim) and Rule 12(b)(1) (for lack of subject

matter jurisdiction).

    In their First Amended Complaint, Plaintiffs allege that Defendants have violated

Plaintiffs' constitutional rights by using two software programs—Gaggle and ManagedMethods—

to supervise certain student computer activity. Doc. 23 at ¶ 1. Plaintiffs also allege that

Defendants' methods of implementing these software programs violated Plaintiffs' constitutional

rights. *See, e.g.*, Doc. 23 at ¶¶ 16, 18, 31. However, Plaintiffs' First Amended Complaint largely fails to establish this Court's subject matter jurisdiction and to state a claim upon which relief can be granted. Therefore, Defendants are entitled to partial dismissal as laid out in more detail below.

## ARGUMENT

### I.    Lack of Subject Matter Jurisdiction Under Rule 12(b)(1).

When challenging subject matter jurisdiction through a Rule 12(b)(1) motion to dismiss, Defendants are not limited to the First Amended Complaint's allegations. Instead, the Court has discretion to consider "affidavits, other documents, and a limited evidentiary hearing" to aid in deciding these matters. *See Demster v. City of Lenexa, Kansas*, 352 F. Supp. 2d 1165, 1169–70 (D. Kan. 2005).[1] This Court may evaluate whether subject matter jurisdiction exists at any time. *See* Fed. R. Civ. P. 12(h)(3).

Standing requires that the plaintiff have a "personal stake in the outcome of the case." *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 895 F. Supp. 1463, 1468 (D. Kan. 1995). Standing exists if two requirements are met: (1) Plaintiffs have suffered a distinct and palpable injury; and (2) Plaintiffs demonstrate a causal link between the claimed injury and the challenged conduct. *Id.* (cleaned up) (quoting *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). Plaintiffs can satisfy the second requirement by showing that "there is a substantial likelihood that the relief sought will address the claimed injury." *Id.* Standing is an element of subject matter jurisdiction, and therefore may be challenged

---

[1] In accordance with Rule 12(d), Defendants submit the Declaration of Jeanice Swift (Exhibit 1) in support of its Motion to Partially Dismiss with respect to the Rule 12(b)(1) grounds only. Defendants ask the Court to disregard this declaration with respect to the Rule 12(b)(6) grounds in order to avoid treating this Motion as a motion for summary judgment under Rule 56.

through a Rule 12(b)(1) motion.  *See Hill v. Vanderbilt Cap. Advisors, LLC*, 702 F.3d 1220, 1224–25 (10th Cir. 2012).

Similarly, mootness requires a live controversy to exist between the parties at all stages of the litigation, including appellate review.  *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).  Federal courts have "no power to give opinions … or declare principles of law which cannot affect the matter in issue in the case before it."  *Id.*  If no live controversy exists, then the action is moot and this Court will lack subject matter jurisdiction.  *Id.*  Courts recognize two types of mootness—constitutional and prudential.  *Bacote v. Fed. Bureau of Prisons*, 119 F.4th 808, 812 (10th Cir. 2024).  Constitutional mootness occurs when the case "ceases to present a real and substantial controversy with respect to which specific relief may be fashioned."  *Id.*  Prudential mootness permits this Court to refuse to grant relief in its discretion if Plaintiffs "failed to demonstrate a cognizable danger of recurrent violation beyond a mere possibility."  *Id.* at 813.  In a suit for declaratory or injunctive relief, a case may be moot if no "continuing, present adverse effects" exist.  *Id.* at 812.  Mootness is an element of subject matter jurisdiction, and may be challenged through a Rule 12(b)(1) motion.  *Smith v. Becerra*, 44 F.4th 1238, 1247 (10th Cir. 2022).

### A.    Several Plaintiffs Have Already Graduated.

Tenth Circuit courts have repeatedly found that students may not bring claims for injunctive and declaratory relief after they have graduated.  *See Lane v. Simon*, 495 F.3d 1182, 1186–87 (10th Cir. 2007) (former students' First Amendment Freedom of Press claims moot because they "have graduated"); *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 548 (10th Cir. 1997) (constitutional claims for injunctive and declaratory relief moot after the student graduated); *Case v. Unified Sch. Dist. No. 233*, 908 F. Supp. 864, 873 (D. Kan. 1995) (former students and parents lacked standing to seek declaratory and injunctive relief under the First and

Fourteenth Amendments for a school district's decision to remove certain media from school libraries because these students no longer had free access to the school district's libraries during media center night).

These courts have also found that the "capable of repetition, yet evading review" mootness exception does not apply because a graduated student is not likely to reenter school and again face the complained-of action or policy.  *See Fischbach v. New Mexico Activities Ass'n*, 38 F.3d 1159, 1161 (10th Cir. 1994) (the exception did not apply because "since [plaintiff] has graduated, there is no reason to suspect that either he or his parent will again be subjected to the actions of [defendant]"); *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1225 (10th Cir. 2009) (the exception did not apply because no reasonable expectation that a graduated student would again face the challenged policy).

