**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

|  |  |  |
|---|---|---|
| JACK TELL; NATASHA TORKZABAN;<br>MORGAN SALISBURY; OPAL MORRIS;<br>HENRY FARTHING; SUZANA KENNEDY;<br>NAOMI SUI PANG; ASHLYN TELL; and<br>P.M., a minor, by and through her parents<br>MARGARET WEISBROD MORRIS and<br>JONATHAN MORRIS,<br><br>     *Plaintiffs*,<br><br>    v.<br><br>LAWRENCE BOARD OF EDUCATION, a<br>political subdivision of the State of Kansas;<br>LAWRENCE USD 497, a political subdivision<br>of the State of Kansas; GREG FARLEY, in his<br>individual capacity; and QUENTIN RIALS, in<br>his individual capacity,<br><br>    *Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:  2:25-cv-02428-KHV-GEB |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO PARTIALLY DISMISS

Defendants' motion to partially dismiss tries to end this case at the threshold by miscasting jurisdictional doctrine, pressing qualified immunity on a contested factual record, ignoring municipal-liability allegations that their own Answer admits, and seeking to extinguish Kansas Open Records Act claims even though their Answer concedes statutorily required responses were not provided. Defendants' Motion should be denied in substantial part.

The Court can, as a matter of pleading hygiene, construe any standalone counts for injunctive or declaratory relief as prayers for relief attached to Plaintiffs' constitutional claims without dismissing anything on the merits. As to party structure, Plaintiffs named the Lawrence Board of Education (the "Board") and USD 497 (the "District") because the Board adopts policy and the District implements and enforces it. If the Court ultimately deems one of these parties is

1

duplicative, dismissal without prejudice at a later stage would not affect any claim or remedy, and there is no need to decide that issue on a Rule 12 record.

Furthermore, Defendants' refusal to provide newsworthy public records because this suit is pending is a penalty for protected petitioning and reporting. That is classic First Amendment retaliation and further reason to deny dismissal. *See Van Deelen v. Johnson*, 497 F.3d 1151, 1155–57 (10th Cir. 2007); *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).

## INTRODUCTION

The core legal points are straightforward and anchored in controlling law and Defendants' own admissions. First, graduation may moot requests for prospective relief by former students, but it does not moot their damages claims for completed constitutional injuries, including nominal damages. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 283 (2021). Defendants' request to dismiss "all claims" by seven graduates is therefore overbroad and should be rejected.

Second, the current-student plaintiffs' requests for forward-looking relief are not moot. Defendants' own Answer admits that the District continues to monitor student content in precisely the same way as it used Gaggle, now using ManagedMethods, configured with keywords and machine-learning models to scan students' District-provided Google accounts and to deliver to designated personnel for review and intervention. Defs.' Answer to Pls.' First Am. Compl. ¶¶ 54, 76, 80–81, 85, 204, 316, 324, 340, ECF No. 36 (the "Answer"). Defendants conveniently overlook this in their Motion. They claim voluntary cessation, but that cannot moot a case where the challenged practice persists. *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 189 (2000); *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).

Third, qualified immunity cannot be resolved on Defendants' contested factual narrative under Rule 12. The First Amended Complaint (the "FAC") alleges detentions, accusatory

questioning premised on automated flags, refusal to allow a student to retrieve the underlying content, and seizure or quarantine of student expressive work. Those allegations, which must be accepted as true for the purposes of Defendants' Motion, state claims under the First and Fourth Amendments. *See Jones v. Hunt*, 410 F.3d 1221, 1226–30 (10th Cir. 2005); *New Jersey v. T.L.O.*, 469 U.S. 325, 341–43 (1985). The Superintendent's declaration is extra-pleading material offered to frame facts; to the extent the Court considers it for jurisdiction, limited discovery is appropriate before any qualified-immunity ruling, particularly on personal participation and the nature and scope of the detentions and seizures at issue. *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995), abrogated in part on other grounds by *Cent. Green Co. v. United States*, 531 U.S. 425 (2001); *see also Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225–26 (10th Cir. 2001); *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002).

Defendants have already tried to obscure the issue—admitting they "did not mention ManagedMethods in their Motion to Dismiss Plaintiffs' Complaint or Memorandum in Support," while asking the Court to treat Gaggle's discontinuation as mooting relief, and then doubling down through the Superintendent's declaration to suggest there is nothing to see despite continued ManagedMethods scanning and alerts. *See* Answer ¶ 75; *id.* ¶¶ 54, 76, 80–81, 85, 204, 207, 309, 316, 324, 340, Defs.' Mem. in Supp. at 1–3, 19–21, ECF No. 35 (the "Memo"); Swift Decl., ECF No. 35-1.

Fourth, Plaintiffs have plausibly alleged municipal liability. Defendants admit District-level decisions to configure and operate a continuous surveillance-and-intervention architecture that flags student content and prompts official action. Answer ¶¶ 54, 76, 80–81, 85, 204, 316, 324, 340. At the pleading stage, those admissions corroborate the *Monell* allegations that a policy and practice are the moving force behind the injuries. *See* Answer ¶¶ 1, 14, 54; *Monell v. Dep't of Soc.*

3

*Servs.*, 436 U.S. 658, 690–95 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–84 (1986); *City of Canton v. Harris*, 489 U.S. 378, 388–92 (1989); *Crowson v. Washington County*, 983 F.3d 1166 (10th Cir. 2020).

