**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

JACK TELL; NATASHA TORKZABAN;
MORGAN SALISBURY; OPAL MORRIS;
HENRY FARTHING; SUZANA KENNEDY;
NAOMI SUI PANG; ASHLYN TELL; and
P.M., a minor, by and through her parents
MARGARET WEISBROD MORRIS and
JONATHAN MORRIS,

        *Plaintiffs*,

        v.

LAWRENCE USD 497, a political subdivision
of the State of Kansas,

        *Defendant*.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 2:25-cv-02428-KHV-GEB

**PLAINTIFFS' PREHEARING STATEMENT ON
AWARD OF ATTORNEYS' FEES AND COSTS UNDER KORA**

Plaintiffs respectfully submit this Prehearing Statement in advance of the April 23, 2026 hearing ordered by the Court to determine whether Defendant Lawrence USD 497 ("the District") "acted in good faith" for purposes of attorney fees and costs under K.S.A. § 45-222(d). ECF No. 56 at 43–44; ECF No. 64.

**INTRODUCTION**

From the moment Plaintiffs filed their KORA requests on October 30, 2025, the District pursued a coordinated strategy to prevent student journalists from accessing and publishing public records about its AI-driven surveillance of students. This strategy was deliberate. The District's internal documents reveal that officials referred to Gaggle as "the g-word" in internal communications and prepared "talking points" for responding to media inquiries about the vendor switch—even as they stonewalled KORA requests from the same journalists. When the Court ordered production by 5:00 P.M. on April 13, 2026, ECF No. 56 at 44–45, the District produced

nothing. When it finally began production twenty-six hours later, it stamped every page "CONFIDENTIAL — SUBJECT TO PROTECTIVE ORDER" absent any court order and asked Plaintiffs not share public records with anyone—a demand directed at student journalists whose First Amendment rights include the right to publish source documents. And when student journalists reviewed the production, they discovered the District had included unredacted student email addresses—information the District was obligated to screen out under K.S.A. § 45-221(a)(4) and (30).

This is not an isolated pattern. This Court identified that the District "apparently [has] done absolutely nothing to comply with plaintiffs' request under the KORA dated October 30, 2025— five months ago." ECF No. 60. That conduct, coupled with the District's post-order behavior, entitles Plaintiffs to their costs and fees under K.S.A. § 45-222(d).

The exhibits attached to this filing evidence not only the District's KORA violations but also its coordinated effort to manage the narrative while withholding public records, including: (1) contemporaneous articles showing the District applied identical delay-and-fee-barrier tactics to professional journalists seeking the same records; (2) the District's own internal communications revealing coordinated messaging and euphemistic references to AI-monitoring tools; (3) declarations establishing the District's departure from its historic practice of providing records to student journalists at no charge; and (4) sample pages from the District's production demonstrating the confidentiality stamping, the PII disclosures, and the nature of the records the District sought to suppress. Plaintiffs respectfully submit that this evidence establishes both the absence of a reasonable basis and bad faith—making a fee award under KORA appropriate.

## LEGAL STANDARD

Under K.S.A. § 45-222(d), the court "shall award costs and a reasonable sum as an attorney's fee" if it "finds that the agency's denial of access to the public record was not in good faith and without a reasonable basis in fact or law." The award is mandatory once the court makes the requisite finding. *Telegram Publ'g Co. v. Kansas Dep't of Transp.*, 275 Kan. 779, 789–91, 69 P.3d 578, 586–87 (2003). Denial of access warrants a fee award when it was made without "honesty of belief, purpose, or motive." *Clark v. Unified Sch. Dist. No. 287*, 55 Kan. App. 2d 402, 413–14, 416 P.3d 1032, 1042 (2018).

To defeat a fee award, a respondent must demonstrate both good faith *and* a reasonable basis in fact or law; the absence of either is sufficient to trigger the mandatory fee provision. *Id.*; K.S.A. § 45-222(d). KORA embodies a "strong policy of openness" and must be "liberally construed and applied to promote such policy." K.S.A. § 45-216(a); *Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 418, 997 P.2d 681, 689 (2000). The burden of proving an exemption from disclosure rests on the agency. K.S.A. § 45-222(c); *Wichita Eagle & Beacon Publ'g Co. v. Simmons*, 274 Kan. 194, 202, 50 P.3d 66, 75 (2002).

