# EXHIBIT A



**The Budget** · April 17, 2026 · https://lhsbudget.com/news/2026/04/17/how-the-budgets-records-request-led-usd-497-to-a-federal-court-hearing/

# How The Budget's records request led USD 497 to a federal court hearing

Federal judge to weigh USD 497's delayed record response, district faces possible contempt

**By Ashlyn Tell and P█████ M████, Free Press**

Lawrence USD 497 is headed back before a federal judge April 23 in a public-records dispute that now includes a request for civil contempt. On April 23, U.S. District Judge Kathryn H. Vratil will hold a hearing on whether Lawrence USD 497 acted in good faith when it failed for nearly six months to provide a compliant response to public-records requests submitted by *The Budget* and *Free Press*—and subsequently failed to comply with a court-ordered deadline.

The dispute is part of a larger federal civil rights lawsuit challenging the district's use of Gaggle and ManagedMethods, two platforms at the center of allegations that the district unconstitutionally monitored student emails, documents and creative work in district-managed Google accounts without individualized suspicion or meaningful notice. The district has defended the software as a student-safety tool meant to identify threats, self-harm and other concerns—and made an undisclosed switch to a similar platform, ManagedMethods.

Here's how the records dispute reached this point.

**Oct. 30, 2025: KORA requests sent**

On Oct. 30, two student journalists submitted Kansas Open Records Act (KORA) requests seeking contracts, invoices, purchasing documents, configuration records, policies and communications, seeking documents about the district's use of Gaggle and its unannounced switch to ManagedMethods.

KORA gives public agencies three business days to respond to a records request. Within that time, the agency must either provide the records, explain the reason for any delay and say when the records will be available, or issue a written denial citing the specific law that allows the records to be withheld.

Judge Vratil later found that the district did none of these by Nov. 4, the third business day after the requests were submitted.



Hailey Grant

On April 23, U.S. District Judge Kathryn H. Vratil will hold a hearing on whether Lawrence USD 497 acted in good faith when it failed for nearly six months to provide a compliant response to public-records requests submitted by The Budget and Free Press—and subsequently failed to comply with a court-ordered deadline.

**Jan. 30, 2026: The district quotes a $12,815 review fee**

After an initial acknowledgement of receipt one day after submitting the requests, three months passed before student journalists received a follow-up on their requests. The district told *The Budget* and *Free Press* it would charge $12,815 to process the records requests, including attorney-review time billed at $200 per hour.

Plaintiffs argue that estimate was improper because the requests were made under KORA, not lawsuit discovery, and because the records were sought for reporting on matters of public concern.

Former *Budget* adviser Barbara Tholen said she helped student journalists file KORA requests for years and had never seen the district charge students for one.

"I always thought it was important for students to understand how open records requests worked, so they filed a number of them," Tholen said. "I have no recollection over those 15 years of the district charging for a request."

**April 8: District Found to have Violated KORA in Federal Court**

On April 8, Judge Vratil issued a 45-page memorandum finding the district violated KORA's three-business-day response requirement.

The district argued the student journalists' KORA requests were improper because they sought case-related material while discovery was effectively stayed. Judge Vratil rejected that argument. She found no discovery stay existed when the requests were filed, the district could have sought a protective order or issued a timely KORA denial if it believed it had a legal basis for withholding records, and the individual defendants' qualified-immunity arguments did not excuse the district's KORA obligations.

"No discovery stay absolves them of culpability for failure to comply," Judge Vratil wrote.

The same order required the district to provide a KORA-compliant response by 5 p.m. on April 13. That response had to describe the searches conducted, identify the repositories consulted, state when and where records would be available, cite the specific KORA exemption for any record withheld in whole or in part, and produce all reasonably segregable non-exempt material—at no cost to student journalists.

Judge Vratil also set an April 23 hearing to determine whether the district acted in good faith in denying access to the records. Under KORA, if the court finds that the district's denial of access was "not in good faith and without a reasonable basis in fact or law," that finding would mean that the district must pay student journalists' attorney fees and costs.

**April 10: No extension, "No sympathy"**

The day after Judge Vratil's ruling, the district moved for an extension, saying the "collection, review, and production" of responsive documents could involve "as many as 10,000 emails" and would create "significant hardship."

Judge Vratil denied that motion April 10. The district, she wrote, "misrepresents exactly what the Court requires it to do" and "does not claim that It cannot comply" with the April 13 deadline. She also noted that the district had "apparently done absolutely nothing to comply" with the Oct. 30 KORA request for five months.

"The Court therefore has no sympathy for defendant if it has to work this weekend," Judge Vratil wrote.

