# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JACK TELL; NATASHA TORKZABAN;  )
MORGAN SALISBURY; OPAL MORRIS;  )
HENRY FARTHING; SUZANA KENNEDY;  )
NAOMI SUI PANG; ASHLYN TELL;  )
PHOEBE MORRIS; and H.C., a minor, by and  )
through his parents and next friends  )
DANIELLE BRUNIN and ERIK CHANEY,  )
 )          Case No.: 2:25-cv-02428-KHV-GEB
*Plaintiffs*,  )
 )
v.  )
 )
LAWRENCE USD 497, a political subdivision  )
of the State of Kansas,  )
 )
*Defendant.*  )
 )

## [PROPOSED] PLEADING IN JOINDER OF PLAINTIFF H.C.

COMES NOW Plaintiff H.C., a minor, by and through his parents and next friends Danielle Brunin and Erik Chaney, pursuant to Fed. R. Civ. P. 21 and 17(c), and upon leave of Court hereby joins this action as a plaintiff. H.C. adopts and incorporates by reference the factual allegations in the First Amended Complaint (ECF No. 23) concerning the District's implementation and operation of its Gaggle and ManagedMethods surveillance regime, to the extent relevant to the surviving First and Fourth Amendment claims against Lawrence USD 497. H.C. does not join the KORA claims, any claims that were dismissed by the Court's April 8, 2026 Memorandum and Order (ECF No. 56), claims against any dismissed defendants, or any claim not preserved by the April 8 Order. H.C. seeks the remedies available under the surviving constitutional claims, including declaratory relief, injunctive relief, nominal damages, attorneys' fees, and costs. This Pleading in Joinder does not supersede or amend the First Amended Complaint except as necessary to add H.C. as a plaintiff. H.C. alleges the following facts specific to his claims:

3

**PARTIES**

1.      Plaintiff H.C. is a minor who resides in Lawrence, Kansas. He is currently an eighth-grade student enrolled at West Middle School in Lawrence USD 497. He will attend Free State High School beginning in the 2026–2027 school year. H.C. was born in 2011 and will not graduate from high school until at least 2030. H.C. brings this action by and through his parents and next friends, Danielle Brunin and Erik Chaney, pursuant to Fed. R. Civ. P. 17(c).

2.      H.C. adopts and incorporates by reference the allegations in paragraphs 21 through 34 of the First Amended Complaint identifying the Defendant.

**JURISDICTION AND VENUE**

3.      H.C. adopts and incorporates by reference the jurisdictional and venue allegations in paragraphs 35 through 39 of the First Amended Complaint. This Court has original jurisdiction over H.C.'s federal constitutional claims under 28 U.S.C. §§ 1331 and 1343. H.C.'s claims arise under 42 U.S.C. § 1983 for violations of the First and Fourth Amendments to the United States Constitution.

**FACTUAL ALLEGATIONS SPECIFIC TO H.C.**

4.      H.C. currently uses a District-issued iPad for his schoolwork. He is required to use Google Classroom to complete assignments.

5.      While H.C. is theoretically permitted to submit assignments on pen and paper, neither he nor other students typically do so in practice. H.C.'s coursework is conducted through District-managed platforms.

6.      Like all students in the District, H.C. cannot refuse or decline the privacy terms imposed by the District without forfeiting access to the basic tools of his public education. An enrolled student who declines a District-issued device must still access District-managed platforms

4

such as Google Docs, Google Classroom, and District email to complete required assignments, receive teacher feedback, participate in class, and collaborate with peers.

7.    In late 2024, while enrolled at West Middle School, H.C. sent a joking email to a friend that included the phrase "stop bullying me." The email was not a genuine report of bullying.

8.    Because of that email, Gaggle flagged H.C.'s communication for review. H.C. did not know his communications were being monitored by Gaggle or any other surveillance software.

9.    Shortly thereafter, school counselor Tiffany Fike came to H.C.'s classroom and pulled him out of class without explanation. Ms. Fike escorted H.C. to the student services office.

10.    Once in student services, Ms. Fike displayed the flagged email on her screen. She asked H.C. whether the bullying mentioned in the email was "an actual issue" and whether the school "needed to do anything about it."

11.    H.C. explained to Ms. Fike that the email was obviously a joke and not a serious matter. The meeting lasted approximately ten minutes.

12.    Ms. Fike did not tell H.C. how she obtained the flagged message, though she may have said "our system flagged it." At no point did Ms. Fike or anyone else explain to H.C. that his communications were being monitored by AI surveillance software.

13.    At no point did anyone notify H.C.'s parents that he had been removed from class and questioned by school officials. No District official or faculty attempted to notify or involve H.C.'s parents before or during the meeting.

14.    H.C. cannot locate the email at issue. He believes it was seized by Gaggle. He cannot access other emails from that time period either.

