# EXHIBIT A

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| JACK TELL; NATASHA TORKZABAN; MORGAN SALISBURY; OPAL MORRIS; HENRY FARTHING; SUZANA KENNEDY; NAOMI SUI PANG; ASHLYN TELL; PHOEBE MORRIS; and E.B., a minor, by and through his parent and next friend CATHERINE P. BATZA, | ) ) ) ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | Case No.: 2:25-cv-02428-KHV-GEB |
| v. | ) ) | |
| LAWRENCE USD 497, a political subdivision of the State of Kansas, | ) ) ) | |
| *Defendant*. | ) ) | |

### [PROPOSED] PLEADING IN JOINDER OF PLAINTIFF E.B.

COMES NOW Plaintiff E.B., a minor, by and through his parent and next friend Catherine P. Batza, Ph.D., pursuant to Fed. R. Civ. P. 21 and 17(c), and upon leave of Court hereby joins this action as a plaintiff. E.B. adopts and incorporates by reference the factual allegations in the First Amended Complaint (ECF No. 23) concerning the District's implementation and operation of its Gaggle and ManagedMethods surveillance regime, to the extent relevant to the surviving First and Fourth Amendment claims against Lawrence USD 497. E.B. does not join the KORA claims, any claims that were dismissed by the Court's April 8, 2026 Memorandum and Order (ECF No. 56), claims against any dismissed defendants, or any claim not preserved by the April 8 Order. E.B. seeks the remedies available under the surviving constitutional claims, including declaratory relief, injunctive relief, nominal damages, attorneys' fees, and costs. This Pleading in Joinder does not supersede or amend the First Amended Complaint except as necessary to add E.B. as a plaintiff. E.B. alleges the following facts specific to his claims:

## PARTIES

1.      Plaintiff E.B. is a minor who resides in Lawrence, Kansas. He is currently a rising junior enrolled at Lawrence High School in Lawrence USD 497, where he is a staff writer for *The Budget*, the award-winning student newspaper. E.B. was born in 2010 and will not graduate from high school until at least 2028. E.B. brings this action by and through his parent and next friend, Catherine P. Batza, pursuant to Fed. R. Civ. P. 17(c).

2.      E.B. adopts and incorporates by reference the allegations in paragraphs 27 through 34 of the First Amended Complaint identifying the Defendant.

## JURISDICTION AND VENUE

3.      E.B. adopts and incorporates by reference the jurisdictional and venue allegations in paragraphs 35 through 38 of the First Amended Complaint. This Court has original jurisdiction over E.B.'s federal constitutional claims under 28 U.S.C. §§ 1331 and 1343. E.B.'s claims arise under 42 U.S.C. § 1983 for violations of the First and Fourth Amendments to the United States Constitution. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to E.B.'s claims occurred within this judicial district.

## FACTUAL ALLEGATIONS SPECIFIC TO E.B.

4.      E.B. currently uses District-managed platforms for his coursework, including Google Classroom and other District tools to complete assignments.

5.      E.B.'s coursework is conducted through District-managed platforms.

6.      Like all students in the District, E.B. cannot refuse or decline the privacy terms imposed by the District without forfeiting access to the basic tools of his public education.

7.      An enrolled student who declines a District-issued device must still access District-managed platforms such as Google Docs, Google Classroom, and District email to complete required assignments, receive teacher feedback, participate in class, and collaborate with peers.

8.      During the 2023–2024 or 2024–2025 school year, E.B. prepared a class presentation about NATO that briefly mentioned nuclear and chemical warfare. The presentation was a legitimate academic assignment.

9.      The presentation was nondisruptive and posed no reasonable forecast of substantial disruption to school operations or interference with the rights of others.

10.      E.B. also had a few essays deleted by Gaggle during this period.

11.      Because of that presentation, Gaggle flagged and quarantined E.B.'s document. E.B. did not know his communications and academic work were being monitored by Gaggle or any other surveillance software.

12.      E.B. could not access the document for a brief period after it was quarantined.

13.      A vice principal then approached E.B. and asked about the context of the document.

14.      E.B. explained to the vice principal that the document was for a class presentation about NATO, and the document was returned to him shortly thereafter.

15.      At no point did anyone explain to E.B. that his communications and academic work were being monitored by AI surveillance software.

16.      At no point did anyone notify E.B.'s parents that his academic work had been flagged and quarantined by the surveillance system.

17.      E.B. cannot locate certain content that he believes was deleted by Gaggle and never returned.

18.     E.B. did not know the District was using Gaggle or any other AI surveillance software until after his content was flagged.

19.     The District did not announce its use of Gaggle to students. The District likewise did not announce its subsequent adoption of ManagedMethods to students.

20.     As a direct result of these incidents, E.B. has refrained from certain expression and changed the way he communicates online.

21.     E.B. began avoiding any words or topics he thought could be flagged by the surveillance system.

22.     As a staff writer for *The Budget*, E.B. has also kept portions of his journalistic research—including interview transcripts—off of the District's Google Drive specifically because he feared the content would be flagged.

23.     For example, while working on a story about a student suicide hotline in Lawrence, E.B. stored his interviews and research on his personal devices rather than risk having them quarantined or deleted by the District's surveillance system.

24.     E.B.'s decision to keep journalistic materials off District-managed platforms was a direct result of his knowledge that the District's surveillance system could flag, quarantine, or delete his work without notice or opportunity to contest.

