**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| JACK TELL, NATASHA TORKZABAN, MORGAN SALISBURY, OPAL MORRIS, HENRY FARTHING, SUZANA KENNEDY, NAOMI SUI PANG, ASHLYN TELL, and P.M., a minor, by and through her parents MARGARET WEISBROD MORRIS and JOHNATHAN MORRIS, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| v. | ) ) | No. 25-2428-KHV |
| LAWRENCE USD 497, a political subdivision of the State of Kansas, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER**

On April 8, 2026, the Court sustained <u>Plaintiffs Ashlyn Tell And P.M.'s Motion For Partial Judgment On The Pleadings On KORA Violations And For Declaratory And Compliance Order</u> (Doc. #41) filed January 20, 2026.  <u>Memorandum And Order</u> (Doc. #56).  The Court found as a matter of law that by failing to adequately respond to plaintiffs' requests, defendant violated the Kansas Open Records Act ("KORA"), K.S.A. § 45-215 <u>et seq.</u>  The Court ordered that no later than 5:00 P.M. on April 13, 2026, defendant issue a KORA-compliant response for each request which (a) described the searches conducted and repositories consulted; (b) specified the earliest date and place for inspection or production; (c) for any record withheld in whole or in part, cited the specific K.S.A. § 45-221(a) subsection; and (d) produced all reasonably segregable non-exempt material as required by K.S.A. § 45-221(d).

Under Section 45-222 of KORA, if the Court finds that defendant's denial of access to the

public record was not in good faith and was without a reasonable basis in fact or law, it shall award costs and attorney fees. On April 23, 2026, the Court held a hearing to determine plaintiffs' right to costs and fees. This matter is also before the Court on Plaintiffs' Motion To Enforce The Court's April 8, 2026 Memorandum And Order (ECF No. 56), For Order To Show Cause, And To Reject Defendant's Extra-Statutory "No-Sharing" Demand (Doc. #61) filed April 14, 2026. For reasons explained below, the Court awards plaintiffs costs and attorney fees and also sustains plaintiffs' motion in part.

**Legal Standard**

Section 45-218(d) of KORA imposes mandatory, time-defined obligations. The agency must act "as soon as possible, but not later than the end of the third business day" after receipt of a request. K.S.A. § 45-218(d). Within that time, the records custodian has three options: (1) grant access to the public record, (2) "give a detailed explanation of the cause for further delay and the place and earliest time and date that the record will be available for inspection" or (3) deny the request. Id. If the agency denies access, the custodian shall, within three business days, provide upon request a written statement of the grounds for denial, which "shall cite the specific provision of law under which access is denied." Id. By the third day, the agency must also produce reasonably segregable non-exempt material. K.S.A. § 45-221(d).

Under K.S.A. § 45-222(d), the Court "shall award costs and a reasonable sum as an attorney's fee" if it finds that the agency's denial of access to the public record was not in good faith and was without a reasonable basis in fact or law. Though courts do not explicitly so state, the burden to show that defendant acted without good faith and without reasonable basis in fact or law appears to fall on the requester.

Courts liberally construe KORA and apply it to promote Kansas' strong policy of public

-2-

disclosure that "public records shall be open for inspection by any person unless otherwise provided by [KORA]." Telegram Pub. Co. v. Kansas Dep't of Transp., 275 Kan. 779, 785, 69 P.3d 578, 583 (2003). KORA deadlines are extremely short because the public policy in support of disclosure is so extremely important. Furthermore, courts narrowly interpret KORA's exemptions from disclosure.[1] Id. In determining whether costs and attorney fees are appropriate for a bad faith denial of access under KORA, courts only consider "prelitigation conduct."[2] Telegram, 275 Kan. at 779, 69 P.3d at 580. "Litigation" refers to litigation to enforce KORA requests. See Telegram, 275 Kan. at 791, 69 P.3d at 587 (in determining whether to award costs and fees, affirming court of appeals' statement that it would only consider agency conduct before plaintiff filed suit to enforce KORA).

