## DECLARATION OF MARK P. JOHNSON

Pursuant to 28 U.S.C. § 1746, I, Mark P. Johnson, declare as follows:

1.  I am over 18 years of age, of sound mind, and competent to testify to the matters stated herein. I make this declaration based on my personal knowledge. I have been a partner with Dentons US LLP (formerly Sonnenschein Nath & Rosenthal and SNR Denton) since October 1994. I have been located in that firm's Kansas City, Missouri, office for my entire tenure with the firm. Prior to that time I was an associate and a partner with Spencer Fane Britt & Browne, also in Kansas City, Missouri.

2.  I graduated from Yale University in 1977 with a B.A. in History and from Harvard University in 1980 with a J.D. I joined Spencer Fane Britt & Browne upon my graduation from Harvard.

3.  I have practiced before the U.S. District Court for the District of Kansas since 1981. My first court hearing in that District was before District Judge Frank Theis in 1981, and the first trial in which I appeared took place before District Judge Earl O'Connor in 1983. I have appeared in the District's courts every year since 1981. My Kansas Bar Admission number is 22289 and my District of Kansas number is 70285.

4.  I am providing this declaration in support of the attorneys' fee request for the Plaintiffs in *Jack Tell et al. v. Lawrence USD 497*, Civil Action No. 25-2428-KHV, arising out of the Court's June 1, 2026 Order, Document 79, finding that the Defendant acted in bad faith in responding to requests under the Kansas Open Records Act ("KORA") and awarding attorneys' fees to the Plaintiffs.

1

5. In this declaration, I provide information relating to the hours worked by Plaintiffs' counsel arising out of the KORA requests and the reasonable hourly rates that should be applied to those hours to calculate the lodestar amount for the attorneys' fees to be awarded.

6. The attorneys for whose work the Plaintiffs seek fees are:

   a. Mark Johnson; partner; 46 years of practice;

   b. Rebecca Hughes Parker; counsel; 21 years of practice (B.A., Harvard University; J.D., Columbia University);

   c. Harrison Rosenthal; managing associate; four years of practice (B.A., M.A., Ph.D., J.D., University of Kansas); and

   d. Jacob Margolies; associate; four years of experience (B.A., University of Michigan; J.D., University of Wisconsin); and

   e. Parker Bednasek; associate; three years of experience (B.A. and J.D., University of Kansas).

7. The hourly rates that should be applied in determining the lodestar amount should reflect the legal work performed before this Court. The rates itemized below are substantially less than the rates Dentons US LLP normally charges fee-paying clients for work performed by these lawyers.

8. In my judgment, based on my experience practicing in this District since 1981, these rates are reasonable for practitioners with the levels of experience and expertise listed above. In addition, as reflected in **Exhibit A** hereto, these rates are similar to rates that the State of Kansas has agreed to pay outside counsel hired to handle constitutional legal work requiring experience and expertise analogous to the work in this matter.

9. The requested rates, which are reasonable in this District, are as follows:

2

    a.   Mark Johnson: $700 per hour;

    b.   Rebecca Hughes Parker: $500 per hour;

    c.   Harrison Rosenthal: $400 per hour;

    d.   Jacob Margolies: $400 per hour; and

    e.   Parker Bednasek: $350 per hour.

10. The hours worked for which Plaintiffs seek recovery are detailed in Exhibit B hereto. I have reviewed those time records, and **Exhibit B** accurately reflects the time for which Plaintiffs seek a fee award. By attorney, those hours amount to:

    a.   Mark Johnson: 30 hours;

    b.   Rebecca Hughes Parker: 4.8 hours;

    c.   Harrison Rosenthal: 142.3 hours; and

    d.   Jacob Margolies: 1.3 hours; and

    e.   Parker Bednasek: 12.9 hours.

11. Applying the hourly rates above to the hours worked, the lodestar amount requested is $85,355. In addition, Plaintiffs seek an award of $792.55, the cost paid to court reporter Kristina Scott for the transcript of the April 23, 2026 hearing, as reflected **in Exhibit C**.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 15, 2026

Kansas City, Missouri.

Mark P. Johnson

3

# EXHIBIT A

4



Office of Procurement and Contracts
900 SW Jackson St., Room 451 South
Topeka, KS 66612

**Department of Administration**

Phone: 785-296-2376
Fax: 785-296-7240
https://admin.ks.gov/offices/procurement-contracts

Adam Proffitt, Secretary
Todd Herman, Director

Laura Kelly, Governor

## CONTRACT AWARD

| | |
|---|---|
| **Date of Award:** | September 25, 2024 |
| **Contract ID:** | 00000000000000000000056578 |
| **Event ID:** | EVT0009697 |
| **Replace Contract:** | New |
| **Procurement Officer:**<br>**Telephone:**<br>**E-Mail Address:**<br>**Web Address:** | Bonnie L Edwards<br>785/296-3125<br>bonnie.edwards@ks.gov<br>https://admin.ks.gov/offices/procurement-contracts |
| **Item:** | Civil Attorney Pool |
| **Agency/Business Unit:** | Office of the Attorney General |
| **Period of Contract:** | September 25, 2024 through June 30, 2029 |
| **Contractor:** | First & Fourteenth PLLC<br>2 N Cascade Ave<br>Suite 1430<br>Colorado Springs, CO 80903 |
| **Vendor ID:** | 0000722158 |
| **FEIN:** | On File |
| **Contact Person:**<br>**E-Mail:**<br>**Toll Free Telephone:**<br>**Local Telephone:**<br>**Cell Phone Number:**<br>**Fax:** | Andrew Nussbaum<br>andrew@first-fourteenth.com<br>N/A<br>719-428-2386<br>N/A<br>N/A |

**Payment Terms:** Net 30

**Political Subdivisions:** Pricing is not available to the political subdivisions of the State of Kansas.

**Procurement Cards:** Agencies may not use a P-Card for purchases from this contract.

**Administrative Fee:** No Administrative Fee will be assessed against purchases from this contract.

The above referenced contract award was recently posted to Procurement and Contracts website. The document can be downloaded by going to the following website: https://admin.ks.gov/offices/procurement-contracts

## 1. Terms and Conditions

### 1.1. Contract Documents

In the event of a conflict in terms of language among the documents, the following order of precedence shall govern:

Form DA 146a;

written modifications to the executed contract;

written contract signed by the parties;

the Bid Event documents, including any and all amendments; and

Contractor's written offer submitted in response to the Bid Event as finalized.

### 1.2. Captions

The captions or headings in this contract are for reference only and do not define, describe, extend, or limit the scope or intent of this contract.

### 1.3. Definitions

A glossary of common procurement terms is available at http://admin.ks.gov/offices/procurement-and-contracts, under the "Procurement Forms" link.

### 1.4. Contract Formation

No contract shall be considered to have been entered into by the State until all statutorily required signatures and certifications have been rendered and a written contract has been signed by the contractor.

### 1.5. Notices

All notices, demands, requests, approvals, reports, instructions, consents or other communications (collectively "notices") that may be required or desired to be given by either party to the other shall be IN WRITING and addressed as follows:

Kansas Procurement and Contracts
900 SW Jackson, Suite 451-South
Topeka, Kansas 66612-1286
RE: Contract Number 56578

or to any other persons or addresses as may be designated by notice from one party to the other.

### 1.6. Statutes

Each and every provision of law and clause required by law to be inserted in the contract shall be deemed to be inserted herein and the contract shall be read and enforced as though it were included herein. If through mistake or otherwise any such provision is not inserted, or is not correctly inserted, then on the application of either party the contract shall be amended to make such insertion or correction.

