## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JACK TELL; NATASHA TORKZABAN;
MORGAN SALISBURY; OPAL MORRIS;
HENRY FARTHING; SUZANA
KENNEDY; NAOMI SUI PANG; Ashyln
Tell; and P.M., a minor, by and through her
parents MARGARET WEISBROD MORRIS
and JONATHAN MORRIS,

        Plaintiffs,

v.

LAWRENCE USD 497,

        Defendant.

Case No.:  2:25-cv-02428-KHV-GEB

### DEFENDANT'S SUGGESTIONS IN OPPOSITION TO
### PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

Defendant Lawrence USD 497 ("Defendant"), in response to Plaintiffs' Motion for

Attorneys' Fees and Costs Pursuant to Rule 54 (Doc. 86) ("Motion") and the Declaration of Mark

P. Johnson (Doc. 86-1), respectfully submits the following suggestions in opposition:

### INTRODUCTION

Plaintiffs seek $85,355.00 in attorneys' fees and $792.55 in costs pursuant to K.S.A.

§ 45-222(d) and the Court's June 1, 2026 Order.  While Defendant does not contest that the Court's

June 1, 2026 Order (Doc. 79) entitles Plaintiffs to *some* fee award under K.S.A. § 45-222(d),

Plaintiffs' requested fee award substantially overstates a reasonable recovery.  Plaintiffs' counsel

has requested hourly rates that exceed the prevailing market rates in this District, has claimed hours

that are not properly cabined to the KORA bad faith issue, has engaged in pervasive block billing

that prevents meaningful judicial review, and has sought compensation for work that was either

duplicative, supervisory in nature, or attributable to the broader litigation rather than to

178977503.1

enforcement of KORA compliance.  For the reasons set forth below, the Court should reduce the fee award to a sum reflecting the true prevailing rate in this community and hours reasonably expended in addressing Defendant's KORA noncompliance.

## LEGAL STANDARD

The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.  *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249–50 (10th Cir. 1998).  The lodestar calculation begins with the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The Court has broad discretion to adjust the lodestar downward based on inadequate documentation, excessive hours, or rates that exceed the prevailing market rate.  *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983).  A reasonable hourly rate is the prevailing market rate in the relevant community for similar work by lawyers of comparable skill, experience, and reputation.  *Blum v. Stenson*, 465 U.S. 886, 895–96 (1984).  The relevant community for purposes of this analysis is the District of Kansas. *Case*, 157 F.3d at 1256.

## ARGUMENT

I.    **THE REQUESTED HOURLY RATES EXCEED THE PREVAILING MARKET RATE IN THE DISTRICT AND SHOULD BE REDUCED.**

Plaintiffs seek $700 per hour for partner Mark Johnson, $500 per hour for counsel Rebecca Hughes Parker, $400 per hour for managing associate Harrison Rosenthal and associate Jacob Margolies, and $350 per hour for associate Parker Bednasek.  These rates are not supported by adequate evidence of the prevailing market rate in the District of Kansas and are inconsistent with rates recently awarded by courts in this District.

### A.    Plaintiffs' Rate Evidence Is Conclusory and Inadequate.

Plaintiffs' primary evidence for the reasonableness of these rates consists of: (1) the declaration of Mr. Johnson, one of the attorneys whose own rates are at issue, asserting that the rates are reasonable based on his forty-five years of experience in this District; and (2) citations to three prior fee awards in this District, none of which are attached or summarized in a manner allowing meaningful comparison.  The motion simply asserts that the hourly rates awarded in those cases are reasonable without identifying what rates were awarded, in what types of cases, or for attorneys of what experience levels.  This falls short of Plaintiffs' burden.  *See Case*, 157 F.3d at 1249–50 (fee applicant must document appropriate hourly rates).

Affidavits from local attorneys are the primary vehicle for establishing the prevailing market rate.  However, the moving party's own affidavit is insufficient on its own; something more than affidavits from the requesting attorneys themselves is required to establish the prevailing market rate.  *See Lopez v. City of Albuquerque*, No. 08-806 LH/ACT, 2011 WL 13261990, at *5-6 (D.N.M. April 11, 2011).  An independent affidavit from a disinterested practitioner familiar with the local legal market is the customary and more reliable form of rate evidence.  *See Brown v. Unified School Dist. No. 501, Shawnee County, Kan.*, 878 F.Supp.1430, 1435 (D. Kan. Feb. 21, 1995).  Plaintiffs submitted no such affidavit.  Defendant, by contrast, submits herewith the Declaration of David R. Cooper in support of the proposed rate reductions set forth below.

