IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JACK TELL; NATASHA TORKZABAN; MORGAN SALISBURY; OPAL MORRIS; HENRY FARTHING; SUZANA KENNEDY; NAOMI SUI PANG; ASHLYN TELL; PHOEBE MORRIS; E.B., a minor, by and through his parent and next friend, CATHERINE P. BATZA, Ph.D.; and H.C., a minor, by and through his parents and next friends, DANIELLE BRUNIN and ERIK CHANEY,

Plaintiffs,

vs.

Case No: 2:25-cv-02428-KHV-GEB

LAWRENCE USD 497, a political subdivision of the State of Kansas,

Defendant.

DEPOSITION OF DAVID VIGNERY, taken on September 10, 2026, at 9:30 a.m., at Dentons US, LLP, 4520 Main Street, Suite 1100, Kansas City, Missouri, 64111, before Stacy L. Decker, a Certified Court Reporter, taken on behalf of the Plaintiffs.



EXHIBIT 10

would get flagged?

A. Bullying, any type of swear word, which, I mean -- yes. Any words like you'd expect to be in like some kind of confrontation, things like that. Or like, quote, unquote, shut up, things like that.

Q. Did the meeting with Ms. Fike change the way in which you completed your schoolwork assignments?

A. No.

Q. Did it change the way in which you communicated with your teachers?

A. No.

Q. Okay.

MR. JOHNSON: Could we take a break?

MS. HARRIS: Yes.

(Recess.)

Q. (By Ms. Harris) I'm going to share my screen with you. H.C., are you able to see my screen okay?

A. I am.

Q. Okay. And we can mark this one -- I believe we are up to Exhibit 101.

MR. JOHNSON: I think that's right, yes.

MS. HARRIS: And I will upload to the exhibit share.

(Exhibit 101 was marked.)

Q. (By Ms. Harris) H.C., this document -- have you seen this document before?

A. I have, yes.

Q. Okay. And these are Plaintiff H.C.'s Answers to Defendants First Interrogatories, correct?

A. Yes.

Q. Okay. When is the first time you've seen this document?

A. When Mr. Johnson sent it to me to review.

Q. And did you sign a verification for these interrogatories?

A. I have not been able to yet.

Q. When do you intend on doing so?

A. Today. I'd like to get it printed out and have the notary notarize it today.

Q. Okay. So I'm just going to briefly go over some of the questions in these interrogatory responses with you.

Interrogatory Number 1 asks you to

identify each document sent or received by you which you contend was flagged, searched, seized, deleted, quarantined, censored, or otherwise interfered with by defendant or monitoring software.

And in response, you identified one email that was sent in late 2024 or early 2025 while you attended West Middle School where you sent a joking email reply to a friend which included the phrase, "Stop bullying me."

Is that the same email we discussed earlier when we were discussing the complaint?

A. Yes.

Q. Okay. And then, to your knowledge, that was the only document that was flagged, searched, seized, deleted, quarantined, censored, or otherwise interfered with by defendant or the monitoring software Gaggle or ManagedMethods?

A. That I know of, yes.

Q. Why do you believe that the email was deleted by Gaggle?

A. I searched for it and I was not

outside of this.

Q. And there are a couple email addresses here. So it looks like the phone number 785-615-1074 sent an email address of pugbugdude@gmail.com. Whose email address is that?

A. I can only assume that's Morgan.

Q. Okay. Do you know why they would have texted you that email address?

MR. JOHNSON: Objection. Calls for speculation.

But go ahead and answer.

A. As it states in the message below, documents for the -- what's the word? Where they search for everything -- or you search for everything.

Q. (By Ms. Harris) And I believe you're referring to telephone number 785-727-9462 sent a text at 2:14 p.m. stating, "Thanks again guys. Once you have your documents, send them to those two email addresses that Morgan sent."

