IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JACK TELL; NATASHA TORKZABAN; MORGAN SALISBURY; OPAL MORRIS; HENRY FARTHING; SUZANA KENNEDY; NAOMI SUI PANG; ASHLYN TELL; PHOEBE MORRIS; E.B., a minor, by and through his parent and next friend, CATHERINE P. BATZA, Ph.D.; and H.C., a minor, by and through his parents and next friends, DANIELLE BRUNIN and ERIK CHANEY, Plaintiffs, | ) | |
| vs. | ) | Case No: 2:25-cv-02428-KHV-GEB |
| LAWRENCE USD 497, a political subdivision of the State of Kansas, Defendant. | ) | |

DEPOSITION OF NATASHA TORKZABAN, taken on August 19, 2026, at 10:30 a.m., remotely via Zoom Videoconference, before Stacy L. Decker, a Certified Court Reporter, taken on behalf of the Defendant.



EXHIBIT 3

account.

Q. And you described for me why for you that wasn't necessarily a satisfactory solution, and I just want to make sure I understand your answer.

So I understand what ownership of a document means in the electronic sense. So I understand that if you were to create a document on your school account and then just transfer it to your personal Gmail account or your personal Google account, then the ownership of the document would still reflect, you know, whatever your account name was as a school user, correct?

A. Yes.

Q. But did you make any effort to originate work using your personal account?

A. Yeah, I think we did. Yes, we did. We did. Because whenever we began our extensive reporting process, we began drafting things on our personal accounts. But I think it was only the reporting about Gaggle that was drafted on my personal account.

Q. Okay. Do you know -- so you said that you did not have a personal device while

you were at LHS. So if you drafted a document and the owner of that document was your personal account and not your school account and you saved it into your personal Google account, do you know whether or not that document would be scanned by Gaggle, do you know?

MR. ROSENTHAL: Object to form.

A. I know that writing, specifically typing, on my personal account and not interacting with anyone within USD 497 through that account, it would not be subject to Gaggle. But there was different issues as far as storage.

And, in general, when we report, because reporting is a very collaborative process and journalism is a very collaborative process, there's very, very few ways for me to completely avoid interacting with anyone in the USD 497 sphere on my personal account.

MR. GRANT: All right. I think we can take a short break. We have been going about an hour and 15 minutes.

(Recess.)

Q. (By Mr. Grant) All right.

where?

A. Like whenever I was trying to produce this document to like give it to my attorneys, I didn't want to just take a screenshot, because I felt like that was too informal. So I saved the email and imported it as a PDF. So I just saved it as a PDF, which for some reason has the quoted text hidden.

Q. It doesn't sound critical to this email which you said was dash, "Natasha."

But just so I understand, was it hidden when you did something on your end in terms of sending it to a PDF, or was it hidden during the process of sending the document -- in other words, when you transmitted it to your attorneys in whatever form, did it still have the dash, "Natasha," or was that hidden when you saved it as a PDF?

A. It was hidden when I saved it as a PDF.

Q. Okay, gotcha. So when you sent this email to Barb Tholen, am I correct that you were not actually worried about your mental health? That is not a true statement

in the email?
A. I mean, the meeting did have me stressed. But the purpose of sending this email was for journalism and it was testing.
Q. Was that the only purpose of sending the email, or were you actually seeking, you know, some type of mental health advice from Barb Tholen?
A. No. That was the purpose of sending the email.
Q. And when you say in the email, "Sometimes you have to test the waters," is that an allusion to the fact that you are testing the Gaggle system?
A. Yes.
Q. Did you discuss your testing plan or the, you know, sending of this email with anybody else before you sent it?
A. Yes.
Q. With whom did you discuss that?
A. I was sitting in a room with Ms. Tholen, and I think some other people on journalism staff were in the room as well. I can't recall specifically who. But I -- me and someone were just talking about sending

Q. Okay. Ms. Torkzaban, I have just a few follow-up questions for you.
Mr. Grant asked you about an email that you sent Ms. Tholen on March 29th. Do you recall that in today's deposition?
A. Yes.
Q. What were you trying to determine by sending that email?
A. We were trying to better understand the facts that the district had given us, because they had told us earlier that day that -- I mean, the facts had continued to tell us we were testing those. And so I was trying to understand if, communication with our teachers, which are our trusted adults, are actually being monitored or not.
Q. What did you learn about whether that email actually reached Ms. Tholen?
A. I learned that it didn't reach Ms. Tholen.
Q. What did you do to determine whether Ms. Tholen had received it?
A. She checked on her own computer multiple times and checked in her email