IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | | |
|---|---|---|
| JACK TELL; NATASHA TORKZABAN; MORGAN SALISBURY; OPAL MORIS; HENRY FARTHING; SUZANA KENNEDY; NAOMI SUIPANG; ASHLYN TELL, PHOEBE MORRIS, E.B. a minor, by and through his parent and next friend CATHERINE P. BATA, PH.D.; and H.C., a minor, by and through his parents and next friends DANIELLE BRUNN and ERIK CHANEY, | ) | |
| Plaintiffs, | ) | No. 2:25-cv-02428-KHV-GFB |
| v. | ) | |
| LAWRENCE USD 497, a political subdivision of the State of Kansas, | ) | |
| Defendant. | ) | |

DEPOSITION OF KILEY LUCKETT, a Witness, taken on behalf of the Plaintiffs before Jane A. Blackerby, CSR #1369, CCR #877, pursuant to Notice on the 2nd day of September, 2026, at the offices of Dentons US LLP, 4520 Main Street, Suite 1100, Kansas City, Missouri



EXHIBIT 13

A. So it would -- it would depend on the image and where you are looking at the alert from what you would see that would change.

Q. Okay. If, for example, a document, text, photo, etcetera, was, I believe you used the term quarantined or temporarily removed, is it fair to say -- let me rephrase the question. Who would make that determination?

A. The administrator responding.

Q. Regarding whether it could be quarantined?

A. Whether it should be quarantined.

Q. Just so I understand the work flow, Gaggle or a Gaggle or Managed Methods contractor would initially determine whether the document broadly defined should be quarantined. Is that right?

A. That is correct.

Q. And then the USD 497 administrator or reviewer of the flag would determine whether it should be un-quarantined. Is that correct?

A. That is correct.

Q. And also, the USD person would not have access to the full document before making that determination. Is that correct? Only the

you understand Exhibit 38 to relate in any way to that incident?

A. Which incident?

Q. The art student incident where they were -- or the photography class assignments were flagged.

A. To my knowledge, there was more than one. So there was like an individual student that might have had things and then like all of those alerts coming in at one time was different. Like it wasn't just those with two separate things.

Q. Understand. If I represent to you, and I will represent to you, that as alleged in Exhibit 69 the images that we've previously identified, namely Exhibit 37 containing depicting a person lying on a couch and Exhibit 36 picturing a woman looking at herself in the mirror potentially, two faces, were two of the images that were part of that incident involving the AP photography class. Would you have any reason to dispute that?

A. I wouldn't.

Q. Okay. But you don't recall having reviewed these images before?

A. I don't.
Q. Okay. Looking at Exhibit 37 and 36. Is there anything in this image, just on the four corners of the page, you see that would violated any school rule?
A. No.
Q. Okay. Is there anything that you see that could be construed as causing interference with pedagogical activities?
A. Could you rephrase the question?
Q. Is there anything in the image, in either of these images, that could cause a substantial disruption at school?
MR. GNEFKOW: Objection.
A. No.
Q. (By Mr. Rosenthal) Okay. My last question, I'm trying to frame this in a way that is clear. The images are not inappropriate. Right?
MR. GNEFKOW: Objection.
A. Inappropriate is a very open to interpretation. Like do I find these images inappropriate. I do not.
Q. (By Mr. Rosenthal) Is there anything in the image that would subject the student who