IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JACK TELL; NATASHA TORKZABAN; MORGAN SALISBURY; OPAL MORRIS; HENRY FARTHING; SUZANA KENNEDY; NAOMI SUI PANG; ASHLYN TELL; PHOEBE MORRIS; E.B., a minor, by and through his parent and next friend, CATHERINE P. BATZA, Ph.D.; and H.C., a minor, by and through his parents and next friends, DANIELLE BRUNIN and ERIK CHANEY, | |
| Plaintiffs, | |
| vs. | Case No: 2:25-cv-02428-KHV-GEB |
| LAWRENCE USD 497, a political subdivision of the State of Kansas, | |
| Defendant. | |

DEPOSITION OF DR. ANTHONY S. LEWIS, taken on September 9, 2026, at 12:00 p.m., remotely via Zoom Videoconference, before Stacy L. Decker, a Certified Court Reporter, taken on behalf of the Plaintiffs.



EXHIBIT 24

the district?

A. So in terms of who adopted this, it was the board that was in place prior to me arriving. I don't recall who all those board members were. So it was adopted then and looks like it was revised under previous board as well prior to me getting there. But these are typically housed in a platform, I think they're still using it, Board Docs.

Q. Okay. And that Board Docs is the publicly available housing digital housing unit for official board policy for the district; is that correct?

A. Yes, that's correct.

Q. Okay. I want to ask you about a couple of the paragraphs here. So on Page 286 of the document, Exhibit 106, under IIBG Computer Use, do you see where it reads, "Computer systems are for educational use. All information created or accessed by staff and students may be subject to monitoring without notice by district administrators and/or school staff when appropriate.

"Students and staff shall be informed annually of the district's Acceptable

Use Policy. The district retains the right to impose disciplinary measures on any student. These measures may include expulsion of students and termination of staff for a violation of this policy."

Do you see that paragraph?

A. Yes, I do.

Q. And is that your understanding of how the policy operated when you were superintendent?

A. Yes.

Q. Further down on the page, under Privacy Rights, do you see the paragraph -- for the record, this is the paragraph that reads, "Employees and/or students shall have no expectation of privacy when using district email other, official communication systems, or computer applications. Any email computer application or information on district computers or computer systems may be subject to monitoring without notice by the administration and/or school staff when appropriate."

Do you see that paragraph?

A. Yes, I see it.

Q. And the same question, was that your understanding of the policy and how it operated when you were superintendent?

A. Yes.

Q. Thank you. And on the subsequent page, under Responsibilities, it says, "The superintendent shall oversee the district system."

Do you see that?

A. Yes, I see it.

Q. Okay. And that policy was operative and congruent with your understanding during your tenure as superintendent; is that correct?

A. Yes.

Q. Okay. With the caveat that we'll get into this a little bit further on, can you tell me a little bit about what that oversight required you to do concerning Gaggle. What was your Gaggle oversight process at a high level?

A. As with any policy, the board adopts -- crafts, adopts, approves policies. It's the superintendent's duty to operationalize the policy. And so what that

A. No, but that a particular law required the use of surveillance.

Q. And can you tell me a little bit more about that, the particular law that would require the use of surveillance.

A. CIPA.

MR. GNEFKOW: Objection. But you can answer.

A. CIPA.

Q. (By Mr. Rosenthal) Okay. And we talked a little bit before about CIPA, CIPA. And there's a -- are you aware that there's a federal version and then there's a Kansas State cognate?

A. There's a Kansas State what now?

Q. Cognate. There's a Kansas version of CIPA, and it's KCIPA?

A. No.

Q. Can you tell me a little bit more about, based on your personal understanding, what about CIPA would require monitoring?

MR. GNEFKOW: Objection. You can answer.

A. Based on what I've heard from our attorneys and technology folks is that we were

required to monitor and surveil district devices in order to protect our students.

Q. (By Mr. Rosenthal) Understood. Based on what you heard from advisors, did that monitoring go beyond merely implementing a firewall?

A. Repeat that question.

Q. Did -- based on what you knew at the time, does your requirement to comply with state or federal law require active monitoring of student content?

A. That was my understanding.

MR. GNEFKOW: Objection.

Q. (By Mr. Rosenthal) And based on your understanding, that would be a measure beyond just a firewall of blocking a student from access to a potentially inappropriate site; is that correct?

MR. GNEFKOW: Objection. You can answer.

THE DEPONENT: Are you saying, yes, I can answer?

MR. GNEFKOW: Yes. Sorry. Unless I direct you not to answer, you have to answer over the objection.