IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JACK TELL, et al., Plaintiffs, v. LAWRENCE USD 497, a political subdivision of the State of Kansas. Defendant. | Case No. 2:25-cv-02428-KHV-GEB |

VIDEOCONFERENCE DISCOVERY DEPOSITION
SUZANA KENNEDY
APPEARING REMOTELY
SEPTEMBER 18, 2026
9:33 A.M. CENTRAL TIME

REPORTED BY: A. Christine Hylton, RPR, CSR



EXHIBIT 29

So going from page 4 to page 5 of the Second Amended Complaint, it says you were in a group of students who experienced direct interference with their journalistic artistic and/or creative works. Do you see that?

A. Yes.

Q. I think, based on your prior testimony in your case, that's limited to journalistic works, right?

A. Yes. I will say, though, I did participate in photography in the context of journalism, so I did have photographs that were uploaded to the Google Drive.

Q. Okay. So the -- the direct interference that's being referred to here in paragraph 12 in that sentence --

A. Uh-huh.

Q. -- can you tell me in what sense the District directly interfered with your journalistic work?

A. Yes. I made a KORA request, and the information that I requested was significantly delayed, and never actually produced to me from a District official, because it was blocked.

Q. In terms of your -- that KORA request that

you've -- that you've referenced a couple of times, did -- did you eventually get everything that you requested?

A. I did get a spreadsheet of information that I requested, yes --

Q. Okay.

A. -- but only after more than a month of waiting for that information.

Q. If I'm understanding correctly, that -- you attribute that delay to Gaggle, correct?

A. Correct.

Q. Do you attribute the delay to other factors at all, or in your view, was it -- was Gaggle the sole reason for the delay?

A. Gaggle was the sole reason for the delay.

Q. Okay. If I'm understanding correctly, in this context your contention is that Gaggle caused that harm -- it seems a little bit different from the other claims, whereas when you talk about journalism, you're talking about your awareness that content may be flagged, and that led to self-censorship, so I'm trying to figure out if I have an actual question here, but I'm just -- I'm just trying to confirm that in the context of your KORA request, the harm that you believe Gaggle caused was in the delay in your

A. Yes.
Q. Do you remember that the District, as it is phrased here, purported to remove Gaggle scanning from student journalism accounts in April of 2024?
A. Yes.
Q. What do you remember about that?
A. I remember that that was something that we were very excited about, that the District agreed to remove monitoring from student journalism accounts, but also still being aware that it was affecting the student body as a whole, but I remember it being somewhat of a victory.
Q. What -- what do you remember about how you learned about the exemption? Was it announced in a meeting, or did you just hear about it from other people? How did you hear about the exemption?
A. I think I talked to my fellow student journalists, and I remember covering a meeting where the details of it were discussed, or the details of their like exception -- exceptions were discussed, but not in a lot of great detail.
Q. The allegation in paragraph 190 is that the District purported to remove Gaggle scanning.
Do you know whether the exemption was successfully implemented?

THE WITNESS: Yes.
MR. ROSENTHAL: -- (inaudible)
THE COURT REPORTER: Objection, what?
MR. GRANT: Was --
THE COURT REPORTER: Wait a minute.
MR. GRANT: Sorry.
THE COURT REPORTER: Harrison, objection, what?
MR. ROSENTHAL: Yeah, it was objection, asked and answered.
Zana, go ahead.
THE WITNESS: Yes, I believe Barb communicated immediately, once we had a suspicion of Gaggle being involved, that the exemption needed to be clarified and checked over, and she sent a list of all the journalism staff.
BY MR. GRANT:
Q. Do you know if the District did anything in response to that communication from Barb that the exemption needed to be checked?
A. I don't know what resulted from that.
Q. Did you ever personally follow up with the District regarding the exemption?
A. No.
Q. Was there --

that I would trust it would be properly implemented again.

Q. When you say it was -- it was not probably -- properly implemented the first time, you're referring to after the exemption was announced in April of 2024, then you discovered it had not been implemented through your KORA request, that's what you were referring to as the first time?

A. Yes, correct.

Q. Do you know whether or not the School District's monitoring of your own student account changed in any way following the initial implementation of the exemption in April of 2024?

A. I would have no way of knowing, aside from their word.

Q. Paragraph 225 -- well, really starting at paragraph 224, there's a discussion of your KORA request.

A. Yes.

Q. Paragraph 225 references that you received a Gaggle seizure spreadsheet. Do you see that?

A. Yes.

MR. GRANT: All right. I've introduced Exhibit 136.

(Exhibit 136 marked.)

A. No, she was not.
Q. So do you know how she would have gotten these images?
A. They're part of the PDF, I believe, was saved, and that was provided of our correspondence regarding my KORA request.
Q. Okay. On the second page of this exhibit, which is Plaintiffs 411, as part of this screenshot there is -- there's a statement by -- you know, it's kind of hard to see, but it looks like it's an email from Julie Boyle to Barb Tholen, where she states that Gaggle misunderstood our instructions related to the journalism student exceptions. Do you see that?
A. 411 --
Q. Yes.
A. -- or what page of this document?
Q. Yeah, so page 2 of the document --
A. Oh.
Q. -- Exhibit 139.
A. Okay.
Q. I was reading from the first paragraph of the screenshot where --
A. Okay.
Q. -- (inaudible) investigated?
THE COURT REPORTER: Where what investi-

gated?

MR. GRANT: Matt Fish investigated.

THE WITNESS: Yes.

BY MR. GRANT:

Q. All right. So do you see the portion where it says that Gaggle misunderstood our instructions?

A. Yes.

Q. So am -- am I correct, or if you know, this was part of, I guess, Barb Tholen's ongoing efforts to have the exemption implemented?

MR. ROSENTHAL: Objection --

THE WITNESS: Yes.

MR. ROSENTHAL: -- calls for speculation.

BY MR. GRANT:

Q. Do you know --

A. Yes.

Q. Sorry.

A. Sorry.

Q. Do you know whether there was any response from the District to this email?

A. I think that there was continued conversation, but I did not have access to those documents until she sent them to me after I graduated.

Q. Okay. Then the last sentence of that paragraph that I was just reading from says Gaggle

has corrected this issue. Do you see that?
A. Yes.
Q. Do you know whether Gaggle had, in fact, corrected the issue?
A. I don't think I could say for sure.
The data that I gathered was all from the point of my initial request.
Q. So is it possible that as of December 9, 2024, you were fully exempt from Gaggle monitoring; is that possible?
MR. ROSENTHAL: Objection, calls for speculation.
THE WITNESS: It seems like to their understanding, they resolved the issue, so it's possible, but I don't think that means it's guaranteed.
MR. GRANT: Okay. I'm now going to introduce Exhibit 141.
(Exhibit 141 marked.)
BY MR. GRANT:
Q. That is just a one-page document marked Plaintiffs 634. Do you see that?
A. Yes.
Q. You don't necessarily need to look back, but this was the last document that was -- was