IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JACK TELL; NATASHA TORKZABAN; MORGAN SALISBURY; OPAL MORRIS; HENRY FARTHING; SUZANA KENNEDY; NAOMI SUIPANG; ASHLYN TELL, PHOEBE MORRIS, E.B. a minor, by and through his parent and next friend CATHERINE P. BATA, PH.D.; and H.C., a minor, by and through his parents and next friends DANIELLE BRUNN and ERIK CHANEY, | ) No. 2:25-cv-02428-KHV-GFB |
| Plaintiffs, | ) |
| v. | ) |
| LAWRENCE USD 497, a political subdivision of the State of Kansas, | ) |
| Defendant. | ) |

DEPOSITION OF OPAL MORRIS, a Plaintiff, taken on behalf of the Defendant before Jane A. Blackerby, CSR #1369, CCR #877, pursuant to Notice on the 23rd day of October, 2026, at the offices of Lewis Brisbois Bisgaard & Smith, LLP, Madison Avenue, Suite 700, Kansas City, Missouri.



EXHIBIT 32

A. Yes.
Q. And do you know if Ms. Perkins actually received all 120 to 150 pictures from that photo shoot?
A. I don't think that they would have received the ones that were as like Gaggled or the content was taken off of the devices. I don't think that that would be accessible to her Google, either.
Q. Do you know for sure whether or not that was accessible to Ms. Perkins?
A. No. No.
Q. All right. And those photographs were later returned to you or restored in your Google Suite. Correct?
A. Yes.
Q. Okay. So how long were you not able to access those photographs in your Google Suite?
A. I can't say for certain, but definitely multiple hours.
Q. So would it have been less than 24 hours?
A. I am not sure for certain.
Q. But those photographs would have still been accessible to you on your SD card. Right?

A. Yes. Correct.
Q. Did you ever have a conversation with Ms. Perkins about some of those photographs not being available to you on Google Suite when you went to turn them in?
A. Before I was -- had that class and was able to turn those in I had the conversation with the administration, so my things were restored before I was needing to talk to her about any of this.
Q. Okay. So the conversation that you're referring to, is that your conversation with the Assistant Principal Farley?
A. Yes.
Q. Okay. So was the deadline to turn in these photographs after your conversation with Principal Farley?
A. I believe so, but I can't say like a day for sure.
Q. Okay. And so you didn't miss an assignment deadline as a result of Gaggle's activity. Is that correct?
A. Correct.
Q. Okay. Other than the -- let me rephrase my question.

Q. Okay. But to your knowledge, those images, I believe you stated earlier, were then, once they were removed by Gaggle, then they were made available to you again in the Google Suite, like within a few hours?
A. Like by the next day.
Q. So by the next day you -- the image that were previously removed were there then available to you --
A. Yes.
Q. -- in the Google Suite. Correct?
A. Yes.
Q. So if you look at Paragraph 163 of the Second Amended Complaint. It states that "Only after months of student advocacy did the District restore the removed images." Do you see that there?
A. Yes.
Q. Okay. But in your case, those images were restored by the next day. Right?
A. I believe so.
Q. Okay. So would 163 be an incorrect statement?
A. No. It says most months after. Like student advocacy, I know, it wasn't only for my

Have you seen this document before? I'll represented to you that this is a letter dated October 15th, 2026 signed by your attorney Mark Johnson.

A. I don't remember if I have seen this or not.

Q. Okay. So the subject line of this letter states response to September 16th, 2026 discovery deficiency letter. Were you aware that the Defendant in this case sent a letter regarding the deficiencies in some of the Plaintiffs' discovery responses?

A. Can you rephrase?

Q. Yeah. Were you aware that the Defendants in this case sent a letter to your counsel regarding some deficiencies that they identified in the Plaintiffs' discovery responses?

MR. JOHNSON: I would have to object. If the witness has an answer, it would be an answer that would violate the attorney-client privilege. Unless she personally received a copy of your letter, she would have no knowledge of it.

MS. HARRIS: Okay.