**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| JACK TELL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>LAWRENCE USD 497,<br><br>Defendant. | Case No. 2:25-cv-02428-KHV-GEB |

**DECLARATION OF CAMERON E. GRANT IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE PLAINTIFFS' CLAIMS FOR COMPENSATORY DAMAGES**

I, Cameron E. Grant, state as follows:

1. I am lead counsel for Defendant in this case. I have personal knowledge of all matters stated herein. I submit this Declaration in support of Defendant's motion to strike Plaintiffs' claims for compensatory damages from the Pretrial Order.

2. Section 2.a of the Scheduling Order, entered on June 3, 2026, provides that initial disclosures are to be exchanged by June 8, 2026. (**Exhibit 2**.) Section 2.a provides that supplemental disclosures must be served 40 days before the deadline to complete discovery. Section 2.a further provides: "Witness or other information included in a party's final Fed. R. Civ. P. 26(a)(3) disclosures that did not previously appear in the initial Rule 26(a)(1) disclosures or a timely Rule 26(e) supplement thereto presumptively will be excluded from evidence under Fed. R. Civ. P. 37(c)(1)." The Scheduling Order provides all discovery would be completed by September 11, 2026. (*Id.*, p. 10.)

3. As of the date of the Scheduling Order, the operative Complaint was Plaintiffs' First Amended Complaint. (**Exhibit 3**.) Claim III sates: "Plaintiffs are entitled to damages in an amount to be determined at trial." (¶ 355.) Claim VI includes a request for "actual, nominal, and compensatory damages against Defendants in an amount to be proven at trial …" (¶ 384.) Claim IX requests "actual, nominal, and compensatory damages … in an amount to be proven at trial …" (¶ 422.) Prayer for Relief G requests "compensatory and nominal damages …"

4. Plaintiffs served their Initial Disclosures on June 8, 2026. (**Exhibit 4**.) Section III, Computation of Damages, states: "Plaintiffs presently seek declaratory and injunctive relief and nominal damages for alleged constitutional violations. Because nominal damages are not susceptible to mathematical computation, Plaintiffs have no monetary computation to disclose at this time. Plaintiffs will supplement under Rule 26(e) if they later seek any additional monetary relief."

5. Plaintiffs served Supplemental Initial Disclosures on June 17, 2026. (**Exhibit 5**.) Section III states: "Plaintiffs do not supplement their damages disclosure at this time.

Plaintiffs will supplement under Rule 26(e) if additional monetary relief or damages computations are identified."

6. Plaintiffs filed their Second Amended Complaint on July 10, 2026. (**Exhibit 6**.) Plaintiffs' Second Amended Complaint references compensatory damages at paragraphs 363-365 (Claim III), paragraph 395 (Claim VI), and in Prayer for Relief Paragraph G.

7. By Order entered August 10, 2026, the Court extended the close of discovery to October 12, 2026. (**Exhibit 7**, § III.)

8. Defendant questioned the following Plaintiffs about Plaintiffs' June 8, 2026 Initial Disclosures (Exhibit 4), and their damages generally, during Plaintiffs' depositions. The Plaintiffs testified as follows:

- On August 18, 2026, Defendant asked Plaintiff Morgan Salisbury about his damages, and the Initial Disclosures stating Plaintiffs sought only nominal damages. He testified: "I'm not sure what nominal damages are. I know that we're not seeking monetary compensation." (**Exhibit 8**, 42:3-10.)

- On August 19, 2026, in reference to Plaintiffs' Initial Disclosures, Natasha Torkzaban testified she understood the definition of nominal damages, and when asked whether she was seeking any relief other than nominal damages, she testified: "I'm just seeking for the school district to stop doing that, stop damaging students." (**Exhibit 9**, 46:1-5.)

- On August 21, 2026, Defendant asked Henry Farthing about damages sought and they testified: "I don't really know what declaratory injunctive relief and nominal damages for alleged constitutional violations, I'm not totally sure what that means." (**Exhibit 10**, 142:6-9.) When asked more generally what damages Henry was seeking, they stated: "Yeah, I don't know. That just really confuses me, because I feel like I don't want to put – like I don't want money, necessarily. That's not why I'm doing this. I'm not doing this for money or for any other kind of award or accolade … I don't really want money from this." (*Id.*, 142:15-25.)

