IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JACK TELL; NATASHA TORKZABAN; MORGAN SALISBURY; OPAL MORRIS; HENRY FARTHING; SUZANA KENNEDY; NAOMI SUI PANG; ASHLYN TELL; PHOEBE MORRIS; E.B., a minor, by and through his parent and next friend, CATHERINE P. BATZA, Ph.D.; and H.C., a minor, by and through his parents and next friends, DANIELLE BRUNIN and ERIK CHANEY, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Case No: 2:25-cv-02428-KHV-GEB |
| LAWRENCE USD 497, a political subdivision of the State of Kansas, | ) | |
| Defendant. | ) | |

DEPOSITION OF MORGAN SALISBURY, taken on August 18, 2026, at 9:30 a.m., at Lewis Brisbois Bisgaard & Smith, 4600 Madison, Suite 700, Kansas City, Missouri, 64111, before Stacy L. Decker, a Certified Court Reporter, taken on behalf of the Defendant.

A P P E A R A N C E S

For the Plaintiffs:

MR. MARK P. JOHNSON
DENTONS US, LLP
4520 Main Street, Suite 1100
Kansas City, Missouri 64111
harrison.rosenthal@dentons.com
mark.johnson@dentons.com

For the Defendant:

MR. CAMERON GRANT
MS. MELIKA HARRIS
LEWIS BRISBOIS
BISGAARD & SMITH, LLP
4600 Madison Ave, Suite 700
Kansas City, Missouri 64112
cameron.grant@lewisbrisbois.com
melika.harris@lewisbrisbois.com



I N D E X


EXAMINATION BY: PAGE:

Mr. Grant....................................4

EXHIBITS

Exhibit 59 - KSPA Article: Lawrence High Wins 2025 Courage in Journalism Award...42

Exhibit 60 - Budget Article: Is AI the Answer?......................173

Exhibit 61 - Budget Article: Art Students Push Back Against Potential Gaggle Censorship............................181

Exhibit 62 - Budget Article: Fighting for Our Rights: Gaggle & USD 497...........188

Exhibit 63 - 8/28/23 Board Agenda...........198

Exhibit 64 - Budget Article: 'Unapologetically Loud': How Student Journalists Fought a Kansas District Over Spyware and Won..................200

Exhibit 65 - Lawrence Times Article: Lawrence Journalism Students Convince District to Reverse Course on AI Surveillance They Say Violates Freedom of Press......................206

Exhibit 66 - Lawrence Times Article: Lawrence Student Journalists Recognized for Fighting District's Use of AI Surveillance..........................209




(On the record at 9:30 a.m.)
MORGAN SALISBURY,
of lawful age, having been first duly sworn to tell the truth, the whole truth, and nothing but the truth, testified as follows:
EXAMINATION
BY MR. GRANT:
Q. So, Morgan, my name is Cameron Grant, as I think you know, and I'm counsel for the defendant, as I think you also know.
The last year that you were a student at Lawrence High School was the 2023-2024 school year; is that correct?
A. That's right.
Q. So you were never personally subject to monitoring by Managed Methods; is that correct?
A. That's correct.
Q. Only Gaggle?
A. Right.
Q. And for Gaggle it was a portion of your final year in school, is that correct, a portion of that '23-'24 school year?
A. Right. Yeah.
Q. Because I think the Gaggle



monitoring started, and we'll talk about it a little bit later, but roughly November of 2023. Does that sound about right?
A. I think that's right.
Q. Okay. Have you seen the district's contract with Gaggle?
A. I have.
Q. Do you know how the plaintiffs got a copy of that contract?
A. To my understanding, a journalist working for The Budget requested it as part of their reporting, and I believe I first saw it through that.
Q. Do you know if that was Phoebe Morris?
A. I believe that she requested one at some point, but I know that she was at Free State. And I know that someone at Lawrence High School requested one as well.
Q. I think it will be clear, but when I ask you questions today about monitoring, I'm only going to be asking about Gaggle. So, again, I'll try to be referring in referring only to Gaggle. But I think, generally speaking, having laid that groundwork, we're

Page 38

the reporting that you did while at Lawrence High School in any way?
A. No.
Q. I asked you some general questions about confidential reporting and confidential sourcing.
Did you ever utilize confidential sources for any of your journalism work?
A. Not that I'm aware of. I remember contributing to I think a few stories and I think a video for the broadcast production that used confidential sources, but I wasn't in charge of those stories.
Q. Can you tell me generally in terms of the stories that were ultimately published using confidential sources that you worked on, what was the general topic of those stories, if you remember?
A. I believe one of the stories that I did as part of my work on The Lion's Roar, the video broadcast production, we used an anonymous source for a student that was running a social media account that wanted to be interviewed anonymously.
Q. Did you ever use any confidential

