IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JACK TELL; NATASHA TORKZABAN; MORGAN SALISBURY; OPAL MORRIS; HENRY FARTHING; SUZANA KENNEDY; NAOMI SUI PANG; ASHLYN TELL; PHOEBE MORRIS; E.B., a minor, by and through his parent and next friend, CATHERINE P. BATZA, Ph.D.; and H.C., a minor, by and through his parents and next friends, DANIELLE BRUNIN and ERIK CHANEY, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Case No: 2:25-cv-02428-KHV-GEB |
| LAWRENCE USD 497, a political subdivision of the State of Kansas, | ) | |
| Defendant. | ) | |

DEPOSITION OF NATASHA TORKZABAN, taken on August 19, 2026, at 10:30 a.m., remotely via Zoom Videoconference, before Stacy L. Decker, a Certified Court Reporter, taken on behalf of the Defendant.

MR. JOHNSON: It's possible. I don't know the answer to that question but it is possible Cameron.

MR. GRANT: Right. So I think, to the extent the privilege is asserted during Natasha's deposition, we would obviously take the position that they can't then share that information at trial, because then they're no longer confidential. And so that's what I'm trying to figure out. You know, we're just trying to avoid surprise at trial.

MR. JOHNSON: Sure.

MR. GRANT: So I think I can withdraw my broad question about whether or not any of these people are confidential sources, because I understand that the context could matter and that maybe one of these people, pick a random person, Opal or whoever, may have provided confidential reporting for some story that's completely unrelated to this lawsuit. And I don't care about that.

So, again, I think I can withdraw the question for now, and that, you know, provided that you don't assert the source privilege in response to any question I ask about that



lawsuit, I think it's fine, and I think we can move on.

But another thing I would like to know, and I guess this is maybe not an appropriate topic for Natasha's deposition, but I do also want to make sure that there is not somebody who is omitted from this list who you would expect to call at trial but you didn't identify them here because you identify them as a confidential source.

MR. JOHNSON: Okay. I understand your point. I don't think -- well, as far as I know, nobody that's on this list or anybody I can think of fits that description.

MR. GRANT: Okay. And so I think we can move on, like I say. I'm not sure these are questions I needed to ask Natasha. And I think it will only come up if she asserts the privilege in response to a specific question I ask.

But I think I can move on from that line of questioning. I don't think there's really any further point to it at this time.

MR. JOHNSON: Okay. Thanks.

Q. (By Mr. Grant) All right.



Natasha, sorry about that sidebar.

A. All good.

Q. As I understand it, you're no longer a student of Lawrence High School as of -- you graduated in May of 2024; is that correct?

A. Correct.

Q. So given that you're no longer a student, what are you hoping to achieve by being a plaintiff in this lawsuit?

A. We just want the school district to uphold the rule of law and the constitution for future journalists and future students to come through the school district and the schools.

Q. Okay. That answers my question. Thanks.

So going back to the exhibit, I do have one more question about this, Exhibit 67. And category three, or heading three, is a computation of damages. It's the last -- next to last page of the document.

A. Uh-huh.

Q. And it says that plaintiffs presently seek declaratory, injunctive relief,



and nominal damages. Do you have an understanding of what nominal damages means?

A. Yes.

Q. Okay. Can you confirm that you are seeking only nominal damages in this case in terms of money damages?

A. Can you rephrase the question.

Q. Sure. And that's why I prefaced it by asking if you understand what nominal damages means.

So, you know, what the document says is that, because nominal damages are not susceptible to mathematical computation, plaintiffs have no monetary computation to disclose at this time.

So I don't know if I can rephrase it or not. But you do understand what nominal damages are, and so I understand that the plaintiffs are seeking injunctive and declaratory relief.

But in terms of the money damages, are you, as a plaintiff, seeking anything above or beyond nominal damages at this time?

A. Yeah, I -- I just understood your question as saying like if I understood what

Page 46

nominal damages meant. And I know the definition for that. As for if I'm seeking anything other than nominal damages, I'm just seeking for the school district to stop doing that, stop damaging students.
Q. Okay. I think that answers my question to my satisfaction.
All right. I'll ask you some background questions now, which sometimes occur at the beginning of the deposition, but I tend to do it a little bit later so I have a sense of your understanding of the process, et cetera. But have you been deposed before?
A. No.
Q. Have you been a party to a lawsuit before?
A. No.
Q. Where are you located right now? You're not in the United States; is that right?
A. I'm in the US right now. I'm in Evanston, Illinois.
Q. Oh. I thought for some reason you were going to be sitting somewhere in a different country.

Page 47

A. I am in like two weeks.
Q. Oh, okay. That makes more sense.
A. Yeah.
Q. And you're in Evanston because -- you attend Northwestern, correct?
A. Yes.
Q. And what have you been doing this summer? Have you been taking classes?
A. I've been interning.
Q. Where have you been interning?
A. I've been interning at a gender violence and child welfare legal support clinic.
Q. Where is that located?
A. It's called Ascend Justice. It's in like the south side of Chicago.
Q. What is your current address?
A. My home address?
Q. So I don't know. Do you live full-time right now in Chicago or -- I mean in Evanston?
A. Yeah. It's a little complicated. I'm currently subletting from someone, so my current address is only my address for two months, and then I'm going to move to an

Page 48

apartment, and then the moving journey continues.
Q. Okay. I know how that works. So what was your address, let's say, during the last school year?
A. My school address was 619 University, but my home address was in Shawnee, Kansas.
Q. What is your home address in Shawnee?
A. 22303 West 58th Terrace, Shawnee, Kansas.
Q. And how long were you associated with that address?
A. Only after I like -- after my freshman year.
Q. Of college or high school?
A. College.
Q. Where did you live when you were -- where did you live during your senior year of high school?
A. I lived in Lawrence.
Q. Okay. What was your address in Lawrence?
A. 6204 Berando Court.

Page 49

Q. Okay. So then after Lawrence -- did you go to Northwestern straight out of LHS?
A. Yes.
Q. So how did the Shawnee address come about? Why did you live in Shawnee for a while?
A. My parents were planning on leaving Lawrence for their jobs for a while, and they just waited until I went away to school. And so I think about halfway through my freshman year, they started looking for homes and then they moved, but I haven't actually lived in Shawnee for very long. That's just where my parents are located, so it's my home address.
Q. Okay. I think I understand. So did your -- Shawnee, that's like part of Kansas City, right?
A. Yeah.
Q. I've only lived in Kansas City for seven years, so I still -- people say something like Shawnee, and I'm not totally sure what they're talking about.
A. Yeah.