IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF KANSAS

| | |
|---|---|
| JACK TELL, NATASHA TORKZABAN, MORGAN SALISBURY, OPAL MORRIS, HENRY FARTHING, SUZANA KENNEDY, NAOMI SUI PANG, ASHLYN TELL; PHOEBE MORRIS; E.B., a minor, by and through his parent and next friend CATHERINE P. BATZA, Ph.D.; and H.C., a minor, by and through his parents and next Friends DANIELLE BRUNIN and ERIK CHANEY, | ) Case No. 2:25-cv-02428-KHV-GEB |
| Plaintiffs, | ) |
| v. | ) |
| LAWRENCE USD 497, a political subdivision of the State of Kansas, Defendant. | ) |

ZOOM DEPOSITION OF HENRY FARTHING, a Plaintiff, taken remotely on behalf of the Defendant before Peggy E. Corbett, CSR No. 0058, CCR No. 143, RDR, pursuant to Notice on the 21st day of August, 2026, at the Law Offices of Lewis Brisbois Bisgaard & Smith, LLP, 4600 Madison Avenue, Suite 700, Kansas City, Missouri 64112.

Page 138

Q. And flip to Paragraph 181. This discusses another meeting on March 29th with Plaintiffs Tell, Torkzaban and Salisbury that they were caught off guard by the presence of the District's counsel. Were you present at that meeting?
A. No.
Q. Did you have any communications with Jack Tell, Torkzaban or Salisbury regarding that meeting at all?
A. No.
MR. JOHNSON: You have to answer audibly.
A. No.
Q. (BY MS. HARRIS) And if you go to Paragraph 195, this is another meeting on April 19th of 2024 with Plaintiffs Jack Tell, Torkzaban and Salisbury with the District Board President Jones and Board members. Were you present at that meeting?
A. No.
Q. Did you have any communications at all with Plaintiffs Jack Tell, Torkzaban or Salisbury regarding anything?
A. No.

Page 139

Q. Flip to Paragraph 275. It alleges that: "Since filing the Initial Complaint, absent any solicitation, counsel for Plaintiffs have? Received significant supportive correspondence and additional information volunteered by parents, faculty, and other interested parties affected by Gaggle."
I know it says "counsel for Plaintiffs" but have you received any supportive correspondence or communications from parents, faculty or other interested parties?
A. No. I wasn't like involved in that. I wasn't talking about it a lot of the time.
Q. I'm going to hand you a copy of Plaintiff's Initial Disclosures?
MR. JOHNSON: That I have.
Q. (BY MS. HARRIS) Have you seen this document before?
A. I don't think so.
Q. I will represent to you, and Mr. Johnson can pipe in here if I say anything that he deems is incorrect or disagrees with, but initial disclosures in litigation are used to identify individuals who may have discoverable information in regards to the lawsuit, but disclose documents

Page 140

that the parties may use in support of their claims or defenses in the lawsuit to disclose the damages that the plaintiffs or the parties are alleging in this matter to identify, you know, any insurance policies or anything of that nature.
A. Uh-huh.
Q. And just a quick question here, apart from your photography, do you claim that the District restricted your speech in any way?
A. No.
Q. And again, we discussed, if you go to Section 3, Computation of Damages, it's front and back.
A. Oh.
Q. Page 14, right there. And so in the computation of damages section, it states that: "Plaintiff presently seeks declaratory and injunctive relief and nominal damages for alleged constitutional violations." Do you see that there?
A. Yes.
Q. So you're no longer a student at Lawrence High School because you've graduated already, right?

Page 141

A. Yes.
Q. So what are you hoping to achieve from this lawsuit?
THE REPORTER: I'm sorry, I can't hear you.
A. Well, sorry. I think just kind of like on the principle of like I felt uncomfortable that I was being my art was being looked at in this way, and I was upset by the lack of communication from the administrators to me about what was happening, and what I needed to do, and I support journalism and all of their issues that they had, so that's it.
Q. Let me ask you this, other than the damages that are alleged in this Section 3 for computation of damages, are you seeking any additional damages from this lawsuit?
MR. JOHNSON: Well, that misrepresents what the -- the document speaks for itself. Go ahead and answer.
A. I guess not. Any additional damages? In addition to --
Q. (BY MS. HARRIS) What's listed in Section 3?
A. Which is declaratory and injunctive

Page 142

relief and nominal damages for alleged constitutional violations?

MR. JOHNSON: The question also asked for a legal conclusion, but again, you can answer as best you can.

A. I don't really know what declaratory injunctive relief and nominal damages for alleged constitutional violations, I'm not totally sure what that means.

Q. (BY MS. HARRIS) well, What damages are you seeking from this lawsuit?

MR. JOHNSON: That calls for a legal conclusion, because "damages" is a legal term. You can answer as best you can.

A. Yeah, I don't know. That just really confuses me, because I feel like I don't want to put -- like I don't want money, necessarily. That's not why I'm doing this. I'm not doing this for money or for any other kind of award or accolade.

I like on principle believe that what happens with all of the plaintiffs and our work was okay, but like beyond that, I guess not. I don't know. I don't really want money from this.

Q. What do you want?

Page 143

A. Is it okay to say nothing?

Q. It's okay to say no?

A. Well, that doesn't mean that I don't care about like what's happening here. It's that I don't feel that anybody should take money from the School District right now, because I'm a huge supporter of the school, and it's done so much for me. Like I don't want anything that would hurt the school, or the ecosystem of the school, but at the same time I feel like what happened is not right, but I don't know.

The question I feel like seeks a very specific answer that I should know, but I don't know.

Q. Is it fair to say that the on-going monitoring of a Google Workspace does not affect you personally?

A. Yeah, it doesn't. That's one thing, I guess. I would love if Gaggle, if the District were to sort of like reassess their like relationship with Gaggle and their use of like their monitoring software for technology.

That's one thing that I would love, if they can at least just talk about that, and hear what Jack and Torkzaban and Morgan have to say

Page 144

about that, and actually make some changes.

Q. I don't believe that you have answered the question. So my question was --

MR. JOHNSON: She gave you an answer. You're going to have to be satisfied with it.

Q. (BY MS. HARRIS) Would you agree that the on-going monitoring of the Google Workspace, of the student Google Workspace does not have any personal effect on you?

A. No, that's not true.

Q. How does it personally affect you?

A. It effects me. I'm frustrated by it. I'm frustrated that I had to deal with it in high school, and I am frustrated that other people have to continue to have to deal with it.

I think about that -- I know so many kids there now who want to do art and go to art school, and actually this is not something that I want students to have to deal with.

I don't want this to be a barrier in between journalists and artists to do what they love to do and want to do.

Q. So while you were a student at Lawrence High School, you were monitored by Gaggle and

Page 145

you're in college now.

A. Uh-huh.

Q. And you testified earlier that your scholarships were based on your photography, so how is it that current Lawrence High School students would be prohibited from also going to college?

A. I'm not saying --

MR. JOHNSON: Hold on, objection calls for speculation and it is argumentative and compound, but go ahead.

A. I'm not saying anything about college. I know that this did not at all prevent me getting into college. So the School District and the school and the teachers have all done so much for me on my journey to college, but it's, to me, I felt the actual freedom to make the work that we want to make.

It's not about any sort of material gain that comes out of that, whether it be like college, or money, or anything else like that, or even just reputation, respect.

Like I did feel like, when we were going in there that first time, I felt like uncomfortable and I felt like disrespected, and I