IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JACK TELL; NATASHA TORKZABAN; MORGAN SALISBURY; OPAL MORRIS; HENRY FARTHING; SUZANA KENNEDY; NAOMI SUI PANG; ASHLYN TELL; PHOEBE MORRIS; E.B., a minor, by and through his parent and next friend, CATHERINE P. BATZA, Ph.D.; and H.C., a minor, by and through his parents and next friends, DANIELLE BRUNIN and ERIK CHANEY, Plaintiffs, | ) |
| vs. | ) Case No: 2:25-cv-02428-KHV-GEB |
| LAWRENCE USD 497, a political subdivision of the State of Kansas, Defendant. | ) |

DEPOSITION OF H.C., taken on September 8, 2026, 9:30 a.m., remotely via Zoom Videoconference, before Stacy L. Decker, a Certified Court Reporter, taken on behalf of the Defendant.

Page 58

able to find it.
Q. Is that the only email from that time frame that you searched for that you were unable to find?
A. Yes.
Q. Interrogatory Number 2 asks for you to identify all communications and correspondence between you and defendant regarding Gaggle, ManagedMethods, student monitoring, surveillance, or scanning.
And in your response to Interrogatory Number 2, you referenced the meeting that you had with Ms. Fike regarding the email sent in late 2024 or early 2025.
Is that the only communication that you've had with the defendant regarding Gaggle or student monitoring or surveillance?
A. Yes.
Q. Now, Interrogatory Number 7 asks you to state the dates on which you first became aware that defendant implemented Gaggle, ManagedMethods, or any other software to monitor, review, scan, or analyze content contained in district-issued accounts, devices, or Google Workspace.

Page 59

And in response to Interrogatory Number 7, you state that, "I first became aware that the district had monitored a communication in my account in late 2024 or early 2025 when Tiffany Fike pulled me from class and displayed the flagged email."
Is that how you first found out about Gaggle?
A. I first figured out about Gaggle when my mom sent that document -- or the article to me. But --
Q. So why does your answer to Interrogatory Number 7 state that you first became aware in late 2024 when Ms. Fike pulled you out of class?
MR. JOHNSON: Well, objection. That's not what it states. It states that he was first made aware when they monitored a communication in my account.
But you can go ahead and answer it.
Q. (By Ms. Harris) Did you -- go ahead and answer the question.
A. I don't know.
Q. Did you provide this answer to Interrogatory Number 7?

Page 60

A. I had Mark like -- what's the word I'm thinking of? Sorry. Make it for me through my words.
Q. So is the date that you became -- first became aware that defendant implemented Gaggle, would this be in late 2024 or early 2025 when Tiffany Fike pulled you from class, or is it when your mom sent you an article?
A. First time I was aware that it was monitoring anyone was when my mom had sent me the article. But as Mark and I read it, we thought it was like -- monitored like me personally.
Q. But you would agree that Interrogatory Number 7 doesn't ask about monitoring you personally; it asks when defendant implemented Gaggle; is that correct?
MR. JOHNSON: Objection, calls -- the document speaks for itself.
But go ahead.
A. Yes.
Q. (By Ms. Harris) Interrogatory Number 4 asks you to identify each item of damages you seek in this action.
What damages are you seeking in

Page 61

this action?
A. I don't know. Well, okay --
Q. So after your -- you know, in response to Interrogatory Number 4, there's an objection here. And then it states, "Subject to that objection, under Counts III and VI, I seek nominal damages for the completed violations of my First and Fourth Amendment rights and compensatory damages for the resulting loss of access to communications, non-economic harm, and chilling of protected expression, and amounts to be determined by the jury based on the evidence."
A. Yes.
Q. Is that an accurate statement?
A. Yes, that is.
Q. And the resulting loss of access to communications, what are you referring to?
A. Well, not being able to send like joking emails to my friends. That should not be able to be taken away.
Q. Did the district take that away, or did you on your own decide not to send joking emails to friends?
A. I would say I decided not to, but

that's because of the district.
Q. And is it because of the meeting you had with Ms. Fike, or is there something else?
A. Because of the meeting with Ms. Fike, yes.
Q. And loss of access to communications, what communications did you lose access to?
A. Sending joking emails to my friends.
Q. So is that just the one email that you sent to A.R.?
A. Yes. That single email was enough for me to like self-censor myself and with other people through Gmail.
Q. Did you lose access to any other communications other than the email that you're unable to find that you sent to A.R.?
A. No.
MR. JOHNSON: Objection, asked and answered. But go ahead.
A. No.
Q. (By Ms. Harris) And it states that you also seek reasonable attorney's fees



and costs under 42 USC Section 1988?
A. Yes.
Q. Okay. Have you incurred any attorney's fees to date?
A. No. It is -- no.
Q. When you say you seek nominal damages, is there a certain amount of nominal damages that you're seeking?
A. That's up to the jury.
(Exhibit 102 was marked.)
Q. Okay. I am going to show you -- and we can mark this document as Exhibit 102. This document is titled, "Plaintiff H.C.'s Response to Defendant's First Set of Requests for Production."
Have you seen this before, this document before?
A. I believe so.
Q. I would like to direct your attention to Request Number 6, which asks for all documents and communications concerning or containing any statement you made to any person regarding the claims or allegations in the complaint.
And earlier we discussed that you



have -- you know, you've sent text messages regarding the lawsuit. Have you sent any other forms of communications regarding the lawsuit?
A. Yes.
Q. What type of communications?
A. Just text messages.
Q. What did you do to search for documents responsive to this request?
A. I searched through all the messages, like I was able to go through -- I searched for keywords like Gaggle or lawsuit, things that I would expect to pertain to this.
Q. Where did you search?
A. I searched Instagram, I searched messages. Yeah.
Q. When you say you searched messages, what do you mean?
A. My like text message app I use for like -- yeah.
Q. And then there was an objection, and then it says, "Subject to and without waiving any objection, Plaintiff has produced and/or will produce nonprivileged responsive documents to the extent they exist."



Did I read that correctly?
A. Yes.
Q. What documents did you produce in response to Request Number 6?
A. I produced some screenshots between my friend and I just regarding Gaggle, and like that's it. I had nothing else to show.
Q. How many screenshots?
A. I believe four or five, but I'm not certain how many off the top of my head.
Q. Interrogatory Number 8 asks for all Kansas Open Records Act requests submitted by you, or on your behalf, concerning Gaggle, ManagedMethods, or student monitoring software together with all responses and related correspondence from November 2023 through the present.
And in response, there's an objection, but you also state, "Subject to and without waiving any objection, Plaintiff has produced and/or will produce responsive documents to the extent that they exist."
Did I read that correctly?
A. Yes.