IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JACK TELL; NATASHA TORKZABAN; MORGAN SALISBURY; OPAL MORRIS; HENRY FARTHING; SUZANA KENNEDY; NAOMI SUI PANG; ASHLYN TELL; PHOEBE MORRIS; E.B., a minor, by and through his parent and next friend, CATHERINE P. BATZA, Ph.D.; and H.C., a minor, by and through his parents and next friends, DANIELLE BRUNIN and ERIK CHANEY, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Case No: 2:25-cv-02428-KHV-GEB |
| LAWRENCE USD 497, a political subdivision of the State of Kansas, | ) | |
| Defendant. | ) | |

DEPOSITION OF NAOMI SUI PANG, taken on September 15, 2026, at 12:30 p.m., remotely via Zoom Videoconference, before Stacy L. Decker, a Certified Court Reporter, taken on behalf of the Defendant.

Page 82

violate it?
A. Yes.
Q. Do you know of anybody who was ever disciplined for violating the AUP?
A. I don't remember.
Q. All right. So I'm going to ask a broad question. And, again, this is just to make sure that I understand kind of every aspect of your claim.
And so I've asked you about specific allegations in the complaint, and I just want to make sure I understand every claim you're alleging in terms of the way in which you contend the district violated your rights.
And so we've talked a lot about the fear and pressure that you felt from what you call the 24/7 surveillance and monitoring. You've talked about self-censorship.
Is there anything that we have not talked about in terms of the ways in which you claim the district violated your rights, or have we covered everything?
A. We covered everything.
Q. And in terms of how that impacted

Page 83

you -- so I think the violation of your rights you're alleging, I understand that. And then the impact on you, you've testified again about the fear and pressure, the self-censorship.
Is there any other impact that the school's monitoring has had on you that we have not discussed?
A. No.
Q. Can you find and open the document marked as Exhibit 69.
A. Yes. So still the same 169?
Q. No, no. Sorry. Totally different document. Oh, I'm sorry. I think I gave you the wrong number. I meant to say 67.
A. Oh, 67. Okay. Okay. I have it open.
Q. Do you know if you've seen this document before?
A. I don't remember.
Q. Section 1, which starts on Page 2, lists names, addresses, and telephone numbers of individuals with discoverable information. Do you see that?
A. Yeah. Yes.

Page 84

Q. Do you remember if you helped to compile this list?
A. I don't remember.
Q. Okay. If you could just take a moment to review this list. And, as you're reviewing it, let me know if you can think of anybody else who has information relevant to your claims.
A. Someone that's like not on the list yet?
Q. Right.
A. No, I don't know who else would.
Q. Okay. Sticking with this document, if you can look at Section 3, which is on Page 14, and the heading is "Computation of Damages."
A. Okay.
Q. Do you see the first sentence that says, "Plaintiffs presently seek declaratory and injunctive relief and nominal damages"?
A. Yes.
Q. Do you know what nominal damages are or what that means?
MR. JOHNSON: Objection, form. Legal conclusion.

Page 85

But you can go ahead and answer.
Q. (By Mr. Grant) Are you able to answer that question?
A. What was the question again?
Q. Sorry. Do you know what nominal damages are?
A. Oh, no.
Q. You don't, okay. Are you seeking any relief in the lawsuit that's not described in this Section 3?
MR. JOHNSON: Well, objection. Calls for a legal conclusion. She doesn't know what nominal damages are, and you're asking her to limit --
MR. GRANT: I've got to ask somebody. Who else do you want me to ask?
MR. JOHNSON: Well, you've asked everybody so far.
A. I guess I can't answer that.
Q. (By Mr. Grant) Okay. Let me ask you this: Are you seeking money from this lawsuit if you win?
A. I'm seeking I guess whatever the jury says. I don't know the amount or whatever.

Page 86

Q. So are you going to ask the jury to award you money?
A. I'm just asking the jury what they think is reasonable and fair.
Q. Including money or no?
A. It's whatever they think, I guess.
Q. Right. But I -- there's no jurors here. I can't ask them what they think. I'm asking what you're going to ask that they give to you. Are you going to ask the jury to give you money if you win?
A. No.
Q. Okay.
MR. GRANT: All right. So we can now take another break. And, Mark, at this point I'll email to you two documents, which are going to be Exhibits 117 and 118. We can go off the record.
(Recess.)
Q. (By Mr. Grant) So, Naomi, I understand you now have Exhibits 117, 118, and 119, which I sent to Mr. Johnson and which I think he then forwarded to you.
So if you could start with Exhibit 117 and just let me know when you have

Page 87

it open.
A. I have it opened.
Q. Have you seen this document before?
A. I can't remember.
Q. Okay. Do you understand that the district sent a request to you to produce documents in this case?
MR. JOHNSON: Well, objection. That mischaracterizes. The district sent it to us, the lawyers.
Q. (By Mr. Grant) Yes to your counsel, yes. Were you aware that that happened?
A. I don't think so. I don't know.
Q. Okay. Do you see on Page 2 where there's -- it says Request Number 1 -- well, let's start with Number 2.
It says, Request Number 2, "All communications and correspondence between you and defendant relating to Gaggle," and then it goes on.
A. Yes.
Q. Have you looked for documents that might be responsive to that request?

Page 88

A. I've looked.
Q. Do you remember when you looked?
A. Like -- I think like a couple weeks ago.
Q. Okay. So you can review each one of these to confirm if you want to. But in response to these requests, there's -- it says in all caps, "RESPONSE," and then I think -- yeah. For all of them there's an objection, but then the second paragraph for each of the responses says that, "Plaintiff has produced and/or will produce responsive documents to the extent they exist."
Do you see that?
A. Yes.
Q. Did you provide any documents to your lawyers in response to these requests?
A. No.
Q. Are you still looking for documents that you might have?
A. No.
Q. And is that because you have determined that you don't have any responsive documents?
A. Yes.

Page 89

Q. Did you, prior to graduating from LHS, perform a Google Takeout of your school account?
A. I don't remember.
Q. Do you have a copy of your school account anywhere?
A. I don't remember. I don't think so.
Q. Did you look to see if you had a copy of your Google account in response to these requests?
A. I did, but I couldn't find it.
Q. Where did you look?
A. In my finder, on my Mac finder.
Q. Sorry. Your finder on your what?
A. The -- like my computer, like my computer files.
Q. What did you do to search?
A. I just searched up like my name -- like my student ID.
Q. Did you look -- did you review your phone for any text messages?
A. No.
Q. Is there a reason why?
A. Because I never -- like I didn't