IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JACK TELL; NATASHA TORKZABAN; MORGAN SALISBURY; OPAL MORRIS; HENRY FARTHING; SUZANA KENNEDY; NAOMI SUI PANG; ASHLYN TELL; PHOEBE MORRIS; E.B., a minor, by and through his parent and next friend, CATHERINE P. BATZA, Ph.D.; and H.C., a minor, by and through his parents and next friends, DANIELLE BRUNIN and ERIK CHANEY,

Plaintiffs,

vs. — Case No: 2:25-cv-02428-KHV-GEB

LAWRENCE USD 497, a political subdivision of the State of Kansas,

Defendant.

DEPOSITION OF PHOEBE MORRIS, taken on October 6, 2026, at 3:00 p.m., remotely via Zoom Videoconference, before Stacy L. Decker, a Certified Court Reporter, taken on behalf of the Defendant.

Page 54

of the district ever taking your work, correct?

A. Not taking my work. I don't have knowledge of that. But I do know that they had confronted others about not writing things and flagging their stories. So I was worried that was going to happen to me.

Q. After finding out about Gaggle and ManagedMethods, is there anything that you like stopped doing or started doing differently or avoided in any way?

A. I would not say that I avoided anything, because I was still going to keep doing my job as a journalist in reporting on matters that are important for students to know.

But, again, it did make me worried that somebody could potentially come in and say all of your work is now being seized and you will not be able to report on this any longer.

Q. If you were worried that your work could potentially be seized, did you ever use anything to back up your work in case that happened?

Page 55

A. I did not have an option to do that, because, again, my publication worked through Google Docs. We had editors view these documents and then edit your stories on this. And even as an editor, my story was being edited. And so, no matter what, I had to rely on my school computer because that was the only device I had to write my stories on, other than interviewing with my phone.

And so that was the way that our publication worked. And there's no way of changing 60 staff members to do a completely new software off of our school devices that wasn't -- wouldn't be effective.

Q. I am going to show you what was previously marked as Exhibit 67. Can you see my screen, Phoebe?

A. It is still loading. Yes, I can see it now.

Q. Okay. I will represent to you that these are plaintiffs' initial disclosures. Have you seen this document before?

A. Yes.

Q. Okay. Did you -- when is the

Page 56

first time you've seen this document?

A. I do not remember.

Q. Did you assist with the preparation of this document at all?

A. I reviewed it, but I -- no.

Q. Okay. I'm going to scroll down to Section 3, Computation of Damages, which states that Plaintiffs presently seek declaratory and injunctive relief and nominal damages for alleged constitutional violations.

Do you see that there?

A. Yes.

Q. Am I correct that, in terms of money damages, you yourself are only seeking nominal damages?

A. I have since decided that nominal damages I am -- I am seeking all damages possible.

Q. Are there any damages that are not listed here under the computation of damages section in Section 3 that you are seeking?

A. No. I believe -- yeah, no.

Q. So when you say you're seeking all damages possible, what do you mean by that?

A. I would say any possible damages

Page 57

that would, you know, explain how I've been affected by this -- by the school district violating my First and Fourth Amendments, so any potential damages that I can get from that is what I am seeking.

Q. Do you have any plans to amend your initial disclosures?

MR. JOHNSON: Objection. This is a preliminary document filed before any discovery had been undertaken. And there's no -- there's no requirement that one amend initial disclosures unless necessary. We don't think it's necessary.

You can ask any question you want about damages sought. You know that the damages sought have been -- amended is not right word -- let's say amplified by the interrogatory answers.

MS. HARRIS: I just asked if she had any plans to amend her initial disclosures.

MR. JOHNSON: And by asking that question, you imply an obligation on the witness, who is not a lawyer, does not understand the legal rules, and I think that's an unfair question.

Page 58

MS. HARRIS: Are you directing her not to answer?
MR. JOHNSON: I'm not directing her not to answer. I'm just raising the point that you should understand that damages sought are not frozen by initial disclosures. In fact, it's the pretrial order which the court will enter which will control, among other things, the elements of damages sought at trial.
MS. HARRIS: I am not here to debate that with you, Mark. I just asked a question about the damages that she was seeking.
MR. JOHNSON: Okay.
MS. HARRIS: And I'm trying to understand what her claimed damages are.
MR. JOHNSON: She can answer the question.
A. I, again, would say that I don't know the whole -- what legal terminology I can use right now. But any damages that are possible to seek from my First and Fourth Amendment rights being violated, I am interested in that.
Q. (By Ms. Harris) But at this time

Page 59

are you seeking any other monetary relief other than what is listed in Section 3?
MR. JOHNSON: Objection. The question has been exhaustively asked and answered. But the witness can answer it again.
A. Could you explain monetary for me.
Q. (By Ms. Harris) Are you seeking any other moneys other than what is -- or any other damages other than what's listed in Section 3?
A. I would say that this is -- Section 3 covers it.
(Exhibit 156 was marked.)
Q. I'm going to share my screen with you again and show you what I have marked as Exhibit 156, which are Plaintiff Phoebe Morris' Answers to Defendant's First Interrogatories. Have you seen this document before, Phoebe?
A. Yes.
Q. Did you assist with the preparation of this document?
A. I viewed it, reviewed it.
Q. Do you remember if you received something called a verification page along

Page 60

with this document?
A. I believe so, yes.
Q. Did you sign it?
A. Yes.
Q. Okay. When did you sign it?
A. I'm not sure.
Q. Can you provide an estimate as to when you think you may have signed the verification page?
A. I -- probably this summer, I would say.
Q. If we go down to question four, we asked you to identify each item of damages you seek in this action. And in response you state that, I seek nominal damages for the completed violations of my First and Fourth Amendment rights and compensatory damages for the resulting non-economic and expressive injuries and amounts to be determined by the jury based on evidence.
What non-economic and expressive injuries did you suffer?
A. Non- -- could you explain more what --
Q. I'm asking you about your answer

Page 61

to the interrogatory. So what did you mean by your non-economic and expressive injuries?
A. My emotional injuries, my stress regarding -- regarding being worried about, again, that my First and Fourth Amendments being violated was very -- it was stressful. I did not know what was going to happen.
Q. In response to Interrogatory Number 8, it states that -- it asks you to identify each incident in which you contend that Gaggle, ManagedMethods, or any other software implemented by defendants, interfered with your academic, journalistic, artistic, or other expressive activities.
Did Gaggle or ManagedMethods interfere with your academic activities at all?
A. No. Not necessarily. I mean, again, I knew that it was monitoring what was being done. But, as a student, I was required to turn in assignments and to write stories for -- write essays, and so I was -- I was frankly not able to change that.
Q. And then in your response to Interrogatory Number 8, you say, The lack of