**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

JACK TELL, NATASHA TORKZABAN, MORGAN SALISBURY, OPAL MORRIS, HENRY FARTHING, SUZANA KENNEDY, NAOMI SUI PANG, ASHLYN TELL; PHOEBE MORRIS, E.B., a minor, by and through his parent and next friend CATHERINE P. BATZA, Ph.D.; and H.C., a minor, by and through his parents and next friends DANIELLE BRUNIN and ERIK CHANEY,

Plaintiffs,

v.

LAWRENCE USD 497,

Defendant.

Case No. 2:25-cv-02428-KHV-GEB

**PLAINTIFF PHOEBE MORRIS'S ANSWERS TO DEFENDANT'S FIRST INTERROGATORIES**

COMES NOW Plaintiff Phoebe Morris, by her undersigned counsel, and responds to Defendant's First Interrogatories, as follows:

**INTERROGATORIES**

**INTERROGATORY NO. 1.** Identify each Document, sent or received by You, which You contend was flagged, searched, seized, deleted, quarantined, censored or otherwise interfered with by Defendant or the Monitoring Software. For each item identified, state:

a. The date it was created or transmitted (or approximate date, if unknown);

b. The name and, if known, title/role of the person who created it;

c. The platform or application on which it was created;

d. Whether it was created or transmitted using a personal device or a school-issued device;

e. Where it was stored (including the platform/account and folder/location, if known);

f. The date You first discovered it was unavailable or inaccessible;

g. Whether it was later returned or restored, and if so, the date and manner of return/restoration;

h. Whether you contend you were permanently and irrevocably deprived of access to and use of the Document; and

i. Whether You maintained a separate, personal copy of the Document in any format.

**ANSWER: After reasonable inquiry, I cannot presently identify a particular document that I personally observed become unavailable because it was flagged, quarantined, deleted, or otherwise interfered with. The District did not notify students when Gaggle or ManagedMethods scanned or flagged their files, and a student would not necessarily know that a file had been flagged if the system or a reviewer released it without restricting access. While enrolled at Free State High School, I created and stored student-journalism materials for the Free Press in my District-managed Google Workspace account and on District-issued devices. Those materials were subject to the District's monitoring. Because I cannot identify a specific affected file, I cannot provide the remaining file-specific details requested in**

**subparts (a) through (i). I will supplement this answer if additional responsive information is identified.**

**INTERROGATORY NO. 2.** Identify all communications and correspondence between You and Defendant regarding Gaggle, Managed Methods, student monitoring, surveillance, scanning, flagging or the seizure of students' digital speech as referenced and described in the Complaint, from November 2023 through the present. For each such communication or correspondence, state:

a. The date of the communication or correspondence;

b. The sender(s) and intended recipient(s) (including name, title and affiliation);

c. The other participant(s) to the communication (if different from the sender/recipient identified in subpart b);

d. The method of communication (e.g., in person, telephone, video conference, email, text message, chat, etc.); and

e. The substance of the communication or correspondence

**ANSWER: I was not a participant in the Lawrence High School students' March 2024 meetings with District administrators. My principal communications with the District concerning the monitoring program were the five KORA request emails I sent on October 30, 2025, as News Managing Editor of the Free Press. I sent the requests to the District's records custodian and copied Superintendent Jeanice Kerr Swift, Deputy Superintendent Larry Englebrick, Board President G.R. Gordon-Ross, and Board Vice President Bob Byers. The requests sought records concerning the District's replacement of Gaggle with ManagedMethods, including contracts, costs,**

**procurement, configuration and implementation communications, public messaging, and Gaggle off-boarding and data disposition. On October 31, 2025, the District acknowledged each request by email and stated that the requests were under review, that it would provide a cost estimate and timeframe, and that it would not begin gathering or producing records until any charges were communicated and approved. I and my counsel later corresponded with the District about estimates, narrowing the requests, rolling production, asserted exemptions, production status, and restrictions placed on produced records. The responsive emails and documents are in the District's possession and are also being produced with these answers.**

**INTERROGATORY NO. 3.** Identify each injury, loss, or damage that You contend You have personally sustained as a result of the acts or omissions alleged in the Complaint, including any alleged damage to reputation, mental anguish, emotional distress, humiliation, public embarrassment, and any deprivation of or interference with constitutionally protected artistic or expressive activity. For each injury, loss, or damage identified, state:

a. The nature of the alleged injury, loss, or damage;
b. The date or approximate time period during which the injury or damage allegedly occurred;
c. The specific event(s) or circumstances that You contend caused it;
d. Whether the injury or damage is ongoing, and if so, the present status; and
e. Whether You have sought or received any treatment, counseling, or other care relating to it (and, if so, the type and approximate date(s)).

