**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| JACK TELL; NATASHA TORKZABAN; MORGAN SALISBURY; OPAL MORRIS; HENRY FARTHING; SUZANA KENNEDY; NAOMI SUI PANG; ASHLYN TELL; PHOEBE MORRIS; E.B., a minor, by and through his parent and next friend CATHERINE P. BATZA, Ph.D.; and H.C., a minor, by and through his parents and next friends DANIELLE BRUNIN and ERIK CHANEY,<br><br>*Plaintiffs*,<br><br>v.<br><br>LAWRENCE USD 497, a political subdivision of the State of Kansas,<br><br>*Defendant*. | Case No. 2:25-cv-02428-KHV-GEB |

**DEFENDANT LAWRENCE USD 497'S ANSWERS AND**
**OBJECTIONS TO PLAINTIFFS' SECOND REQUESTS FOR ADMISSION**

Defendant Lawrence USD 497 ("Defendant" or "USD 497"), by the undersigned counsel of record, hereby answers Plaintiffs' Second Requests for Admission as follows:

**PRELIMINARY STATEMENTS AND GENERAL OBJECTIONS**

1. The following Answers and Objections are based on information presently available to Defendant, which Defendant believes to be correct. These Answers are made without prejudice to Defendant's right to utilize subsequently discovered facts and documents.

2. Defendant objects to these requests for admission, including the definitions and instructions, to the extent they attempt to impose obligations on Defendant beyond the requirements of the Federal Rules of Civil Procedures and applicable case law.

3. The fact that Defendant has provided the information below is not an admission that it accepts or admits the relevance or admissibility of this information at trial.

4. Answers to these requests may be supplemented upon Defendant's further analysis, investigation and acquisition of information.

5. Any statement that non-privilege, responsive documents will be produced should not be construed as an admission that any responsive documents exist.

6. Defendant objects to the definition of "Surveillance Programs" as vague, ambiguous, and improperly conflating distinct vendors, products, and time periods, requiring Defendant to parse each Request to determine which product and timeframe is at issue.

7. Defendant objects to any Request to the extent it calls for a legal conclusion, is compound, assumes facts not established, or purports to characterize the contents of a writing; a writing speaks for itself.

8. Defendant has endeavored to answer each separate inquiry contained in these request for admissions or sub-part thereof. In the event that Defendant has inadvertently neglected to answer or object to any of these requests for admission, it reserves the right upon being promptly notified of such omission to supply the answer or to state its objection, if any, to the inquiry as interpreted by Plaintiffs.

These preliminary statements and objections are incorporated into each of the responses set forth below.

## RESPONSES TO REQUESTS

**Request No. 91:** Admit that the document titled "Gaggle Terms" and "Operational Information," bearing Bates numbers DEF 000141 through DEF 000145, is genuine.

> **Admit or Deny: Defendant admits the document is "genuine" in the sense that it was produced as the document is maintained by Defendant. Defendant does not admit the document is "genuine" in the sense of admitting the truth of any of the contents of the document, which Defendant does not understand the request to ask Defendant to admit or deny.**

**Request No. 92**: Admit that DEF 000141 through DEF 000145 was prepared to respond to discovery requests in this action.

**Admit or Deny: Denied.**

**Request No. 93**: Admit that the District did not routinely maintain the narrative report produced as DEF 000141 through DEF 000145 before this action was filed.

**Admit or Deny: Defendant objects to this Request to the extent it is vague and ambiguous as to the term "routinely maintain" and because it assumes facts not established regarding the District's recordkeeping practices. Subject to and without waiving the foregoing objections Defendant admits only that DEF 000141 through DEF 000145 was produced in response to discovery requests in this action. Defendant denies any implication that the District did not maintain the underlying configuration settings and information described in that document before this action was filed.**

**Request No. 94**: Admit that the descriptions of the District's Gaggle configuration in DEF 000141 through DEF 000145 accurately describe the configuration used by the District during the periods described in that document.

**Admit or Deny: Denied, insofar as the document discusses configuration changes, therefore necessarily, the configuration described in the document was not used by the District during the entirety of the periods described in the document.**

**Request No. 95**: Admit that the Gaggle quarantine report produced as DEF 000180 is genuine.

**Admit or Deny: Defendant admits the document is a genuine copy of the document as it is maintained in the District's system.**

**Request No. 96**: Admit that the spreadsheet produced as DEF 000191 was compiled for production in this action.

**Admit or Deny: Denied.**

**Request No. 97:** Admit that LBOE_00004075 through LBOE_00004077 are a genuine copy of the District cabinet update dated October 28, 2025.

> **Admit or Deny: Defendant admits the document is a genuine copy of the document as it is maintained in the District's system.**

**Request No. 98:** Admit that the term "g-word" in the District cabinet update dated October 28, 2025 refers to Gaggle.

> **Admit or Deny: Defendant admits that the term "g-word" in the District cabinet update dated October 28, 2025 refers to Gaggle.**

**Request No. 99:** Admit that by February 9, 2024 the District had received written notice that Gaggle had flagged student-created photography prepared for school assignments.

> **Admit or Deny: Defendant admits that by February 9, 2024, one or more District employees had received a written communication stating that Gaggle had flagged photographs that the student(s) stated had been taken for school assignments. Except as expressly admitted, Defendant denies this Request.**

**Request No. 100:** Admit that student journalists told District administrators in March 2024 that Gaggle monitoring could interfere with confidential-source reporting.

> **Admit or Deny: Defendant admits that in or around March 2024, one or more students affiliated with student publications expressed to District administrators a concern that Gaggle monitoring could affect confidential-source reporting. Defendant denies that Gaggle monitoring in fact interfered with any student's confidential-source reporting, and except as expressly admitted, denies this Request.**

**Request No. 101:** Admit that Superintendent Anthony Lewis authorized an exemption from Gaggle monitoring for designated student-journalist accounts in spring 2024.

> **Admit or Deny: Defendant objects to this Request as vague as to "authorized" and "exemption." Defendant admits that in spring 2024 Superintendent**

**Anthony Lewis approved an accommodation under which designated student-journalist accounts were to be excluded from Gaggle monitoring.**

**Request No. 102:** Admit that the District's proposed journalism accommodation was intended to exclude the District-managed accounts of designated student journalists from Gaggle monitoring.