Plaintiffs' requests for injunctive and declaratory relief for Jack Tell, Natasha Torkzaban, Morgan Salisbury, Opal Morris, Henry Farthing, Suzana Kennedy, and Naomi Sui Pang are moot, and these individuals lack standing to seek such relief.  Each of them are at least 18 years old and are former students in the School District.  *See* Doc. 23 at page 8, ¶¶ 16–22.  These Plaintiffs do not allege that they are currently enrolled in the School District or are currently suffering ongoing harms to their constitutional rights.  Instead, they allege only past enrollment and harm.  *See* Doc. 23 at ¶ 23.  Additionally, the School District's own records show that each of these individuals have already graduated from high school.  Exhibit 1, Declaration of Jeanice Swift.  Therefore, none of these Plaintiffs are entitled to injunctive or declaratory relief because none of them will ever again be subject any School District action or policy—whether related to Gaggle or ManagedMethods or not.

4

**B.    The School District Has Decided to Stop Using Gaggle to Monitor Students.**

Additionally, the School District has decided to stop using Gaggle to monitor students. Exhibit 1, Declaration of Jeanice Swift.  Many of Plaintiffs' claims for injunctive and declaratory relief under Counts 1-8 against all Defendants are premised in part on Gaggle's usage.  *See* Doc. 23 at 334–35, 344–45, 348, 367–68, 377–78, 393, 404.  Therefore, all of these claims are moot, and Plaintiffs have no standing to bring them, to the extent that they are based upon Gaggle usage, because the School District no longer uses Gaggle anyway.

Therefore, this Court lacks subject matter jurisdiction over all claims (to the extent based upon Gaggle usage) by Plaintiffs Jack Tell, Natasha Torkzaban, Morgan Salisbury, Opal Morris, Henry Farthing, Suzana Kennedy, and Naomi Sui Pang.  And this Court lacks subject matter jurisdiction over all claims (to the extent based upon Gaggle usage) for injunctive and declaratory relief against all Defendants.  Therefore, these claims should be dismissed.

**C.    Plaintiffs Acknowledge That the Alleged Restrictions and Retaliations Based Upon Student Publication About the Instant Lawsuit Have Ended.**

When the policy that forms the basis for a First Amendment challenge is repealed, that moots any claims for declaratory and injunctive relief (unless an exception applies).  *See Utah Animal Rts. Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1256 (10th Cir. 2004) (repeal of statute mooted request for declaratory and injunctive relief based upon statute's alleged violations of the First Amendment); *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 882 (10th Cir. 2019) (delivery of publications to prisoner mooted request for declaratory and injunctive relief under the First Amendment based upon prison's refusal to deliver the publications to a prisoner); *InfoCision Mgmt. Corp. v. Griswold, No. 22-1264*, 2024 WL 3738578, at \*7 (10th Cir. Aug. 9, 2024) (injunctive and declaratory relief under the First Amendment was not available because "any

5

such injury in this case is no longer redressable because the alleged First Amendment deprivation has been stopped").

Plaintiffs' claims for First Amendment Retaliation (Ninth Claim) seek declaratory and injunctive relief. Doc. 23 at ¶ 424. However, Plaintiffs acknowledge several facts that show that such claims are moot. First, Plaintiffs allege that the School District's attorney rescinded any prohibition on publication. Doc. 23 at ¶¶ 249, 255. Second, Plaintiffs allege that the School District issued a "Clarification Memo" stating that the School District would not restrict lawful reporting. Doc. 23 at ¶ 272. Third, Plaintiffs allege that on August 19, 2025—about three months before Plaintiffs filed their First Amended Complaint—Ashlyn Tell published an article about the instant lawsuit—exactly what the alleged retaliation allegedly sought to prevent. Doc. 23 at ¶ 274. Apparently, Ms. Tell suffered no retaliatory response to this publication over that three-month period, because Plaintiffs' First Amended Complaint does not allege that such retaliation occurred.

The voluntary cessation exception does not apply here because permanent changes that "foreclose a reasonable chance of recurrence" will avoid the exception. *Prison Legal News*, 944 F.3d at 881. Formal alteration of policies or a declaration under penalty of perjury are examples of such permanent changes. *Id.* Here, Plaintiff acknowledges that the School District sent a formal memorandum and an email from its counsel stating that no further restrictions on lawful publication would occur. Doc. 23 at ¶¶ 249, 272. Additionally, Defendants previously filed two declarations under penalty of perjury stating that no such restrictions would occur. Doc. 13-1, 13-2. Therefore, the voluntary cessation exception does not apply here.

Therefore, this Court should dismiss Plaintiffs' Ninth Claim to the extent that it seeks injunctive or declaratory relief against any Defendant.

## II.    Failure to State a Claim Under Rule 12(b)(6).

### A.    Qualified Immunity (Greg Farley and Quentin Rials).

"Qualified immunity is meant to protect public servants—'all but the plainly incompetent or those who knowingly violate the law'—from the burdens of lawsuits." *Gilmore v. Beveridge*, No. 222CV02032HLTRES, 2022 WL 17082681, at \*4 (D. Kan. Nov. 18, 2022). "[Q]ualified immunity protects officials from liability unless the plaintiff shows (1) the defendant's violation of a constitutional right; and (2) that the right the official violated was "clearly established" at the time of the challenged conduct." *M.C. Through Chudley v. Shawnee Mission Unified Sch. Dist. No. 512*, 363 F. Supp. 3d 1182, 1202–03 (D. Kan. 2019).