Fifth, the Kansas Open Records Act ("KORA") claims are properly pleaded and confirmed by Defendants' admissions that, as of the relevant dates, they failed to provide statutorily compliant responses. Answer ¶¶ 18, 297–302. There was no discovery stay when student journalists submitted their October 30, 2025 requests, nor is there even such a stay now; the magistrate judge's November 13, 2025 text entry merely postponed Rule 16/26 scheduling. ECF No. 20. KORA imposes independent statutory obligations on Defendants, including a mandatory three-business-day response that must, if access is not immediately granted, specify "a detailed explanation of the cause for further delay and the place and earliest time and date that the record will be available for inspection." K.S.A. 45-218(d). Defendants admit their early acknowledgments did not identify custodians or searches, did not provide the earliest date and place for inspection, and that weeks later they still had not produced records, provided an itemized fee estimate, cited specific exemptions, or set a production schedule. Memo at 19–21; Answer ¶¶ 297–302. Those admissions establish KORA violations as to timeliness and adequacy of response. *Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 416–17, 997 P.2d 681, 688–89 (2000); *Telegram Publ'g Co. v. Kan. Dep't of Transp.*, 275 Kan. 779, 789–91, 69 P.3d 578, 586–87 (2003); *Wichita Eagle & Beacon Publ'g Co. v. Simmons*, 274 Kan. 194, 209, 50 P.3d 66, 78 (2002).

Finally, the magistrate judge's case-management orders defer only Rule 16/26 scheduling until the district judge resolves Defendants' Motion; they do not impose a blanket discovery stay or limit this Court's authority to deny the Motion on the present record. ECF Nos. 20, 39. If the

4

Court deems factual development necessary on mootness or immunity, tailored discovery may be conducted notwithstanding Rule 26(d)(1) before a Rule 26(f) conference. Fed. R. Civ. P. 26(d)(1) (permitting discovery by court order prior to Rule 26(f) conference); *Holt*, 46 F.3d at 1002–03 (jurisdictional discovery appropriate where governmental immunity is asserted); *see also Sizova*, 282 F.3d at 1326 (discovery appropriate where facts are contested).

Having filed suit and reported on the controversy—activities protected by the First Amendment's Petition and Press Clauses—Plaintiffs now face a new form of censorship by opacity: Defendants admit they refused to provide timely, compliant KORA responses because this case is pending, and they defend that position in their Motion. Answer ¶¶ 297–302; Memo at 19–21. Government retaliation for protected speech or petitioning is actionable where the government takes an adverse action that would chill a person of ordinary firmness and the protected activity was a substantial or motivating factor. *Worrell*, 219 F.3d at 1212; *Van Deelen*, 497 F.3d at 1155–57. Those standards are met on the pleadings, which foreclose dismissal on a Rule 12 record.

## PROCEDURAL AND FACTUAL BACKGROUND

This case challenges a District-designed surveillance-and-intervention system first implemented via Gaggle and now via ManagedMethods, each of which continuously scans student content on District-managed platforms, flags items by algorithmic criteria, and routes alerts to District personnel who decide whether and how to intervene, including by detaining and questioning students and by seizing or quarantining student expressive work. The initial complaint was filed on August 1, 2025. ECF No. 1. After emergency TRO/PI briefing, ECF Nos. 4, 5, 13, 14, Plaintiffs filed the operative FAC on November 17, 2025. ECF No. 23. On November 13, 2025, the magistrate judge entered a text order postponing the Rule 16 conference until the then-pending

motion to dismiss was decided by the district judge. ECF No. 20. On December 17, 2025, the Court set page limits of 25/25/10 for briefing on the renewed motion. ECF No. 33. On December 19, 2025, Defendants filed their Motion to Partially Dismiss the FAC and a 25-page memorandum, attaching a declaration by Superintendent Jeanice Swift and the magistrate judge's October 29, 2025 letter. ECF Nos. 34, 35, 35-1, 35-2. Defendants simultaneously filed an Answer. ECF No. 36. On January 5, 2026, the magistrate judge issued a second text order continuing to postpone a Rule 16 conference until after the district judge decides Defendants' Motion. ECF No. 39. Plaintiffs timely file this opposition due January 20, 2026.

Defendants seek six categories of relief. First, dismissal of all claims by seven graduate plaintiffs for lack of jurisdiction. Second, dismissal of all injunctive and declaratory claims by any plaintiff as moot based on cessation of Gaggle, an administrative communication purporting to exclude certain student journalism accounts from automated scanning, and subsequent publication of an article. Third, dismissal of all damages claims against Defendants Farley and Rials on qualified-immunity and participation grounds. Fourth, dismissal of claims against the Board as duplicative of the District. Fifth, dismissal of counts labeled as equitable claims on the premise that injunctive and declaratory relief are remedies, not standalone causes of action. Sixth, dismissal of all KORA counts as an impermissible "end-run" around a purported discovery stay. Memo at 1–3, 19–24; ECF No. 35-1; ECF No. 35-2.