## ARGUMENT

### I.   The District's Six-Month Course of Delay Evidences Bad Faith.

The timeline of the District's noncompliance is itself compelling evidence of bad faith. On October 30, 2025, Plaintiffs Ashlyn Tell and P.M.—acting as student journalists for *The Budget* and *Free Press*—requested records concerning the District's use of Gaggle and its transition to ManagedMethods under KORA. First Am. Compl. ¶¶ 288–296, ECF No. 23. KORA required the District to act "as soon as possible, but not later than the end of the third business day" after receipt. K.S.A. § 45-218(d). By November 4, 2025—the third business day—the District had done none

of the things KORA requires: it had not produced records, denied the requests, provided a detailed explanation for the delay, identified the place and time the records would be available, or cited any specific exemption. Instead, the District issued only boilerplate "under review" acknowledgments. ECF No. 56 at 40.

Not until January 30, 2026—ten days after Plaintiffs filed their Motion for Partial Judgment on the Pleadings—did the District substantively respond. ECF No. 43-1 at 1–2; ECF No. 43-2 at 1–2. The District's response was calculated to obstruct, however. It demanded $12,815 in fees, including attorney-review time billed at $200 per hour, threatened to deem the requests withdrawn if Plaintiffs did not agree to pay within three business days, and announced that the "earliest time and date" for access would be sixty days after approval and payment. ECF No. 43-1 at 1–2.

Plaintiffs promptly narrowed their requests on February 4, 2026, authorized up to $300 in costs for low-burden categories, proposed domain filtering and deduplication to minimize volume, and requested rolling productions during the weeks of February 9 and 16. ECF No. 43-1 at 3–4; ECF No. 43-2 at 3–4; ECF No. 44 at 5–6. The District ignored these proposals entirely. It did not respond to Plaintiffs' February 9 confirmation deadline, did not produce any documents, and instead sought sixty additional days if relief were ordered. ECF No. 43 at 8. The District issued a revised estimate of $6,392.32—again including $200-per-hour attorney review—and conditioned progress on prepayment. ECF No. 49-1 at 4–5.

Yet no records were produced until the Court ordered compliance. As this Court observed: "defendant has apparently done absolutely nothing to comply with plaintiffs' request under the KORA dated October 30, 2025—five months ago." ECF No. 60.

4

**II.    The District's Post-Order Conduct Confirms Bad Faith.**

**A.    The District Failed to Produce Anything by the Court-Ordered Deadline.**

The District's conduct after April 8 compounds that its initial denial of access was not in good faith. The Court's Order required Defendant, by 5:00 P.M. on April 13, 2026, to issue a KORA-compliant response for each request which (a) describes the searches conducted and repositories consulted; (b) specifies the earliest date and place for inspection or production; (c) for any record withheld in whole or in part, cites the specific K.S.A. § 45-221(a) subsection; and (d) produces all reasonably segregable non-exempt material. ECF No. 56 at 44–45. The District produced nothing by that deadline. ECF No. 61 at 2–3.

At approximately 4:49 P.M., Defendant's counsel emailed Plaintiffs' counsel to announce the District had "reviewed and marked over 3500 documents," identified "nearly 27,000 items that may be responsive," and intended to begin production "tomorrow" on a self-imposed rolling schedule ending April 22. ECF No. 61-3 at 1–2. Nothing was produced by the deadline. *Id.*

**B.    Defense Counsel Advanced a "Mutual Understanding" to Narrow the Court's Order.**

On April 10, 2026, Defendant's counsel sent a letter to Plaintiffs' counsel memorializing a "mutual understanding" that only (a) and (b) of the Order were due by April 13, and that (c) and (d)—the actual production of documents and subsection-specific exemption citations—could be deferred through April 22. ECF No. 61-2 at 1. This characterization was false and was immediately corrected by Plaintiffs' counsel, who stated: "Your April 10 letter misstates both what Cameron Grant and I discussed and what the Court ordered. Nothing in Doc. 56 authorizes the parties to 'agree' to stagger or defer any portion of the Court's mandated KORA-compliant response beyond 5:00 p.m. on April 13, 2026. The Order requires all four elements for each request by that deadline. Those obligations are unitary and due in full on April 13." ECF No. 61-2 at 2. Plaintiffs' counsel

5

identified the true obstacle: "Cameron told me this morning that Defendants cannot fully comply by April 13, largely because your client still has not provided documents to you." *Id.* The District's noncompliance was simply a matter of refusal, not logistics.