**April 13: The deadline passes**

The district produced no documents by the 5 p.m. deadline on April 13.

Instead, 11 minutes before the deadline, district counsel emailed plaintiffs' attorneys concerning the student journalists' requests. The email said the district had identified nearly 27,000 potentially responsive items, had spent about 33 hours reviewing and marking more than 3,500 documents, and intended to begin actual document production the next day on a rolling basis. The district wrote it intended to complete production by April 22.

The email also attached a proposed protective order and asked plaintiffs not to share produced materials with third parties unless and until a protective order was agreed to and signed by the court. No protective order had been signed.

**April 14: Plaintiffs move to enforce**

On April 14, plaintiffs filed a motion asking Judge Vratil to enforce her April 8 order, require the district to explain why it should not be held in civil contempt of court, and reject the district's request that the plaintiffs not share records produced under KORA.

Plaintiffs argued the district had not complied with the court's order because it produced no records by the April 13 deadline, did not provide subsection-specific KORA exemption citations for withheld records, and attempted to move production onto a rolling schedule that the court had not authorized.

Later that day, Judge Vratil issued an order to show cause, requiring the district to file a written response by 5 p.m. on April 15 addressing plaintiffs' noncompliance allegations and explaining why it should not face enforcement and civil contempt consequences.

**April 14: A late partial production**

The district began producing records at 7:53 p.m. April 14, more than 26 hours after the court-ordered deadline.

According to the district's April 15 filing, the first production included about 1,800 documents and about 4,100 pages, a fraction of the nearly 27,000 potentially responsive items the district had identified. The records were marked "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER," although no protective order had been entered by the court.

**April 15: The district responds**

In its April 15 response, the district denied it acted in bad faith or disobeyed the court.

The district said it initially understood the April 8 order to require all documents and privilege logs by April 13. But after the court's denial of its request for more time, the district said it "reevaluated the meaning of the Court's order," and concluded that only part of its KORA response was required by the deadline.

The district also argued that contempt is inappropriate because it attempted to comply in good faith. Its filing says attorneys met with an electronic-records vendor, uploaded documents for processing, reviewed thousands of documents over the weekend and continued reviewing documents after the first production.

The district said the materials being reviewed included privileged legal information, work product, confidential student information, financial account information and other material that could require redaction or withholding. It characterized its request to not share the produced records as "simply a request", not a demand, meant to avoid accidental disclosure while the parties negotiated a protective order.

Under KORA, the agency—not the requester—bears the obligation to segregate exempt material and produce only non-exempt records. The district's production included inadvertently disclosed student email addresses among thousands of pages, leaving the student journalists to identify sensitive material the district was required to screen out before turning the records over.

**The central dispute**

Plaintiffs argue the district is trying to treat public-records requests like litigation discovery, where protective orders are more common. They also argue that non-exempt records produced under KORA cannot be made confidential simply because the district proposed a protective order.

The distinction matters. Discovery is the process parties use in a lawsuit to exchange information. KORA is a public-records law. Plaintiffs argue that a KORA request does not stop being a KORA request just because the people asking for records are also plaintiffs in a lawsuit.

*The Budget* remains concerned that the confidentiality request cuts against the purpose of the KORA request themselves. The records were sought for reporting, and treating the public records as confidential would restrict student journalists' ability to report on, and release, documents the district says are public records.

That issue now sits alongside the April 23 good-faith hearing. The hearing was originally set to determine whether the district acted in good faith in denying access to the records. Plaintiffs' later enforcement motion has also put the missed deadline, rolling production schedule, confidentiality labels and possible civil contempt before the court.

Under KORA, a court may award attorneys' fees and costs if it finds that a public agency denied access to records "not in good faith and without a reasonable basis in fact or law." Plaintiffs argue that standard is met here because the district missed KORA's mandatory three-business-day deadline, gave only an "under review" acknowledgment and demanded $200-per-hour attorney-review fees.

**About the hearing**

The April 23 hearing will not address underlying constitutional claims regarding the district's use of  Gaggle or ManagedMethods.

Instead, the hearing will address a narrower but consequential question: whether the district complied with its legal obligations under the Kansas Open Records Act in responding to the October 2025 records requests.

Plaintiffs argue that the records dispute reflects the larger conflict of the case: whether the district can use broad monitoring software on student accounts while limiting public scrutiny of how that system works. The district says it is trying to comply with KORA while protecting sensitive student information and privileged legal materials.

Judge Vratil will now weigh those arguments against the district's handling of the October requests, the April 13 deadline and the partial production that followed.