15. H.C. did not know the District was using Gaggle until he met with counsel for Plaintiffs. The District did not announce its use of Gaggle to students. The District likewise did not announce its subsequent adoption of ManagedMethods to students.

16. As a direct result of the Gaggle incident, H.C. stopped sending joke emails and changed the way he communicates online. He began avoiding any words he thought could be flagged by the surveillance system.

17. H.C.'s self-censorship demonstrates the ongoing chilling effect of the District's surveillance regime. This chilling effect is neither abstract nor speculative; H.C. knows from personal experience that his communication triggered an investigation, removal from class, and questioning by school officials.

18. The lack of clear standards and notice further compounds the deterrent effect, as H.C. cannot reasonably predict what speech will result in review, removal, or discipline. But for the District's implementation and maintenance of the surveillance regime, H.C. would communicate on District-managed platforms without fear of investigation or loss of his communications.

19. H.C. remains subject to ongoing surveillance by ManagedMethods, which Plaintiffs allege continues the District's challenged monitoring practices.

20. ManagedMethods' Cloud Monitor—by its own terms—scans the District's Google Workspace domain regardless of device or network. H.C.'s District-managed account is tied to this domain and is subject to continuous monitoring and scanning. Content created or stored within H.C.'s account—regardless of the device used—is monitored in real time by ManagedMethods and remains accessible to the District through its administrative control over the Google Workspace for Education environment.

21. Upon information and belief, the District configured ManagedMethods' Cloud Monitor to scan student Google Workspace content, apply automated "risk" detections using keywords and AI, and take automated remediation actions—including quarantine, deletion, breaking shares, and revoking access—without individualized suspicion, notice to students, or a meaningful opportunity to contest.

22. ManagedMethods' own documentation acknowledges that false positives are "part of the territory" and provides no guarantee regarding the false positive rate. The combination of keyword/regex matching and AI in ManagedMethods' "risk" detections, together with automated remediation, creates a substantial risk that H.C.'s constitutionally protected communications will be flagged, quarantined, unshared, or deleted without individualized suspicion, context-sensitive review, notice, or a meaningful opportunity to contest.

23. The District has not announced any intention to discontinue its surveillance program. Thus, H.C. faces a credible and imminent threat of future investigation, discipline, and deletion of his communications—the same type of ongoing harm that the Court recognized when rejecting Defendants' mootness challenge to prospective relief based on the Gaggle-to-ManagedMethods transition. *See* ECF No. 56 at 7, 24.

24. The District's surveillance exposes H.C. to a credible and imminent threat of future investigation, discipline, and deletion of his communications. It also inflicts a present harm by forcing H.C. to choose between self-censorship and risking loss of access to education.

25. The Defendant's policy subjects H.C. and his private communications and academic materials to real-time review, removal, and scrutiny by unknown third-party contractors and District personnel—all without judicial oversight or procedural safeguards.

7

26.     H.C. adopts and incorporates by reference the factual allegations in paragraphs 40 through 316 of the First Amended Complaint regarding the District's surveillance regime, including its implementation and operation of Gaggle and ManagedMethods, to the extent relevant to the surviving First and Fourth Amendment theories against Lawrence USD 497.

### JOINDER OF CLAIMS

27.     H.C. hereby joins the surviving First and Fourth Amendment theories against Lawrence USD 497 and the associated requests for declaratory relief, injunctive relief, nominal damages, attorneys' fees, and costs, as set forth in Counts One through Six of the First Amended Complaint (ECF No. 23) and construed by the Court's April 8, 2026 Memorandum and Order (ECF No. 56).

### RELIEF SOUGHT

WHEREFORE, H.C. respectfully requests that the Court grant the following relief:

A.     Declaratory judgment that the District's surveillance program, including its use of Gaggle, ManagedMethods, or substantially similar AI surveillance software to monitor, search, seize, and interfere with student communications without reasonable, individualized suspicion violates the First and Fourth Amendments;

B.     Permanent injunctive relief prohibiting Defendant from continuing to use Gaggle, ManagedMethods, or substantially similar AI surveillance software to search, seize, and interfere with student communications in District-managed accounts without reasonable, individualized suspicion that a specific student has violated school rules, and without procedural safeguards including notice and an opportunity to be heard;

C.     Nominal damages for the constitutional violations H.C. has suffered;

D.     Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

E.        Such other and further relief as the Court deems just and proper.

**Dated:** May 15, 2026                    Respectfully submitted,

**DENTONS US LLP**

*/s/ Harrison M. Rosenthal*
Mark P. Johnson (Kan. No. 22289)
Harrison M. Rosenthal (Kan. No. 28894)
Jacob S. Margolies (Kan. No. 29470)

4520 Main Street, Suite 1100
Kansas City, Missouri 64111-7700
Telephone: (816) 460-2400
Facsimile: (816) 531-7545
mark.johnson@dentons.com
harrison.rosenthal@dentons.com
jacob.margolies@dentons.com

*Counsel for Plaintiffs*

9