25.     E.B.'s self-censorship of his journalistic work demonstrates that the District's surveillance regime chills protected speech not only in academic contexts but also in the exercise of student press freedoms.

26.     E.B.'s self-censorship demonstrates the ongoing chilling effect of the District's surveillance regime. This chilling effect is neither abstract nor speculative; E.B. knows from

4

personal experience that his academic work triggered a flag, quarantine, and questioning by school officials.

27.    The lack of clear standards and notice further compounds the deterrent effect, as E.B. cannot reasonably predict what speech or academic work will result in review, quarantine, or questioning.

28.    But for the District's implementation and maintenance of the surveillance regime, E.B. would communicate and work on District-managed platforms without fear of investigation or loss of his communications.

29.    E.B. remains subject to ongoing surveillance by ManagedMethods, which Plaintiffs allege continues the District's challenged monitoring practices.

30.    ManagedMethods' Cloud Monitor—by its own terms—scans the District's Google Workspace domain regardless of device or network.

31.    E.B.'s District-managed account is tied to this domain and is subject to continuous monitoring and scanning.

32.    Content created or stored within E.B.'s account—regardless of the device used—is monitored in real time by ManagedMethods and remains accessible to the District through its administrative control over the Google Workspace for Education environment.

33.    Upon information and belief, the District configured ManagedMethods' Cloud Monitor to scan student Google Workspace content, apply automated "risk" detections using keywords and AI, and take automated remediation actions—including quarantine, deletion, breaking shares, and revoking access—without individualized suspicion, notice to students, or a meaningful opportunity to contest.

5

34. ManagedMethods' own documentation acknowledges that false positives are "part of the territory" and provides no guarantee regarding the false positive rate.

35. The combination of keyword/regex matching and AI in ManagedMethods' "risk" detections, together with automated remediation, creates a substantial risk that E.B.'s constitutionally protected communications will be flagged, quarantined, unshared, or deleted without individualized suspicion, context-sensitive review, notice, or a meaningful opportunity to contest.

36. The District has not announced any intention to discontinue its surveillance program.

37. Thus, E.B. faces a credible and imminent threat of future investigation, discipline, and deletion of his communications—the same type of ongoing harm that the Court recognized when rejecting Defendants' mootness challenge to prospective relief based on the Gaggle-to-ManagedMethods transition. *See* ECF No. 56 at 7, 24.

38. The District's surveillance exposes E.B. to a credible and imminent threat of future investigation, discipline, and deletion of his communications.

39. It also inflicts a present harm by forcing E.B. to choose between self-censorship and risking loss of access to education.

40. The Defendant's policy subjects E.B. and his private communications and academic materials to real-time review, removal, and scrutiny by unknown third-party contractors and District personnel—all without judicial oversight or procedural safeguards.

41. E.B. adopts and incorporates by reference the factual allegations in paragraphs 40 through 316 of the First Amended Complaint regarding the District's surveillance regime,

6

including its implementation and operation of Gaggle and ManagedMethods, to the extent relevant to the surviving First and Fourth Amendment theories against Lawrence USD 497.

42. E.B. adopts and incorporates by reference all factual allegations in the First Amended Complaint regarding the constitutional inadequacy of the District's notice, consent, and procedural safeguards for its surveillance program.

## JOINDER OF CLAIMS

43. E.B. hereby joins the surviving First and Fourth Amendment theories against Lawrence USD 497 and the associated requests for declaratory relief, injunctive relief, nominal damages, attorneys' fees, and costs, as set forth in Counts One through Six of the First Amended Complaint (ECF No. 23) and construed by the Court's April 8, 2026 Memorandum and Order (ECF No. 56). E.B. does not join the KORA claims or any claims that were dismissed by the April 8 Order.

## RELIEF SOUGHT

WHEREFORE, E.B. respectfully requests that the Court grant the following relief:

A. Declaratory judgment that the District's surveillance program, including its use of Gaggle, ManagedMethods, or substantially similar AI surveillance software to monitor, search, seize, and interfere with student communications without reasonable, individualized suspicion violates the First and Fourth Amendments;

B. Permanent injunctive relief prohibiting Defendant from continuing to use Gaggle, ManagedMethods, or substantially similar AI surveillance software to search, seize, and interfere with student communications in District-managed accounts without reasonable, individualized suspicion that a specific student has violated school rules, and without procedural safeguards including notice and an opportunity to be heard;

C.      Nominal damages for the constitutional violations E.B. has suffered;

D.      Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

E.      Such other and further relief as the Court deems just and proper.

**Dated:** May 20, 2026                                    Respectfully submitted,

                                                           **DENTONS US LLP**

                                                           */s/ Harrison M. Rosenthal*
                                                           Mark P. Johnson (Kan. No. 22289)
                                                           Harrison M. Rosenthal (Kan. No. 28894)
                                                           Jacob S. Margolies (Kan. No. 29470)

                                                           4520 Main Street, Suite 1100
                                                           Kansas City, Missouri 64111-7700
                                                           Telephone: (816) 460-2400
                                                           Facsimile: (816) 531-7545
                                                           mark.johnson@dentons.com
                                                           harrison.rosenthal@dentons.com
                                                           jacob.margolies@dentons.com

                                                           *Counsel for Plaintiffs*

8