To award costs under KORA, the Court must make specific findings of fact that defendant did not act in good faith. Clark v. Unified Sch. Dist. No. 287, 55 Kan. App. 2d 402, 414, 416 P.3d 1032, 1042 (2018); Data Tree, LLC v. Meek, 279 Kan. 445, 468, 109 P.3d 1226, 1241 (2005) (to award fees, "agency's action must be both 'not in good faith' *and* 'without a reasonable basis in fact or law'") (emphasis added).

---

[1]     Section 45-221 of KORA lists 57 specific exemptions to the disclosure requirement. These include records which are prohibited or legally restricted from disclosure, privileged records, medical and treatment records, personnel records, records of a personal nature, security-related records, employer-employee negotiations, work product and legal privilege.

Under K.S.A. § 45-218(d), if the agency denies access, within three business days of the request, it shall provide—upon request—a written statement of its grounds for denial. All five of plaintiffs' KORA requests made such requests. Specifically, they each stated, "If any portion is withheld, identify the specific subsection of K.S.A. 45-221 for each redaction/withholding."

[2]     Another statute, K.S.A. § 60-211, governs sanctions for misconduct during litigation with respect to asserting good faith positions based on law and fact. Telegram, 275 Kan. at 779, 69 P.3d at 580. Litigation misconduct is not at issue here. Defendant does not dispute that even though this lawsuit was pending when plaintiffs filed their KORA requests, their response to the requests constituted "prelitigation" conduct for purposes of KORA.

Case law regarding good faith under KORA is limited.  In many cases, courts have found that agencies had reasonable bases in fact or law for their denials and did not reach the issue of good faith.  See e.g., Data Tree, 279 Kan. at 468, 109 P.3d at 1241; Baker v. Hayden, 55 Kan. App. 2d 473, 486, 419 P.3d 31, 40 (2018); Sw. Anesthesia Serv., P.A. v. Sw. Med. Ctr., 23 Kan. App. 2d 950, 954, 937 P.2d 1257, 1260 (1997).  Moreover, lacking a reasonable basis of fact or law does not necessarily lead to a conclusion that the agency was acting in bad faith.  Clark, 55 Kan. App. 2d at 414, 416 P.3d at 1042.

Clark stated that KORA equates lack of good faith with "bad faith" and—citing Black's Law dictionary—defined "bad faith" as "dishonesty of belief, purpose, or motive."  Clark, 55 Kan. App. 2d at 414, 416 P.3d at 1042 (no bad faith when superintendent not trying to keep record from plaintiff for strategic reasons and just did not understand request).  Clark's suggestion that "not in good faith" means "dishonesty of belief, purpose, or motive" cannot be squared with the Kansas Supreme Court decision in Telegram.  In Telegram, the Kansas Supreme Court engaged in de novo fact-finding on a written record and determined that the Kansas Department of Transportation ("KDOT") had not acted in good faith.  Specifically, it found that in denying access, KDOT was "more concerned that public access to information would be disruptive, bring outside pressure, and inhibit the free exchange of information and ideas," and less concerned about meeting the letter and spirit of KORA.  Telegram, 275 Kan. at 793, 69 P.3d at 588 (2003).  The court also found that KDOT's "drawn out and hollow response" to plaintiffs' requests was "perplexing."  Id.  The Kansas Supreme Court awarded costs and attorney fees, finding that KDOT's "conduct and attitude together establish[ed] bad faith."  Id.  The record contained no apparent evidence of dishonesty, and the Kansas Supreme Court made no findings of dishonesty of belief, purpose or motive.

-4-

Courts have found a "reasonable basis in fact or law" when agency acts involve a question of first impression or are supported by meritorious arguments. See Data Tree, 279 Kan. at 468, 109 P.3d at 1241 (Register of Deeds had reasonable basis for belief that it could redact social security numbers, mothers' maiden names and dates of births because whether disclosure would constitute clearly unwarranted invasion of personal privacy was question of first impression); Baker, 55 Kan. App. 2d at 486, 419 P.3d at 40 (question of first impression whether audio recordings of open court proceedings exempt from disclosure); Sw. Anesthesia Serv., 23 Kan. App. 2d at 954, 937 P.2d at 1260 (refusal to provide information based on erroneous reliance on Attorney General opinion "not so misguided as to amount to bad faith"). Here, defendant does not claim that its denial of plaintiffs' requests involved legal questions of first impression but argues that it had reasonable factual reasons for its non-compliance.