### 1.7. Governing Law

This contract shall be governed by the laws of the State of Kansas and shall be deemed executed in Topeka, Shawnee County, Kansas.

### 1.8. Jurisdiction

The parties shall bring any and all legal proceedings arising hereunder in the State of Kansas District Court of Shawnee County, unless otherwise specified and agreed upon by the State of Kansas. Contractor waives personal service of process, all defenses of lack of personal jurisdiction and forum non conveniens. The Eleventh Amendment of the United States Constitution is an inherent and incumbent protection with the State of Kansas and need not be reserved, but prudence requires the State to reiterate that nothing related to this Agreement shall be deemed a waiver of the Eleventh Amendment

Contract ID: 00000000000000000000056578
Event ID: EVT0009697
Page 3

## 1.9. Mandatory Provisions

The provisions found in Contractual Provisions Attachment (DA 146a) are incorporated by reference and made a part of this contract.

## 1.10. Termination for Cause

The Director of Purchases may terminate this contract, or any part of this contract, for cause under any one of the following circumstances:

the Contractor fails to make delivery of goods or services as specified in this contract;

the Contractor provides substandard quality or workmanship;

the Contractor fails to perform any of the provisions of this contract, or

the Contractor fails to make progress as to endanger performance of this contract in accordance with its terms.

The Director of Purchases shall provide Contractor with written notice of the conditions endangering performance. If the Contractor fails to remedy the conditions within ten (10) days from the receipt of the notice (or such longer period as State may authorize in writing), the Director of Purchases shall issue the Contractor an order to stop work immediately. Receipt of the notice shall be presumed to have occurred within three (3) days of the date of the notice.

## 1.11. Termination for Convenience

The Director of Purchases may terminate performance of work under this contract in whole or in part whenever, for any reason, the Director of Purchases shall determine that the termination is in the best interest of the State of Kansas. In the event that the Director of Purchases elects to terminate this contract pursuant to this provision, it shall provide the Contractor written notice at least 30 days prior to the termination date. The termination shall be effective as of the date specified in the notice. The Contractor shall continue to perform any part of the work that may have not been terminated by the notice.

## 1.12. Rights and Remedies

If this contract is terminated, the State, in addition to any other rights provided for in this contract, may require the Contractor to transfer title and deliver to the State in the manner and to the extent directed, any completed materials. The State shall be obligated only for those services and materials rendered and accepted prior to the date of termination.

In the event of termination, the Contractor shall receive payment prorated for that portion of the contract period services were provided to or goods were accepted by State subject to any offset by State for actual damages including loss of federal matching funds.

The rights and remedies of the State provided for in this contract shall not be exclusive and are in addition to any other rights and remedies provided by law.

## 1.13. Antitrust

If the Contractor elects not to proceed with performance under any such contract with the State, the Contractor assigns to the State all rights to and interests in any cause of action it has or may acquire under the anti-trust laws of the United States and the State of Kansas relating to the particular products or services purchased or acquired by the State pursuant to this contract.

## 1.14. Hold Harmless

The Contractor shall indemnify the State against any and all loss or damage to the extent arising out of the Contractor's negligence in the performance of services under this contract and for infringement of any copyright or patent occurring in connection with or in any way incidental to or arising out of the occupancy, use, service, operations or performance of work under this contract.

Contract ID: 00000000000000000000056578
Event ID: EVT0009697
Page 4

The State shall not be precluded from receiving the benefits of any insurance the Contractor may carry which provides for indemnification for any loss or damage to property in the Contractor's custody and control, where such loss or destruction is to state property. The Contractor shall do nothing to prejudice the State's right to recover against third parties for any loss, destruction or damage to State property.

## 1.15. Force Majeure

The Contractor shall not be held liable if the failure to perform under this contract arises out of causes beyond the control of the Contractor. Causes may include, but are not limited to, acts of nature, fires, tornadoes, quarantine, strikes other than by Contractor's employees, and freight embargoes.

## 1.16. Assignment

The Contractor shall not assign, convey, encumber, or otherwise transfer its rights or duties under this contract without the prior written consent of the State. State may reasonably withhold consent for any reason.

This contract may terminate for cause in the event of its assignment, conveyance, encumbrance or other transfer by the Contractor without the prior written consent of the State.

## 1.17. Third Party Beneficiaries

This contract shall not be construed as providing an enforceable right to any third party.

## 1.18. Waiver

Waiver of any breach of any provision in this contract shall not be a waiver of any prior or subsequent breach. Any waiver shall be in writing and any forbearance or indulgence in any other form or manner by State shall not constitute a waiver.

## 1.19. Injunctions

Should Kansas be prevented or enjoined from proceeding with the acquisition before or after contract execution by reason of any litigation or other reason beyond the control of the State, Contractor shall not be entitled to make or assert claim for damage by reason of said delay.

## 1.20. Staff Qualifications

The Contractor shall warrant that all persons assigned by it to the performance of this contract shall be employees of the Contractor (or specified Subcontractor) and shall be fully qualified to perform the work required. The Contractor shall include a similar provision in any contract with any Subcontractor selected to perform work under this contract.

Failure of the Contractor to provide qualified staffing at the level required by the contract specifications may result in termination of this contract or damages.

## 1.21. Subcontractors

The Contractor shall be the sole source of contact for the contract. The State will not subcontract any work under the contract to any other firm and will not deal with any subcontractors. The Contractor is totally responsible for all actions and work performed by its subcontractors. All terms, conditions and requirements of the contract shall apply without qualification to any services performed or goods provided by any subcontractor.

## 1.22. Independent Contractor

Both parties, in the performance of this contract, shall be acting in their individual capacity and not as agents, employees, partners, joint ventures or associates of one another. The employees or agents of one party shall not be construed to be the employees or agents of the other party for any purpose whatsoever.

The Contractor accepts full responsibility for payment of unemployment insurance, workers compensation, social security, income tax deductions and any other taxes or payroll deductions required by law for its employees engaged in work authorized by this contract.

### 1.23. Worker Misclassification

The Contractor and all lower tiered subcontractors under the Contractor shall properly classify workers as employees rather than independent contractors and treat them accordingly for purposes of workers' compensation insurance coverage, unemployment taxes, social security taxes, and income tax withholding. Failure to do so may result in contract termination.

### 1.24. Immigration and Reform Control Act of 1986 (IRCA)

All contractors are expected to comply with the Immigration and Reform Control Act of 1986 (IRCA), as may be amended from time to time. This Act, with certain limitations, requires the verification of the employment status of all individuals who were hired on or after November 6, 1986, by the Contractor as well as any subcontractor or sub-contractors. The usual method of verification is through the Employment Verification (I-9) Form.

The Contractor hereby certifies without exception that such Contractor has complied with all federal and state laws relating to immigration and reform. Any misrepresentation in this regard or any employment of persons not authorized to work in the United States constitutes a material breach and, at the State's option, may subject the contract to termination for cause and any applicable damages.

Unless provided otherwise herein, all contractors are expected to be able to produce for the State any documentation or other such evidence to verify Contractor's IRCA compliance with any provision, duty, certification or like item under the contract.

### 1.25. Proof of Insurance

Upon request, the Contractor shall present an affidavit of Worker's Compensation, Public Liability, and Property Damage Insurance to Procurement and Contracts.