Mr. Cooper is a partner at Fisher, Patterson, Sayler & Smith, L.L.P. in Topeka, Kansas, admitted to the Kansas bar since 1994, and is rated AV Preeminent by Martindale-Hubbell.  He is listed in Best Lawyers in America in the areas of Civil Rights Law, Employment Law (Management, Labor Law; Management, Litigation) Labor and Employment, and Municipal Law, and is listed in Missouri and Kansas Super Lawyers.  He is a past president of the Kansas Association of Defense Counsel and has appeared in hundreds of cases in the District of Kansas

and the Tenth Circuit.  His practice focuses on the defense of government liability, civil and constitutional rights, and employment claims, including claims under the Kansas Open Records Act, the precise subject matter of this fee dispute.  (Cooper Decl. ¶¶ 1–4, Ex. A).  Mr. Cooper opines that the reasonable hourly rate for partners and senior of-counsel in this District in 2025 and 2026 is $270 per hour for governmental clients and $300 per hour for private clients, and $210 per hour for associates.  (Cooper Decl. ¶ 6, Ex. A.)  These figures are substantially below the rates Plaintiffs seek and provide independent, objective confirmation that the prevailing market rate in this District does not support Plaintiffs' requested fees.

**B.      The Kansas OAG Contract Does Not Support Plaintiffs' Requested Rates.**

Plaintiffs rely on a 2024 contract between the Kansas Office of the Attorney General and First & Fourteenth PLLC, a Colorado Springs constitutional litigation boutique, as a benchmark for reasonableness.  This comparator is inapt for several reasons.

First, the OAG contract rates actually undercut Plaintiffs' requested rates. The contract reflects rates of $600 per hour for named partners Michael Francisco and Chris Murray, $400 per hour for other partners, and $300 per hour for associates.  Plaintiffs seek $700 per hour for Johnson, $100 more per hour than the most senior attorneys in that contract, and $500 per hour for Parker, $100 more per hour than the contract's partner rate.  If anything, the OAG contract supports rates lower than those Plaintiffs request.

Second, First & Fourteenth PLLC is a Colorado-based specialized constitutional litigation firm selected through a competitive procurement process to handle matters of statewide constitutional significance for the Kansas Attorney General's Office.  That context, a premium, specialized market for constitutional litigation at the state level, is materially different from the standard for prevailing market rates for D. Kan. civil litigation generally.

178977503.1                                          4

Third, the relevant community for the lodestar analysis is the District of Kansas. *Case*, 157 F.3d at 1256.  A contract procured by the State from an out-of-state boutique firm does not reflect the local market rate for legal services.

### C.    Dentons' Standard Billing Rates Are Not the Appropriate Benchmark.

Mr. Johnson acknowledges that the rates sought are substantially less than Dentons US LLP's normal billing rates for these attorneys.  While this characterization is intended to suggest the rates are discounted, it in fact highlights the problem: Dentons is a global AmLaw 100 firm whose standard rates reflect a premium market that far exceeds the prevailing rate for legal work in the District of Kansas.  The appropriate benchmark is what attorneys of comparable skill and experience charge in *this* community, not a discount from a global firm's premium rack rate.  *See Blum*, 465 U.S. at 895 (reasonable rate is the prevailing market rate in the relevant community).

### D.    Defendant's Proposed Rate Reductions.

Based on the Declaration of David R. Cooper and rates awarded in recent employment and civil rights fee matters in this District, Defendant proposes the following reasonable rates: $450 per hour for Johnson (reflecting his substantial experience while remaining within prevailing D. Kan. ranges for senior partners); $350 per hour for Parker; $275 per hour for Rosenthal and Margolies; and $225 per hour for Bednasek. These rates more accurately reflect the prevailing market rate for attorneys of comparable experience in this District.

## II.    THE CLAIMED HOURS ARE NOT PROPERLY CABINED TO THE KORA BAD FAITH ISSUE AND MUST BE SUBSTANTIALLY REDUCED.

The fee award authorized by K.S.A. § 45-222(d) and the Court's June 1, 2026 Order is limited to fees arising out of Defendant's bad faith response to KORA requests. It does not authorize compensation for all work performed in this litigation. A significant portion of the 191.3 hours claimed reflects work on constitutional claims, First Amendment theory, Rule 12 motion

178977503.1                                5

practice, and broad case strategy that is not attributable to the KORA compliance issue that formed the basis of the Court's bad faith finding

### A. Constitutional and First Amendment Work Is Not Compensable Under the KORA Fee Award.

A review of the time records submitted as Exhibit B reveals numerous entries devoted to developing and preserving constitutional claims, First Amendment frameworks, student journalism rights, and appellate posture arguments that go well beyond enforcing KORA compliance. Examples include entries referencing work to: "preserve plaintiffs' rights (0.5)"; "assess implications of defendant's production process" for constitutional purposes; "research and apply Kansas Open Records Act fee-shifting, bad-faith, fee-hearing standard" in the context of First Amendment arguments; analyze "First Amendment implications" of the District's actions; "coordinate appellate posture"; and frame arguments around "student-journalist publication rights" and "public records outreach concerning the District's charging student KORA requestors."