A. Yes, that's what I'm referring to.

Q. And you don't know whose telephone number that is that ends in 9462?

Q. (By Mr. Johnson) Yes, any expectation of privacy.
MR. GNEFKOW: Objection. You can answer.
A. The Acceptable Use Policy explained that it was the school district's property.
Q. (By Mr. Johnson) Was anything that students uploaded to the Google Suite the district's property?
MR. GNEFKOW: Objection.
A. I would say yes.
Q. (By Mr. Johnson) Even images -- photographic images that a student took for personal use?
MR. GNEFKOW: Objection.
A. They shouldn't have used it for personal use.
Q. (By Mr. Johnson) Okay. So is it fair to say that an extension of what you just testified would mean that somebody, who as a student, took a photograph and that person became a famous artist and that photograph gained value, that would be for the district's benefit, not the student's?

MR. GNEFKOW: Objection.
A. I would disagree that.
Q. (By Mr. Johnson) In what way do you disagree?
A. It's the student's art project.
Q. But didn't you --
A. I know. I understand where you're going with that. So maybe I answered that incorrectly. I have always lived with the AUP, the Acceptable Use Policy. You know, maybe the word "owned the data" is harsh, but accessible by the district is where I would live.
Q. Okay.
A. Okay. Because, no, if a student created an art piece, it's their art piece.
Q. Did the district have the ability to instruct Gaggle not to search a certain student's content?
A. Ask the question again.
(The pending question was read by the Court Reporter.)
A. Yes.
Q. Did the district ever do that?
A. After talking with Barb Tholen and

the -- some of the students and working out where the shared folder scenario and things, we were asking Gaggle how we could do that. Their answer was not -- their answer was it's not set up to do that, but they can -- it's a programmable -- you know, they'd have to go and write a program to make that work.

Q. Was that done?

A. We worked that process, yes.

Q. So to your knowledge, the journalism students were excepted out from the students whose content was monitored?

A. The journalism students and the art students both were exempt on their files -- or on their drive and email stuff to Gaggle.

Q. For any content they put --

A. For anything in and out of that.

Q. Okay. Did that include the entire Google Suite?

A. For them, yes.

Q. Do you know if that worked? Do you know if there were any problems with that?

A. I don't think anything was 100 percent. We still had issues. But the

A. Yes.
Q. From your understanding, isn't it true that the AUP was never a matter of negotiation with either students or families?
A. During my time there, there was never a revision or request for revision.
Q. Do you know --
A. -- by anyone.
Q. Do you know if, before it was implemented, the district issued a draft for comments from students or families?
A. I don't know that.
Q. Do you know if the district had any concern about having students younger than 18 sign the AUP?
A. It was their parents that signed the AUP.
Q. So it was your understanding that students younger than 18 were not supposed to sign the AUP?
A. Correct.
Q. And it was their parents that were supposed to sign the AUP?
A. Correct.
Q. Was that a matter of practice or a

written policy, if you know?
A. I can't answer that.
Q. So while you were there, you didn't see any written policy that says, for our students younger than 18, their parents are supposed to sign the AUP?
A. No.
Q. You didn't see anything?
A. I didn't see anything like that.
Q. But it's your understanding that was the practice?
A. Correct.
(Exhibit 114 was marked.)
Q. I'm going to hand you a document which the court reporter is going to mark as 114. This purports to be an email dated February 6, 2024, from Natasha Torkzaban to you. Do you remember receiving this email?
A. I don't recall this. And I'm trying to remember the actual date that I came back. This is before I came back.
Q. Good point. Sorry. So you had not yet returned to work?
A. Right.
Q. While you were away from work, did

different from the answer from Mr. Englebrick. She says, "There's currently not a process for parents and caregivers to opt their children out of district communications devices which utilize the safety/surveillance software, Gaggle."

In saying there's currently not such a process, does that also say there may be such a process in the future?

A. Yes.

Q. Was any process -- was any such process developed in the future, after this email?

A. I don't remember.

Q. And it says, "Students' personal devices and private accounts are not monitored by Gaggle."

Personal devices I understand. What is private accounts?

A. Your last name, first initial, @gaggle.com, not USD497.org.

Q. Okay. So the accounts that would be monitored are the students' accounts on the Google Suite?

A. Yes.