- On August 24, 2026, Defendant asked Plaintiff Jack Tell whether he was seeking anything other than nominal damages, as reflected in Plaintiffs' initial disclosures. He responded: "No." (**Exhibit 11**, 69:18-70:8.) The parties then took a recess. (*Id.*, 109:15.) After coming back from the break, Jack's counsel stated there was a "preliminary matter" Jack needed to address. (*Id.*, 109:17-20.) Jack clarified: "we are also seeking compensatory damages as well." (*Id.*, 110:3-4.) Purporting to speak on behalf of all the plaintiffs (*Id.*, 111:7-12), Jack stated Plaintiffs were seeking "[w]hatever the jury sees fit as to render [them] whole," which could be upwards of One Billion Dollars. (*Id.*, 113:10-15.)

- On September 8, 2026, H.C. testified H.C. is seeking both nominal and compensatory damages, and testified the amount of nominal damages would be "up to the jury." (**Exhibit 12**, 61:3-16; 63:6-9.)

- On September 15, 2026, Naomi Sui Pang was asked in relation to Plaintiffs' Initial Disclosures whether she would seek money from the lawsuit if she prevailed and she testified: "I'm seeking I guess whatever the jury says. I don't know the amount or whatever." (85:20-25.) After additional back and forth, when asked whether she would ask the jury to give her money if she prevailed, she answered: "No." (86:7-12.) (**Exhibit 13**.)

- On September 17, 2026, Ashlyn Tell initially appeared to confirm she was not seeking any damages beyond those stated in Plaintiffs' Initial Disclosures. (**Exhibit 14**, 108:7-20.) But when later asked about damages in reference to the Second Amended Complaint, Ashlyn testified she would ask the jury to compensate her for anxiety and emotional concern/distress. (*Id.*, 140:2-16.) She testified that compensation could be up to One Billion Dollars. (*Id.*, 141:1-5.) When asked whether she had produced any documents to substantiate her emotional distress damages, Ashlyn testified text messages would relate to those damages. (*Id.*, 142:12-19.) Ashlyn testified she has been treated by at least one therapist and/or psychologist, and Defendant called for production of those records. (*Id.*, 142:20-143:14.)

- On September 18, 2026, when asked about Plaintiffs' Initial Disclosures, Zana Kennedy stated they were not accurate, and that she (or perhaps all Plaintiffs – unclear) was seeking compensatory damages as well. (**Exhibit 15**, 88:7-23.) When asked what she was seeking compensatory damages for, she testified: "For the general unrest and upset that knowing the monitoring of Gaggle … caused me … and for the general, again, sense of unease and [self-censorship] …" (*Id.*, 89:15-24.) When asked whether something had changed between June 8, 2026, the date of the Initial Disclosures, and the date of her deposition, she stated: "Nothing has changed between the time frame of the document being signed and the document or and today, but I agree that the Complaint speaks for itself [parroting counsel's speaking objection], and emphasizing what emotional distress it implemented on me." (*Id.*, 91:13-17.) When asked about interrogatory responses claiming she had experienced anxiety and emotional upset, Zana denied that she sought medical treatment for anxiety, and testified a "focus on anxiety is not specifically relevant." (*Id.*, 105:21-22.) Zana testified she had experienced anxiety prior to the District's implementation of Gaggle, and sought treatment for that anxiety. (*Id.*, 106:20-107:8.)

- On October 1, 2026, Plaintiff E.B. stated that he was seeking damages beyond those stated in Plaintiffs' Initial Disclosures, including compensatory damages, but that he was not seeking a specific dollar amount. (**Exhibit 16**, 104:4-21.)

- On October 6, 2026, Phoebe Morris testified that since the date of Plaintiffs' Initial Disclosures, she had "decided that nominal damages I am – I am seeking all damages possible." (**Exhibit 17**, 56:13-18.) After expressing some confusion about different categories of damages, when asked whether she was seeking damages other than those indicated in Section 3 of Plaintiffs' Initial Disclosures, Phoebe testified: "I would say that this – Section 3 covers it." (*Id.*, 59:7-12.)