Page 39

sources for reporting about Gaggle?
A. I don't believe so, no.
Q. Okay. All right. I'm going to show you a document that I'm actually not going to mark as an exhibit. But this is titled Plaintiffs' Initial Disclosures.
Have you seen this document before?
A. I believe so.
Q. There's a list on this document of 26 names, and they are names that the plaintiffs identified as individuals with discoverable information. And the answer to this question may follow from your answer to one of the prior questions. But are you aware that the plaintiffs withheld any name from this list on the grounds that the source is confidential?
A. Not that I'm aware of.
Q. Did you assist your attorneys with preparing this document?
A. No.
Q. Okay. And so I asked you about names not on this list. But in terms of the 26 names who are on this list, would you

Page 40

consider any of these individuals to be confidential sources regarding Gaggle?
A. Not that I'm aware of.
Q. Okay. I had ask you a few moments ago about whether you contend that your speech was restricted in any way relating to photography, art, or journalism. And you've answered those questions.
But apart from those categories, photography, art, or journalism, do you contend that the district restricted any of your other speech while you were a student at Lawrence High School?
A. My main concern was with the journalistic work.
Q. Okay. So we've established that you're no longer a student at Lawrence High School; that you graduated in -- was it May of 2024?
A. That's right.
Q. So what are you approximate hoping to achieve from this lawsuit?
A. I'm a plaintiff, so I want us to prevail on our claims.
Q. In terms of you prevailing on your

Page 41

claims, in your mind what does that look like? What does it entail?
A. I'd like the monitoring that's ongoing at the school district to cease.
Q. In its entirety?
A. That's -- I believe that's what we're asking for in the lawsuit. That's right.
Q. So sticking with this document, which, again, is Plaintiffs' Initial Disclosures, the next to the last page, which is Page 14, is Section 3, and the heading is Computation of Damages. Do you see that?
A. I do see that.
Q. And it says that plaintiffs presently seek declaratory and injunctive relief and nominal damages.
Do you know what nominal damages are?
A. I believe that's referring to monetary compensation, but I'm not sure. I'm not a lawyer.
Q. I understand. So you're correct that that is a form of monetary compensation, but do you understand what nominal damages are

Page 42

specifically?
A. No, I don't.
Q. Are you able to tell me whether you presently -- just in terms of monetary damages, whether you're seeking anything beyond nominal damages? Are you able to answer that question?
A. I'm not sure what nominal damages are. I know that we're not seeking monetary compensation.
Q. You can keep track of that or -- I'll let you decide how to keep track of it. I don't think I'm going to refer back to that document.
I'm going to show you a document that we will mark as Exhibit 59.
(Exhibit 59 was marked.)
Q. So as reflected in Exhibit 59, you received an award from the Kansas Scholastic Press Association in the summer of 2025 for your reporting on Gaggle; is that right?
A. That's right.
Q. And if you could just look at this document briefly and let me know if the article is generally accurate regarding the

Page 43

award that you received.
A. This seems accurate to me.
Q. One thing I noticed about this article -- I noticed a few things. But in the first paragraph, it says that the award recognized the Lawrence High School journalism staff. Do you see that in the first paragraph?
A. I see that.
Q. And there's a picture on the right-hand side of the article, and you're one of the people in the picture, right?
A. That's correct.
Q. So do you know, were you part of the journalism staff that was given this award?
A. I was, yes.
Q. And how is it that you were part of the group that was given this award given that it appears to have been awarded after you graduated?
A. I believe that we were nominated for this award. I don't remember applying for it. And so I think that we were given it after we graduated. I wasn't on the staff

Page 44

when this was awarded to us.
Q. Okay. Did you get a plaque or anything?
A. I don't recall.
Q. The picture on the right-hand side there underneath the picture, it says Barbara Tholen. Do you see that?
A. That's right.
Q. Do you know if she took the picture?
A. Right. I think her name is crediting her for the photo.
Q. Do you remember her taking this specific photo that's on this exhibit?
A. I do.
Q. Do you remember when the photo was taken roughly?
A. March 6th, 2024.
Q. How do you remember that so specifically?
A. That was the date of the first meeting with the district that we had regarding our concerns with the software.
Q. Do you remember if this photo was taken before or after the meeting?

Page 45

A. I believe it was taken before.
Q. Where are you standing in this photo?
A. The leftmost side of it.
Q. Oh, no, I'm sorry. That was a bad question. Where were the students? Were they at the school, or where were you physically when the photo was taken?
A. We were in a conference room at Lawrence High School.
Q. Did you communicate with Barb Tholen about this award that the staff received?
A. I remember her messaging the four of us as a group saying that we had won it.
Q. Was that a text message?
A. I believe so.
Q. Were there other ways that you communicated with Barbara Tholen?
I'm sorry. That was -- I'll be more specific about my question.
So am I correct to assume that you would have received that text from Barbara Tholen after you had graduated?
A. Right. That's right.