**ANSWER: The District's suspicionless monitoring of my District-managed account and student-journalism materials interfered with and chilled my protected newsgathering and expression while I was a student journalist at Free State High School. Because the District did not disclose clear standards for what would be flagged, reviewed, quarantined, or deleted, I had to account for the risk that drafts, source communications, and other Free Press materials could be reviewed or made inaccessible. Separately, beginning October 30, 2025, the District's delay and noncompliance concerning my five KORA requests impeded my ability to investigate and timely report on the replacement of Gaggle with ManagedMethods, the procurement and configuration of the new system, the disposition of student data, and the costs to the District. The District did not produce a timely or KORA-compliant response, later demanded substantial review charges, and placed a 'confidential' watermark on produced public records until the Court ordered its removal. The monitoring-related injury occurred while I was enrolled; the burden on my newsgathering, the deprivation of my constitutional rights, and the KORA-related litigation remain relevant to my claims. I am not presently claiming medical expenses or identifying treatment or counseling attributable to these injuries.**

**INTERROGATORY NO. 4.** Identify each item of damages You seek in this action. For each item, state:

a. The specific count(s) to which the item relates;

b. The category of damages claimed (e.g., actual, nominal, compensatory, attorneys' fees, costs, or other);

c. The amount claimed (or, if not yet known, Your best estimate and the basis for it); and

d. The manner in which the amount was calculated or computed, including the facts, documents, and assumptions relied upon.

**ANSWER: I object to this Interrogatory to the extent it calls for legal conclusions concerning the availability and allocation of remedies among claims. Subject to that objection, under Counts III and VI I seek nominal damages for the completed violations of my First and Fourth Amendment rights and compensatory damages for the resulting non-economic and expressive injuries, in amounts to be determined by the jury based on the evidence. Those injuries are not susceptible to a mathematical calculation, and no sum certain has been determined. I also seek reasonable attorneys' fees and costs under 42 U.S.C. section 1988. Under Counts X through XII, I seek the declaratory and compliance relief pleaded and the costs and reasonable attorneys' fees awarded under K.S.A. 45-222, with the amount to be determined under the Court's procedures. I will supplement this answer if a further computation becomes available.**

**INTERROGATORY NO. 5.** Identify every instance in which You claim the Defendant instructed You not to publish, edit, distribute, or create any article, photograph, artwork, or other expressive work. For each instance state:

a. The date;

b. The individual(s) involved;

c. The work at issue; and

d. Every witness to the communication.

**ANSWER: None presently known. I do not contend that a District employee personally instructed me not to publish a particular Free Press article or other work. My claim is that the District's monitoring and its obstruction of my KORA requests burdened and chilled my newsgathering and reporting.**

**INTERROGATORY NO. 6.** Identify each instance in which You were disciplined, investigated, questioned, warned, counsel, reprimanded, suspended, or otherwise subjected to any disciplinary or corrective action by Defendant that You contend was related in any way to Gaggle, ManagedMethods, Your speech or expression, Your journalism activities, Your artwork, or any other conduct alleged in the Complaint. For each instance state:

a. The date of the disciplinary or corrective action;

b. The nature of the disciplinary or corrective action;

c. The name of the individual who imposed the disciplinary or corrective action;

**ANSWER: None. I was not formally disciplined, suspended, reprimanded, or subjected to corrective action concerning Gaggle, ManagedMethods, or my journalism. I do contend that the District's surveillance and its handling of my KORA requests interfered with and chilled my journalism, as described in my answers to Interrogatories 3 and 8.**

**INTERROGATORY NO. 7.** State the date on which You first became aware that the Defendant implemented Gaggle, ManagedMethods, or any other software to monitor, review, scan or analyze content contained in District-issued accounts, devices, or Google Workspace.

**ANSWER: I became aware of the District's monitoring program by fall 2025, and no later than October 30, 2025, when I submitted KORA requests concerning the District's replacement of Gaggle with ManagedMethods. I do not presently recall the precise earlier date on which I first learned that the District used monitoring software.**

**INTERROGATORY NO. 8.** Identify each instance in which You contend that Gaggle, ManagedMethods, or any other software implemented by the Defendant interfered with Your academic, journalistic, artistic, or other expressive activities. For each instance state the date, the work or activity at issue, the nature of the alleged interference, and the individuals involved.