**Admit or Deny: Defendant admits that the journalism accommodation was intended to exclude the District-managed accounts of designated student journalists from Gaggle monitoring.**

**Request No. 103:** Admit that the District placed one or more student-journalist accounts into the Google organizational unit named "/Gaggle Excluded."

**Admit or Deny: Admit.**

**Request No. 104:** Admit that on November 25, 2024 the District asked Gaggle Support to investigate detections involving accounts in the "/Gaggle Excluded" organizational unit.

**Admit or Deny: Defendant objects to this Request to the extent it purports to characterize the contents of a writing; the document speaks for itself. Subject to and without waiving this objection, Defendant admits that on November 25, 2024, the District contacted Gaggle Support and asked it to investigate detections involving accounts in the "/Gaggle Excluded" organizational unit.**

**Request No. 105:** Admit that, in connection with its November 25, 2024 investigation, Gaggle Support advised the District that an account moved from a serviced organizational unit to a non-serviced organizational unit would continue receiving Gaggle services unless the account was first suspended for twenty-four hours.

**Admit or Deny: Admit.**

**Request No. 106:** Admit that at least one student-journalist account moved by the District into "/Gaggle Excluded" was not suspended for twenty-four hours before that move.

**Admit or Deny: Defendant objects to this Request because it assumes facts not established, including that a particular student-journalist account was not suspended for twenty-four hours before being moved into "/Gaggle Excluded." Subject to and without waiving the foregoing objection, Defendant admits that Gaggle's guidance contemplated a twenty-four-hour suspension period before an account was moved into "/Gaggle Excluded." Pursuant to Fed. R. Civ. P. 36(a)(4), following a reasonable investigation, Defendant lacks sufficient information to admit or deny whether at least one student-journalist account moved into "/Gaggle Excluded" was not suspended for twenty-four hours before that move.**

**Request No. 107**: Admit that Gaggle services continued to be applied to at least one account that the District intended to exclude from Gaggle monitoring.

**Admit or Deny: Denied. Defendant states that following a meeting with students on March 29, 2024, the District exempted certain student accounts from monitoring. Pursuant to FRCP 36(a)(4), following a reasonable investigation, Defendant has been unable to determine whether its attempt to exempt certain student accounts was wholly successful, but denies this Request insofar as the exemptions Defendant attempted to implement were at least partly successful.**

**Request No. 108**: Admit that, before November 25, 2024, the District had not notified any student whose account it had placed in "/Gaggle Excluded" that Gaggle services continued to be applied to that account after the move.

**Admit or Deny: Defendant admits that, following a reasonable investigation, it has identified no evidence that any student was notified before November 25, 2024, that Gaggle services continued to be applied to the student's account after it was moved to "/Gaggle Excluded." Defendant further states that it has been unable to determine whether its attempt to exempt certain student accounts from monitoring was wholly successful. Defendant denies the Request to the extent it implies that Gaggle services continued to be applied to all accounts moved to "/Gaggle Excluded."**

**Request No. 109**: Admit that the District intended to use "/Gaggle Excluded" to implement parental requests to exclude student accounts from Gaggle monitoring.

**Admit or Deny: Defendant admits that the District intended to use "/Gaggle Excluded" to implement parental requests to exclude student accounts from Gaggle monitoring. Defendant further states that, following a reasonable investigation, it has been unable to determine whether its attempt to exempt certain student accounts from monitoring was wholly successful.**

**Request No. 110:** Admit that an email sent from a student account in "/Gaggle Excluded" to a nonexcluded District-managed student account remained subject to Gaggle scanning in the recipient's account.

**Admit or Deny: Defendant objects to this Request to the extent it seeks information about the internal processes of a third-party vendor, which is not within Defendant's personal knowledge. Subject to and without waiving these objections, Defendant admits that, where Gaggle services were applied to the recipient's District-managed account, an email received in that account could be scanned by Gaggle regardless of whether the sender's account was in "/Gaggle Excluded."**

**Request No. 111:** Admit that before Gaggle sent an Incident alert to a District Emergency Contact, a human reviewer working for Gaggle reviewed the detection that generated the alert.

**Admit or Deny: Admit.**

**Request No. 112:** Admit that the District selected the Gaggle Incident categories for which each District Emergency Contact would receive alerts.

**Admit or Deny: Defendant admits that, from the options made available by Gaggle, the District designated the Gaggle Incident categories for which each District Emergency Contact would receive alerts.**

**Request No. 113:** Admit that the District selected which District personnel were designated as Gaggle Emergency Contacts.

**Admit or Deny: Admit.**

**Request No. 114:** Admit that under the District's Gaggle configuration, a file could be quarantined only when Gaggle categorized the file as containing nudity.

**Admit or Deny: Admit.**

**Request No. 115:** Admit that when Gaggle quarantined a student file, the file was removed from the student's access.

**Admit or Deny: Defendant admits that when Gaggle quarantined a student file, the student's access to that file in the student's District-managed account was restricted. Defendant denies any implication that the file was deleted or destroyed, and states that, as described in DEF 000145, an original copy of the file was preserved.**

**Request No. 116:** Admit that, before April 29, 2024, the District's Gaggle configuration blocked delivery of inbound or outbound student email that generated an Incident.

**Admit or Deny: Defendant admits that, before April 29, 2024, the District's Gaggle configuration was set to hold delivery of inbound or outbound student email that generated an Incident.**

**Request No. 117:** Admit that, under the configuration described in DEF 000145, an original copy of a quarantined file remained accessible to authorized District personnel in Google Vault while the associated Google account remained undeleted.

**Admit or Deny: Defendant admits that, under the configuration described in DEF 000145, an original copy of a quarantined file remained accessible to authorized District personnel in Google Vault while the associated Google account remained undeleted.**

**Request No. 118:** Admit that, under the District's Google Vault retention configuration described in DEF 000145, deleting a student's Google account removed that account's data from Google Vault.

**Admit or Deny: Defendant admits that, under the Google Vault retention configuration described in DEF 000145, deleting a student's Google account removed that account's data from Google Vault, subject to any litigation hold or other retention rule then in place.**

**Request No. 119**: Admit that the ordinary retention practice described in DEF 000145 was to keep a student's Google account suspended for one year after the student left the District.