This Court must resolve the qualified immunity defense "at the earliest possible stage of litigation." *Id.* at 1203 (internal quotation marks omitted). "Where qualified immunity is raised in a motion to dismiss, a court analyzes the issue based on the allegations in the complaint." *Gilmore v. Beveridge*, No. 222CV02032HLTRES, 2022 WL 17082681, at \*4 (D. Kan. Nov. 18, 2022). Because vicarious liability is inapplicable to Section 1983 claims, the Court must consider only the conduct specifically attributable to the defendant. *See id.* at \*5.

To show that a constitutional right is "clearly established," Plaintiffs must show that, "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate." *Zorn v. City of Marion, Kansas*, 774 F. Supp. 3d 1279, 1304 (D. Kan. 2025) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). The purpose of this rule is to give government officials "breathing room to make reasonable but mistaken judgments about open legal questions." *M.C. Through Chudley v. Shawnee Mission Unified Sch. Dist. No. 512*, 363 F. Supp. 3d 1182, 1202–03 (D. Kan. 2019).

7

These cases must not define the clearly established right "at a high level of generality."  *Id.*

Plaintiffs "must identify a case where an offic[ial] acting under similar circumstances as [Farley

and Rials were] held to have violated."  *Id.* at 1206–07 (internal quotation marks omitted).  Stated

another way, "precedent is considered on point if it involves materially similar conduct or applies

with obvious clarity to the conduct at issue."  *Irizarry v. Yehia*, 38 F.4th 1282, 1294 (10th Cir.

2022).  Plaintiffs have the "burden to convince court that defendants violated a clearly established

right, and failure to do so entitles judgment for defendants."  *Stevenson v. Hannigan*, No. 92-3425-

DES, 1993 WL 502415, at *1 (D. Kan. Nov. 30, 1993).  "Although there need not be a case directly

on point, the clearly established law must be particularized to the facts of the case."  *Tachias v.

Sanders*, 130 F.4th 836, 844 (10th Cir. 2025) (internal quotation marks omitted).  Generally, a

right is not "clearly established" unless a Supreme Court decision, a Tenth Circuit decision, or the

"clearly established weight of authority" show that the law is as Plaintiffs maintain.  *Ullery v.

Bradley*, 949 F.3d 1282, 1291 (10th Cir. 2020).

Plaintiffs bear the burden to establish both prongs of the qualified immunity test—and if

they fail, Defendants are entitled to qualified immunity.  *A.M. v. Holmes*, 830 F.3d 1123, 1134–35

(10th Cir. 2016).  Qualified immunity applies to damages claims only.  *Spiehs v. Larsen*, 728 F.

Supp. 3d 1190, 1214 (D. Kan. 2024).

### 1.    Greg Farley

Plaintiffs fail to establish either prong of the qualified immunity test for Greg Farley.  The

only specific allegations that Plaintiffs make about Mr. Farley are as follows:

- He questioned "Plaintiffs Opal Morris and Henry Farthing after Gaggle flagged their photography assignments."  Doc. 23 at ¶¶ 31, 127–153.

- He accused Morris and Farthing of "uploading images containing indecent exposure and child pornography" to their School District Google accounts.  Doc. 23 at ¶¶ 31, 138.

8

- He refused to permit Morris to pull up the images at issue, but then questioned her about the details of those photos. Doc. 23 at ¶¶ 143–45.

- He did not contact her parents about this questioning. Doc. 23 at ¶ 146.

- He had not seen the offending images, but based his accusations on Gaggle's flagging of the images. Doc. 23 at ¶ 149.

The remaining allegations are either unsupported generalities or legal conclusions.

Additionally, Plaintiffs do not allege any of the following facts:

- That Mr. Farley at any time failed to act as his superiors directed him to;

- That Mr. Farley ever saw the images in question;

- That Mr. Farley ever determined for himself or on behalf of the School District that the images in question constituted indecent exposure or child pornography;

- That Mr. Farley—or anyone else—prohibited the students from contacting their parents or an attorney;

- That Mr. Farley sought to obtain a confession from any of the students;

- That Mr. Farley personally searched—or commanded the students to provide access to those devices—in order to view the images or other materials;

- That Mr. Farley personally decided to delete the allegedly offending materials from School District devices or platforms[2]; or

- That Mr. Farley or anyone else disciplined these students for the alleged indecent exposure or child pornography on their devices.

Because of the inadequate allegations in Plaintiffs' First Amended Complaint, all claims

against him for damages should be dismissed because of qualified immunity.

                a.      Plaintiffs fail to show that Greg Farley violated their constitutional rights.

---

[2] Though Plaintiffs' Complaint alleges that Mr. Farley "participated in the seizure of student expressive work," Doc. 23 at ¶ 29, the First Amended Complaint provides no further details to support this conclusory allegation.

Plaintiffs cannot show that Greg Farley violated either their First or Fourth Amendment rights as alleged in Plaintiffs' First Amended Complaint.