Two record components matter for Defendants' Motion. Defendants' Superintendent asserts in her declaration that the District discontinued Gaggle, removed scanning from certain journalism accounts, and issued an administrative communication purporting to exclude certain student journalism accounts from automated scanning (the "Journalism Guidance"). ECF No. 35-1; ECF No. 13-1; Answer ¶¶ 151–152. By contrast, Defendants' Answer admits continuing facts

about the ongoing system: that the District transitioned from Gaggle to ManagedMethods; that ManagedMethods is configured to monitor student content using predefined keywords and machine-learning models; that it scans student materials in the District-provided Google environment; that it generates alerts to designated personnel who review flagged content and decide whether and how to intervene; and that current students remain subject to this ManagedMethods supervision. Answer ¶¶ 54, 76, 80–81, 85, 204, 316, 324, 340. As to KORA, Defendants admit the October 30, 2025 request date, a three-day acknowledgment that lacked the statutorily required specifics, and the absence of any production, earliest-inspection date, itemized fees, or specified exemptions for weeks after the requests. Answer ¶¶ 18, 297–302.

## LEGAL STANDARDS

A Rule 12(b)(1) factual challenge allows the Court to consider evidence outside the pleadings to decide subject-matter jurisdiction, including standing and mootness.[1] *Holt*, 46 F.3d at 1002–03. On voluntary cessation, a defendant bears a "heavy burden" to show it is "absolutely clear" the challenged conduct cannot reasonably be expected to recur. *Friends of the Earth, Inc.*, 528 U.S. at 189. Repeal or modification of a policy does not moot a case where the challenged practice persists or can readily be resumed. *City of Mesquite*, 455 U.S. at 289; *see*, *e.g.*, *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116–17 (10th Cir. 2010).

A Rule 12(b)(6) motion should be denied if the complaint states a plausible claim when its factual allegations are accepted as true and reasonable inferences are drawn for the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Qualified immunity may be raised at the Rule 12 stage, but where the defense turns on

---

[1] Defendants agree that if an action is moot, the court will lack subject matter jurisdiction. Memo at 3, citing *Lane v. Simon*, 495 F.3d 1182, 1186–87 (10th Cir. 2007).

disputed facts about what happened and why, resolution at the pleadings stage is improper or should be deferred to allow targeted discovery. *Jones*, 410 F.3d at 1226–30 (reversing dismissal on qualified immunity where seizure and justification turned on facts). The Tenth Circuit likewise recognizes that limited discovery can be appropriate where necessary to decide jurisdictional questions raised by a factual attack. *Holt*, 46 F.3d at 1002–03; *Sizova*, 282 F.3d at 1326. Although discovery generally may not begin before a Rule 26(f) conference, the Court may order discovery earlier. Fed. R. Civ. P. 26(d)(1). The magistrate judge's postponement of the Rule 16(b) and Rule 26(f) conferences does not itself impose a blanket discovery stay or preclude the district judge from deciding Rule 12 motions on the record presented.[2] ECF Nos. 20, 39.

## ARGUMENT

### I. Damages claims by former students and equitable claims by current students are not moot.

#### A. Graduation does not moot damages claims for completed injuries.

Defendants seek dismissal of "all claims" by seven graduates. That request ignores settled law and the FAC's allegations. Although graduation may moot requests for prospective relief by former students, it does not moot damages claims for completed constitutional injuries, including nominal damages. *Uzuegbunam*, 592 U.S. at 283. The FAC alleges completed injuries to the graduate plaintiffs: detentions and accusatory questioning premised on algorithmic flags; refusal to permit a student to retrieve and display alleged content; and seizure or quarantine of student

---

[2] *See*, *e.g*., *Mandala v. NTT Data, Inc*., No. 6:18-CV-6591 MAV CDH, 2026 WL 111325, at *3 (W.D.N.Y. Jan. 15, 2026) ("Discovery cannot be stayed until it is opened. It is not opened until the Rule 26(f) conference occurs."); *Vineyard Investigations v. E. & J. Gallo Winery*, No. 1:19-cv-01482-NONE-SKO, 2020 WL 7342632, at *3 (E.D. Cal. Dec. 14, 2020) (plaintiff's "argument that discovery is 'stayed' is without merit. Discovery cannot be stayed until it is opened, and it is not opened until the Rule 26(f) conference occurs."); *Contentguard Holdings, Inc. v. ZTE Corp*., No. 12CV1226-CAB (MDD), 2013 WL 12072533, at *2 (S.D. Cal. Jan. 16, 2013) ("Discovery cannot be stayed until it is opened. It is not opened until the Rule 26(f) conference commences[.]"); *Jeremiah M. v. Crum*, No. 3:22-CV-00129-JMK, 2022 WL 17082117, at *3 (D. Alaska Nov. 17, 2022) ("[d]iscovery cannot be stayed until it is opened.").

expressive work pending administrative review. Under Rule 12, those allegations must be taken as true. Nothing in Defendants' Motion or evidentiary submissions negates the plausibility of those injuries or their redressability in damages. Defendants' overbroad request to dismiss "all claims" by graduates should be denied.