This Court had already admonished the District for this kind of misrepresentation. In denying the District's motion for extension, the Court found: "Defendant misrepresents exactly what the Court requires it to do." ECF No. 60. The alleged "mutual understanding" is of a piece with that misrepresentation.

### C.    Defense Counsel's April 13 Email Is Affirmative Evidence of Bad Faith.

Defense counsel Alan Rupe's April 13 email—sent eleven minutes before the Court's deadline—constitutes affirmative evidence of bad faith. ECF No. 61-3 at 1–2. In that email, Mr. Rupe (1) produced no documents, (2) announced a unilateral rolling schedule ending April 22—one day before the April 23 hearing—leaving Plaintiffs no meaningful time to review up to 27,000 items, and (3) attached a proposed Protective Order and demanded that Plaintiffs "do not share any of the produced materials with any third parties until the Protective Order is agreed to and signed by the Court." *Id.*

The email's timing—eleven minutes before a Court-ordered deadline—reflects a calculated strategy to create the appearance of compliance while producing nothing. The demand that student journalists refrain from sharing public records is an extra-statutory prior restraint that has no basis in KORA or any court order.

### III.    The Confidentiality Labels on Public Records Are a Further Badge of Bad Faith.

When the District finally began producing records at 7:53 P.M. on April 14—twenty-six hours after the deadline—every page was stamped "CONFIDENTIAL — SUBJECT TO PROTECTIVE ORDER." ECF No. 61 at 4–5. No protective order had been entered. The District

6

also produced documents containing unredacted student email addresses—personally identifiable information the District was obligated to screen out under K.S.A. § 45-221(a)(4) and (30) before production. Instead, the burden of identifying and protecting this sensitive information fell to Plaintiffs. This stamping is improper for four independent reasons.

First, there is no "protective order." Absent a duly entered protective order, a party has no obligation to accept extra-judicial confidentiality conditions imposed by opposing counsel.

Second, the District's Proposed Protective Order defeats its demand. The Proposed Order acknowledges "a presumption in favor of open and public judicial proceedings," states it "will be strictly construed in favor of public disclosure," and provides that "[i]nformation or documents that are available to the public may not be designated as Confidential Information." ECF No. 61-4 at 2, 4. Non-exempt records produced under KORA are, by definition, public records. K.S.A. § 45-216(a). Yet the District's own production suggests every page is subject to non-disclosure.

Third—and most significant—Plaintiffs are student journalists who submitted KORA requests "acting in [their] capacity" as student editors and journalists seeking records to report on matters of public concern. First Am. Compl. ¶¶ 288–296, ECF No. 23. The confidentiality labels impede their ability to report and disseminate newsworthy public records.[1] On April 17, 2026, Plaintiffs published articles reporting on the District's conduct, including the confidentiality stamping, the "no-sharing" demand, and the Court proceedings. Attached hereto as **Exhibit A** is a true and accurate copy of this reporting. The student journalists wrote that the District's production "included inadvertently disclosed student email addresses among thousands of pages, leaving the

---

[1] After Plaintiffs raised this issue in their April 14 Motion to Enforce, the District stamped its *second*, *third*, and *fourth* batches of production documents with the identical "CONFIDENTIAL — SUBJECT TO PROTECTIVE ORDER" designation. This demonstrates deliberate intent, not inadvertence. Attached hereto as **Exhibit B** is a true and accurate copy of a sample production page bearing the confidentiality stamp on internal District communications that are plainly public records.

student journalists to identify sensitive material the district was required to screen out before turning the records over." *Id.* Attached hereto as **Exhibit C** is a true and accurate copy of the Declaration of Ashlyn Tell, attesting to the chilling effect of the confidentiality stamping on her ability to exercise her First Amendment rights as a student journalist. Attached hereto as **Exhibit D** is a true and accurate copy of the Declaration of P.M., attesting to the same. The First Amendment protects student journalists' right to gather and publish information on matters of public concern. *See Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969); *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972). Kansas further protects student publications through the Kansas Student Publications Act, K.S.A. § 72-7209 *et seq.*

## IV.    The District's Response to the Order to Show Cause Lacks Credibility.

On April 14, this Court issued an Order to Show Cause directing the District to respond by 5:00 P.M. on April 15, 2026. ECF No. 62. The District's response underscores rather than rebuts the evidence of bad faith. ECF No. 63.