## Analysis

### I.      Whether Plaintiffs Are Entitled To Costs And Attorney Fees

On October 30, 2025, plaintiffs delivered to defendant five KORA requests which requested documents related to contracts between USD 487, Gaggle and ManagedMethods. The next day, October 31, defendant sent plaintiffs five emails which acknowledged the requests and stated that they were "currently under review." Within three business days, defendant did not grant access to the records, deny the requests or otherwise respond. On November 17, 2025, plaintiffs filed their First Amended Complaint For Civil Rights Violations (Doc. #23), alleging that defendant had violated KORA by failing to conduct an adequate search for responsive records, disclose responsive records and respond within the statutory time frame.[3]  For another month,

_____

[3]      Two months later, on January 20, 2026, plaintiffs filed a motion for partial judgment on the pleadings, asking the Court to find that as a matter of law, defendant had violated
(continued. . .)

defendant persisted in refusing to respond to plaintiffs' KORA requests except to the extent that on December 19, 2025, it filed a motion to partially dismiss plaintiffs' KORA claims in the first amended complaint.[4]  On January 30, 2026—three months after plaintiffs delivered their KORA requests and two and a half months after plaintiffs amended their complaint to allege KORA violations, defendant emailed plaintiffs that it had completed an "initial review," and was producing "all invoices, purchase orders, payment records, warrants/ACH remittances, and contract-value summaries for ManagedMethods from January 1, 2024 to the present."  It identified around 10,000 emails which might be responsive to plaintiffs' requests but might also be exempt from disclosure under KORA.  Pending further review and plaintiffs' payment of $1,815 for staff review and $11,000 for attorney review, defendant declined to commit to providing emails.

By email on February 4, 2026, plaintiffs narrowed their requests and provided defendant a proposal for cost mitigation and a rolling schedule of document disclosure.  Five weeks later, on March 12, 2026, defendant responded with a revised cost estimate of $6,392.32, payable by

---

[3] (. . . continued)
KORA.  Ten days later, on January 30, defendant gave plaintiffs its first cost estimates for the requested disclosure.  On February 4, plaintiffs narrowed their requests and authorized up to $300 in costs for low-burden categories.  On March 12, defendant gave plaintiffs revised cost estimates. On April 8, the Court sustained plaintiffs' motion and ordered defendant to issue KORA-compliant responses within five days.  In determining whether to award costs and fees, the Court focuses its analysis on defendant's "prelitigation" conduct, so the Court analyzes defendant's conduct and state of mind before plaintiffs filed their first amended complaint on November 17.  The Court refers to post-litigation conduct only to the extent that it sheds light on defendant's state of mind prior to November 17.

[4]     Defendant sought to dismiss plaintiffs' KORA claims because (1) plaintiffs' KORA requests sought information related to this case despite a court order "effectively staying" discovery, (2) qualified immunity protected defendants from the burdens of discovery until the question of qualified immunity was resolved and (3) plaintiffs' KORA requests and accompanying claims were therefore improper.  Defendants' Memorandum In Support Of Their Motion To Partially Dismiss Plaintiffs' First Amended Complaint (Doc. # 35) filed December 19, 2025 at 20–21.  Defendant did not invoke any statutory exemptions to production under KORA itself.

plaintiffs in advance.  Defendant stated that the records would be available on April 9 at the earliest, but only if and "to the extent that the School District decide[d] to provide access."