### 1.26. Conflict of Interest

The Contractor shall not knowingly employ, during the period of this contract or any extensions to it, any professional personnel who are also in the employ of the State and providing services involving this contract or services similar in nature to the scope of this contract to the State. Furthermore, the Contractor shall not knowingly employ, during the period of this contract or any extensions to it, any state employee who has participated in the making of this contract until at least two years after his/her termination of employment with the State.

### 1.27. Nondiscrimination and Workplace Safety

The Contractor agrees to abide by all federal, state and local laws, and rules and regulations prohibiting discrimination in employment and controlling workplace safety. Any violations of applicable laws or rules or regulations may result in termination of this contract.

### 1.28. Confidentiality

The Contractor may have access to private or confidential data maintained by State to the extent necessary to carry out its responsibilities under this contract. Contractor must comply with all the requirements of the Kansas Open Records Act (K.S.A. 45-215 et seq.) in providing services under this contract. Contractor shall accept full responsibility for providing adequate supervision and training to its agents and employees to ensure compliance with the Act. No private or confidential data collected, maintained or used in the course of performance of this contract shall be disseminated by either party except as authorized by statute, either during the period of the contract or thereafter. Contractor agrees to return any or all data furnished by the State promptly at the request of State in whatever form it is maintained by Contractor. On the termination or expiration of this contract, Contractor shall not use any of such data or any material derived from the data for any purpose and, where so instructed by State, shall destroy or render it unreadable.

### 1.29. Environmental Protection

The Contractor shall abide by all federal, state and local laws, and rules and regulations regarding the protection of the environment. The Contractor shall report any violations to the applicable governmental agency. A violation of applicable laws or rule or regulations may result in termination of this contract for cause.

## 1.30. Care of State Property

The Contractor shall be responsible for the proper care and custody of any state owned personal tangible property and real property furnished for Contractor's use in connection with the performance of this contract. The Contractor shall reimburse the State for such property's loss or damage caused by the Contractor, except for normal wear and tear.

## 1.31. Prohibition of Gratuities

Neither the Contractor nor any person, firm or corporation employed by the Contractor in the performance of this contract shall offer or give any gift, money or anything of value or any promise for future reward or compensation to any State employee at any time.

## 1.32. Retention of Records

Unless the State specifies in writing a different period of time, the Contractor agrees to preserve and make available at reasonable times all of its books, documents, papers, records and other evidence involving transactions related to this contract for a period of five (5) years from the date of the expiration or termination of this contract.

Matters involving litigation shall be kept for one (1) year following the termination of litigation, including all appeals, if the litigation exceeds five (5) years.

The Contractor agrees that authorized federal and state representatives, including but not limited to, personnel of the using agency; independent auditors acting on behalf of state and/or federal agencies shall have access to and the right to examine records during the contract period and during the five (5) year post contract period. Delivery of and access to the records shall be within five (5) business days at no cost to the state.

## 1.33. Off-Shore Sourcing

If, during the term of the contract, the Contractor or subcontractor plans to move work previously performed in the United States to a location outside of the United States, the Contractor shall immediately notify the Procurement and Contracts and the respective agency in writing, indicating the desired new location, the nature of the work to be moved and the percentage of work that would be relocated. The Director of Purchases, with the advice of the respective agency, must approve any changes prior to work being relocated. Failure to obtain the Director's approval may be grounds to terminate the contract for cause.

## 1.34. On-Site Inspection

Failure to adequately inspect the premises shall not relieve the Contractor from furnishing without additional cost to the State any materials, equipment, supplies or labor that may be required to carry out the intent of this Contract.

## 1.35. Indefinite Quantity Contract

This is an open-ended contract between the Contractor and the State to furnish an undetermined quantity of a good or service in a given period of time. The quantities ordered will be those actually required during the contract period, and the Contractor will deliver only such quantities as may be ordered. No guarantee of volume is made. An estimated quantity based on past history or other means may be used as a guide.

## 1.36. Prices

Prices shall remain firm for the entire contract period and subsequent renewals. Prices shall be net delivered, including all trade, quantity and cash discounts. Any price reductions available during the contract period shall be offered to the State of Kansas. Failure to provide available price reductions may result in termination of the contract for cause.

## 1.37. Payment

Payment Terms are Net 30 days. Payment date and receipt of order date shall be based upon K.S.A. 75-6403(b). This Statute requires state agencies to pay the full amount due for goods or services on or before the 30th calendar day after the date the agency receives such goods or services or the bill for the goods and services, whichever is later, unless other provisions for payment are agreed to in writing by the Contractor

and the state agency. NOTE: If the 30th calendar day noted above falls on a Saturday, Sunday, or legal holiday, the following workday will become the required payment date.

Payments shall not be made for costs or items not listed in this contract.

Payment schedule shall be on a frequency mutually agreed upon by both the agency and the Contractor.

## 1.38. Accounts Receivable Set-Off Program

If, during the course of this contract the Contractor is found to owe a debt to the State of Kansas, a state agency, municipality, or the federal government, agency payments to the Contractor may be intercepted / setoff by the State of Kansas. Notice of the setoff action will be provided to the Contractor. Pursuant to K.S.A. 75-6201 et seq, Contractor shall have the opportunity to challenge the validity of the debt. The Contractor shall credit the account of the agency making the payment in an amount equal to the funds intercepted.

K.S.A. 75-6201 et seq. allows the Director of Accounts & Reports to setoff funds the State of Kansas owes Contractors against debts owed by the Contractors to the State of Kansas, state agencies, municipalities, or the federal government. Payments setoff in this manner constitute lawful payment for services or goods received. The Contractor benefits fully from the payment because its obligation is reduced by the amount subject to setoff.

## 1.39. Federal, State and Local Taxes

Unless otherwise specified, the contracted price shall include all applicable federal, state and local taxes. The Contractor shall pay all taxes lawfully imposed on it with respect to any product or service delivered in accordance with this Contract. The State of Kansas is exempt from state sales or use taxes and federal excise taxes for direct purchases. These taxes shall not be included in the contracted price. Upon request, the State shall provide to the Contractor a certificate of tax exemption.

The State makes no representation as to the exemption from liability of any tax imposed by any governmental entity on the Contractor.

## 1.40. Debarment of State Contractors

Any Contractor who defaults on delivery or does not perform in a satisfactory manner as defined in this Agreement may be barred for up to a period of three (3) years, pursuant to K.S.A. 75-37,103, or have its work evaluated for pre-qualification purposes. Contractor shall disclose any conviction or judgment for a criminal or civil offense of any employee, individual or entity which controls a company or organization or will perform work under this Agreement that indicates a lack of business integrity or business honesty. This includes (1) conviction of a criminal offense as an incident to obtaining or attempting to obtain a public or private contract or subcontract or in the performance of such contract or subcontract; (2) conviction under state or federal statutes of embezzlement, theft, forgery, bribery, falsification or destruction of records, receiving stolen property; (3) conviction under state or federal antitrust statutes; and (4) any other offense to be so serious and compelling as to affect responsibility as a state contractor. For the purpose of this section, an individual or entity shall be presumed to have control of a company or organization if the individual or entity directly or indirectly, or acting in concert with one or more individuals or entities, owns or controls 25 percent or more of its equity, or otherwise controls its management or policies. Failure to disclose an offense may result in the termination of the contract.

## 1.41. Materials and Workmanship

The Contractor shall perform all work and furnish all supplies and materials, machinery, equipment, facilities, and means, necessary to complete all the work required by this Contract, within the time specified, in accordance with the provisions as specified.