None of this work is directed at obtaining KORA compliance in response to the specific bad faith conduct the Court found. It reflects the broader constitutional litigation strategy of the case, which involves legal theories independent of, and beyond the scope of, the KORA bad faith finding. Hours devoted to this work should be excluded from the fee award.

### B. Rule 12 Motion Practice Is Not Compensable Here.

Multiple entries reference work on motions to dismiss, motions for partial dismissal, de novo review standards, and appellate preservation arguments related to Rule 12 dismissal rulings. See, e.g., 4/11/26 entry (Rosenthal, 8.00 hours) referencing "draft motion for reconsideration or clarification requesting merits-based Rule 12 and appellate-review framing (1.1); draft motion for reconsideration or clarification (0.4)." Work directed at preserving or litigating Rule 12 dismissal issues is general case litigation and is not attributable to the KORA bad faith finding.

C.    **Protective Order Litigation Exceeds the Scope of the KORA Fee Award.**

A substantial number of entries involve litigating no-sharing demands, negotiating confidentiality designations, and briefing protective order issues. While the Court's order noted that Defendant improperly watermarked produced documents with a reference to a non-existent protective order, the extensive multi-week litigation over protective order structure, no-sharing demands, and document designation protocols reflect broader discovery management that is only tangentially connected to the bad faith KORA access denial. Hours devoted to protective order litigation beyond the specific watermarking issue identified by the Court should be reduced.

D.    **The April 23 Hearing Was Over-Staffed.**

Two Dentons attorneys, Rosenthal and Johnson, fully prepared for and participated in the April 23, 2026 hearing, with both billing extensively for preparation during the days preceding the hearing. While Plaintiffs note that Defendant also had multiple attorneys present, that observation goes to parity, not necessity. The Tenth Circuit has recognized that fee awards may be reduced for duplicative attorney effort. *Ramos*, 713 F.2d at 554. The relevant question is whether two fully-preparing attorneys were necessary, not whether both sides brought multiple lawyers.

The billing records indicate that Johnson's primary role throughout the case was reviewing and revising Rosenthal's drafts and advising on content, a supervisory function. Compensating a supervising partner at $700 per hour for 30 hours of editorial review and advisory work is not justified where a first-chair associate performed the substantive drafting. The Court should reduce Johnson's compensable hours and ensure that supervisory review time is not double-counted against the same work product for which Rosenthal was also billed.

E.    **Preparation of Witnesses Who Did Not Testify Should Be Reduced.**

Plaintiffs seek fees for preparing multiple clients, including Morgan Salisbury and Ashlyn Tell, to testify at the April 23 hearing, even though they ultimately did not testify. While some

178977503.1                                               7

preparation in advance of witness uncertainty is reasonable, the Court has discretion to reduce hours for preparation work that did not bear fruit.  Plaintiffs made the strategic choice not to call these witnesses; the cost of that preparation should not be borne in full by Defendant.

### III.     PERVASIVE BLOCK BILLING PREVENTS MEANINGFUL REVIEW AND WARRANTS AN ACROSS-THE-BOARD REDUCTION.

The time records submitted as Exhibit B contain pervasive block billing, the practice of combining multiple distinct tasks into a single undifferentiated time entry, that makes it impossible for the Court to assess the reasonableness of individual tasks.  Courts in this District and the Tenth Circuit have reduced fee awards for block billing because it prevents the Court from performing its gatekeeping function. See, e.g., *Cadena v. Pacesetter Corp*., 224 F.3d 1203, 1215 (10th Cir. 2000).

The problem here is severe.  Representative examples from Exhibit B include:

The April 18, 2026 entry for Rosenthal bills 11.4 hours across at least thirteen separate tasks, including analyzing District KORA production, reviewing unredacted student information, researching confidentiality issues, drafting declarations, coordinating with counsel, analyzing privilege implications, researching Kansas Open Records Act authorities, preparing hearing materials, assessing litigation posture, and coordinating rolling production. It is not possible to determine from this entry how much time was devoted to any individual task, whether any particular task was reasonable, or which tasks are properly attributable to the KORA bad faith issue versus broader litigation.