- On October 23, 2026, Plaintiff Opal Morris was asked about Plaintiffs' damages in relation to their June 8, 2026 Initial Disclosures, and she testified the Plaintiffs together had decided to seek $10,000:

> Q. What amount of monetary compensation are you seeking?
>
> A. More or around $10,000.
>
> Q. When did you make the determination to seek monetary compensation in the amount of $10,000?
>
> A. There wasn't a specific moment when we decided this, but when it had been going on for years at this point and years of stress and working and deliberating on this case we decided that monetarily was like fair for what we were doing with this case and what we had been going through the past couple years.
>
> Q. And when you say we, who are you referring to?
>
> A. Me and the Plaintiffs.

(**Exhibit 18**, 56:16-17; 57:13-58:2.)

9. On September 1, 2026, Plaintiffs served their first interrogatory responses. Interrogatory 3 had asked each Plaintiff to identify "each injury, loss or damage" they claimed as a result of the acts or omissions alleged in the Complaint, including any mental anguish, emotional distress, humiliation, etc. Interrogatory 4 asked the Plaintiffs to identify the amount of damages they sought. Each Plaintiff responded in a similar way, describing sources of alleged damages in response to Interrogatory 3, and each declined to compute their damages in response to Interrogatory 4. A representative response, by Plaintiff Phoebe Morris, is attached as **Exhibit 19**.

10. Plaintiffs also served written responses to Defendant's Requests for Production on September 1. Request 7 was for documents and communications "relating to any injury, loss or damages" the Plaintiff claimed. Each Plaintiff stated they "ha[d] produced and/or [would] produce non-privileged, responsive documents to the extent they exist." A representative example, again by Phoebe Morris, is attached as **Exhibit 20**.

11. In response to some requests, Plaintiffs identified specific documents they produced. (See, e.g., Ex. 20, Phoebe's response to RFP 11.) But no Plaintiff identified any documents produced in response to RFP 7 relating to damages. No Plaintiff produced any documents specific to damages, rather they produced, at most, documents they contend relate to their damages generally, such as Ashlyn's text messages referenced above.

12. On October 29, 2026, about ten minutes before the Pretrial Conference that was to begin at 10:00 AM that day, Plaintiffs served "supplemental initial disclosures regarding damages," attached as **Exhibit 21**. The document states that each Plaintiff seeks compensatory damages, including for "proven emotional distress, humiliation, interference with expressive activity, and loss of use of protected materials." The document goes on to identify "supporting evidence" specific to each Plaintiff.

13. The Pretrial Conference was held on October 29, 2026, starting at 10:00 AM. (ECF 183.)[1] By that time, Defendant had received Plaintiffs' supplemental disclosures (about ten minutes prior), and draft portions of the Pretrial Order including a request for compensatory damages. Defendant stated during the Pretrial Conference that it objected to Plaintiffs' inclusion of a request for compensatory damages, on the grounds that Plaintiffs had not supplemented their Initial Disclosures. Defendant indicated during the Pretrial Conference that if Plaintiffs were allowed to include a claim for compensatory damages in the Pretrial Order, Defendant intended to file either a motion to strike or a motion for summary judgment addressed to that aspect of Plaintiffs' claim.

14. On November 16, 2026, the Court entered the Pretrial Order (ECF 200), attached as **Exhibit 22**. Section 5.a includes Plaintiffs' request for compensatory damages. Note 3 in Section 5.a states Defendant's objection to Plaintiffs' inclusion for claims for compensatory damages. Section 8.b states that Defendant objected to Plaintiffs' claims for compensatory damages, and states Defendant may file a motion under Rules 72 and 36(c) to strike Plaintiffs' request for damages from the Pretrial Order.

15. Following a status conference, Judge Birzer ordered mediation, per the Order entered August 10, 2026. (**Exhibit 23**, ECF 137 at 9.) Mediation was held on October 26, 2026. The case did not settle. Without disclosing the parties' confidential settlement communications, the District lacked any monetary authority at mediation, in part, because Plaintiffs did not make any monetary demand prior to mediation, and Defendant did not know whether Plaintiffs would seek compensatory damages at trial, or if so, how much Plaintiffs sought. Had Plaintiffs disclosed whether they sought compensatory damages, and the amount of compensation, Defendant could have sought authority from its insurer prior to mediation. Plaintiffs' failure to disclose damages deprived Defendant of its ability to obtain authority from its insurer for purposes of mediation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: November 18, 2026

Cameron E. Grant

[1] ECF 189 states the Pretrial conference was held on October 30, 2026, but it was in fact held on October 29, 2026.