**ANSWER: The District required student journalists at Free State High School to use District-managed accounts and platforms for schoolwork and journalism, while Gaggle and later ManagedMethods monitored content stored in those accounts. The lack of notice and clear standards burdened and chilled the way I created, stored, and communicated about Free Press work because drafts, notes, source communications, and other materials could be flagged, reviewed, quarantined, or deleted. I do not presently identify a particular file that I personally observed become inaccessible. In addition, from October 30, 2025 forward, the District's delayed and deficient responses to my five KORA requests impeded my investigation and reporting concerning the vendor change, procurement, configuration, costs, and data**

**disposition. The District employees and officials involved are identified in my answers to Interrogatories 2 and 10 and in the documents produced with these answers.**

**INTERROGATORY NO. 9.** Identify each notice, policy, handbook, provision, user agreement, consent form, acknowledgment, announcement, or other communication concerning Defendant's monitoring, accessing, reviewing, or collecting student electronic activity that You or Your parent or guardian received, reviewed, signed, or otherwise acknowledged from January 1, 2021 through the present.

**ANSWER: I recall the District's general Student Acceptable Use Policy and student-handbook provisions associated with enrollment and use of District technology, including general statements that students should not expect privacy in District devices, accounts, email, files, or directories and that transmissions could be reviewed. I do not recall receiving or signing a separate notice or consent that disclosed continuous AI scanning by Gaggle or ManagedMethods, identified those vendors, explained what content would be flagged or quarantined, or provided an opt-out procedure. To the extent additional responsive enrollment or policy records exist, they are maintained by the District or included among the documents being produced.**

**INTERROGATORY NO. 10.** Identify each request for records Plaintiff submitted to Defendant pursuant to the Kansas Open Records Act ("KORA"), including the date submitted, the method of submission, the records requested, the person(s) to whom it was directed, Defendant's response (including the date and substance of any response), and the disposition of the request (including whether records were produced, withheld, or redacted and the basis stated for any withholding or redaction).

**ANSWER: On October 30, 2025, in my capacity as News Managing Editor of the Free Press, I submitted five KORA requests by email to the District's records custodian and copied Superintendent Jeanice Kerr Swift, Deputy Superintendent Larry Englebrick, Board President G.R. Gordon-Ross, and Board Vice President Bob Byers. The requests sought: (1) executed ManagedMethods contracts and attachments; (2) ManagedMethods invoices, payments, purchase orders, and cost analyses; (3) procurement RFP/RFQ materials, proposals, evaluations, scoring records, award memoranda, and related protests or resolutions; (4) communications with ManagedMethods and internal communications concerning selection, implementation, configuration, scope, efficacy, and public messaging; and (5) Gaggle wind-down, off-boarding, and data-disposition records, including termination or non-renewal notices, checklists, certifications of deletion or return, and related correspondence. Each request specified native or searchable electronic formats, requested itemized actual-cost estimates using the lowest-cost appropriate staff, requested identification of any K.S.A. 45-221 exemption, and invited rolling production. On October 31, 2025, the District acknowledged each request by email, stated that the requests were under review, and promised a cost estimate and**

**timeframe, but did not produce records, deny the requests, identify exemptions, or give the earliest production date by November 4, 2025. On January 30, 2026, the District stated that it was producing certain payment records, identified approximately 10,000 potentially responsive emails, and requested $1,815 for staff review and $11,000 for attorney review before committing to email production. On February 4, 2026, Plaintiffs narrowed the requests and proposed cost mitigation and rolling production. On March 12, 2026, the District provided a revised estimate of $6,392.32. On April 8, 2026, the Court held that the District violated KORA and ordered compliant responses. The District thereafter made rolling productions, asserted exemptions and privileges, and applied a 'confidential' watermark to some records. On June 1, 2026, the Court found the denial of access was not in good faith, awarded costs and attorneys' fees, ordered weekly production-status reports, and ordered removal of the watermark. The requests, correspondence, estimates, productions, withholding information, and related documents are in the District's possession and are being produced with these answers.**

**Dated:** September 1, 2026

**DENTONS US LLP**

*/s/ Harrison M. Rosenthal*
Mark P. Johnson (Kan. No. 22289)
Harrison M. Rosenthal (Kan. No. 28894)
Jacob S. Margolies (Kan. No. 29470)
Rebecca Hughes Parker (pro hac vice)

4520 Main Street, Suite 1100 Kansas City, Missouri 64111-7700
Telephone: (816) 460-2400
Facsimile: (816) 531-7545
mark.johnson@dentons.com
harrison.rosenthal@dentons.com
jacob.margolies@dentons.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 1, 2026, a true and correct copy of the above and foregoing was served via electronic mail to counsel for Defendant, including:

Cameron Grant
Melika T. Harris
Andrew J. Gnefkow
**Lewis Brisbois Bisgaard & Smith LLP**
4600 Madison Ave., Suite 700
Kansas City, Missouri 64112
Cameron.Grant@lewisbrisbois.com
Melika.Harris@lewisbrisbois.com

Andrew.Gnefkow@lewisbrisbois.com

/s/ *Harrison M. Rosenthal*
Harrison M. Rosenthal