**Admit or Deny: Defendant admits that the ordinary retention practice described in DEF 000145 was to keep a student's Google account suspended for one year after the student left the District.**

**Request No. 120**: Admit that the District authorized Gaggle to examine the contents of files stored in the District-managed student Google accounts selected for Gaggle monitoring.

**Admit or Deny: Denied. The Request is vague but appears to ask Defendant to admit that Gaggle *personnel* were authorized to examine the contents of District-managed student Google accounts. Defendant denies the request as Defendant interprets it.**

**Request No. 121**: Admit that an individual student's account could be selected for Gaggle monitoring without a prior report that the student had violated a District rule.

**Admit or Deny: Defendant denies that individual student accounts were "selected." Defendant admits that student accounts could be monitored by Gaggle without a prior report that the student had violated a District rule.**

**Request No. 122**: Admit that Gaggle monitored a selected District-managed Google account when the student accessed that account using a personal device.

**Admit or Deny: Defendant admits that Gaggle scanned content stored in or transmitted through the District's Google Workspace environment, not on the device used to access it, and therefore content in a District-managed account included in Gaggle monitoring was subject to Gaggle scanning regardless of the device used to access the account. Defendant states that students were informed that use of the District network, email, files, and directories carried no expectation of privacy.**

**<u>Request No. 123</u>:** Admit that the District's Gaggle configuration permitted a student's file to be quarantined before a District employee reviewed the file.

> **Admit or Deny: Defendant admits that the District's Gaggle configuration permitted automated quarantine of a file before a District employee reviewed it, and states that a quarantine restricted the student's access to the file but did not delete it.**

**<u>Request No. 124</u>:** Admit that the District's ManagedMethods configuration permits a student's file to be quarantined before a District employee reviews the file.

> **Admit or Deny: Defendant admits that the District's ManagedMethods configuration permits automated restriction of a student's access to a file before a District employee reviews it, and states that such a restriction does not delete the file.**

**<u>Request No. 125</u>:** Admit that District staff used storage outside District-managed accounts as a means of preventing Gaggle from quarantining a restored student file again.

> **Admit or Deny: Defendant objects to this Request as calling for speculation about the purpose of unidentified staff. Subject to and without waiving these objections, Defendant admits that, on at least one occasion, District staff provided a restored student file to the student through storage outside District-managed accounts so that the file would not be quarantined again. Except as expressly admitted, denied.**

**<u>Request No. 126</u>:** Admit that at least one Gaggle alert received by the District concerned legitimate classroom work that District staff determined presented no safety concern.

> **Admit or Deny: Defendant objects to this Request because the phrase "legitimate classroom work" is vague and ambiguous and calls for a subjective characterization. Subject to and without waiving the foregoing objection, Defendant admits that District staff reviewed Gaggle alerts and, in at least some instances, determined that the content giving rise to an alert did not present a student safety concern.**

**Request No. 127:** Admit that retaining a copy of a quarantined student file in Google Vault did not, by itself, restore the student's access to that file.

> **Admit or Deny: Defendant admits that the retention of a copy of a quarantined student file in Google Vault did not, by itself, restore the student's access to that file, and states that access could be restored upon review and request.**

**Request No. 128:** Admit that GR Gordon-Ross had reviewed the students' May 31, 2024 demand concerning Gaggle before he moved to renew Gaggle at the July 8, 2024 Board meeting.

> **Admit or Deny: Defendant objects to this Request on the grounds that it seeks the personal knowledge and mental processes of an individual Board member, who is not a party, and is vague as to "reviewed." Subject to and without waiving these objections, Defendant admits that Board member GR Gordon-Ross had received the May 31, 2024 demand before the July 8, 2024 Board meeting.**

**Request No. 129:** Admit that the Board's July 8, 2024 renewal of Gaggle authorized continued monitoring of the contents of District-managed student accounts.

> **Admit or Deny: Defendant objects to this Request to the extent it calls for a legal conclusion rather than the application of law to fact under Fed. R. Civ. P. 36(a)(1)(A). Defendant objects to the term "authorized continued monitoring" as characterizing Board action; the Board's minutes and the contract speak for themselves. Subject to and without waiving these objections, Defendant admits that on July 8, 2024 the Board approved renewal of the District's agreement with Gaggle, under which Gaggle services continued for District-managed student accounts. Except as expressly admitted, denied.**

**Request No. 130:** Admit that the Board's July 8, 2024 renewal of Gaggle did not require District-employee review of a file before Gaggle quarantined it.

> **Admit or Deny: Denied insofar as the "renewal" of Gaggle did not have any impact or effect on Gaggle's configuration.**

**Request No. 131:** Admit that Gaggle classified at least one of the Morris photographs as containing nudity.

**Admit or Deny: Defendant admits that Gaggle's records reflect that Gaggle categorized at least one photograph in Opal Morris's District-managed account as containing potential nudity.**

**Request No. 132:** Admit that Gaggle classified at least one of the Farthing photographs as containing nudity.

**Admit or Deny: Defendant admits that Gaggle's records reflect that Gaggle categorized at least one photograph in Henry Farthing's District-managed account as containing potential nudity.**

**Request No. 133:** Admit that the Morris photographs caused no substantial disruption to school activities.

**Admit or Deny: Defendant objects to this Request to the extent it calls for a legal conclusion rather than the application of law to fact under Fed. R. Civ. P. 36(a)(1)(A). Defendant further objects that the Request presupposes that the "substantial disruption" standard of *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969), governs curricular work stored in District-managed accounts, which Defendant disputes. Subject to and without waiving these objections, Defendant admits that it is not aware of any disruption of school activities caused by the Morris photographs themselves. Defendant denies that the absence of disruption is relevant to, or establishes, any violation, and except as expressly admitted, denies this Request.**

**Request No. 134:** Admit that the Farthing photographs caused no substantial disruption to school activities.

**Admit or Deny: Defendant objects to this Request to the extent it calls for a legal conclusion rather than the application of law to fact under Fed. R. Civ. P. 36(a)(1)(A). Defendant further objects that the Request presupposes that the "substantial disruption" standard of *Tinker* governs curricular work stored in District-managed accounts, which Defendant disputes. Subject to and without waiving these objections, Defendant admits that it is not aware of any disruption of school activities caused by the Farthing photographs themselves. Defendant denies that the absence of disruption is relevant to, or establishes, any violation, and except as expressly admitted, denies this Request.**

**Request No. 135**: Admit that the District has no record created on or before the date of Opal Morris's photography meeting that identifies facts supporting a forecast that the Morris photographs would substantially disrupt school activities.