### i.    First Amendment

Plaintiffs cannot prevail on their First Amendment claims against Mr. Farley because the images at issue are not "speech" under the First Amendment.  Child pornography is not protected speech under the First Amendment.  *United States v. Stevens*, 559 U.S. 460, 471, 130 S. Ct. 1577, 1586, 176 L. Ed. 2d 435 (2010).  Additionally, Plaintiffs' First Amended Complaint fails to adequately allege that Mr. Farley in any way restricted Plaintiffs' speech.  The First Amended Complaint never alleges that Mr. Farley commanded Plaintiffs to delete the images or deleted them himself.  He merely questioned them about the information he received—that Gaggle, a third-party service, flagged their materials as indecent exposure and child pornography.  *See* Doc. 23 at ¶¶ 29, 31, 127–153.

Even if the images were First Amendment "speech," the First Amendment permits banning them as vulgar, lewd, indecent, and sexually explicit.  In fact, the Supreme Court has previously found a school district justified in suspending and otherwise disciplining a student who used "an elaborate, graphic, and explicit sexual metaphor" in a speech to other students.  *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 678 (1986).  The Court found that "it is a highly appropriate function of public school education to prohibit the use of vulgar and offensive terms in public discourse."  *Id.*  As a result, schools could freely prohibit "vulgar," "lewd," "indecent," or "sexually explicit" by students without violating the First Amendment.  *Id.* at 685.  Tenth Circuit courts have interpreted *Fraser* to permit schools to restrict such speech "without a showing of material and substantial disruption" under the First Amendment.  *See M.C. Through Chudley v. Shawnee Mission Unified Sch. Dist. No. 512*, 363 F. Supp. 3d 1182, 1195 (D. Kan. 2019).

Even if the images do not fall under *Fraser*, Defendants could permissibly prohibit them. To establish a First Amendment violation, Plaintiffs will need to satisfy either the *Hazelwood v. Hulmeier* standard (for public school student speech that is school-sponsored) or the *Tinker v. Des Moines* standard (for public school student speech generally).  *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 35–36 (10th Cir. 2013).  Under *Hazelwood*, schools may restrict student speech if the restrictions "are reasonably related to legitimate pedagogical concerns."  *Id.* at 36.  Under *Tinker*, schools may restrict student speech if the school "reasonably forecasted that the speech would cause substantial disruption to the school environment."  *Id.*

Under either standard, restrictions of Plaintiffs' images did not violate the First Amendment.  Identifying and preventing crimes—as Plaintiffs acknowledge child pornography possession and production are, Doc. 23 at ¶ 139—is reasonably forecasted to prevent substantial disruption to the school environment.  And preventing the production, possession, and sharing of potentially illegal and compromising images of minors is reasonably related to legitimate pedagogical concerns.

### ii. Fourth Amendment

Under the Fourth Amendment, a "search" occurs when "an expectation of privacy that society is prepared to consider reasonable is infringed."  *United States v. Hill*, 805 F.3d 935, 937 n.1 (10th Cir. 2015).  Mr. Farley did not engage in a "search" of Plaintiffs' materials because he never asked them to show him those materials, nor did he seek to inspect their devices, Google platforms, or other materials.  The question, then, is whether Mr. Farley engaged in an impermissible "seizure" of the students when he detained them for questioning.

Under the Fourth Amendment, a search or seizure in a public school is appropriate if it is "justified at its inception" and "reasonably related in scope to the circumstances which justified

the interference in the first place." *Couture v. Bd. of Educ. of Albuquerque Pub. Sch.*, 535 F.3d 1243, 1250 (10th Cir. 2008); *Edwards For & in Behalf of Edwards v. Rees*, 883 F.2d 882, 884 (10th Cir. 1989). A search is "justified at its inception" when "there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *A.M. v. Holmes*, 830 F.3d 1123, 1158 (10th Cir. 2016). A search remains appropriate if it is "permissible in its scope" by using measures "reasonably related to the objectives of the search and not excessively intrusive." *Id.* at 1160.

Mr. Farley's involvement in any alleged Fourth Amendment seizure of Plaintiffs was both justified at its inception and permissible in its scope. It was justified at its inception because Gaggle's flagging provided reasonable grounds to suspect that the students questioned had violated the law and the School District's rules by possessing and/or producing indecent exposure and/or child pornography. Questioning the students about these materials was imminently justified. Additionally, Plaintiffs fail to allege any facts that show that the search was not permissible in scope. They do not allege that they were prevented from contacting their parents or an attorney before or during the questioning. They do not allege that they were threatened with adverse action if they did not cooperate. And they do not allege that they were detained for an unreasonable period of time or under other unreasonable conditions.

>    b.    Plaintiffs fail to show that any right that Greg Farley allegedly violated was "clearly established."

At a minimum, Plaintiffs must show, for purposes of qualified immunity, that is it clearly established that public school officials may not non-coercively question a student who is reasonably suspected of possessing child pornography on a school-provided device or platform. Plaintiffs cannot do so.