> **B.    Equitable claims by current students remain live; voluntary cessation cannot moot ongoing surveillance and intervention practices.**

Defendants' mootness theory rests on Superintendent Swift's declaration that the District discontinued Gaggle and issued the Journalism Guidance. ECF No. 35-1. Separately, Defendants' Answer admits that certain journalism students were exempted from Gaggle monitoring and that the District removed Gaggle scanning from those journalism accounts. Answer ¶¶ 8, 192–93. Defendants' Answer also admits that the District transitioned from Gaggle to ManagedMethods; that ManagedMethods continues to operate; that it is configured to monitor student content using keywords and machine-learning models; that it scans student materials on District-provided Google accounts; that it generates alerts to designated personnel who review and decide whether and how to intervene; and that current students remain subject to ManagedMethods supervision. Answer ¶¶ 54, 76, 80–81, 85, 204, 316, 324, 340. Those admissions define the live controversy: the constitutionality of the ongoing scanning and alert-driven intervention regime in District schools.

Voluntary cessation does not moot claims where the challenged practice persists, even under a different vendor name or with ad hoc carve-outs. *Friends of the Earth, Inc.*, 528 U.S. at 189-90; *City of Mesquite*, 455 U.S. at 289. Courts consider whether there is no reasonable expectation that the alleged violation will recur, and whether interim relief has "completely and irrevocably eradicated the effects of the alleged violation." *Rio Grande Silvery Minnow*, 601 F.3d at 1115. Here, the District's change from Gaggle to ManagedMethods and the written

communication purporting to exclude certain student journalism accounts from automated scanning—do not eliminate the challenged surveillance-and-intervention architecture. *See* Answer ¶¶ 54, 76, 80–81, 85, 204, 316, 324, 340. The Journalism Guidance is not a duly adopted Board policy; it is an internal, nonbinding administrative statement that does not constrain future conduct or personnel and does not alter the ongoing scanning or alert-driven intervention program. *See* Answer ¶¶ 77, 272, 207. The subsequent publication of an article likewise does not eliminate the controversy over policies and implementations that scan, flag, notify, detain, and quarantine expressive content and that, by Defendants' own account, remain in force.

Student-speech cases underscore that these are merits questions, not jurisdictional exit ramps. *See Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503, 508–09 (1969); *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 270–73 (1988); *Morse v. Frederick*, 551 U.S. 393, 403–09 (2007); *Corder v. Lewis-Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1228–31 (10th Cir. 2009). Whether an ongoing surveillance-and-intervention system complies with those limits cannot be resolved by an after-the-fact publication or the nonbinding Journalism Guidance.

Defendants chose to mount a factual mootness challenge by submitting extra-pleading evidence. ECF No. 35-1. If the Court considers those materials, and if there is any doubt, jurisdictional discovery is warranted on the timing and scope of the Gaggle discontinuation, the configuration and operation of ManagedMethods during the relevant period, the extent and implementation of any journalism account exception, and the current alert review and intervention process. *Holt*, 46 F.3d at 1002–03. That discovery can be accomplished under a short order notwithstanding Rule 26(d)(1), and it will sharpen the voluntary-cessation analysis. *See id.*; *Sizova*, 282 F.3d at 1326.

**II.     Individual-capacity claims plausibly allege constitutional violations.**

Defendants say the FAC alleges only benign questioning justified by safety concerns, that no search or seizure occurred, and that clearly established law did not prohibit Defendants' conduct. The FAC pleads more than benign questioning. It alleges that school officials detained and interrogated students based on automated flags, accused a student of criminal imagery without personal review of the content, refused to permit the student to retrieve and display the images in question, did not contact parents, and seized or quarantined student expressive work based on the District's scanning and alert pipeline. FAC ¶¶ 127–169. At this stage, those allegations must be accepted as true and construed favorably to Plaintiffs. They plausibly state First and Fourth Amendment violations. *See Jones*, 410 F.3d at 1226–30; *T.L.O.*, 469 U.S. at 341–43; *see also Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370–77 (2009).

The qualified-immunity inquiry cannot be resolved at this stage on Defendants' version of contested facts supplemented by their Superintendent's declaration. ECF No. 35-1. The defense turns on what the individual administrators did and why, including whether detentions were justified and proportionate, whether content was seized or quarantined and under what authority, what training and guidance existed, and whether reasonable alternatives were ignored. Those are fact questions that cannot be decided on a paper record at the pleading stage. *Jones*, 410 F.3d at 1226–30. If the Court contemplates addressing qualified immunity now, targeted discovery limited to personal participation and the circumstances of the detentions, accusations, and quarantines is appropriate and consistent with the Tenth Circuit's approach where factual disputes preclude clean immunity resolution at the pleading stage. *See id.* at n.5 ("discovery could develop facts . . . which would be highly relevant to the constitutional analysis); *see also Thomas v. Kaven*, 765 F.3d 1183, 1197 n.9 (10th Cir. 2014) ("[I]f the district court determines that it cannot rule on the immunity

defense without clarification of the facts, 'it may issue a discovery order narrowly tailored to uncover only those facts needed to rule on the immunity claim.'") (internal citations omitted).

Defendants' suggestion that no "search" occurred because an administrator did not personally view the images elides the admitted design: continuous automated inspection of student content on District-controlled platforms configured with keywords and machine-learning models, followed by human review of alerts and interventions that include detentions, questioning, and quarantines. Answer ¶¶ 54, 76, 80–81, 85, 204, 316. That pipeline is the conduct challenged. Nor does labeling a student's content "criminal" resolve the First Amendment analysis for purposes of Rule 12; Plaintiffs allege the quarantined speech was lawful, and that contention must be credited on this motion. Taken as true, as they must be, the FAC's allegations describe searches and seizures and restrictions on expressive content that cross the constitutional line, or at minimum, present fact questions that preclude immunity resolution now.