The District's post-hoc "reinterpretation" of the Court's Order is foreclosed by the record and the District's own conduct. On April 9, the District filed an Opposed Motion for Extension of Time "to produce the Court-ordered KORA-compliant response." ECF No. 58. That motion explicitly acknowledged that the Order required "all documents and related privilege logs . . . by April 13 at 5:00 P.M." *Id.* at 1–2. The District cannot now claim it believed only (a) and (b) were due when its own extension motion was premised on the understanding that full production was required. Moreover, on April 9, Defendant's counsel acknowledged that the Order required "a response that includes all four prongs" by the deadline. ECF No. 61-2 at 2–3. Only after the Court denied the extension did defense counsel adopt the position that (c) and (d) could be deferred. The District never sought clarification from the Court before unilaterally adopting this reading.

The District characterizes its "no-sharing" demand as "simply a request." ECF No. 63 at 3. But a demand made contemporaneously with production—conditioning release of public records on a promise of silence—is coercive, particularly when directed at student journalists seeking records specifically to report and disseminate them to the public. The confidentiality stamping prevents Plaintiffs from sharing the documents themselves, even if they can describe their contents. This distinction matters. Plaintiffs are journalists whose First Amendment rights include the right to publish source documents, not merely to paraphrase them.

**V.    The District's Excessive Fees Effectively Denied Access.**

The District's fee demands constitute another basis for finding lack of good faith. KORA fees "shall not exceed the actual cost of furnishing copies, including the cost of staff time required to make the information available." K.S.A. § 45-219(c)(1). In 2020, the Kansas Attorney General issued a finding of violation determining that "[a]n hourly rate of $225.00 per hour for attorney time is per se unreasonable" under KORA. Attached hereto as **Exhibit E** is a true and accurate copy of Austin Hyslip, *City of Frontenac Violates Kansas Open Records Act After Requesting $3,500 Fee*, KOAM (Feb. 17, 2020), reporting on Kansas Att'y Gen. Finding of Violation No. 2020-OG-0001 (Feb. 14, 2020) (*City of Frontenac*). As reported, the Attorney General explained that "based on the public policy and purpose of the KORA, it is unreasonable for a public agency to pass those costs onto a requester without a significant reduction in the hourly fee rate."

The District demanded $12,815 to process Plaintiffs' requests, including attorney-review time at $200 per hour. ECF No. 43-1 at 1–2. After Plaintiffs narrowed their requests, the District quoted $6,392.32—again including $200-per-hour attorney review. ECF No. 49-1 at 4–5. The *Lawrence Times* reported being quoted nearly $13,000 for identical categories of records. Attached hereto as **Exhibit F** is a true and accurate copy of Cuyler Dunn, *Lawrence Public Schools delays*

*public records for months, wants $13K for fulfillment*, Lawrence Times (Mar. 9, 2026). The District applied the same inflated rate structure across all requesters.

The District's $200-per-hour attorney rate is unreasonable by any measure. The Kansas Secretary of State charges $52 per hour for attorney time in processing KORA requests; the Kansas Department of Administration recommends $60 per hour for state agencies. Attached hereto as **Exhibit G** is a true and accurate copy of the Kansas Department of Administration and Kansas Secretary of State's KORA Fee Guidelines. The District's rate exceeds these benchmarks by a factor of three to four.

The fee is particularly egregious because the requesters are student journalists. Plaintiffs expressly stated: "I am a member of the news media requesting records while acting in that capacity. Given the strong public interest and ongoing news coverage, please waive or substantially reduce fees." First Am. Compl. ¶¶ 288–296, ECF No. 23. Although KORA does not mandate a fee waiver, the Freedom of Information Act provides for reduced fees when records are sought by news media representatives, 5 U.S.C. § 552(a)(4)(A)(ii)(II), or when disclosure "contribute[s] significantly to public understanding of the operations or activities of the government," 5 U.S.C. § 552(a)(4)(A)(iii). The District has historically done the same. It was on this basis that Plaintiffs, and their Lawrence High School journalism advisor Barbara Tholen, have successfully requested fee waivers from the District. The District's decision to maximize fees for student journalists investigating the District's surveillance of students reflects the absence of good faith.