At the hearing on April 23, 2026, Jeanice Swift, school district superintendent, testified that she was responsible for responses to KORA and that defendant did not timely comply with KORA because she had three concerns.  First, the requested records contained private student information which is protected by state and federal law.[5]  Second, plaintiffs' KORA requests were more expansive than defendant had ever received, and she did not comprehend how defendant could access resources to complete the requests and also carry out day-to-day work.[6]  Third,

---

[5]     Dr. Swift testified that the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, prohibits disclosure of personal information of students.  She alluded to state law to the same effect but did not identify or cite particular statutes.  Section 45-221(a)(1) of KORA exempts from disclosure records to which federal or state law prohibit disclosure. Defendant never explicitly invoked this exception in response to plaintiffs' KORA requests. On January 30, 2026, defendant emailed plaintiffs and stated generally that their requests were broad and would "require extensive document review to identify responsive material and screen out any materials that are subject to KORA exceptions (see, e.g.. K.S.A. §45-221)."

[6]     Under Section 45-218(e) of KORA, an agency may refuse access if the request places an "unreasonable burden" on the agency or if the custodian has reason to believe that repeated requests are intended to disrupt the other essential functions of the agency. The agency must explicitly refuse on these grounds, however, and defendant must prove by preponderance of the evidence that the burden was unreasonable.  Here, defendant did not explicitly or timely claim—either in its initial email to plaintiffs on October 31, 2025 or its follow-up emails of March 12, 2026—that plaintiffs' requests would place an unreasonable burden on it.

In its answer to plaintiffs' first amended complaint, defendant first claimed that it was not obligated to provide some or all of the documents which plaintiffs had requested because disclosure would create an unreasonable burden and defendant believed the requests were intended to disrupt its essential functions.  Defendants' Answer And Defenses To Plaintiffs' First Amended Complaint For Civil Violations (Doc. #36) filed December 19, 2025 at 152.

At the hearing, Dr. Swift referred to the "overly burdensome nature" of the requests.  In a motion to stay discovery (which it later withdrew), defendant stated that plaintiffs "requested the Court to grant judgment in Plaintiffs' favor on these claims and to order Defendants to comply *with numerous burdensome requests* within 14 days."

(continued. . .)

plaintiffs' requests read like legal documents and were "intertwined" with active litigation, so she was unsure how to proceed.  Transcript Of In Court Hearing (Doc. #70) filed April 30, 2026 at 18.

The record is unclear whether defendant tried to address Dr. Swift's concerns through consultation with counsel.  Dr. Swift testified that "[w]e were always briefing our school board and working with the attorneys" and "worked on this every week since October 30th," trying to understand what it would take to meet the requests and how the KORA requests would work alongside the parallel lawsuit.  Id. at 55.  The record contains no evidence that defendant actually solicited or received legal advice regarding plaintiffs' KORA requests.  Also, the record conspicuously fails to suggest that in failing to comply with plaintiffs' requests, defendant was relying on advice of counsel.[7]

As mentioned above, in sustaining Plaintiffs Ashlyn Tell And P.M.'s Motion For Partial Judgment On The Pleadings On KORA Violations And For Declaratory And Compliance Order (Doc. #41), the Court found as a matter of law that by failing to adequately respond to plaintiffs' requests, defendant had violated KORA.  In deciding whether plaintiffs are entitled to costs and fees on account of that violation, the Court first analyzes whether defendant objectively had a reasonable basis in fact or law for failing to timely respond.  As to defendant's first concern about

---

[6] (. . .continued)
Defendant did not invoke Section 45-218(e) in a direct or timely response to plaintiffs' KORA requests or in response to plaintiffs' motion for summary judgment on their KORA claims.

[7]      On April 8, 2026, the Court ordered defendant to comply with KORA.  In response, defendant arranged for its insurance carrier to fund its KORA compliance through a vendor which helps manage electronically stored information ("ESI") in litigation.  Dr. Swift testified that she did not know about ESI vendors until April of 2026, after the Court had ordered defendant to comply and the insurance carrier got involved.  Counsel would have been familiar with ESI and ESI vendors.  This testimony is confusing as to why defendant was unaware of ESI vendors and the prospect of insurance coverage for KORA compliance.  The record sheds no light on what role counsel played or the extent to which counsel was aware of defendant's KORA response, except as it played out in pleadings in this case.