The Contractor shall be responsible for all work put in under these specifications and shall make good, repair and/or replace, at the Contractor's own expense, as may be necessary, any defective work, material, etc., if in the opinion of agency and/or Procurement and Contracts said issue is due to imperfection in material, design, workmanship or Contractor fault.

### 1.42. Industry Standards
If not otherwise provided, materials or work called for in this contract shall be furnished and performed in accordance with best established practice and standards recognized by the contracted industry and comply with all codes and regulations which shall apply.

### 1.43. Implied Requirements
All products and services not specifically mentioned in this contract, but which are necessary to provide the functional capabilities described by the specifications, shall be included.

### 1.44. Inspection
The State reserves the right to reject, on arrival at destination, any items which do not conform with specification of the Contract.

### 1.45. Acceptance
No contract provision or use of items by the State shall constitute acceptance or relieve the Contractor of liability in respect to any expressed or implied warranties.

### 1.46. Ownership
All data, forms, procedures, software, manuals, system descriptions and work flows developed or accumulated by the Contractor under this contract shall be owned by the using agency. The Contractor may not release any materials without the written approval of the using agency.

### 1.47. Information/Data
Any and all information/data required to be provided at any time during the contract term shall be made available in a format as requested and/or approved by the State.

### 1.48. Certification of Materials Submitted
The Bid document, together with the specifications set forth herein and all data submitted by the Contractor to support their response including brochures, manuals, and descriptions covering the operating characteristics of the item(s) proposed, shall become a part of the contract between the Contractor and the State of Kansas. Any written representation covering such matters as reliability of the item(s), the experience of other users, or warranties of performance shall be incorporated by reference into the contract.

### 1.49. Transition Assistance
In the event of contract termination or expiration, Contractor shall provide all reasonable and necessary assistance to State to allow for a functional transition to another vendor.

### 1.50. Integration
This contract, in its final composite form, shall represent the entire agreement between the parties and shall supersede all prior negotiations, representations or agreements, either written or oral, between the parties relating to the subject matter hereof. This Agreement between the parties shall be independent of and have no effect on any other contracts of either party.

### 1.51. Modification
This contract shall be modified only by the written agreement and approval of the parties. No alteration or variation of the terms and conditions of the contract shall be valid unless made in writing and signed by the parties. Every amendment shall specify the date on which its provisions shall be effective.

### 1.52. Severability
If any provision of this contract is determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this contract shall not be affected and each provision of this contract shall be enforced to the fullest extent permitted by law.

## 2. Specifications

The Office of the Attorney General (OAG) is issuing multiple contracts from attorneys and law firms to represent the State of Kansas (or its officers or employees) in various types of civil litigation. Attorneys or law firms that are awarded a contract shall be placed on a list of attorneys or firms that are eligible for use by the Office of Attorney General to provide legal services to eligible clients in specific matters under the Kansas Tort Claims Act or other applicable sources of litigation authority. With the approval of the Office of Attorney General, other state agencies will be able to hire firms on the list for civil litigation matters.

### 2.1.  Scope of Services

Contractor will handle civil litigation for the OAG in one or more of the following areas: class actions, constitutional challenges to state laws and regulations, consumer protection matters, employment, environmental, Administrative Procedure Act litigation or other suits involving the federal government, Kansas Judicial Review Act, personal injury/tort, professional licensure and discipline, and section 1983/civil rights. Proposals concerning areas of law not listed, including work as either defense or plaintiff's counsel for the Office of Attorney General, are welcome.

The OAG anticipates the Contractor will provide representation of the State of Kansas in all aspects of litigation related to designated civil matters. Services shall include, but not be limited to, appropriate factual and legal investigation of claims; filing and responding to motions and other pleadings; conducting appropriate discovery; engaging appropriate expert, consulting, and litigation support services; negotiating with opposing counsel; appearing on behalf of the State in hearings and at trial(s); prosecuting or defending appeals; and taking all appropriate steps to collect or enforce any recovery, injunctive relief, or settlement that may be obtained and/or negotiated. In addition to all other appropriate and available relief, Contractor may be required to pursue attorneys' fees and expenses and costs as part of any appropriate claim and/or settlement. Firms seeking this appointment should be prepared to go to trial as deemed appropriate by the Attorney General.

In addition, the Contractor will be required to meet, coordinate with, and submit interim reports to the Attorney General or his designee as requested regarding the nature, progress, costs, and extent of the legal services rendered or remaining to be completed.  At a minimum, interim status reports must include current status, any significant events that have occurred since the previous status report, and a prospective analysis of any significant future events.

a.  Contractor shall timely provide to the OAG:
> All relevant case information and documents to the OAG, including pleadings, discovery requests, and motions;
> Notice of all case activity, including court dates, discovery deadlines, and court rulings;
> Updates of all case activity as requested, including negotiations and appeals;
> Suggestions for case strategy and other information needed to determine other case actions; and
> Settlement offers.

b.  Contractor shall coordinate the provision of assigned legal services with the Attorney General, his designated deputy, and such other counsel as may be appointed by the Attorney General. Consistent with K.S.A. 75-702, K.S.A. 75-6106, and other applicable law, the Attorney General, by and through his deputy designated to oversee a particular matter, shall have final authority over all aspects of any litigation, including the course and conduct thereof. At no time shall Contractor bring, settle, or compromise claims in any action without the express authorization of the Attorney General or his designee.

c.  Contractor shall be required to comply with the Attorney General's standard outside counsel terms and conditions, which will be provided later.

d.  At the sole discretion of the Attorney General, attorneys at the OAG may be assigned to work with Contactor attorneys and may, or may not, appear in filed litigation.

e.  Contractor may not assign work to attorneys outside its law firm without express written consent of the Attorney General.

f.   Waiver of conflicts may only be given by the Attorney General or Chief Deputy Attorney General. This authority may not be further delegated. While assigned to any matter under this contract, Contractor may not represent any person or entity in a matter, proceeding, or lawsuit against the State of Kansas or any of its agencies, instrumentalities, or officers unless approved in writing in advance by the Attorney General or Chief Deputy Attorney General.

g.  Contractor must maintain professional liability insurance for each claim of at least $100,000 per attorney or $500,000 (whichever is less) and aggregate yearly liability of at least $300,000 per attorney or $2 million (whichever is less).

### 2.2.   Required Fee Structure Information

Legal services of the Contractor will be paid through a negotiated hourly fee arrangement. *Fees must remain firm for at least three years.*

All fee proposals shall be capped at no more than $1 million per matter, including any appeal. However, multiple matters may be assigned to Contractor under this contract, and reasonable costs and expenses charged to the state will not count against this cap.

Fee rate contracts may be subject to the Kansas Professional Services Sunshine Act (K.S.A. 75-37,130 *et seq*). Contractor will be expected to comply, and assist (in a timely fashion) any State of Kansas agency with responsibilities under the Act.