The April 22–23, 2026 entry for Rosenthal bills 13 hours and 8 hours respectively in similarly sprawling block entries referencing numerous distinct tasks including reviewing Defendant's witness strategy, drafting cross-examination outlines, analyzing KORA production

issues, coordinating logistics, conferring with multiple attorneys, revising declarations, and preparing exhibits.

When block billing prevents meaningful review of individual time entries, a categorical percentage reduction is appropriate. Defendant requests that the Court apply a minimum 20% reduction to all block-billed entries, those combining three or more distinct tasks in a single time record, to account for the inability to verify the reasonableness of individual tasks within those entries.

## IV.    JOHNSON'S SUPERVISORY HOURS SHOULD BE SUBSTANTIALLY REDUCED.

Johnson billed 30 hours at $700 per hour for a total of $21,000.  His declaration describes his role as second chair: he largely revised drafts of pleadings and advised on content.  Rosenthal is described as first-chair, performing most of the substantive work.  While some senior partner oversight is appropriate and compensable, 30 hours of editorial revision and advisory consultation, at the highest rate sought in this application, is excessive for a secondary supervisory role in a case where the associate first-chair billed over 142 hours.

The Tenth Circuit has recognized that hours may be reduced when they reflect duplicative effort or supervisory oversight of work already compensated at the associate level. *Ramos*, 713 F.2d at 554.  Defendant requests the Court reduce Johnson's compensable hours to no more than 15 hours, reflecting a reasonable allocation for senior review and supervision of a 191-hour matter.

## V.    PARKER'S CONTRIBUTION DOES NOT JUSTIFY HER REQUESTED RATE.

Rebecca Hughes Parker billed only 4.8 hours at $500 per hour. The motion does not describe what specific work she performed, why her particular expertise was required for those tasks, or why Rosenthal, who performed the vast majority of the work, could not have handled those matters.  At this limited level of involvement, Parker's contribution appears incidental, and

the requested $500 per hour rate is not supported by any explanation of the necessity or value of her specific participation.

## VI.    THE COURT SHOULD DENY OR DEFER ANY FEES-ON-FEES REQUEST.

Plaintiffs reserve the right to seek attorneys' fees for litigating the amount of the fee award. Any such request is premature and should be denied or substantially reduced given the significant deficiencies in Plaintiffs' fee motion identified above.  Where the fee application itself fails to satisfy the applicant's evidentiary burden regarding rates and hours, awarding fees-on-fees compounds the error.  Moreover, any supplemental fees-on-fees request will be subject to the same scrutiny applied here, including the requirement that rates reflect the prevailing market rate in this District and that hours are reasonably and necessarily expended in connection with the fee dispute.

## VII.    AN EVIDENTIARY HEARING IS WARRANTED.

Given the magnitude of the fee request, the contested rate issues, and the pervasive block billing that prevents meaningful task-level review, Defendant respectfully requests that the Court schedule an evidentiary hearing pursuant to D. Kan. Local Rule 54.2 to permit cross-examination of Mr. Johnson regarding the claimed rates and the necessity of the hours submitted.  An evidentiary hearing will allow the Court to develop a more complete record and will ensure that any fee award is based on verified evidence rather than self-serving declarations.

<strong><u>CONCLUSION</u></strong>

For the foregoing reasons, Defendant respectfully requests that the Court substantially reduce the fee award sought by Plaintiffs.  The requested rates exceed the prevailing market rate in this District, the claimed hours are not properly limited to work attributable to the KORA bad faith finding, block billing prevents meaningful review of a significant portion of the time records, and supervisory hours are excessive given the staffing structure of this case.  Defendant requests that the Court reduce the hourly rates to amounts consistent with prevailing D. Kan. market rates,

178977503.1

exclude or reduce hours attributable to non-KORA work, apply a 20% reduction to all block-billed entries, and reduce Johnson's compensable hours to 15.  Defendant further requests an evidentiary hearing to address the contested rate and hour issues, and requests such other and further relief as the Court deems just and proper.

/s/ Alan L. Rupe
Alan L. Rupe, KS #08914
Andrew Gnefkow, KS #79266
LEWIS BRISBOIS BISGAARD & SMITH LLP
4600 Madison Avenue, Suite 700
Kansas City, Missouri 64112
Telephone:     (816) 299-4244
Facsimile:     (816) 299-4245
Alan.rupe@lewisbrisbois.com
Andrew.gnefkow@lewisbrisbois.com

*Attorneys for Defendant Lawrence USD 497*

## CERTIFICATE OF SERVICE

I certify that on June 29, 2026, I filed the above Defendant's Suggestions in Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs using the Court's CM/ECF System which will send notification to all counsel of record.

/s/ Alan L. Rupe
Alan L. Rupe

178977503.1

11