> **Admit or Deny: Defendant objects to this Request as argumentative and as presupposing that the District was legally required to forecast substantial disruption before restricting access to a flagged file, which Defendant disputes. Defendant admits that, after reasonable inquiry, it has not located a record created on or before that date that identifies facts supporting a forecast that the Morris photographs would substantially disrupt school activities, and states that no such forecast was made or required because the District did not restrict the photographs on that basis.**

**Request No. 136**: Admit that the District has no record created on or before the date of Henry Farthing's photography meeting that identifies facts supporting a forecast that the Farthing photographs would substantially disrupt school activities.

> **Admit or Deny: Defendant objects to this Request as argumentative and as presupposing that the District was legally required to forecast substantial disruption before restricting access to a flagged file, which Defendant disputes. Defendant admits that, after reasonable inquiry, it has not located a record created on or before that date that identifies facts supporting a forecast that the Farthing photographs would substantially disrupt school activities, and states that no such forecast was made or required because the District did not restrict the photographs on that basis.**

**Request No. 137**: Admit that no District educator made an individualized determination that the Morris photographs were inappropriate for the assigned classwork before Gaggle first flagged them.

> **Admit or Deny: Defendant objects to this Request as presupposing that such a determination was required. Defendant admits that it is unaware of any District educator having determined that the Morris photographs were inappropriate for the assigned classwork before Gaggle first flagged them. Defendant denies the Request to the extent it seeks any broader admission regarding the knowledge or actions of all District personnel.**

**Request No. 138:** Admit that no District educator made an individualized determination that the Farthing photographs were inappropriate for the assigned classwork before Gaggle first flagged them.

> **Admit or Deny: Defendant objects to this Request as presupposing that such a determination was required. Defendant admits that it is unaware of any District educator having determined that the Morris photographs were inappropriate for the assigned classwork before Gaggle first flagged them. Defendant denies the Request to the extent it seeks any broader admission regarding the knowledge or actions of all District personnel.**

**Request No. 139:** Admit that the Gaggle quarantine report produced as DEF 000180 contains at least one entry recording a quarantine associated with Opal Morris's District-managed Google account.

> **Admit or Deny: Defendant admits that DEF 000180 contains at least one entry recording a quarantine associated with Opal Morris's District-managed Google account.**

**Request No. 140:** Admit that the Gaggle quarantine report produced as DEF 000180 contains at least one entry recording a quarantine associated with Henry Farthing's District-managed Google account.

> **Admit or Deny: Defendant admits that DEF 000180 contains at least one entry recording a quarantine associated with Henry Farthing's District-managed Google account.**

**Request No. 141:** Admit that the Gaggle quarantine report produced as DEF 000180 contains at least one entry recording a quarantine associated with Phoebe Morris's District-managed Google account.

**Admit or Deny: Defendant admits that DEF 000180 contains at least one entry recording a quarantine associated with Phoebe Morris's District-managed Google account.**

**Request No. 142:** Admit that Greg Farley sometimes questioned a student about a Gaggle alert without first viewing the image that generated the alert.

**Admit or Deny: Defendant admits that, on some occasions, Mr. Farley spoke with a student about a Gaggle alert concerning an image without first viewing the image. Defendant states that on some occasions the image was not available for Mr. Farley to review, but when an image was available to him, he usually viewed it before speaking with the student. Each alert identified the student and described why the content had been flagged, and Mr. Farley's typical practice was to tell the student what Gaggle had identified as the reason for the alert and ask whether the student could think of anything the student had uploaded that would have caused it. Except as expressly admitted, Defendant denies this Request.**

**Request No. 143:** Admit that Gaggle alerts received by Greg Farley ordinarily identified the student and included a brief explanation of why the content was flagged.

**Admit or Deny: Defendant admits that Gaggle alerts received by Greg Farley ordinarily identified the student and included a brief description of why the content was flagged, at times including a tag identifying the keyword that caused the flag.**

**Request No. 144:** Admit that Greg Farley was instructed to contact the student to assess a safety concern when he received a Gaggle alert.

**Admit or Deny: Defendant admits that Lawrence High School administrators who received Gaggle alerts, including Mr. Farley, were directed to meet with the student, determine first whether a safety concern existed, and then resolve the alert or notify appropriate personnel if safety was a concern. Mr. Farley understood responding to Gaggle alerts to be part of his job responsibilities as an assistant principal.**

**Request No. 145:** Admit that the District did not ordinarily retain the call slips used by Greg Farley to summon students about Gaggle alerts.

**Admit or Deny: Defendant admits that the District did not retain the call slips Mr. Farley used to ask students to come to the office. Defendant states that a call slip is a pass sent to a student's classroom asking the student to come to the office; that, after meeting with the student, Mr. Farley typically signed the slip, noted the time, and returned it to the student as a pass back to class; and that the student could then keep or discard it. Defendant denies any implication that call slips, which are transitory hall passes, are records the District is required to retain. Defendant further states that the resolution of each Gaggle alert was recorded in the Gaggle platform, with a brief description of the resolution and the reason for it, and that administrators recorded behavior entries in PowerSchool where applicable.**

**<u>Request No. 146</u>:** Admit that Greg Farley did not ordinarily tell students at the outset of a meeting in his office about a Gaggle alert that they were free to leave.

**Admit or Deny: Defendant admits that Mr. Farley did not typically tell students at the outset of a meeting about a Gaggle alert that they were free to leave. Students meeting with Mr. Farley were free to leave and were never held against their will; absent law-enforcement involvement, students could leave administrators' offices, and in Mr. Farley's office the student chairs sit by the door, with Mr. Farley seated on the far side of his desk; and Mr. Farley commonly asked students whether they wanted the door open or closed and tried to make them as comfortable as possible. Except as expressly admitted, Defendant denies this Request.**

**<u>Request No. 147</u>:** Admit that parents were not ordinarily notified before Greg Farley met with their children about Gaggle alerts.