12

### i.    First Amendment

Defendants have found no Supreme Court decision, Tenth Circuit decision, or weight of circuit court authority suggesting that Plaintiffs' position is clearly established. In fact, as discussed previously, the relevant law establishes that child pornography does not enjoy First Amendment protection and may be restricted without First Amendment problems—particularly in a school setting. Plaintiffs' own First Amended Complaint acknowledges that Gaggle—a third-party combination of AI and human reviewers—flagged the students' materials for indecent exposure and child pornography. Doc. 23 at ¶¶ 4, 31, 147. Given this flagging, it was not clearly established that Mr. Farley should not detain and question students suspected of possessing images depicting indecent exposure and child pornography. *See also Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1228 (10th Cir. 2001) (it was not clearly established that a prior restraint occurred if public officials removed suspected child pornography from public circulation without a prior adversarial hearing); *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1009 (5th Cir. 2023) (school principal was entitled to qualified immunity because a school football player had no clearly established right to protection from discipline for sending a racial expletive to a student at a rival school via Snapchat); *R.L. v. Cent. York Sch. Dist.*, 183 F. Supp. 3d 625, 647 (M.D. Pa. 2016) (school superintendent was entitled to qualified immunity because student had no clearly established right to suggest via Facebook post that a bomb might go off at the school); *Bowler v. Town of Hudson*, 514 F. Supp. 2d 168, 183 (D. Mass. 2007) (school officials were entitled to qualified immunity because high school student group had no clearly established right to provide access to links showing gruesome murders and beheadings by terrorists); *Jackson v. Ladner*, 626 F. App'x 80, 89 (5th Cir. 2015) (school officials were entitled to qualified immunity because

student group had no clearly established right to send "threatening and offensive" messages to a cheer squad teammate using social media).

### ii. Fourth Amendment

As explained above, Defendants have found no Supreme Court decision, Tenth Circuit decision, or weight of circuit court authority suggesting that Plaintiffs' position is clearly established.

Additionally, at least one Tenth Circuit Court has addressed qualified immunity in the context of questioning a student for an alleged crime under the Fourth Amendment. The Court found that the allegedly coercive, threatening questioning of a minor student, who was detained for more than two hours and not allowed to contact her parents, did not violate clearly established Fourth Amendment rights. *Foley v. Carlsbad Mun. Sch.*, No. 1:09-CV-01147-RB-GBW, 2011 WL 13286401, at *7 (D.N.M. Jan. 24, 2011). Because the allegations concerned marijuana distribution at the school, the school faced a clear and present danger, and was entitled to qualified immunity. *Id.* at *1, 7.

Some other decisions also support Defendants' position that Plaintiffs' alleged rights were not clearly established. *See Wyatt v. Fletcher*, 718 F.3d 496, 503–04 (5th Cir. 2013) (school coach was entitled to qualified immunity on Fourth Amendment seizure claim based upon the coach's questioning of a student athlete inside a locked locker room even though the coach allegedly shouted and used "intimidating gestures"); *Jain v. Bd. of Educ. of Butler Sch. Dist. 53*, 366 F. Supp. 3d 1014, 1020–21 (N.D. Ill. 2019) (school administrators were entitled to qualified immunity despite allegedly interrogating a nine-year-old student without alerting his parents, yelling at him and accusing his parents of helping him cheat on a test, leading the student to feel scared, to shake, and to sweat).

14

### 2.    Quentin Rials

Plaintiffs' allegations against Quentin Rials amount to two claims.  First, Plaintiffs claim that Mr. Rials "issued a directive forbidding The Budget and its student reporters from reporting on this lawsuit."  Doc. 23 at 6, ¶ 16; ¶ 243.  Second, Plaintiffs claim that, at Mr. Rials' behest, "District agents met with and pressured Editor-in-Chief Ashlyn Tell not to publish, including by invoking potential adverse employment consequences for the faculty adviser."  Doc. 23 at 6, ¶ 16.  However, Plaintiffs admit that this second allegation is made only "on information and belief."  Doc. 23 at ¶¶ 34, 265.

> a.    Plaintiffs cannot establish that Mr. Rials violated Plaintiffs' clearly-established First Amendment rights by forbidding student reporting on this lawsuit.

The Supreme Court has addressed whether public school officials could prohibit students from publishing articles in a student newspaper about student experiences with pregnancy, sexual activity, birth control, and divorce.  *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 263–264 (1988).  The Supreme Court determined that no First Amendment violation occurred, *id.* at 276, and declared that "educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns."  *Id.* at 273.  The Court explained that—because the speech at issue was school-sponsored—the school could regulate speech that was "ungrammatical, poorly written, inadequately researched, biased or prejudiced, vulgar or profane, or unsuitable for immature audiences."  *Id.* at 271.

The Tenth Circuit has interpreted this decision to mean that "educators [may] make viewpoint-based decisions about school-sponsored speech."  *Fleming v. Jefferson Cnty. Sch. Dist. R-1*, 298 F.3d 918, 926 (10th Cir. 2002).  And this Court must "give substantial deference to

15

educators' stated pedagogical concerns." *Id.* at 925. The pedagogical requirement may be satisfied by the need to impart values like discipline, courtesy, and respect for authority, and may be "satisfied simply by the school district's desire to avoid controversy within a school environment." *Id.* at 925–26. Speech is likely school-sponsored when the school is "significantly involved in the creation, funding, supervision, and screening process." *See id.* at 931.