### III.    Plaintiffs plausibly allege municipal liability; the Board should remain at this stage because it adopts policy while the District implements it.

*Monell* requires a plaintiff to plausibly allege that an official policy or custom was the moving force behind the constitutional violation. *Monell*, 436 U.S. at 690–95; *Pembaur*, 475 U.S. at 481–84; *City of Canton*, 489 U.S. at 388–92. The FAC meets that standard, and the Answer corroborates it. Defendants admit District-level decisions to adopt, configure, and operate a continuous scanning program that inspects student content on District-provided platforms, flags items based on algorithmic criteria, and routes alerts to designated personnel for review and intervention—all as a matter of ongoing practice affecting current students. Answer ¶¶ 54, 76, 80–81, 85, 204, 316, 324, 340. Those admissions, coupled with the detailed allegations in the FAC, plausibly allege that the surveillance-and-intervention architecture exists by design, has persisted through a vendor change, and is the moving force behind the detentions, searches, seizures, and

speech restrictions alleged. At the pleading stage, that suffices to state a *Monell* claim against the municipal entity.

Defendants argue the Board is a duplicative party. The Board is the policymaking body that adopts and clarifies the rules. FAC ¶ 28. The District implements and enforces them. FAC ¶ 27. Plaintiffs included both the District and the Board to capture policy adoption and operational implementation. At this stage, pruning parties risks confusion about where final authority lies for the challenged practices. If, after the record clarifies who exercised final policymaking authority and how the practices were implemented, the Court determines that one entity is duplicative, it may dismiss that entity at that time without prejudice to any claim, theory, or remedy.

**IV.    KORA claims are adequately pleaded and not barred by any discovery stay.**

**A.    KORA imposes independent, mandatory duties; Defendants admit noncompliance with baseline response requirements.**

KORA declares as a matter of state policy that public records are open to any person unless a statute provides otherwise, and that the Act "shall be liberally construed and applied to promote such policy." K.S.A. 45-216(a). A public agency must act on a request "as soon as possible, but not later than the end of the third business day" after receipt. K.S.A. 45-218(d). If access is not granted immediately, "the custodian shall give a detailed explanation of the cause for further delay and the place and earliest time and date that the record will be available for inspection." *Id.* If access is denied, the custodian must, upon request, provide a written statement citing the specific provision of law under which access is denied, within three business days. *Id.* Agencies must also segregate non-exempt from exempt material and produce the non-exempt portions. K.S.A. 45-221(d). The burden to justify withholding rests with the public agency. *Cypress Media*, 268 Kan. at 416–17, 997 P.2d at 688–89; *Wichita Eagle*, 274 Kan. at 202, 50 P.3d at 75; *Telegram Publ'g*, 275 Kan. at 789–91, 69 P.3d at 586–87.

The Answer admits that two student journalists submitted KORA requests on October 30, 2025; that within three business days Defendants acknowledged receipt, stating that attorneys were reviewing the requests; that Defendants' October 31 acknowledgments did not identify any custodian, did not describe any search methodology or repositories to be searched, did not forward the requests to other offices or personnel despite Plaintiffs' invitation to do so, and did not provide records; that, as of November 4, Defendants had not denied the requests, produced responsive materials, or provided the earliest available date and place of inspection; and that, as of the Answer, Defendants had not produced responsive materials, provided any itemized fee estimate, identified staff roles or hourly rates, cited subsections of K.S.A. 45-221 for withholdings, or provided a production schedule or earliest availability date. Answer ¶¶ 18, 297–302. Those admissions establish violations of K.S.A. 45-218(d)'s timeliness and adequacy requirements and support a compliance order directing a KORA-compliant response. Plaintiffs' KORA claims thus state claims upon which relief can be granted and should proceed.

**B.      Defendants' "end-run" narrative fails because there was no stay, the magistrate judge's orders defer only Rule 16/26 scheduling and were entered subsequent to the KORA requests, and KORA is independent of federal discovery.**

Defendants rely on decisions cautioning against using open-records statutes to evade a federal discovery stay. Their own authority shows why that argument fails. *In Smith v. City of Wellsville*, the court had granted a stay of discovery and then extended it, and it invoked that stay to deny the plaintiff's attempt to use an open-records request as a "window" to obtain discovery that the stay explicitly barred. No. 19-2431-CM-KGG, 2020 WL 584449, at *2 (D. Kan. Feb. 6, 2020) (allowing such requests "would defeat the purpose and spirit of the Court granting the initial stay"). Indeed, the cases relevant to this issue cited by Defendants in their Motion involved an actual stay, and Plaintiffs' position is the opposite. Here, when the student journalists submitted

14

their KORA requests on October 30, 2025, there was no stay in place—only the magistrate judge's October 29 letter expressing an intent to postpone Rule 16/26 scheduling absent party input. ECF No. 35-2. When the magistrate judge entered a text order on November 13, it deferred the Rule 16 conference "until after the pending Motion to Dismiss has been decided." ECF No. 20. That order did not impose a stay of discovery, and it post-dated the KORA requests. The magistrate judge's January 5, 2026 text order likewise continued to postpone a Rule 16 conference while the motion is pending; again, it did not impose any discovery stay. ECF No. 39.