Attached hereto as **Exhibit H** is the Declaration of Suzana Kennedy. Ms. Kennedy, a named Plaintiff and former co-editor-in-chief of *The Budget*, attests that when she submitted KORA requests to the District in October 2024 regarding Gaggle's safety audit data, the District

charged her nothing. Attached hereto as **Exhibit I** is the Declaration of Barbara Tholen. Ms. Tholen served as journalism adviser at Lawrence High School for fifteen years and attests that during her entire tenure, to her knowledge, the District never charged students for KORA requests. These declarations establish that the District's current fee demands represent a targeted departure from its prior practice—a departure coinciding with this lawsuit. The contrast between the District's treatment of Ms. Kennedy's 2024 requests (fulfilled at no charge) and the October 2025 requests at issue here (met with months of silence, a $12,815 demand, and ultimately a court order) is powerful evidence of retaliatory intent. *See* First Am. Compl. ¶¶ 209–226, ECF No. 23.

## VI.    District's Conduct Is Part of a Broader Pattern of Obstructing Public Records Access.

The District's document production itself reveals a coordinated campaign to obstruct public access to records about its AI surveillance practices—not just toward Plaintiffs, but toward all journalists who sought transparency about the Gaggle-to-ManagedMethods switch. The internal documents now produced under court order are illuminating.

*The "G-Word" and Coordinated Messaging.* On October 27, 2025—three days before Plaintiffs filed their KORA requests—the District's Cabinet received an update referencing "Media inquiries re: discontinuation of 'g-word'" and stating that "Managed Methods info" would be shared "once approved." Attached hereto as **Exhibit J** is a true and accurate copy of LBOE_00004075. The next day, James Polk, the District's Director of Data & Assessment, shared a document titled "DRAFT- Managed Methods Talking Points for Comms" with Jake Potter, the Executive Director of Communications. Attached hereto as **Exhibit K** is a true and accurate copy of LBOE_00002686. That same day, Potter circulated the Superintendent's official response to the School Board and Cabinet for use in responding to media inquiries. Attached hereto as **Exhibit L** is a true and accurate copy of LBOE_00002687. The District was actively preparing coordinated

11

public statements about the vendor switch while simultaneously stonewalling KORA requests seeking the documents underlying those statements.

*The Lawrence Times*. Reporter Cuyler Dunn filed a KORA request in October 2025 for documents related to the District's switch from Gaggle to ManagedMethods. For three months, Mr. Dunn received only "under review" responses. When the District finally responded in January 2026, it demanded nearly $13,000 for internal communications. After narrowing, the newspaper received only a statement that the request remained "under legal review"—with no statutorily compliant explanation of the cause for delay or earliest production date. *See* Ex. F.

On March 4, 2026, when Mr. Dunn emailed school board members seeking comment on the District's KORA delays, board member GR Gordon-Ross forwarded the inquiry to the Superintendent and Communications Director with the request: "Sending the board talking points would be helpful." Attached hereto as **Exhibit M** is a true and accurate copy of LBOE_00005020. The District's internal response to journalist inquiries was tactical conformity, not transparency.

This pattern—uniform across multiple requesters and spanning months—is not the product of logistical difficulty. It is a deliberate strategy to obstruct public access to records about the District's surveillance practices. The District's own internal communications, now produced, confirm this. Attached hereto as **Exhibit N** is a true and accurate copy of LBOE_00004086, a document titled "Student Digital Safety Outline" prepared by District staff showing the District's evaluation and selection of ManagedMethods as a replacement for Gaggle.

## VII.    The Court's Prior Findings and Orders Support a Bad Faith Determination.

The Court's findings throughout this litigation establish the predicate for a bad-faith determination. Plaintiffs summarize them here not to relitigate resolved issues, but to demonstrate that the Court has already made findings directly relevant to K.S.A. § 45-222(d).