protecting the privacy of student information, KORA requires agencies to delete material not subject to disclosure and make available the remaining public information. K.S.A. § 45-221(d). Therefore, the fact that the request contained private student information does not excuse defendant's blanket noncompliance in refusing to produce records which did not implicate student privacy concerns.[8] As to student records, defendant could have redacted (and was entitled and required to redact) student information and could have produced reasonably segregable non-exempt material. The Court recognizes that redaction of student records might have been a massive undertaking, but the requester bears the cost of redaction. Data Tree, LLC, 279 Kan. at 465, 109 P.3d at 1239. Defendant did not inform plaintiffs of that cost for three months, however, and it did not explicitly and timely attempt to excuse its non-compliance on the ground that plaintiffs' requests were unreasonably burdensome under Section 45-218(e). See Data Tree, 279 Kan. at 465, 109 P.3d at 1239.

As to the second concern, limited resources cannot excuse non-compliance because, again, prior to its answer in this case, well after the three-day response time had expired, defendant never explicitly asserted any unreasonable burden as an excuse for non-compliance or tendered evidence of unreasonable burden. An insurance company has apparently funded defendant's response to the Court's order that it comply with KORA by April 13, 2026. Defendant has offered no satisfactory explanation of how, when or why the insurance company agreed to fund the compliance, why such funding was unavailable at an earlier time or why nobody even explored

---

[8] Although FERPA protects student education records and personally identifiable information, this information was far from central to plaintiffs' requests—which largely focused on defendant's use of Gaggle and ManagedMethods software and the relationship between defendant, Gaggle and ManagedMethods. As noted above, defendant did not timely produce the information which did *not* implicate student privacy concerns, and defendant does not claim that the student records were not easily segregable.

getting outside assistance.  Defendant has not shown that, given the availability of insurance coverage, its concern about limited resources was reasonable.  And again, as noted, defendant did not timely or explicitly invoke an unreasonable burden to excuse its violation.

As to the third concern, KORA does not contain an exemption for materials which involve litigation, or even for materials which are requested for litigation purposes.  To the extent that the superintendent had this concern, defendant seems to have withheld documents for strategic advantage, to delay the lawsuit, to avoid negative publicity and to deny plaintiffs ready access to material that was clearly discoverable in this case.[9]

In short, defendant did not have a reasonable basis in fact or law in failing to comply with plaintiffs' KORA requests.

The Court next considers whether defendant acted with good faith, which is a subjective analysis.  See Tri-Company Const., Inc. v. Farmers & Merchs. State Bank, No. 64,872, 1991 WL 12018506, at *4 (Kan. Ct. App. Jan. 4, 1991) (determination whether actions in good or bad faith involves ascertaining state of mind of individual performing actions).  Whether defendant acted in

---

[9]    Defendant claims that discovery was stayed from October 29, 2025 until April 8, 2026, when the Court decided its motion to partially dismiss plaintiffs' first amended complaint. Defendant argues that by postponing scheduling under Rules 16(b) and 26(f) on October 29, 2025, Magistrate Judge Gwynne E. Birzer imposed a discovery stay which justified its refusal to comply with KORA.  Notably, however, during the period when defendant claims that discovery was stayed, it actually filed a motion to stay discovery.  Judge Birzer overruled that motion. Defendants' Motion To Stay Discovery, Including All Kansas Open Records Act Requests By Plaintiffs, Until The Court's Ruling On Defendants' Motion To Partially Dismiss Plaintiffs' First Amended Complaint (Doc. #47) filed March 4, 2026.  More importantly, KORA requests are separate from discovery, both legally and logically, and serve entirely distinct interests.

Defendant also argued that even if no stay was in place, its pending motion to dismiss included qualified immunity arguments which excused its failure to respond to plaintiffs' KORA requests.  At most, two individual school officials were entitled to qualified immunity, and they were not responsible for responding to KORA requests.  This argument is illogical and did not shield defendant from the requirements of KORA.

good faith is a closer call. Plaintiffs have not shown that defendant's stated reasons for non-compliance were dishonest or malicious, and the Court is not persuaded that defendant was retaliating against plaintiffs for exercising their First Amendment rights.