### 2.3.   Costs and Expenses

The State of Kansas will provide for reimbursement of reasonable costs and expenses. However, such costs or expenses *may not* include:

photocopying or equipment charges

daily lodging or meals and incidentals in excess of the U.S. General Services Administration's published per diem rate for the applicable date and location

mileage in excess of 67¢/mile

airfare or other transportation expenses that exceed the cost of an ordinary coach fare

expenses for computer-assisted legal research

Contract ID: 00000000000000000000056578
Event ID:  EVT0009697
Page 11

## 3. Cost Sheet

Michael Francisco & Chris Murray: $600
Other Partners: $400
Associates: $300 Paralegals: $120

Costs and Expenses:

First & Fourteenth PLLC will charge for out-of-pocket expenses incurred by us in representing the State, subject to the terms of the conditions of the Request for Proposal, including in § 4.2(E)a.-e. Notwithstanding anything in section 4.2(E) to the contrary, these expenses include (but are not limited to) postage; messengers; filing fees; service of process fees; transcript and deposition fees; copy and printing fees for briefs; appendices, other documents; and/or compilation of documents required by court rule or order to be printed in hard copy; overnight deliveries; travel expenses; expert witness fees; investigative fees; and other outside vendor fees. Generally, we advance funds on a client's behalf for such expenses and include them in our invoices to you. For significant ex- penses, we may require you to pay the party providing those services directly or that you advance to us the estimated amount for such items before incurring those expenses.

## 4. Contractual Provisions Attachment

DA-146a Rev. 07/19

### 4.1. Important

The parties agree that the following provisions are hereby incorporated into the contract to which it is attached and made a part thereof, said contract being the 25th day of September, 2024.

### 4.2. Terms Herein Controlling Provisions

It is expressly agreed that the terms of each and every provision in this attachment shall prevail and control over the terms of any other conflicting provision in any other document relating to and a part of the contract in which this attachment is incorporated. Any terms that conflict or could be interpreted to conflict with this attachment are nullified.

### 4.3. Kansas Law and Venue

This contract shall be subject to, governed by, and construed according to the laws of the State of Kansas, and jurisdiction and venue of any suit in connection with this contract shall reside only in courts located in the State of Kansas.

### 4.4. Termination Due to Lack of Funding Appropriation

If, in the judgment of the Director of Accounts and Reports, Department of Administration, sufficient funds are not appropriated to continue the function performed in this agreement and for the payment of the charges hereunder, State may terminate this agreement at the end of its current fiscal year. State agrees to give written notice of termination to contractor at least thirty (30) days prior to the end of its current fiscal year and shall give such notice for a greater period prior to the end of such fiscal year as may be provided in this contract, except that such notice shall not be required prior to ninety (90) days before the end of such fiscal year. Contractor shall have the right, at the end of such fiscal year, to take possession of any equipment provided State under the contract. State will pay to the contractor all regular contractual payments incurred through the end of such fiscal year, plus contractual charges incidental to the return of any such equipment. Upon termination of the agreement by State, title to any such equipment shall revert to contractor at the end of the State's current fiscal year. The termination of the contract pursuant to this paragraph shall not cause any penalty to be charged to the agency or the contractor.

### 4.5. Disclaimer of Liability

No provision of this contract will be given effect that attempts to require the State of Kansas or its agencies to defend, hold harmless, or indemnify any contractor or third party for any acts or omissions. The liability of the State of Kansas is defined under the Kansas Tort Claims Act (K.S.A. 75-6101, et seq.).

### 4.6. Anti-Discrimination Clause

The contractor agrees: (a) to comply with the Kansas Act Against Discrimination (K.S.A. 44 1001, et seq.) and the Kansas Age Discrimination in Employment Act (K.S.A. 44-1111, et seq.) and the applicable provisions of the Americans With Disabilities Act (42 U.S.C. 12101, et seq.) (ADA), and Kansas Executive Order No. 19-02, and to not discriminate against any person because of race, color, gender, sexual orientation, gender identity or expression, religion, national origin, ancestry, age, military or veteran status, disability status, marital or family status, genetic information, or political affiliation that is unrelated to the person's ability to reasonably perform the duties of a particular job or position; (b) to include in all solicitations or advertisements for employees, the phrase "equal opportunity employer"; (c) to comply with the reporting requirements set out at K.S.A. 44-1031 and K.S.A. 44-1116; (d) to include those provisions in every subcontract or purchase order so that they are binding upon such subcontractor or vendor; (e) that a failure to comply with the reporting requirements of (c) above or if the contractor is found guilty of any violation of such acts by the Kansas Human Rights Commission, such violation shall constitute a breach of contract and the contract may be cancelled, terminated or suspended, in whole or in part, by the contracting state agency or the Kansas Department of Administration; (f) Contractor agrees to comply with all applicable state and federal anti-discrimination laws and regulations; (g) Contractor agrees all hiring must be on the basis of individual merit and qualifications, and discrimination or harassment of persons for the reasons stated above is prohibited; and (h) if it is determined that the contractor has violated the provisions of any

portion of this paragraph, such violation shall constitute a breach of contract and the contract may be canceled, terminated, or suspended, in whole or in part, by the contracting state agency or the Kansas Department of Administration.

### 4.7. Acceptance of Contract

This contract shall not be considered accepted, approved or otherwise effective until the statutorily required approvals and certifications have been given.

### 4.8. Arbitration, Damages, Warranties

Notwithstanding any language to the contrary, no interpretation of this contract shall find that the State or its agencies have agreed to binding arbitration, or the payment of damages or penalties. Further, the State of Kansas and its agencies do not agree to pay attorney fees, costs, or late payment charges beyond those available under the Kansas Prompt Payment Act (K.S.A. 75-6403), and no provision will be given effect that attempts to exclude, modify, disclaim or otherwise attempt to limit any damages available to the State of Kansas or its agencies at law, including but not limited to, the implied warranties of merchantability and fitness for a particular purpose.

### 4.9. Representative's Authority to Contract

By signing this contract, the representative of the contractor thereby represents that such person is duly authorized by the contractor to execute this contract on behalf of the contractor and that the contractor agrees to be bound by the provisions thereof.

### 4.10. Responsibility for Taxes

The State of Kansas and its agencies shall not be responsible for, nor indemnify a contractor for, any federal, state or local taxes which may be imposed or levied upon the subject matter of this contract.

### 4.11. Insurance

The State of Kansas and its agencies shall not be required to purchase any insurance against loss or damage to property or any other subject matter relating to this contract, nor shall this contract require them to establish a "self-insurance" fund to protect against any such loss or damage. Subject to the provisions of the Kansas Tort Claims Act (K.S.A. 75-6101, et seq.), the contractor shall bear the risk of any loss or damage to any property in which the contractor holds title.

### 4.12. Information

No provision of this contract shall be construed as limiting the Legislative Division of Post Audit from having access to information pursuant to K.S.A. 46-1101, et seq.

### 4.13. The Eleventh Amendment

"The Eleventh Amendment is an inherent and incumbent protection with the State of Kansas and need not be reserved, but prudence requires the State to reiterate that nothing related to this contract shall be deemed a waiver of the Eleventh Amendment."

### 4.14. Campaign Contributions / Lobbying

Funds provided through a grant award or contract shall not be given or received in exchange for the making of a campaign contribution. No part of the funds provided through this contract shall be used to influence or attempt to influence an officer or employee of any State of Kansas agency or a member of the Legislature regarding any pending legislation or the awarding, extension, continuation, renewal, amendment or modification of any government contract, grant, loan, or cooperative agreement.