**Admit or Deny: Defendant objects to this Request as vague and ambiguous as to "ordinarily." Subject to and without waiving these objections, Defendant admits that parents were not typically notified before Mr. Farley first met with a student about a Gaggle alert. Defendant states that whether parents were contacted before a meeting depended on the seriousness of the alert, and that after meeting with a student, where a safety concern was identified, such as an indication of self-harm or a threat against another student, Mr. Farley contacted the student's parents or guardians and, where appropriate, involved a counselor or social worker. Except as expressly admitted, Defendant denies this Request.**

__Request No. 148__: Admit that at least one Gaggle alert investigated by Greg Farley did not concern a student who required emergency intervention.

> **Admit or Deny: Defendant admits that at least one Gaggle alert investigated by Mr. Farley, after he spoke with the student, did not concern a student who required emergency intervention. Defendant states that whether a student needed intervention could be determined only after speaking with the student, and that some alerts Mr. Farley received did concern students who were in distress or in need of emergency intervention. Defendant denies any implication that investigating such alerts was unreasonable.**

__Request No. 149__: Admit that Gaggle generated an alert concerning the test word-list Google document described at pages 7–10 of Morgan Salisbury's August 18, 2026 deposition.

> **Admit or Deny: Defendant objects to this Request to the extent it purports to characterize deposition testimony; the transcript speaks for itself. Subject to and without waving these objections, Defendant admits that Defendant received a Gaggle alert for a student generated document containing a list of words prepared by Morgan Salisbury intended to generate a Gaggle alert. Except as expressly admitted, denied.**

__Request No. 150__: Admit that Mark Preut told Plaintiff Morgan Salisbury that he had seen Salisbury's test word list on Gaggle.

> **Admit or Deny: Defendant does not deny that the list was flagged by Gaggle, but denies that Mr. Preut saw the word list "on Gaggle." Defendant further states pursuant to Fed. R. Civ. P. 36(a)(1)(A), that following a reasonable investigation, it cannot be determined exactly what words Mr. Preut said during any conversation with Morgan Salisbury regarding the issue.**

__Request No. 151__: Admit that, before Natasha Torkzaban sent Barbara Tholen the March 29, 2024 test email concerning mental health described at pages 139 through 143 of Torkzaban's deposition, Tholen notified District administrators that the email would be a test.

> **Admit or Deny: Defendant admits Natasha Torkzaban sent the email. Defendant states that Ms. Tholen is no longer employed by Defendant, and is represented by separate counsel, and as such, pursuant to Fed. R. Civ. P. 36(a)(1)(A), Defendant is unable to confirm or deny exactly what Ms. Tholen**

**did or did not "notify" someone of regarding the email. Pursuant to Fed. R. Civ. P. 36(a)(1)(A), Defendant states it has not been able to locate any email notification from Ms. Tholen regarding this issue, and Defendant is otherwise unable to admit or deny whether notification may have been provided through some other means.**

**Request No. 152:** Admit that Gaggle blocked delivery to Barbara Tholen of Natasha Torkzaban's March 29, 2024 test email concerning mental health, described at pages 139 through 143 of Torkzaban's August 19, 2026 deposition.

**Admit or Deny: Defendant objects to this Request to the extent it seeks information about the internal processes of a third-party vendor, which are not within Defendant's personal knowledge. Defendant admits that an email from Natasha Torkzaban addressed to Barbara Tholen containing a statement from Torkzaban stating "[t]he meeting today had me stressed, really worried about my mental health. Was too busy to talk to you in class, but sometimes you have to test the waters" was flagged by Gaggle, and the delivery of said email was delayed for examination by District staff. Except as expressly admitted, denied.**

**Request No. 153:** Admit that, in November 2024, Gaggle continued to monitor Suzana Kennedy's District-managed student account after the District had requested that the account be excluded from Gaggle monitoring.

**Admit or Deny: Defendant admits that, as a result of the Gaggle system limitation described in its response to Request No. 105, Gaggle services continued to apply to Suzana Kennedy's District-managed account for a period of time in November 2024 after the District had placed the account in "/Gaggle Excluded," and denies that the District knew of or intended this result.**

**Request No. 154:** Admit that, as of the date of Your response, the District has not provided E.B. a written definition of the "toxicity" category used in the District's ManagedMethods configuration.

**Admit or Deny: Defendant incorporates its objection to the undefined and conflated use of vendor and product terminology (General Objection No. 6).**

**Defendant admits that, apart from materials produced in discovery in this action, the District has not provided E.B. a written definition of the "toxicity" category. Except as expressly admitted, denied.**

**__Request No. 155__:** Admit that, as of the date of Your response, the District has not provided H.C. a written definition of the "toxicity" category used in the District's ManagedMethods configuration.

**Admit or Deny: Defendant incorporates its objection to the undefined and conflated use of vendor and product terminology (General Objection No. 6). Defendant admits that, apart from materials produced in discovery in this action, the District has not provided H.C. a written definition of the "toxicity" category. Except as expressly admitted, denied.**

**__Request No. 156__:** Admit that the District does not require notice to a student before ManagedMethods first restricts that student's access to a file.

**Admit or Deny: Denied insofar as students are on notice that their files may be restricted by the District, and are not the property of the District. To the extent the RFA asks Defendant to respond to a hypothetical, Defendant is unable to respond because the request is vague insofar as what "restriction" of access would entail as used in this RFA.**

**__Request No. 157__:** Admit that the District does not require an opportunity for a student to contest a ManagedMethods quarantine before the student's access to the file is restricted.

**Admit or Deny: Defendant objects to the implication in this RFA that quarantine is tantamount to restriction. Defendant admits that no District policy requires a pre-quarantine opportunity for a student to contest quarantine, and states that students may request review and restoration of a restricted file. Except as expressly admitted, denied.**

**__Request No. 158__:** Admit that, before discontinuing Gaggle, the District had not conducted a before-and-after study measuring whether Gaggle reduced incidents of student self-harm in the District.

**Admit or Deny: Defendant admits that, before discontinuing Gaggle, it had not conducted a formal "study" measuring whether Gaggle reduced incidents of student self-harm in the District.**

**Request No. 159:** Admit that, before discontinuing Gaggle, the District had not independently calculated the proportion of Gaggle alerts that incorrectly indicated the safety concern assigned to them.

**Admit or Deny: Denied insofar as Gaggle was designed to identify the *threat* of a safety concern. Defendant performed no calculation because the identification by Gaggle of a *threat,* according to its programming, that was not in fact a safety concern, would not be an "incorrect indication."**

**Request No. 160:** Admit that, as of the date of Your response, the District has not independently calculated the proportion of ManagedMethods alerts that incorrectly indicated the safety concern assigned to them.