Here, even if Plaintiffs' allegations are true, they cannot show that Rials violated a clearly established First Amendment right by prohibiting publication about this lawsuit. The Hazelwood standard arguably applies to a school newspaper like The Budget. Under this standard, Rials' behavior was appropriate to avoid controversy within the school environment (among other reasons) and is entitled to substantial deference. And even if the Court disagrees, Plaintiffs cannot show that Rials' actions indisputably were not reasonably related to legitimate pedagogical concerns.

> b.  Plaintiffs have failed to plausibly plead that Rials was behind any third-party pressure not to publish.

Plaintiffs' First Amended Complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule requires that Plaintiffs' First Amended Complaint "state a claim to relief that is plausible on its face," meaning it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The First Amended Complaint must contain "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere speculation is not enough. *Id.* at 555.

Section 1983 cases "against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple

16

defendants." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).  As a result, the *Twombly* standard may have greater "bite" in Section 1983 cases, "appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity at the earliest possible stage of a litigation." *Id.* (internal quotations omitted); *see also Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1304 (10th Cir. 2025).

Plaintiffs' First Amended Complaint fails to satisfy the Rule 8 standard because it contains only conclusory allegations about Rials' involvement in pressuring Ashlyn Tell and the journalism faculty advisor.  Not one concrete fact supports this allegation.  Additionally, by pleading these allegations "upon information and belief," Plaintiffs essentially admit that they have no facts to support these allegations.  All they have is an unsubstantiated conclusion—which fails to satisfy Rule 8's pleading standard, especially in the context of the qualified immunity defense against a Section 1983 claim.  In fact, Plaintiffs' original Complaint did not even include these allegations— they only added them after this Court "declined to hold defendants responsible" for third parties' allegedly pressuring actions without evidence that Defendants had authorized or were otherwise involved with such conduct.  Doc. 5 at 2.

Therefore, this Court should find Mr. Rials entitled to qualified immunity.[3]

---

[3] If the Court does not immediately grant Rials' motion to dismiss upon this basis, Rials requests the Court to either order Plaintiffs to file a reply to Defendants' Answer under Rule 7(a) or grant Defendants' request that Plaintiffs provide a more definite statement under Rule 12(e).  *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (acknowledging that Rule 7(a) and Rule 12(e) permit a Court to avoid saddling defendants with burdensome discovery or trial proceedings based upon inadequate allegations in the face of a qualified immunity claim).  In particular, Plaintiffs fail to allege facts that show (1) what Rials did to cause these allegedly pressuring actions or (2) what his motive was in doing so.

### B.    Duplicative Pleading (School Board Only)

Multiple District of Kansas courts have previously dismissed claims against school boards when the school districts were also sued. *Rubio v. Turner Unified Sch. Dist. No. 202*, 453 F. Supp. 2d 1295, 1300–01 (D. Kan. 2006); *M.T. v. Olathe Pub. Sch. USD 233*, No. 17-2710-JAR-GEB, 2018 WL 1847036, at *3 (D. Kan. Apr. 18, 2018). This was because "the board of education is merely the governing body of the school district and is not a separate legal entity," meaning that "any judgment against the board necessarily is against the school district." *Rubio*, 453 F. Supp. 2d at 1300; *see also M.T.*, 2018 WL 1847036, at *3. As a result, "a claim against a sub-unit of a school district is the equivalent of a suit against the school district itself" and is therefore "duplicative." *Rubio*, 453 F. Supp. 2d at 1300; *see also M.T.*, 2018 WL 1847036, at *3.

Plaintiffs bring all of their claims against both the School District and the School Board. Doc. 23 at ii-iii. Therefore, their claims against the School Board are duplicative, and all claims against the School Board should be dismissed.

### C.    Injunctive and Declaratory Relief (All Defendants).

Both declaratory and injunctive relief are remedies, not separate causes of action. *See Steede v. Freight Logic, Inc.*, No. 25-2136-DDC-TJJ, 2025 WL 1360733, at *8 (D. Kan. May 9, 2025) (both injunctive and declaratory relief are remedies, not claims); *Brickert v. Deutsche Bank Nat'l Tr. Co.*, 380 F. Supp. 3d 1127, 1141 (D. Colo. 2019) (same); *Parrish v. Farmers Ins. Co., Inc.*, No. 21-CV-00280-GKF-SH, 2021 WL 11728147, at *2 (N.D. Okla. Sept. 9, 2021) (declaratory relief is a remedy, not a claim).

However, Plaintiffs' First Amended Complaint treats declaratory and injunctive relief as separate claims. Plaintiffs' First and Fourth Claims are for declaratory relief, while their Second and Fifth Claims are for injunctive relief. Doc. 23 at ii. Instead of seeking multiple types of relief

18

under one claim, Plaintiffs bring three different claims under the First Amendment and three under the Fourth Amendment—one for each of damages, injunctive relief, and declaratory relief. *Id.* This Court should nevertheless dismiss the First, Second, Fourth, and Fifth claims, which merely seek injunctive and declaratory relief for claims Plaintiff already pleaded separately.