Discovery is not stayed by the filing of a Rule 12 motion; a stay requires an order and justification. *See*, *e.g*., *Escalante v. 10th Jud. Dist., Johnson Cnty., Kansas Dist. Ct.*, No. 24-CV-2235-TC-TJJ, 2024 WL 3771776, at *1 (D. Kan. Aug. 13, 2024) ("[A]s a general rule, the District of Kansas does not favor staying discovery pending a ruling on a dispositive motion. A stay is not favored because it can delay a timely resolution of the matter."); *Sullivan v. Univ. of Kansas Hosp. Auth.*, No. 19-CV-2078-JAR-TJJ, 2019 WL 3801638, at *1 (D. Kan. Aug. 13, 2019) (same); *Cetin v. Kansas City Kansas Cmty. Coll.*, No. 23-CV-2219-KHV-TJJ, 2023 WL 8188599, at *1 (D. Kan. Nov. 27, 2023) (same) (citing *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477 (10th Cir. 1983) ("[T]he right to proceed in court should not be denied except under the most extreme circumstances.")). Moreover, it goes without saying that discovery cannot be stayed where, as here, it has not even been opened. *See, e.g.*, *Mandala*, 2026 WL 111325, at *3; *Vineyard Investigations*, 2020 WL 7342632, at *3; *Contentguard Holdings*, 2013 WL 12072533, at *2; *Jeremiah M.*, 2022 WL 17082117, at *3.

Yet, even if there was a discovery stay in this case, which there is not, all of Defendants' authority would still be inapplicable, as it demonstrates that a discovery stay does not, in and of itself, stay related KORA requests. Rather, where a party has already been granted a discovery

15

stay that does not specifically stay related KORA requests, such a party must move the court to extend the stay to apply to the KORA requests. *See, e.g.*, *Smith*, 2020 WL 584449, at \*1 ("Defendants filed the present motion requesting the Court enter a Protective Order regarding the Open Records Request. They argue that Plaintiffs' records request is nothing more than an 'end around' the Court's Order staying discovery.") (internal citation omitted); *McRoberts v. Rosas*, No. 21-CV-2470-DDC-TJJ, 2022 WL 1538690, at \*1 (D. Kan. May 16, 2022) ("City Defendants ask the Court to order that the City of Overland Park need not respond to a request by Plaintiff . . . under the Kansas Open Records Act ('KORA') while discovery is stayed"); *Newton v. City of Atchison*, No. 23-2153-JWB-ADM, 2023 WL 12175301, at \*2 (D. Kan. June 13, 2023) (defendants sought "stay with regard to their obligations to participate in a Rule 16 Planning Conference, written discovery, and responding to requests under the Kansas Open Records Act which are directly germane to the allegations in the Complaint"); *see also* Memo at 19 (citing the foregoing cases).

KORA is not a subset of federal discovery; it is an independent state statute granting "any person" the right to inspect public records unless an exemption applies, and it places the burden on the agency to justify any withholding. K.S.A. 45-216(a); K.S.A. 45-222(c); *Cypress Media*, 268 Kan. at 416–17, 997 P.2d at 688–89; *Wichita Eagle*, 274 Kan. at 202, 50 P.3d at 75. Even if the District ultimately asserts exemptions, it still had to provide a timely, detailed explanation of the cause for delay and the earliest time and place for inspection, or a timely, specific denial with statutory citations, and it had to produce reasonably segregable non-exempt material. K.S.A. 45-218(d); K.S.A. 45-221(d). Defendants' admissions establish they did not. Answer ¶¶ 18, 297–302. The Court can manage any interplay with federal case scheduling by directing a KORA-compliant response and allowing any exemption disputes to be briefed on a separate track.

16

Indeed, Defendants' theory would convert a magistrate judge's Rule 16 scheduling postponement into a de facto suspension of KORA—precisely the opposite of a statute that guarantees "any person" timely access to public records and demands a prompt, detailed response even when production will be delayed. K.S.A. 45-216(a); 45-218(d). That is doubly untenable where, as here, the requesters are journalists seeking records about government malfeasance. *See, e.g.*, *Wichita Eagle*, 274 Kan. at 202, 50 P.3d at 75; *Telegram Publ'g*, 275 Kan. at 789–91, 69 P.3d at 586–87 (awarding attorneys' fees). Defendants' admissions make out a plausible, if not already proven, KORA violation; any legitimate concerns about timing, burden, or asserted exemptions can be addressed through case-management orders, not dismissal. K.S.A. 45-222.

Defendants' KORA posture underscores the same retaliatory theme. They admit they did not provide a compliant three-business-day response with the required specifics and produced no records for weeks, even as student journalists sought documents about the very conduct at issue. Defendants now justify that course "because" Plaintiffs sued. Answer ¶¶ 297–302; Memo at 19–21. That is not merely a statutory failure under K.S.A. 45-218(d); it is an adverse action imposed for protected petitioning and reporting that chills newsgathering on a matter of public concern, which the First Amendment forbids. *Van Deelen*, 497 F.3d at 1155–57; *Worrell*, 219 F.3d at 1212. The proper course is to deny dismissal, order KORA compliance on the statute's terms, and allow the First Amendment claims to proceed on a full record.