12

In its April 8 Memorandum and Order, the Court found that the District's "timing and pattern of noncompliance . . . evidence bad faith and an intent to delay or frustrate inspection." ECF No. 56 at 41. The Court further found that the District's conduct "impeded plaintiffs' ability to report to the public about the vendor substitution, procurement process, configuration, data-disposition and costs associated with ManagedMethods and Gaggle, causing harm to plaintiffs and undermining KORA's policy of openness." *Id.* at 42.

In denying the District's extension motion, the Court found that "Defendant misrepresents exactly what the Court requires it to do" and that "defendant has apparently done absolutely nothing to comply with plaintiffs' request under the KORA dated October 30, 2025—five months ago." ECF No. 60.

## VIII. The District's Asserted Defenses Lack a Reasonable Basis.

The District has offered two defenses: (1) that an arguable discovery stay justified noncompliance, and (2) that it acted in good faith because its attorneys worked diligently after April 8. Neither withstands scrutiny.

### A. The Discovery-Stay Defense.

This Court has already rejected the discovery-stay defense. ECF No. 56 at 40–41. No discovery stay existed on October 30, 2025. Judge Birzer's October 29 letter expressed an intent to postpone Rule 16/26 scheduling—it did not stay discovery. The District never moved to stay KORA. And even if a stay had existed, the District was still required to issue a timely denial citing its legal basis. As this Court unequivocally stated: "No discovery stay absolves them of culpability for failure to comply." ECF No. 56 at 43–44.

The District's own conduct defeats its theory. On January 30, 2026, the District produced invoice records, demanded attorney-review fees, threatened withdrawal under K.S.A. § 45-

219(e)(2), and set an "earliest time and date" sixty days after payment. ECF No. 43-1 at 1–2. As this Court recognized, the District "cannot turn KORA on and off to suit the moment." ECF No. 56 at 41. That contradiction—claiming KORA exemption while exercising KORA process leverage—demonstrates both the absence of a reasonable basis and the lack of good faith.

### B.        The "Diligent Efforts" Defense.

In its Show Cause Response, the District argued it "worked diligently" after April 8. ECF No. 63 at 2–3. But defense counsel did not meet with an ESI vendor until April 9—the day after the Order—and did not complete uploading documents until "late Friday evening" on April 11. *Id.* This timeline confirms that the District began preparing to comply only after being ordered to do so, having done "absolutely nothing" during the preceding five months. ECF No. 60.

Belated diligence does not excuse months of inaction, a missed deadline, a fabricated "mutual understanding," confidentiality stamping on public records, and demands that student journalists refrain from sharing those records.

### CONCLUSION

The documentary record tells a story of deliberate obstruction, not bureaucratic error. From October 30, 2025 through the present, the District has pursued a coordinated strategy to prevent student journalists from accessing and publishing public records about the District's AI surveillance of its own students. This conduct was not in good faith, nor was it based on a reasonable interpretation of law. It was a calculated effort to frustrate KORA's mandate of openness—directed at the very student journalists the District's surveillance regime monitors. Plaintiffs are entitled to their costs and reasonable attorneys' fees under KORA.

WHEREFORE, Plaintiffs respectfully request that this Court:

14

1.     Find that the District's denial of access to public records was not in good faith and without a reasonable basis in fact or law within the meaning of K.S.A. § 45-222(d);

2.     Award Plaintiffs their costs and reasonable attorneys' fees for services rendered in this action, including proceedings through the April 23, 2026 hearing and any subsequent proceedings;

3.     Confirm that Plaintiffs are under no obligation to refrain from sharing or publishing non-exempt public records produced under KORA;

4.     Grant such other and further relief as this Court deems just and proper.

**Dated:** April 22, 2026                Respectfully submitted,

**DENTONS US LLP**

*/s/ Harrison M. Rosenthal*
Mark P. Johnson (Kan. No. 22289)
Harrison M. Rosenthal (Kan. No. 28894)
Jacob S. Margolies (Kan. No. 29470)

4520 Main Street, Suite 1100
Kansas City, Missouri 64111-7700
Telephone: (816) 460-2400
Facsimile: (816) 531-7545
mark.johnson@dentons.com
harrison.rosenthal@dentons.com
jacob.margolies@dentons.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 22, 2026, a true and correct copy of the above and foregoing was e-filed with the Court's CM/ECF electronic filing system, which provided notice to all parties who have entered an appearance in this action.

/s/ *Harrison M. Rosenthal*
*Counsel for Plaintiffs*