On the other hand, under Telegram, the inquiry is more nuanced. In bringing this suit, plaintiffs forced defendant into a defensive posture with respect to digital surveillance of its students. In internal communications, defendant referred to Gaggle as "the g-word" and prepared "talking points" for responding to media inquiries about its vendor switch from Gaggle to ManagedMethods. For some reason, defendant explicitly banned student journalists from reporting on this lawsuit. Defendant later rescinded this ban, apparently on legal advice that it was facially unconstitutional. Plaintiffs had sued individual school administrators, as well as the district itself. These facts convince the Court that defendant was sensitive to publicity and to strategic litigation concerns, and it prioritized these concerns over its statutory obligations under KORA. Such concerns were not unlike the concerns which motivated the KDOT to stonewall in Telegram—that public access to information could be disruptive and bring outside pressure on defendant.

This is not a case about a merely technical violation or substantial compliance with KORA—defendant did not provide a meaningful response to plaintiffs' requests until January 30, 2026—two months and 28 days out of time. While defendant responded that the requests were "under review" on October 31, 2025, it did not provide a cost estimate until after plaintiffs had filed their first amended complaint and then a dispositive motion for partial judgment on the pleadings. As late as March 12, 2026, defendant hedged its bets on when and whether records would be forthcoming. It is an understatement to say that this "drawn out and hollow" response, like the stonewalling in Telegram, is "perplexing." 275 Kan. at 793, 69 P.3d at 588. Absent the

-11-

Court's order, it is unclear when—if ever—defendant would have complied with KORA.

Defendant's response to plaintiff's KORA requests was drawn out, hollow and especially (in view of the KORA legal claims filed on November 17, 2025) perplexing.  Consistent with Telegram, Kansas law requires a finding that defendant acted without good faith.  Accordingly, plaintiffs are entitled to costs and attorney fees.

## II.   Plaintiff's Motion (Doc. #61)

On April 8, 2026, the Court ordered that "no later than 5:00 P.M. on April 13, 2026, defendant issue a KORA-compliant response for each request which (a) describes the searches conducted and repositories consulted; (b) specifies the earliest date and place for inspection or production; and (c) for any record withheld in whole or in part, cites the specific K.S.A. § 45-221(a) subsection and (d) produces all reasonably segregable non-exempt material as required by K.S.A. § 45-221(d)."  Some of the material defendant has produced contains a watermark which states "confidential."  Plaintiffs ask the Court to enter an order (1) enforcing its Memorandum and Order (Doc. #56) filed April 8, 2026 and (2) rejecting defendant's unilateral demand that plaintiffs refrain from sharing non-exempt public records produced under KORA.

As to plaintiffs' request that the Court enforce its prior order, at the hearing on April 23, the Court clarified that its prior order allowed rolling production of documents.  Thus, the Court declined to order all production by April 13.  Defendants should, however, continue to diligently work to produce KORA-compliant responses to plaintiffs' requests.  To ensure defendant does so, the Court orders defendant to provide weekly status reports of its progress, starting by 5:00 P.M. on Friday, June 12.

As to plaintiff's request that the Court reject defendant's demand that plaintiffs refrain from sharing non-exempt public records produced under KORA, defense counsel Alan Rupe agreed that

defendant would remove the "confidential" watermark.  The Court therefore orders that defendants remove the watermarks to address plaintiffs' concern about disseminating the information.

**IT IS THEREFORE ORDERED** that plaintiffs are entitled to costs and attorney fees for defendant's KORA violations.  **IT IS FURTHER ORDERED** that the parties comply with D. Kan. Rule 54.2 in determining the amount of such fees.

**IT IS FURTHER ORDERED** that <u>Plaintiffs' Motion To Enforce The Court's April 8, 2026 Memorandum And Order (ECF No. 56), For Order To Show Cause, And To Reject Defendant's Extra-Statutory "No-Sharing" Demand</u> (Doc. #61) filed April 14, 2026 is **SUSTAINED IN PART.  Defendant must continue work to produce KORA-compliant responses to plaintiffs' requests and provide the Court with weekly status reports each Friday by 5:00 P.M., beginning June 12, 2026.**

Dated this 1st day of June, 2026 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge

-13-