# EXHIBIT B

5

| Work Date | Timekeeper Name | Work Hours | Narrative |
|---|---|---|---|
| 2/1/2026 | Mark P. Johnson | 1.40 | Review KORA responses from District (.4); review email from Mr. Rosenthal with proposed strategy for responding to KORA responses with mitigation letter (.2); review draft of mitigaiton letter (.2); make proposed revisions to mitigation letter and send by email to Mr. Rosenthal (.6). |
| 2/1/2026 | Harrison M. Rosenthal | 5.00 | Review District's January 30 KORA response, including limited production, ManagedMethods contract assertion, and fee demands (1.2); analyze District's three-business-day mitigation deadline (February 4) and withdrawal threat (0.6); draft narrowing email for Ashlyn and P.M. to transmit (1.8); circulate draft to team for Monday review (0.6); prepare parallel-track plan to preserve KORA requests while keeping Rule 12(c) record intact (0.8). |
| 2/2/2026 | Harrison M. Rosenthal | 2.30 | Incorporate M. Johnson edits into narrowing letter (0.7); confirm elapsed-days calculation (97 days since October 30, 2025 KORA requests; 96 days since District acknowledgment) (0.5); request B. Conner pull file-stamped KORA packets from FAC Exhibits W and X (0.5); circulate updated narrowing letter to team (0.6). |
| 2/4/2026 | Harrison M. Rosenthal | 1.50 | Finalize KORA narrowing letter (1.0); transmit narrowing letter to clients with instructions to copy recipients and attach KORA packets (0.5). |
| 2/6/2026 | Mark P. Johnson | 1.20 | Review and analyze defendant's response to motion for judgment on the pleadings on KORA claims. |
| 2/10/2026 | Mark P. Johnson | 1.30 | Review and analyze defendants' response to KORA motion to dismiss (.8); confer with Mr. Rosenthal concerning drafting reply (.5). |
| 2/11/2026 | Rebecca Hughes Parker | 1.40 | Review KORA response and latest papers (1).2; confer w H Rosenthal on strategy (.2) |
| 2/11/2026 | Harrison M. Rosenthal | 3.80 | Review defendants' response to MJP (1.2); analyze reply deadline and briefing schedule (0.6); review KORA correspondence and narrowing status (1.4); forward KORA response materials to P. Bednasek (0.4). |
| 2/12/2026 | Harrison M. Rosenthal | 0.70 | Forward KORA response email to P. Bednasek (0.3); review P.M.'s KORA materials (0.4). |
| 2/13/2026 | Parker Bednasek | 6.50 | Research KORA issues for reply to judgment on the pleadings. |
| 2/17/2026 | Mark P. Johnson | 0.90 | Works on drafts of reply to Defendants' response to KORA motion to dismiss (.9). |
| 2/19/2026 | Mark P. Johnson | 1.30 | Review and revise drafts of reply to response to KORA motion and motion for oral argument. |
| 2/19/2026 | Harrison M. Rosenthal | 7.50 | Revise draft reply sections addressing KORA three-business-day rule and admissions (3.0); analyze defendants' response to identify rebuttal points (1.2); research KORA authorities for supporting citations (0.9); revise reply to integrate research and record citations (1.6); circulate working draft to team for comments (0.8). |
| 2/23/2026 | Rebecca Hughes Parker | 1.40 | Edit opposition to KORA motion (1); review other filings (.4) |
| 3/9/2026 | Harrison M. Rosenthal | 5.40 | Revise and finalize opposition to motion to stay discovery, incorporating KORA three-day-clock timeline, Rule 26 redundancy argument, and fee-shifting basis under K.S.A. 45-222(d) (3.6); insert record citations and case-law authorities (Escalante, Sullivan, Cetin, Kutilek, Chilcott) (1.8). |
| 3/12/2026 | Harrison M. Rosenthal | 0.50 | Review client-forwarded District KORA response (revised cost estimate of $6,392.32, $200/hr attorney-review rate, April 9 earliest date) (0.5). |
| 3/13/2026 | Harrison M. Rosenthal | 8.00 | Review 3/12 KORA estimate/conferral sequence to frame five-page position statement under Kansas Open Records Act (KORA) issues (1.0); draft position-statement outline and headings (1.6); compile authorities and record cites for KORA timing and discovery-stay standards (1.4); draft position-statement sections addressing KORA independence and Rule 26 scheduling deferral (2.2); prepare exhibits list pulling 3/12 estimate and 4:23 p.m. conferral email (0.6); circulate draft to team for weekend edits and filing plan (0.6); confirm Monday action items and internal deadlines (0.6). |
| 3/14/2026 | Harrison M. Rosenthal | 7.00 | Review client-forwarded 3/12 KORA response PDF (0.3); draft motion to clarify discovery-conference scope (2.6); draft request for conference protocol order (0.6); integrate authorities and record citations (1.6); prepare Exhibits A–B from KORA estimate and defense conferral email (0.9); revise and finalize draft for team review (0.8); transmit draft and propose filing timeline (0.2). |

| Date | Timekeeper | Hours | Description |
|---|---|---|---|
| 3/18/2026 | Harrison M. Rosenthal | 3.00 | meet-and-confer with defense to narrow issues to Kansas Open Records Act compliance and plan joint chambers update (0.3); draft and refine joint email to chambers clarifying position-statement and conference deadlines and hold submission pending clarification (0.8); update position statement to reflect revised timing and hold for April 3 submission (1.9). |
| 3/26/2026 | Harrison M. Rosenthal | 0.70 | review Kansas Attorney General outside-counsel rate information for potential use in future fee application support (0.7). |
| 4/7/2026 | Mark P. Johnson | 1.70 | Review latest pleadings (.8); confer with team concerning responses to KORA issues (.5); review and revise draft of latest pleading on KORA matters (.4). |
| 4/8/2026 | Mark P. Johnson | 3.10 | Review and analyze court's ruling on pending motions concerning defendants' motion for partial dismissal, plaintiffs' motion for decision on KORA claims, and plaintiffs' motion for argument on motions (2.8); telephone call with Mr. Rosenthal concerning court's decision (.3). |
| 4/8/2026 | Rebecca Hughes Parker | 2.00 | Review and analyze decision on KORA and MTD and emails with team re same Review and analyze Memorandum and Order resolving motion to dismiss and Kansas Open Records Act claims, including KORA liability ruling, compliance deadline, fee-hearing posture, preserved constitutional claims, dismissed |
| 4/8/2026 | Harrison M. Rosenthal | 2.30 | defendants, and abandonment-based rulings (2.3). Research KORA liability ruling, compliance deadline, good-faith and fee hearing, preserved constitutional claims, dismissed parties and claims, and next-step strategy (2.0); compile internal memo regarding ruling, adverse abandonment-based issues, and appellate posture (0.8). |
| 4/9/2026 | Harrison M. Rosenthal | 2.80 | Telephone calls (2) with Mr. Grant concerning defendants' request for additional time to respond per court's order on KORA request and Defendants' interpretation of court's order with respect to identification and production of documents (.7); confer with Mr. Rosenthal on extension and arrangement for production of documents (.2); review defendants' motion for additional time (.3). |
| 4/10/2026 | Mark P. Johnson | 1.20 | Confer with M. Johnson, R. Parker, J. Margolies, B. Conner, and opposing counsel regarding defendants' proposed understanding of April 13 Kansas Open Records Act compliance obligations (0.4); analyze A. Rupe letter attempting to narrow Court-ordered compliance obligations and assess response strategy to preserve plaintiffs' rights (0.5); draft and revise response to defense counsel rejecting any modification of Court order and preserving plaintiffs' objections to delayed rolling production (0.6); participate in weekly case meeting regarding compliance deadline, production posture, and April 23 good-faith/fees hearing strategy (0.3); coordinate with team and reporter regarding Court order |
| 4/10/2026 | Harrison M. Rosenthal | 2.00 | and production-deadline developments (0.2). |
| 4/11/2026 | Harrison M. Rosenthal | 7.00 | Analyze April 8 order, abandonment ruling, dismissed-party posture, and need to preserve Rule 12 merits issues for de novo appellate review (1.3); research standards governing reconsideration, clarification, waiver, party dismissal, and appellate-review framing (1.1); draft motion for reconsideration or clarification requesting merits-based Rule 12 ruling and preserving appellate posture (2.4); confer with S. Fifer regarding strategic framing, procedural vehicle, and de novo-review preservation issue (0.5); revise motion structure into concise numbered-paragraph filing focused on clarification rather than interlocutory certification (0.8); prepare team update regarding reconsideration strategy, Kansas Open Records Act compliance posture, and preserved constitutional claims (0.5); coordinate related media-law and public-records outreach concerning the Court's order and case developments (0.4). |