**Admit or Deny: Denied insofar as ManagedMethods is designed to identify the *threat* of a safety concern. Defendant performed no calculation because the identification by ManagedMethods of a *threat,* according to its programming, that is not in fact a safety concern, would not be an "incorrect indication."**

**Request No. 161:** Admit that ManagedMethods has flagged draft documents stored in District-managed student Google accounts.

**Admit or Deny: Defendant would generally be unable to ascertain whether a document is a draft, as opposed to a final document. Defendant admits that ManagedMethods has generated alerts concerning documents stored in District-managed student Google accounts that were in progress or not yet submitted.**

**Request No. 162:** Admit that the District's ManagedMethods service does not include review of flagged content by a vendor-employed human reviewer before an alert is sent to District personnel.

**Admit or Deny: Defendant further objects to this Request to the extent it seeks information about the internal processes of a third-party vendor, which are**

**not within Defendant's personal knowledge. Defendant has made reasonable inquiry, and the information it knows or can readily obtain is described below. Subject to and without waiving this objection, Defendant admits that the District's ManagedMethods service does not include review of flagged content by a vendor-employed human reviewer before an alert is sent to District personnel, and states that District personnel review such alerts.**

**Request No. 163**: Admit that the District authorized ManagedMethods to scan the contents of stored student files, in addition to any filtering of student access to websites.

**Admit or Deny: Defendant admits that the District's ManagedMethods service includes automated scanning of the contents of files stored in District-managed student Google accounts for safety risks, in addition to any web filtering.**

**Request No. 164:** Admit that Superintendent Jeanice Swift authorized the District to request cancellation of Gaggle services in September 2025.

**Admit or Deny: Defendant objects to any Request specific to Jeanice Swift on the basis that Dr. Swift's deposition was conducted on October 15, 2026, and the parties have not received even a draft of the transcript, much less had Dr. Swift been given the opportunity to review or correct the transcript. Defendant states that the subject of this request was addressed during Dr. Swift's deposition. Defendant objects that responding to this request without the opportunity to have reviewed Dr. Swift's deposition transcript may create the false appearance of inconsistency if the phrasing of this request differs somehow from the answers Dr. Swift gave under oath. Defendant denies this request to the extent inconsistent with Dr. Swift's testimony under oath. Defendant would be willing to consider updating this request following finalization of Dr. Swift's transcript.**

**Request No. 165**: Admit that Gaggle services continued for at least one District-managed student account after July 31, 2025.

**Admit or Deny: Defendant states that the transition from Gaggle to ManagedMethods was not instantaneous, and that the District continued to receive some Gaggle alerts after July 31, 2025. Defendant objects to the phrase "Gaggle services" as used in this RFA as ambiguous, and states that as the district transitioned from Gaggle to ManagedMethods, the District continued to receive some notices from Gaggle for a period of time. Defendant otherwise denies this request.**

**Request No. 166:** Admit that the District's October 28, 2025 media statement distributed by Jake Potter described ManagedMethods as continuing to monitor for student safety.

**Admit or Deny: Defendant admits that the District's October 28, 2025 media statement distributed by Jake Potter stated in substance that ManagedMethods would continue to support monitoring for student safety.**

**Request No. 167:** Admit that the version of Policy DJFA produced as DEF 000139 was in effect on September 29, 2025.

**Admit or Deny: Admitted.**

**Request No. 168:** Admit that on August 21, 2025, James Polk asked ManagedMethods to provide pricing below $20,000.

**Admit or Deny: Defendant objects to Request Nos. 168–176 as seeking information about procurement and pricing that is not relevant to any claim or defense or proportional to the needs of the case. Subject to and without waiving these objections, Defendant admits that on August 21, 2025, James Polk communicated with ManagedMethods concerning pricing below $20,000.**

**Request No. 169:** Admit that on August 29, 2025, James Polk stated in an email concerning ManagedMethods that, if the month-long pilot went well, the District would look to take the vendor's quote to the Board in October.

**Admit or Deny: Defendant admits that on August 29, 2025, James Polk sent an email concerning ManagedMethods stating in substance that, if the month-long pilot went well, the District would look to take the vendor's quote to the Board in October.**

**Request No. 170:** Admit that Superintendent Jeanice Swift authorized the District's acquisition of ManagedMethods.

**Admit or Deny: Defendant objects to any Request specific to Jeanice Swift on the basis that Dr. Swift's deposition was conducted on October 15, 2026, and the parties have not received even a draft of the transcript, much less had Dr. Swift been given the opportunity to review or correct the transcript. Defendant states that the subject of this request was addressed during Dr. Swift's deposition. Defendant objects that responding to this request without the opportunity to have reviewed Dr. Swift's deposition transcript may create the false appearance of inconsistency if the phrasing of this request differs somehow from the answers Dr. Swift gave under oath. Defendant denies this request to the extent inconsistent with Dr. Swift's testimony under oath. Defendant would be willing to consider updating this request following finalization of Dr. Swift's transcript.**

**Request No. 171:** Admit that the amount invoiced for the ManagedMethods purchase shown in DEF 000092 was $14,790.

**Admit or Deny: Defendant admits that DEF 000092 reflects an invoiced amount of $14,790 for the ManagedMethods purchase.**

**Request No. 172:** Admit that the ManagedMethods purchase shown in DEF 000092 covered 5,800 student accounts.

**Admit or Deny: Defendant admits that DEF 000092 reflects that the ManagedMethods purchase covered 5,800 student accounts.**

**Request No. 173:** Admit that the District relies on Policy DJFA as authority for the Superintendent to execute the ManagedMethods agreement underlying the purchase reflected in DEF 000092.

**Admit or Deny: Defendant admits that Policy DJFA is among the authorities under which the Superintendent was authorized to execute the ManagedMethods agreement, and denies that it is the sole such authority.**

**Request No. 174:** Admit that Policy DJFA's requirement to report contracts to the Board applied to the ManagedMethods purchase identified in DEF 000092.