**D.    Plaintiffs' Kansas Open Records Act ("KORA") Request Claim (Tenth, Eleventh, and Twelfth Claims).**

Plaintiffs' KORA claims were improper because they sought information related to this case despite a Court order effectively staying discovery until the Court's resolution of Defendants' Motion to Partially Dismiss. A KORA custodian may refuse to provide records when a discovery stay is in place in a pending federal case with the same subject matter. *See McRoberts v. Rosas*, No. 21-CV-2470-DDC-TJJ, 2022 WL 1538690, at *3–4 (D. Kan. May 16, 2022) (plaintiff could not use KORA to obtain "case-related documents" from defendant when a discovery stay was in place because of defendant's pending dispositive motion on qualified immunity, among other issues); *Smith v. City of Wellsville*, No. 19-2431-CM-KGG, 2020 WL 584449, at *2 (D. Kan. Feb. 6, 2020) (same result when defendant had filed a dispositive motion on qualified immunity in response to plaintiff's initial complaint and was anticipated to file a similar motion in response to plaintiff's amended complaint); *Newton v. City of Atchison*, No. 23-2153-JWB-ADM, 2023 WL 12175301, at *3 (D. Kan. June 13, 2023) (granting motion to stay discovery—which included "requests under the Kansas Open Records Act that are directly germane to the allegations in the complaint"—because of pending motion for judgment on the pleadings on qualified immunity); *see also* Tristan Kimbrell, *The Use and Misuse of KORA As A Civil Discovery Tool*, 94 Kan. B.J. 21, 24 (2025) ("a public agency may [refuse] to provide records as part of a KORA request is if a court has put a discovery stay in place [and] if the KORA request is made as part of ongoing litigation in federal district court").

19

In these cases, courts repeatedly confirm that the purpose of such rulings is to prevent parties from using KORA requests to evade discovery restrictions placed upon the parties. *See Smith*, 2020 WL 584449, at *2 ("allowing Plaintiff to conduct an Open Records Request to a party Defendant during this window created by a hyper-technical application of the Federal Rules would defeat the purpose and spirit of the Court granting the initial stay"); *McRoberts*, 2022 WL 1538690, at *3 ("if a stay of discovery is in place, Plaintiff should not be able to pursue what would otherwise be considered discovery through another channel").

Finally, courts have also repeatedly stated that qualified immunity protects defendants from the burdens of discovery until the Court resolves that defense. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until this threshold immunity question is resolved, discovery should not be allowed"); *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (cleaned up) (the qualified immunity defense "is meant to give government officials a right, not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery"); *Newton v. City of Atchison*, No. 23-2153-JWB-ADM, 2023 WL 12175301, at *2 (D. Kan. June 13, 2023) ("A defendant is therefore generally entitled to have immunity questions resolved before being required to engage in discovery").

Here, Defendants filed a Motion to Partially Dismiss Plaintiffs' original Complaint on October 27, 2025. Docs. 17–18. That Motion included a qualified immunity argument. Doc. 18 at 5–12. On October 29, Magistrate Judge Birzer explained to the parties via letter that she would postpone scheduling under Rules 16(b) and 26(f) until the District Judge Vratil's decision regarding Defendants' Motion to Partially Dismiss unless the parties agreed to proceed with scheduling. Exhibit 2, Letter From Judge Birzer to Parties. Plaintiffs acknowledge that they did not send their KORA requests to Defendants until October 30. Doc. 23 at 6, ¶ 18. On November

13, the Court entered an order deferring scheduling until the Court's ruling on Defendants' Motion to Dismiss. Doc. 20. Not until November 17 did Plaintiffs file their First Amended Complaint alleging violations of KORA. Doc. 23.

Therefore, Plaintiffs' KORA requests were improper in light of Defendants' qualified immunity argument in their Motion to Partially Dismiss. Such an argument meant that discovery was improper until the motion was resolved. And courts have explained that parties may not use KORA requests to do an end run around such restrictions.

Additionally, Plaintiffs' KORA requests and accompanying claims were improper because the Court had imposed what amounted to a discovery stay. Before Plaintiffs even sent the requests, the Court explained its intent to postpone scheduling under Rules 16(b) and 26(f) unless the parties agreed to proceed. And before Plaintiffs ever filed their claims, this Court ordered the postponement of scheduling. This amounted to a stay on discovery because discovery cannot proceed until after the Rule 16(b) and 26(f) conferences occur.[4] Therefore, Plaintiffs' KORA claims are improper because they seek to evade the Court's discovery stay.

### E.    First Amendment Retaliation Claim (School Board and School District).

Plaintiffs have failed to allege facts sufficient to show that they are plausibly entitled to relief against the School Board and School District for their First Amendment Retaliation claim (Count IX). Vicarious liability under respondeat superior does not exist in Section 1983 cases. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). Institutional liability only exists if the entity "had a custom, practice, or policy that encouraged or condoned the unconstitutional

---

[4] *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)"); Fed. R. Civ. P. 26(f)(1) (Rule 26(f) conference not required until 21 days before Rule 16(b) schedule conference will be held or Rule 16(b) scheduling order is due).

behavior." *Kramer v. Wasatch Cnty. Sheriff's Off.*, 743 F.3d 726, 758–59 (10th Cir. 2014). To prevail against an institution, a plaintiff must establish "(1) official policy or custom, (2) causation, and (3) state of mind." *Cacioppo v. Town of Vail, Colo.*, 528 F. App'x 929, 931 (10th Cir. 2013). When an entity has not directly inflicted injury, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997). In such cases, a plaintiff must establish deliberate indifference—a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 410.