C.    **Appropriate relief now is a declaratory and compliance order; questions of exemptions and fees should be addressed if and when they arise on a record.**

The Court should declare that Defendants violated K.S.A. 45-218(d) in their handling of the October 30, 2025 requests and order a compliant response within a short period. Such an order should require a description of the searches and repositories; specification of the earliest date and place for inspection or production; and, for any withholdings, citation to specific K.S.A. 45-221(a)

17

subsections with production of segregable, non-exempt material. *See* K.S.A. 45-221(d); K.S.A. 45-222(a). Questions of exemptions, segregation, and fees, including bad-faith fee shifting under K.S.A. 45-222(d), can be addressed later if necessary on a fuller record. That approach vindicates the statute's process requirements without entangling the Court now in exemption-by-exemption adjudication and without intruding on federal case scheduling.

**V.   The magistrate judge's orders defer only Rule 16/26 scheduling; if factual development is needed on mootness or immunity, the Court should authorize targeted discovery.**

The magistrate judge's November 13, 2025 and January 5, 2026 text orders postpone the Rule 16 conference until after the district judge resolves Defendants' Motion. ECF Nos. 20, 39. Those entries do not impose a stay of discovery, do not limit the district judge's power to adjudicate the Defendants' Motion on the present record, and do not prevent the Court from authorizing limited discovery targeted to issues Defendants themselves put in play. The Federal Rules expressly preserve the Court's authority to allow discovery before a Rule 26(f) conference "when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). When, as here, a Rule 12(b)(1) factual attack on jurisdiction is supported by extra-pleading evidentiary submissions, the Tenth Circuit permits jurisdictional discovery to elicit facts material to mootness or standing. *Holt*, 46 F.3d at 1002–03; *Sizova*, 282 F.3d at 1326; *see also Breakthrough Mgmt. Grp.*, 629 F.3d at 1189.

Targeted discovery is appropriate because Defendants elected to mount a factual mootness and voluntary-cessation defense by submitting the Superintendent's declaration to assert that Gaggle was discontinued, while their Answer separately admits that certain journalism students were exempted and that Gaggle scanning was removed from their accounts. Memo at 3–5; Swift Decl., ECF No. 35-1; Answer ¶¶ 8, 192–93. Those extra-pleading assertions warrant testing under

18

*Holt*. Defendants' Answer also admits present-tense facts that keep live controversies squarely before the Court: the District transitioned from Gaggle to ManagedMethods; ManagedMethods is configured "to scan certain student content using keywords and machine learning"; it "scans certain School District-provided student Google suite materials" and "provides certain alerts to certain School District personnel regarding those materials"; "certain current students" remain "subject to ManagedMethods' supervision of their School District-provided Google suite accounts"; and the District did not revise Board policies or the Student Handbook when it made the switch. Answer ¶¶ 54, 76, 80–81, 85, 204, 316, 324, 340. If the Court deems it helpful, jurisdictional discovery can be limited in scope and duration to the timing and scope of the transition, the configuration and operation of ManagedMethods during and after the transition, the issuance and effect of the Journalism Guidance, and current alert review and intervention procedures. Discovery can be sequenced to avoid burdening the individual defendants while qualified immunity is under submission and focused initially on District-level sources germane to municipal liability and current-student equitable claims.

To the extent Defendants suggest qualified immunity requires an across-the-board discovery halt, that overreads the doctrine. Qualified immunity shields individual officials from the burdens of litigation and discovery unless and until the plaintiff has stated a claim overcoming the defense, but it does not insulate municipal entities from suit, and it does not preclude court-authorized discovery to resolve a factual jurisdictional challenge. *See Ashcroft*, 556 U.S. at 685–86 (2009); *Owen v. City of Independence*, 445 U.S. 622, 638 (1980) (municipalities have no qualified immunity from damages under § 1983). Rather, an assertion of qualified immunity frequently necessitates targeted jurisdictional discovery. *Thomas*, 765 F.3d at 1197 n.9. District courts in this Circuit exercise discretion to stay or phase discovery; a stay is not automatic upon

the filing of a motion to dismiss and requires justification. *See*, *e.g.*, *Escalante*, 2024 WL 3771776, at *1; *Sullivan*, 2019 WL 3801638, at *1; *Cetin*, 2023 WL 8188599, at *1; *Kutilek v. Gannon*, 132 F.R.D. 296, 300 (D. Kan. 1990); *D.J. Simmons, Inc. v. Broaddus*, No. CIV 99-1105 JP/LFG, 2000 WL 36739814, at *6 (D.N.M. June 21, 2000) ("The Federal Rules of Civil procedure do not provide for an automatic stay of discovery pending resolution of a motion to dismiss. Further, courts have not looked favorably upon granting a blanket stay of discovery pending resolution of a challenge to the legal sufficiency of a plaintiff's complaint[.]"); *Stephenson Oil Co. v. Citgo Petroleum Corp.*, No. 08-CV-380-TCK-SAJ, 2008 WL 5412816, at *2 (N.D. Okla. Dec. 30, 2008) ("Although it is within a district court's discretion to stay discovery pursuant to Rule 26(c) pending the outcome of a dispositive motion, such stays are not routinely granted by this Court or other district courts within the Tenth Circuit.") (internal citations omitted). A narrow order under Rule 26(d)(1) allowing targeted jurisdictional discovery while deferring individual-capacity discovery respects these principles, aligns with the magistrate judge's scheduling deferral, and equips the Court to decide the issues Defendants raised with their evidentiary proffer.