| Date | Name | Hours | Description |
|---|---|---|---|
| 4/13/2026 | Harrison M. Rosenthal | 9.80 | Review Defendant's KORA response, proposed protective order, rolling-production position, claimed 27,000-item review burden, and request that student journalists not share produced materials (1.2); analyze noncompliance with April 8 and April 10 orders, including failure to produce records, provide subsection-specific exemption citations, and identify place of inspection or production by court-ordered deadline (1.3); draft emergency motion to enforce April 8 order, require show cause, and reject unilateral no-sharing demand (3.0); research and integrate authority regarding Rule 70, inherent enforcement authority, civil contempt, KORA production obligations, fee-hearing standards, and student-journalist publication rights (1.9); prepare exhibit and record-citation framework using April 10 correspondence, April 13 KORA response, and proposed protective order (1.2); confer with M. Johnson, J. Margolies, R. Parker, P. Bednasek, and B. Conner regarding enforcement strategy, client communications, cite-check, and filing timing (1.2). |
| 4/14/2026 | Harrison M. Rosenthal | 4.30 | Analyze defendant's April 13 noncompliance, rolling-production proposal, proposed protective order, and extra-statutory no-sharing demand in light of Court's April 8 and April 10 orders (0.9); research and apply enforcement, civil contempt, segregability, exemption-citation, public-records, and student-journalism authorities for motion to enforce and show cause (1.0); draft motion to enforce Court's order, require show cause, and reject defendant's unilateral no-sharing demand (1.4); revise motion and exhibits to incorporate written record, team edits, narrowed relief, and filing-ready argument structure (1.0). |
| 4/15/2026 | Harrison M. Rosenthal | 6.50 | Review Defendant's response to motion to enforce, attached exhibits, rolling-production position, and proposed protective-order arguments (1.4); analyze issues for reply and April 23 hearing regarding delayed production, no-sharing demand, subsection-specific withholding obligations, and treatment of student records (1.5); assess first KORA production, expected rolling productions, FERPA issues, and controlled-unclassified-information handling questions for document-review platform setup (1.0); coordinate Relativity upload, review access, and team workflow for first production volume and anticipated additional productions (0.7); confer with team regarding Defendant's filing, reconsideration deadline, protective-order posture, and enforcement strategy (1.2); update clients regarding KORA response, production status, document access, and next steps (0.7). |
| 4/16/2026 | Harrison M. Rosenthal | 4.50 | Analyze defendant's Kansas Open Records Act response, proposed protective order, confidentiality assertions, and rolling-production posture following motion to enforce (0.9); assess implications of defendant's production process, claimed exemptions, and no-sharing demand for student-journalist clients and April 23 good-faith/fees hearing (0.8); coordinate with P. Bednasek and T. Ryan regarding protective-order response, production-access issues, and review workflow (0.6); analyze litigation-support cost estimate and e-discovery needs for review of LBOE production (0.5); review Court filing notice and conformed motion materials regarding motion to enforce and show cause (0.3); prepare guidance regarding treatment of non-exempt Kansas Open Records Act materials absent court-entered protective order (0.6); confer with M. Johnson, J. Margolies, R. Parker, and P. Bednasek regarding production review, confidentiality objections, and next filing posture (0.8). |
| 4/16/2026 | Jacob Margolies | 1.30 | Review defendant's response to motion for order to show cause and review and respond to email from H. Rosenthal regarding same. |
| 4/17/2026 | Mark P. Johnson | 1.70 | Review defendants' response to judge's order on KORA issues (.4); conference call among team to discuss defendants' response and preparation of memorandum for court in preparation for April 23 hearing (.6); draft declaration for Barbara Tholen on District's charging student KORA requestors for document production (.6); review Mr. Rosenthal's comments on Tholen draft (.1). |

| Date | Name | Hours | Description |
|---|---|---|---|
| 4/17/2026 | Harrison M. Rosenthal | 6.10 | review Defendant's LBOE002 production notice, Bates range, access instructions, password logistics, confidentiality designation, and rolling-production implications (0.8); analyze production timing, confidentiality designations, no-sharing demand, and protective-order issues for enforcement and fee-hearing strategy (1.3); coordinate litigation-support upload, access, and review workflow for LBOE001 and LBOE002 production materials (0.9); assess produced records for issues bearing on KORA delay, District surveillance practices, vendor transition, and hearing preparation (2.3); update clients regarding second KORA production, document access, review process, and next steps (0.8). |
| 4/18/2026 | Mark P. Johnson | 0.70 | Review and revise Mr. Rosenthal's draft of memorandum to court for April 23 hearing, including review of proposed declarations to be provided as part of memorandum. |
| 4/18/2026 | Harrison M. Rosenthal | 11.40 | Analyze District's KORA production, confidentiality stamps, unredacted student information, no-sharing demand, and related student-journalist reporting for April 23 hearing strategy (1.3); analyze internal District production documents regarding "g-word" references, ManagedMethods talking points, board communications, media inquiries, and coordinated public messaging (1.4); research and apply Kansas Open Records Act fee-shifting, bad-faith, fee-demand, exemption, segregation, and public-access authorities for prehearing memorandum (1.2); draft and revise Plaintiffs' prehearing memorandum supporting finding of no good faith and award of attorney fees and costs (2.6); draft and revise declarations for B. Tholen, S. Kennedy, A. Tell, and P.M. addressing prior KORA practice, fee demands, delayed production, confidentiality labels, and chilling effect on student journalism (1.7); identify, organize, and cite supporting exhibits including Budget articles, LBOE production excerpts, fee materials, and District communications (1.1); confer with M. Johnson regarding B. Tholen declaration, factual support, and prehearing evidentiary presentation (0.6); prepare team email to M. Johnson, R. Parker, J. Margolies, P. Bednasek, and T. Ryan regarding Monday priorities, exhibit pulls, declarations, and prehearing filing tasks (0.6); revise argument structure to integrate Court's April 8, April 10, and April 14 orders with post-order conduct and hearing relief (0.6); coordinate final exhibit and declaration assignments for filing preparation and hearing record (0.3). |
| 4/21/2026 | Parker Bednasek | 2.00 | Prepare pre-hearing statement filings. |
| 4/21/2026 | Harrison M. Rosenthal | 9.80 | Draft and revise pre-hearing memorandum regarding District's KORA noncompliance, good-faith hearing issues, delayed rolling production, confidentiality stamps, no-sharing demand, document-dump concerns, and student-journalist publication rights (3.3); research and integrate authority regarding KORA fee standards, protective-order burden, public-records access, First Amendment implications, and limits on treating KORA production as discovery (1.6); revise factual record and exhibit framework using Defendant's response to motion to enforce, production notices, LBOE001 through LBOE003 Bates ranges, student-publication materials, and Lawrence Times reporting (1.3); confer with S. Fifer regarding contempt remedy, confidentiality-stamp issue, fee-hearing posture, client attendance, and argument strategy for April 23 hearing (0.9); confer with P. Bednasek regarding pre-hearing memorandum structure, protective-order arguments, declarations, exhibit selection, cite-check workflow, and hearing presentation (0.8); review LBOE003 production notice, assess continued blanket confidentiality designation, and correspond with defense counsel regarding remaining production volume and confidentiality issues (0.5); coordinate with T. Ryan regarding hearing binder contents, KORA authorities, docket sheet, exhibit tabs, pre-hearing memorandum, reply brief, client copies, and delivery logistics (0.7); review cite-check and exhibit status and prepare revisions for filing package and hearing binders (0.7). |
| 4/22/2026 | Mark P. Johnson | 7.00 | Review and finalize pleading on KORA bad faith issues (2.8); prepare witnesses for hearing testimony (2.7); draft cross-examination for hearing (1.5). |
| 4/22/2026 | Parker Bednasek | 4.40 | Assist H. Rosenthal in preparation for evidentiary hearing on bad faith. |