**Admit or Deny: Defendant admits that the ManagedMethods purchase identified in DEF 000092, in the invoiced amount of $14,790, was below the $20,000 threshold under which Policy DJFA authorizes the Superintendent to execute contracts on behalf of the District for the purchase of goods and**

**services, and that Policy DJFA's provision that "[t]he board shall receive reports on any contracts" therefore applied to that purchase. Defendant states that Policy DJFA does not require that the Board receive such a report before a contract is executed, does not prescribe the timing or form of the report, and does not condition the Superintendent's authority to execute a contract on Board approval. Defendant denies any implication that the reporting provision was not satisfied or that the ManagedMethods purchase was unauthorized. Except as expressly admitted, denied.**

**Request No. 175:** Admit that the District issued purchase order P0152533 for ManagedMethods on September 29, 2025.

**Admit or Deny: Defendant admits that the District issued purchase order P0152533 for ManagedMethods on September 29, 2025.**

**Request No. 176:** Admit that the District issued its ManagedMethods purchase order before Superintendent Swift sent the Board her October 29, 2025 email concerning the replacement of Gaggle with ManagedMethods.

**Admit or Deny: Defendant admits that the District issued its ManagedMethods purchase order before Superintendent Swift's October 29, 2025 email to the Board concerning the replacement of Gaggle with ManagedMethods.**

**Request No. 177:** Admit that the District assigned Plaintiff E.B. a District-managed Google account for schoolwork during the 2026–2027 school year.

**Admit or Deny: Admitted.**

**Request No. 178:** Admit that the District assigned Plaintiff H.C. a District-managed Google account for schoolwork during the 2026–2027 school year.

**Admit or Deny: Admitted.**

**Request No. 179:** Admit that Plaintiff E.B. must use a District-managed Google account to complete at least some school assignments during the 2026–2027 school year.

> **Admit or Deny: Denied on the grounds that this Request asks Defendant to address an undefined hypothetical scenario in which E.B. requests not to use a Google account for any school assignments during the 2026-2027 school year. Defendant cannot admit, and does not admit, that E.B. would be required to use a District-managed Google account to submit all his school assignments, without some further information about the circumstances based upon which E.B. would request to submit all his school assignments in some other way, which would deviate from the District's standard practice.**

**Request No. 180:** Admit that Plaintiff H.C. must use a District-managed Google account to complete at least some school assignments during the 2026–2027 school year.

> **Admit or Deny: Denied on the grounds that this Request asks Defendant to address an undefined hypothetical scenario in which H.C. requests not to use a Google account for any school assignments during the 2026-2027 school year. Defendant cannot admit, and does not admit, that H.C. would be required to use a District-managed Google account to submit all his school assignments, without some further information about the circumstances based upon which H.C. would request to submit all his school assignments in some other way, which would deviate from the District's standard practice.**

**Request No. 181:** Admit that the District issued Plaintiff E.B. a District-managed device for use during the 2026–2027 school year.

> **Admit or Deny: Admitted.**

**Request No. 182:** Admit that the District issued Plaintiff H.C. a District-managed device for use during the 2026–2027 school year.

> **Admit or Deny: Admitted.**

**Request No. 183:** Admit that using a personal device to access E.B.'s District-managed Google account does not prevent ManagedMethods from scanning the files in that account.

**Admit or Deny: Defendant incorporates its objection to the undefined and conflated use of vendor and product terminology (General Objection No. 6). Subject to and without waiving this objection, Defendant admits that ManagedMethods operates on content stored in the District's Google Workspace environment, not on the device used to access it, so the type of device used to access E.B.'s District-managed account does not affect ManagedMethods' scanning of files stored in that account. Defendant states that students are informed that District-managed accounts, email, files, and directories carry no expectation of privacy.**

**<u>Request No. 184</u>:** Admit that using a personal device to access H.C.'s District-managed Google account does not prevent ManagedMethods from scanning the files in that account.

**Admit or Deny: Defendant incorporates its objection to the undefined and conflated use of vendor and product terminology (General Objection No. 6). Subject to and without waiving this objection, Defendant admits that ManagedMethods operates on content stored in the District's Google Workspace environment, not on the device used to access it, so the type of device used to access H.C.'s District-managed account does not affect ManagedMethods' scanning of files stored in that account. Defendant states that students are informed that District-managed accounts, email, files, and directories carry no expectation of privacy.**

**<u>Request No. 185</u>:** Admit that the District required acknowledgment of an Acceptable Use Policy as a condition of issuing Plaintiff E.B. a District-managed device for the 2026–2027 school year.

**Admit or Deny:, Defendant admits that, as a condition of using District technology, including a District-managed device, students must agree to comply with the District's Student Acceptable Use Policy, which states that "all users must agree that they will comply with these guidelines" and provides for the student's name, date, and signature.**

**<u>Request No. 186</u>:** Admit that the District required acknowledgment of an Acceptable Use Policy as a condition of issuing Plaintiff H.C. a District-managed device for the 2026–2027 school year.

**Admit or Deny: Defendant admits that, as a condition of using District technology, including a District-managed device, students must agree to comply with the District's Student Acceptable Use Policy, which states that "all users must agree that they will comply with these guidelines" and provides for the student's name, date, and signature.**

**Request No. 187:** Admit that, as of the date of Your response, ManagedMethods is configured to scan files stored in E.B.'s District-managed Google account.

> **Admit or Deny: Defendant admits that, as of the date of this response, ManagedMethods is configured to scan files stored in E.B.'s District-managed Google account.**

**Request No. 188:** Admit that, as of the date of Your response, ManagedMethods is configured to scan files stored in H.C.'s District-managed Google account.

> **Admit or Deny: Defendant admits that, as of the date of this response, ManagedMethods is configured to scan files stored in H.C.'s District-managed Google account.**

**Request No. 189:** Admit that ManagedMethods scanned files stored in Plaintiff Ashlyn Tell's District-managed Google account while she was enrolled in the District.

> **Admit or Deny: Pursuant to Fed. R. Civ. P. 36(a)(4), Defendant states that after a reasonable investigation it cannot truthfully admit or deny this request because although Defendant appears to be in possession of some ManagedMethods alerts relating to Ashlyn Tell, Defendant is unable to determine whether those alerts arose from scans of files "stored in Plaintiff Ashlyn Tell's District-managed Google account."**

**Request No. 190:** Admit that ManagedMethods has scanned files stored in Plaintiff Phoebe Morris's District-managed Google account.