Supervisory liability requires that the supervisor-defendant "creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy" the enforcement of which deprives the plaintiff of constitutional rights. *Dodds v. Richardson*, 614 F.3d 1185, 1199–1200 (10th Cir. 2010). To prevail against a supervisor, a plaintiff must allege that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.*

In Section 1983 cases, courts have "stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225–26 (10th Cir. 2013). Plaintiffs must make clear who has allegedly done what, and may not merely assert that "their rights were violated" or that "Defendants violated their rights." *Id.* "The same particularized approach applies with full force when a plaintiff proceeds under a theory of supervisory liability." *Id.* This requires plaintiffs to "identify the specific policies over which

particular defendants possessed responsibility and that led to the alleged constitutional violation."

*Id.*

Here, Plaintiffs' factual allegations against the School Board and School District related to this claim amount to the following:

- The School District's attorney confirmed by telephone and email that the School District had lifted the directive prohibiting student reporting about this lawsuit (Doc. 23 at ¶ 249);

- The School District issued a memorandum to the faculty advisor for journalism students at Lawrence High School explaining that "the District would not restrict lawful reporting" (Doc. 23 at ¶ 272); and

- The School District's attorney "confirmed and communicated" Principal Rials' prohibition on publication about the lawsuit (Doc. 23 at ¶ 412), but this statement contradicts the First Amended Complaint's more complete description of the Finkeldei-Rosenthal Emails, as well as the emails themselves, which show that the School District's attorney merely confirmed that the School District had lifted any prohibition on student publication about the lawsuit (*see* Doc. 23 at ¶ 249 and 23-19 at 1).

Plaintiffs also allege several conclusions without any factual allegations to support them:

- "On information and belief, Plinsky acted at the direction of the District, the Board, and/or Principal Rials when Plinsky met with Ms. Tell" (Doc. 23 at ¶ 265);

- "The District…fail[ed] or repudiate the subsequent pressure campaign" (Doc. 23 at ¶ 413);

- The directive and pressure campaign "were undertaken pursuant to official policy, custom, or a decision by officials with final policymaking authority" and "were the moving force behind the violation of Ms. Tell's First Amendment rights" (Doc. 23 at ¶ 414–415);

- "The District's failure to train and supervise officials regarding prior restraints and student press rights constituted deliberate indifference that caused the constitutional injury" (Doc. 23 at ¶ 416); and

- "Defendants acted with a retaliatory motive: their directive and subsequent pressure were substantially motivated by, and were a but for cause of, Ms. Tell's protected activity—namely, filing this lawsuit and intending to report on it" (Doc. 23 at ¶ 419).

23

These allegations and conclusions fail to adequately plead that the School Board's or School District's actions gave rise to Plaintiffs' claim for First Amendment Retaliation. In particular, Plaintiffs fail to plead facts identifying a particular School Board or School District policy, custom, or other action that caused Plaintiffs' alleged constitutional injuries. And though Plaintiffs insist that the School Board and School District caused Plaintiffs' injuries, acted with a retaliatory motive, and acted with deliberate indifference, they fail to plead any facts that support these conclusions. They have simply alleged a string of acts by various employees and insisted that the School Board and School District are responsible. Such conclusory pleadings do not satisfy Tenth Circuit standards in a Section 1983 case involving multiple defendants.

## CONCLUSION

Therefore, Defendants request this Court to: (1) dismiss all claims by Plaintiffs Jack Tell, Natasha Torkzaban, Morgan Salisbury, Opal Morris, Henry Farthing, Suzana Kennedy, and Naomi Sui Pang against all Defendants; (2) dismiss all claims for injunctive or declaratory relief by all Plaintiffs against all Defendants; (3) dismiss all claims for damages by all Plaintiffs against Defendant Greg Farley; (4) dismiss all claims for damages by all Plaintiffs against Defendant Quentin Rials; (5) dismiss all claims by all Plaintiffs against Defendant the School Board; (6) dismiss Plaintiffs' KORA claims (the Tenth, Eleventh, and Twelfth Claims); and grant all further relief as the Court deems just and proper.

/s/ Alan L. Rupe
Alan L. Rupe, KS #08914
Jared D. Harpt, KS #30005
LEWIS BRISBOIS BISGAARD & SMITH LLP
1605 N. Waterfront Parkway, Suite 150
Wichita, KS 67206
Telephone:  (316) 609-7900
Facsimile:  (316) 462-5746
alan.rupe@lewisbrisbois.com
jared.harpt@lewisbrisbois.com

*Attorneys for Defendants*

24

## CERTIFICATE OF SERVICE

I certify that on December 19, 2025, I filed the above Defendants' Memorandum in Support of Defendants' Motion to Partially Dismiss Plaintiffs' First Amended Complaint using the Court's CM/ECF system which will send notification to all counsel of record.

/s/ Alan L. Rupe
Alan L. Rupe