Because KORA imposes independent duties and the Answer admits the elements of a timeliness-and-adequacy violation, the Court can, without opening federal merits discovery, set a parallel, expedited process-compliance schedule under K.S.A. 45-218(d). *See* K.S.A. 45-222(a).

## VI. Defendants' remaining arguments do not warrant dismissal and underscore the need to proceed beyond the pleadings.

Defendants' reliance on student-speech and school-safety doctrines as categorical justifications for dismissal at the Rule 12 stage is misplaced. Those doctrines frame merits analysis; they do not supply a pleading-stage safe harbor for blanket surveillance, detentions, accusatory questioning, and quarantines triggered by an algorithmic pipeline. *Tinker* holds that "undifferentiated fear or apprehension" of disruption is not enough to suppress student expression.

20

393 U.S. at 508–09. *Hazelwood* allows regulation of school-sponsored expression only where it is "reasonably related to legitimate pedagogical concerns," a fact-intensive standard ill-suited to resolution on a Rule 12 record. 484 U.S. at 270–73. *Morse* carves out a narrow category for messages reasonably viewed as promoting illegal drug use, which is inapposite here. 551 U.S. at 403–09. The FAC alleges that lawful student expressive content was quarantined and that students were detained and interrogated because of automated flags. Taken as true, those allegations preclude dismissal under the student-speech line of cases and require factual development.

Nor does Defendants' contention that no "search" or "seizure" occurred warrant dismissal. The FAC alleges detentions that constitute seizures under controlling Tenth Circuit precedent. *Jones*, 410 F.3d at 1226–30. It further alleges seizure or quarantine of student expressive work within District systems and continuous automated inspection of student content on District-controlled platforms, followed by human review and interventions. Whether temporary quarantines of student work constitute seizures of property or restrictions on speech is, at minimum, a fact question that cannot be resolved on the pleadings.

Defendants' suggestion that the later publication of an article moots First Amendment controversies or that the nonbinding Journalism Guidance cures prior restraints fares no better. The voluntary-cessation doctrine places a heavy burden on defendants to demonstrate that challenged conduct cannot reasonably be expected to recur. *Friends of the Earth*, 528 U.S. at 189–90; *Rio Grande Silvery Minnow*, 601 F.3d at 1116–17. Ad hoc communications that do not bind the District and a vendor swap that leaves the surveillance-and-intervention architecture intact do not meet that burden, particularly where Defendants' Answer admits that ManagedMethods continues to scan student content, generate alerts, and prompt official action. Answer ¶¶ 54, 76, 80–81, 85, 204, 316, 324, 340.

Defendants' "end-run" narrative about the Kansas Open Records Act likewise fails. There was no discovery stay when the October 30, 2025 requests were submitted; the magistrate judge's later text entry deferred only the Rule 16 conference. ECF No. 20. KORA confers rights on "any person," imposes concrete response obligations within three business days, and places the burden of any withholding on the agency. K.S.A. 45-216(a); K.S.A. 45-218(d); K.S.A. 45-222(c); *Cypress Media*, 268 Kan. at 416–17, 997 P.2d at 688–89; *Wichita Eagle*, 274 Kan. at 202, 50 P.3d at 75. Defendants' own admissions establish noncompliance with those baseline process duties; any concerns about exemptions or timing can be managed through tailored orders, not dismissal. *See* K.S.A. 45-221(d); K.S.A. 45-222(a).

## CONCLUSION

Defendants' motion should be denied in substantial part. The pleadings and Defendants' admissions frame live constitutional and statutory controversies. Withholding newsworthy public records because this suit is pending is an adverse action that chills journalistic reporting and demonstrates the need for judicial relief. If the Court deems factual development helpful on mootness or qualified immunity, targeted discovery focused on jurisdictional and District-level issues is the appropriate course and can be managed without opening full merits discovery or burdening the individual defendants while immunity is under submission. The Court can also order KORA process compliance consistent with the statute's independent duties. Respectfully, the case should proceed beyond the pleadings.

**Dated:** January 20, 2026                              Respectfully submitted,

                                                         **DENTONS US LLP**

                                                         */s/ Harrison M. Rosenthal*
                                                         Mark P. Johnson (Kan. No. 22289)
                                                         Harrison M. Rosenthal (Kan. No. 28894)
                                                         Jacob S. Margolies (Kan. No. 29470)

                                                         4520 Main Street, Suite 1100
                                                         Kansas City, Missouri 64111-7700
                                                         Telephone:  (816) 460-2400
                                                         Facsimile:  (816) 531-7545
                                                         mark.johnson@dentons.com
                                                         harrison.rosenthal@dentons.com
                                                         jacob.margolies@dentons.com

                                                         *Counsel for Plaintiffs*

23

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 20, 2026, a true and correct copy of the above and foregoing was e-filed with the Court's CM/ECF electronic filing system, which provided notice to all parties who have entered an appearance in this action.


/s/ *Harrison M. Rosenthal*
*Counsel for Plaintiffs*