| Date | Timekeeper | Hours | Description |
|---|---|---|---|
| 4/22/2026 | Harrison M. Rosenthal | 13.00 | Draft and revise pre-hearing statement regarding KORA fee entitlement, District's rolling productions, blanket confidentiality designations, no-sharing demand, production delays, and good-faith hearing issues (3.2); draft and revise reply in support of motion to enforce, order to show cause, and reject proposed protective order (1.7); incorporate S. Fifer and P. Bednasek edits regarding Attorney General guidance, protective-order burden, public-records access, and hearing remedy (1.1); prepare and revise declarations for B. Tholen, A. Tell, P.M., and S. Kennedy regarding KORA history, student-journalist reporting, confidentiality-designation concerns, and District fee practices (1.5); prepare A. Tell and M. Salisbury for hearing attendance, possible proffer, and potential witness testimony regarding public-records production and publication issues (1.4); review and organize exhibits A through N, including student-publication materials, production correspondence, declarations, and sample KORA production materials (1.2); coordinate cite-check, exhibit labeling, redactions, separate exhibit PDFs, and final filing package with T. Ryan and docketing (0.9); coordinate filing of pre-hearing statement and reply, respond to chambers regarding hearing attendance and witness/evidence issues, and transmit filed materials to clients and reporter (1.0); review LBOE004 and LBOE005 production notices, Bates ranges, passwords, and continued confidentiality designations for use in hearing preparation (0.5); assess unredacted extracted-text issue in KORA production and coordinate preservation of examples for hearing binder and argument preparation (0.3); coordinate hearing binders, authority binders, docket sheet, client copies, and court-facing materials for April 23 hearing (0.2). |
| 4/23/2026 | Mark P. Johnson | 8.00 | Preparation for hearing on KORA bad faith (3.5); participate in hearing in Kansas federal court (4.5). |
| 4/23/2026 | Harrison M. Rosenthal | 11.00 | Review Defendant's witness and exhibit disclosures and revise hearing strategy regarding anticipated testimony from J. Swift, J. Potter, and defense counsel witnesses (0.8); draft cross-examination outlines regarding District search efforts, rolling production timeline, privilege logs, confidentiality designations, no-sharing demand, and basis for delayed KORA compliance (3.6); prepare targeted examination points from production correspondence, LBOE004 through LBOE006 notices, privilege logs, proposed protective order, and April 13 KORA response (1.4); prepare A. Tell and M. Salisbury for hearing attendance, possible proffer, and potential testimony regarding publication concerns and public-records access (1.0); confer with M. Johnson, J. Margolies, P. Bednasek, R. Parker, and S. Fifer regarding witness order, evidentiary issues, remedy request, fee-hearing posture, and cross-examination themes (1.0); appear at evidentiary hearing regarding KORA compliance, good faith, contempt remedy, protective-order request, and publication restrictions (2.6); analyze hearing testimony, witness admissions, and next-step strategy regarding fee entitlement, production defects, privilege-log issues, and further court relief (0.6). |
| 4/24/2026 | Harrison M. Rosenthal | 4.80 | Analyze hearing record notes, defense testimony, counsel withdrawal notice, and implications for fee request, KORA compliance, privilege-log issues, and follow-up relief (1.2); review court request regarding hearing exhibits and prepare response identifying Plaintiffs' exhibit used at hearing and corresponding docket citation (0.4); request transcript cost estimates for expedited delivery options and coordinate preservation of hearing record for fee and post-hearing strategy (0.4); confer with K. Calfee regarding hearing result, KORA posture, production issues, and public-records implications (0.6); confer with S. Lurye regarding hearing result, Gaggle/ManagedMethods records, and related KORA production issues (0.5); review Associated Press KORA materials and compare District's response to student-journalist production for potential use in good-faith and public-records strategy (0.6); update client team regarding AP KORA materials, reporter inquiries, and hearing follow-up (0.4); coordinate internal review of J. Harpt withdrawal notice and related production issues with case team and litigation support (0.4); assess EFF amicus materials and related filings for reporter response and broader student-surveillance litigation context (0.3). |

| Date | Timekeeper | Hours | Description |
|---|---|---|---|
| 4/27/2026 | Harrison M. Rosenthal | 0.60 | Review transcript cost estimates and select three-day hearing transcript option for post-hearing and fee-hearing strategy (0.3); coordinate court-reporter payment logistics and transcript order to preserve hearing record for next-step briefing and fee issues (0.3). |
| 4/30/2026 | Harrison M. Rosenthal | 1.00 | Review April 23 hearing transcript for potential redaction issues, transcript-use restrictions, and implications for Kansas Open Records Act hearing follow-up (0.4); circulate transcript to case team for post-hearing review and strategy assessment (0.2); prepare client communication regarding transcript availability, permissible reporting or quotation from public hearing, and restriction on forwarding transcript during redaction period (0.4). |
| 6/1/2026 | Mark P. Johnson | 0.50 | Review court's decision on KORA bad faith issues. |

# EXHIBIT C

6

**DENTONS**

DENTONS US LLP - 233 SOUTH WACKER DRIVE, CHICAGO, IL 60606

BANK ACCOUNT: CITIBANK
DELAWARE

PAYEE: KRISTINA SCOTT

EE NO.: 170622-1

DATE: 04/27/26

CHECK: 1476864

| OUR REF | INVOICE | INV. DATE | DESCRIPTION | AMOUNT USD |
|---|---|---|---|---|
| 671525 | 04272026 | 04/27/26 | | 792.55 |

CHECK TOTAL $792.55

PAGE 1 of
1

---

ORIGINAL DOCUMENT PRINTED ON CHEMICAL REACTIVE PAPER WITH MICROPRINTED BORDER

**DENTONS**

**DENTONS US LLP**
233 South Wacker Drive
Suite 5900
Chicago, IL 60606

**CHECK # 1476864**

| CHECK DATE | 04/27/26 |
|---|---|

Citibank Delaware    62-20/311
A Subsidiary of Citicorp
One Penn's Way
New Castle, DE 19720

CHECK AMOUNT

**$792.55**

SEVEN HUNDRED NINETY-TWO AND 55/100 DOLLAR(S)

PAY TO THE
ORDER OF

**KRISTINA SCOTT**
**717 SW WINTERWALK LANE**
**LEES SUMMIT, MO 64081**



⑂1476864⑂ ⑉031100209⑈ 38857878⑂