> **Admit or Deny: Pursuant to Fed. R. Civ. P. 36(a)(4), Defendant states that after a reasonable investigation it cannot truthfully admit or deny this request because although Defendant appears to be in possession of some ManagedMethods alerts relating to Phoebe Morris, Defendant is unable to determine whether those alerts arose from scans of files "stored in Plaintiff Phoebe Morris's District-managed Google account."**

**Request No. 191**: Admit that the Historical AUP does not state that persons working for a third-party monitoring vendor may review the contents of students' files.

> **Admit or Deny: Denied insofar as the AUP states student content is subject to review and that no user shall have any expectation of privacy. This language in the AUP, and other school policies, would lead a reasonable person to understand that a third party or a third-party vendor may review the contents of students' files.**

**Request No. 192**: Admit that the Historical AUP does not state that a student's file may be quarantined before a District employee reviews the file.

> **Admit or Deny: Denied insofar as the AUP is silent as to quarantining specifically but states that content is subject to review and that no user shall have any expectation of privacy. This language in the AUP, and other school policies, would lead a reasonable person to understand that files are subject to quarantine.**

**Request No. 193**: Admit that the District does not possess a signed or electronic acknowledgment by Natasha Torkzaban of the Acceptable Use Policy in effect during the 2023–2024 school year.

> **Admit or Deny: Denied insofar as Mr. Torkzaban would not have been permitted to enroll without her or someone on her behalf signing the Acceptable Use Policy.**

**Request No. 194**: Admit that, before ManagedMethods first scanned E.B.'s District-managed Google account, the District had not provided E.B. notice that automated content review could restrict E.B.'s access to a stored file before a District employee reviewed the file.

> **Admit or Deny: Denied. Before ManagedMethods first scanned E.B.'s District-managed Google account, E.B. was subject to and on notice of the District's Student Acceptable Use Policy. The Student Acceptable Use Policy, amended September 2019, states that students will not "[h]ave any expectation of privacy when using any district owned device . . . or with respect to email, files or directories"; that students should "[e]xpect any district device to be regularly inspected for inappropriate material" and that "[a]ny inappropriate content . . . will be removed"; and that students should "[e]xpect, without prior notice, any and all usage of the district network and internet access . . . to be**

**subject to review," that "[a]ny information gathered during monitoring may be copied and or stored," and that "no user shall have any expectation of privacy regarding the use of the device(s)." Those provisions informed E.B. that files on District systems could be inspected and inappropriate content removed without prior notice, and they impose no requirement of District-employee review before removal.**

**Request No. 195**: Admit that, before ManagedMethods first scanned H.C.'s District-managed Google account, the District had not provided H.C. notice that automated content review could restrict H.C.'s access to a stored file before a District employee reviewed the file.

**Admit or Deny: Denied. Before ManagedMethods first scanned H.C.'s District-managed Google account, H.C. was subject to and on notice of the District's Student Acceptable Use Policy. The Student Acceptable Use Policy, amended September 2019, states that students will not "[h]ave any expectation of privacy when using any district owned device . . . or with respect to email, files or directories"; that students should "[e]xpect any district device to be regularly inspected for inappropriate material" and that "[a]ny inappropriate content . . . will be removed"; and that students should "[e]xpect, without prior notice, any and all usage of the district network and internet access . . . to be subject to review," that "[a]ny information gathered during monitoring may be copied and or stored," and that "no user shall have any expectation of privacy regarding the use of the device(s)." Those provisions informed H.C. that files on District systems could be inspected and inappropriate content removed without prior notice, and they impose no requirement of District-employee review before removal.**

**Request No. 196**: Admit that the District does not possess an acknowledgment by E.B., obtained before ManagedMethods first scanned E.B.'s District-managed Google account, specifically authorizing automated restriction of access to stored files before District-employee review.

**Admit or Deny: Defendant admits that it does not possess an acknowledgment by E.B. that uses the words "automated restriction of access to stored files before District-employee review." Defendant denies that E.B. had not acknowledged the District's Student Acceptable Use Policy, which informs students that District devices will be inspected, that inappropriate content "will be removed," that all usage is subject to review "without prior notice," and that there is no expectation of privacy in District email, files, or directories. Except as expressly admitted, denied.**

**Request No. 197:** Admit that the District does not possess an acknowledgment by H.C., obtained before ManagedMethods first scanned H.C.'s District-managed Google account, specifically authorizing automated restriction of access to stored files before District-employee review.

> **Admit or Deny: Defendant admits that it does not possess an acknowledgment by H.C. that uses the words "automated restriction of access to stored files before District-employee review." Defendant denies that H.C. had not acknowledged the District's Student Acceptable Use Policy, which informs students that District devices will be inspected, that inappropriate content "will be removed," that all usage is subject to review "without prior notice," and that there is no expectation of privacy in District email, files, or directories. Except as expressly admitted, denied.**

**Request No. 198:** Admit that the District required acknowledgment of an Acceptable Use Policy as a condition of Plaintiff E.B.'s enrollment as a student for the 2026–2027 school year.

> **Admit or Deny: Defendant denies that acknowledgment of the Acceptable Use Policy is a condition of E.B.'s enrollment as a student. Defendant states that agreement to comply with the Student Acceptable Use Policy is a condition of access to and use of District technology resources, and that the acknowledgment is collected as part of the annual enrollment process.**

**Request No. 199:** Admit that the District required acknowledgment of an Acceptable Use Policy as a condition of Plaintiff H.C.'s enrollment as a student for the 2026–2027 school year.

> **Admit or Deny: Defendant denies that acknowledgment of the Acceptable Use Policy is a condition of H.C.'s enrollment as a student. Defendant states that agreement to comply with the Student Acceptable Use Policy is a condition of access to and use of District technology resources, and that the acknowledgment is collected as part of the annual enrollment process.**

s/ Cameron Grant
Cameron Grant, KS #28388
Melika T. Harris, KS #30908
Andrew J. Gnefkow, KS #79266
LEWIS BRISBOIS BISGAARD & SMITH LLP
700 Madison Ave., Suite700
Kansas City, MO 64112

Telephone: (816) 299-4244
Facsimile: (816) 299-4245
Cameron.grant@lewisbrisbois.com
Melika.harris@lewisbrisbois.com
Andrew.gnefkow@lewisbrisbois.com

*Attorneys for Defendant*