**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

JACK TELL; NATASHA TORKZABAN; MORGAN SALISBURY; OPAL MORRIS; HENRY FARTHING; SUZANA KENNEDY; NAOMI SUI PANG; ASHLYN TELL; PHOEBE MORRIS; E.B., a minor, by and through his parent and next friend CATHERINE P. BATZA, Ph.D.; and H.C., a minor, by and through his parents and next friends DANIELLE BRUNIN and ERIK CHANEY,

*Plaintiffs*,

v.

LAWRENCE USD 497, a political subdivision of the State of Kansas,

*Defendant*.

Case No. 2:25-cv-02428-KHV-GEB

# PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

## RESPONSE TO DEFENDANT'S STATEMENT OF ADDITIONAL MATERIAL FACTS[1]

**District ¶ 50.** Disputed in part. Enrollment does not require signing the Acceptable Use Policy (AUP) or taking a device home, but coursework requires District accounts, and no general monitoring exemption exists. Polk 30(b)(6) Dep. 55:9–15, ECF No. 202-12; *id.* at 58:9–12, ECF No. 194-3; *id.* at 62:3–21, ECF No. 193-10; Luckett Dep. 211:16–212:8, ECF No. 193-27.

**District ¶ 52.** Disputed. E.B. doubted anyone had signed for him, and his later answer addressed a hypothetical. E.B. Dep. 92:9–93:2, 105:2–19, ECF No. 202-21. Technology access is conditioned on agreement to the Acceptable Use Policy. RFA 198, ECF No. 193-3 at 53.

**District ¶¶ 53–55.** Undisputed as to notice; disputed as to consent. ECF Nos. 202-30 at 6, 202-31 at 6. E.B. questioned the terms as applied to journalism and learned of the inspection language after joinder. E.B. Dep. 90:5–91:12, 106:5–107:25, ECF No. 202-21.

**District ¶¶ 58–59.** Disputed in part. Within covered locations, ManagedMethods scans stored content and has flagged unfinished and unsubmitted work, and families have no general exemption. RFAs 161–163, ECF No. 193-3 at 43–44; Swift Dep. 208:16–209:21, ECF No. 202-10; Polk 30(b)(6) Dep. 48:18–49:12, 62:3–21, ECF No. 193-10.

**District ¶ 62.** Disputed in part. Before the December 2023 training change, administrators questioned students without first viewing the flagged images. Luckett 30(b)(6) Dep. 29:12–31:10, ECF Nos. 202-7, 193-9.

**District ¶¶ 64–65.** Disputed. The District admitted that Rials communicated a reporting restriction, RFA 46, ECF No. 193-2 at 10; its designee deferred to Englebrick on "the details of communication with Lawrence High School," Swift 30(b)(6) Dep. 41:11–14, ECF No. 193-11;

[1] Under D. Kan. Rule 56.1(c), Plaintiffs respond to ECF No. 202 at 19–25. For this motion only, Plaintiffs do not dispute ¶¶ 46–49, 51, 56–57, 60–61, 63, 73, and 78, and dispute each remaining paragraph as stated. Page citations use CM/ECF or transcript pagination; "SUMF" refers to ECF No. 193.

and Englebrick testified that Rials acknowledged the prohibition and was told to lift it, Englebrick Dep. 135:25–136:5, 138:4–8, ECF No. 193-25. *See also* Epperson-Ladd Dep. 33:13–34:21, 37:11–38:22, 41:19–44:3, ECF No. 193-23.

**District ¶¶ 66–69.** Undisputed but immaterial. District records identify a quarantine associated with Phoebe's account and alerts relating to Ashlyn. RFAs 141, 189, ECF No. 193-3.

**District ¶ 70.** Undisputed but incomplete. Morgan also lost access to a word list compiled for his reporting. Salisbury Dep. 8:1–10:23, ECF No. 193-18.

**District ¶¶ 71–72.** Disputed. Polk identified no federal determination requiring either vendor, and the District already exempts designated accounts. Polk Decl. ¶¶ 3–6, ECF No. 202-28; Swift 30(b)(6) Dep. 57:4–58:10, ECF No. 193-11.

**District ¶¶ 74–75.** Undisputed as to the funding consequences Polk described; disputed as to missed interventions, which ignores the injunction's safety exceptions. Polk Decl. ¶¶ 8–11, ECF No. 202-28; ECF No. 192 ¶ 8.

**District ¶¶ 76–77.** Disputed in part. Staff once used outside storage to avoid another quarantine, and Gaggle also held Natasha's email and Suzana's spreadsheet. Opal Morris Dep. 48:1–49:12, ECF No. 193-15; RFA 125, ECF No. 193-3; ECF No. 202 at 14–15, 46.

**District ¶ 79.** Undisputed as to the interventions described; disputed as to efficacy. Luckett could not substantiate the figure of 31 and knew of no comparable ManagedMethods result. Luckett 30(b)(6) Dep. 81:12–82:15, ECF No. 202-7.

## INTRODUCTION

Lawrence USD 497 requires students to do their schoolwork in accounts it searches around the clock. The District concedes ManagedMethods conducts Fourth Amendment searches and defends them on a single premise: that "every file and email on the District's servers, no matter the time created," implicates student safety. ECF No. 202 at 25, 34. That premise has no limit. It

treats an unfinished essay and a credible threat as equal grounds for a search. The Fourth Amendment does not. A school search must be "reasonably related in scope to the circumstances which justified the interference in the first place," *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)), and students do not waive their privacy in "nondisruptive yet highly personal items" merely by bringing them to school, *id.* at 339.

The District's own documents and witnesses show its search sweeps in ordinary schoolwork, art, and journalism. ManagedMethods flagged a student's annotations to Chinua Achebe's novel *Things Fall Apart*, which an assistant principal recognized as classwork. Gaggle took lawful photographs from two art students and held a reporter's email addressed to the adviser sitting beside her. ECF No. 202 at 36; SUMF ¶¶ 14, 17–23, 25–26. And compulsory review changes what students write before anything is flagged: E.B. narrowed a story about a suicide-prevention hotline because his reporting had to go into a District document. E.B. Dep. 19:4–20:23, ECF No. 193-28.

No genuine dispute of material fact remains on the questions that decide liability: whether the District searches, whether that search exceeds any justification for it, whether it burdens student expression, and whether the District imposed the completed restrictions it admits. Even drawing every reasonable inference in the District's favor, Plaintiffs are entitled to judgment on those issues. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

## ARGUMENT

### I. The District's round-the-clock search of required student accounts violates the Fourth Amendment.

#### A. The District concedes the search and authorized it under both vendors.

The District accepts municipal responsibility if its authorized use of Gaggle or ManagedMethods violated the Constitution. ECF No. 202 at 25–26. That concession is compelled:

a municipality answers under § 1983 when "execution of a government's policy or custom . . . inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The Board purchased and renewed Gaggle; the District chose the alert categories, recipients, and restrictions; and senior administrators continued the monitoring through ManagedMethods and briefed the Board. ECF No. 200 ¶ 2.A.b–d; SUMF ¶¶ 1–6, 11.

Polk described the practice as monitoring student accounts "24 hours a day, seven days a week," and Englebrick confirmed that it continued after the change in vendors. Polk 30(b)(6) Dep. 44:7–9, ECF No. 193-10; Englebrick Dep. 186:20–24, ECF No. 193-25. The only question is whether the District could lawfully authorize it. It could not.

**B. The search reaches far beyond any safety need the District identifies.**

A school search must be "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." *T.L.O.*, 469 U.S. at 341 (quoting *Terry*, 392 U.S. at 20). *T.L.O.* also identifies what lies at the core of the privacy students retain. Students carry "such nondisruptive yet highly personal items as photographs, letters, and diaries," and "there is no reason to conclude that they have necessarily waived all rights to privacy in such items merely by bringing them onto school grounds." *Id.* at 339. A student's digital files magnify that interest, because they hold "the privacies of life." *See Riley v. California*, 573 U.S. 373, 403 (2014) (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1886)). The District's search reaches into precisely that privacy: everything students write, photograph, and communicate in the accounts the District *requires* them to use.

*Vernonia* and *Earls*, the District's lead authorities, sustained only bounded tests that looked for one thing. The *Vernonia* tests "look[ed] only for drugs, and not for whether the student is, for example, epileptic, pregnant, or diabetic." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 658 (1995). The *Earls* results went to no law-enforcement authority and carried no discipline or

academic consequence. *Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls*, 536 U.S. 822, 833 (2002). Both programs reached only students who chose athletics or competitive extracurricular activities, and *Vernonia* expressly "caution[ed] against the assumption that suspicionless drug testing will readily pass constitutional muster in other contexts." 515 U.S. at 665. Here, the District tests for no single substance. It evaluates *everything* students write, photograph, and communicate in accounts required for the ordinary curriculum.

The rationale of those cases points the same way. *Vernonia* asked "whether the search is one that a reasonable guardian and tutor might undertake." 515 U.S. at 665. A reasonable guardian might check a teenager for drugs before a football game. But no reasonable guardian reads every page of a high school student's notebooks and letters, every night and weekend, to find the rare page that signals danger. *Vernonia*'s own standard condemns the District's search.

The District's detection analogies prove Plaintiffs' point. ECF No. 202 at 34–35. A dog sniff is "sui generis" because it "discloses only the presence or absence of narcotics, a contraband item," and "does not expose noncontraband items that otherwise would remain hidden from public view." *United States v. Place*, 462 U.S. 696, 707 (1983). A sniff that "reveals no information other than the location of a substance that no individual has any right to possess" is therefore no search, while a device "capable of detecting lawful activity" is. *Illinois v. Caballes*, 543 U.S. 405, 409–10 (2005) (distinguishing *Kyllo v. United States*, 533 U.S. 27 (2001)). A metal detector likewise registers metal without reading a page. ManagedMethods works the other way. It cannot flag anything without first examining the lawful expression the District concedes it is not looking for. The District admits that ManagedMethods scans stored file contents and has generated alerts on unfinished work. RFAs 161–163, ECF No. 193-3 at 43–44. That is why the District's supposedly narrower system still flagged "lit," literature annotations, and a message more than two years old.

Polk 30(b)(6) Dep. 29:4–15, 48:18–49:12, ECF No. 193-10; Honas Dep. 175:6–179:8, ECF No. 193-26; SUMF ¶¶ 13–14.

The District's school cases draw the same line. *Burlison* upheld a drug-dog sweep because the sniff was "minimally intrusive" and supplied "individualized suspicion to conduct further, more intrusive searches." *Burlison v. Springfield Pub. Schs.*, 708 F.3d 1034, 1040 (8th Cir. 2013) (quoting *Doe ex rel. Doe v. Little Rock Sch. Dist.*, 380 F.3d 349, 355 (8th Cir. 2004)); *see* ECF No. 194 at 38–39. Suspicion came first, and opening the backpack came second. When a district skipped that step and examined the contents of students' belongings without suspicion, the Eighth Circuit held the practice unconstitutional, because "[f]ull-scale searches that involve people rummaging through personal belongings concealed within a container are manifestly more intrusive than searches effected by using metal detectors or dogs." *Little Rock*, 380 F.3d at 355. ManagedMethods is the backpack search, not the sniff. It opens every file first and generates suspicion afterward.

*G.C. v. Owensboro Public Schools* rejects the District's safety premise. There, officials knew of a student's prior drug use, angry outbursts, and suicidal statements, and they searched his phone after catching him texting in class. 711 F.3d 623, 628–30 (6th Cir. 2013). The Sixth Circuit still held this background did not justify reading his texts absent a specific reason to believe the search would reveal wrongdoing or danger. *Id.* at 633–34. Here, the District claims far more: authority to read every covered student's expression first and decide afterward whether any student-specific concern exists.[2]

The Court can adjudicate the defined practice now. Facial Fourth Amendment challenges

[2] A suicide note, an overdose message, or a credible threat demands action. But detecting *some* emergencies cannot justify suspicionless examination of *every* other student's content, particularly when the District already excludes elementary grades, designated journalism accounts, and selected curricular alerts. ECF No. 202 ¶¶ 56, 59; Swift 30(b)(6) Dep. 57:4–58:10, ECF No. 193-11. CIPA is addressed in Part IV.

are not categorically barred, and "the proper focus of the constitutional inquiry is searches that the law actually authorizes, not those for which it is irrelevant." *City of Los Angeles v. Patel*, 576 U.S. 409, 415–19 (2015). Teacher grading, emergency response, and investigation of a specific threat rest on independent grounds and are irrelevant to the policy challenged here. What the policy itself authorizes is different: account coverage alone triggers an ongoing safety search. That search is unreasonable on its face and, at minimum, as applied to E.B. and H.C.

### C. The AUP supplied notice, not consent to continuous examination of student work.

The AUP disclaims privacy and warns that email and network use may be reviewed. ECF No. 193-32 at 2. That language bears on a student's expectations, but it does not end the analysis. Consent must be voluntary, and its scope turns on "what would the typical reasonable person have understood by the exchange." *Florida v. Jimeno*, 500 U.S. 248, 251 (1991); *see Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1208–12 (10th Cir. 2003).

The District requires its accounts for coursework, directs students to assigned cloud storage, and offers no general opt-out. SUMF ¶¶ 7–9, 40. Its implicit answer—that a student who wants privacy should keep her work out of the District's accounts—is the argument *T.L.O.* rejected when New Jersey claimed students had no legitimate need to bring personal items to school. 469 U.S. at 338–39. That suggestion was not "well anchored in reality," because students "must bring to school not only the supplies needed for their studies" but also highly personal items. *Id.* at 339. The District's position is weaker still: it does not merely permit students to bring their work into its accounts—it requires them to. A student who submits photographs for grading permits the teacher to review the selected images; the District claims authority to examine even the outtakes the student never submitted. A condition a student cannot refuse without abandoning the curriculum is a requirement, not a choice, and acknowledging it cannot supply voluntary consent

to that additional intrusion.

The District's locker cases illustrate the difference. In *Zamora v. Pomeroy*, 639 F.2d 662, 670–71 (10th Cir. 1981), a dog alerted to a particular locker, and in *State v. Stein*, 203 Kan. 638, 456 P.2d 1, 2–3 (1969), a student consented to a locker search during a burglary investigation. In each case, specific suspicion or consent preceded the search. Here, the software searches first and generates suspicion afterward. And *T.L.O.* expressly reserved whether students have privacy in "lockers, desks, or other school property provided for the storage of school supplies," 469 U.S. at 337 n.5, while recognizing their privacy in letters and diaries, *id.* at 339. Notice of monitoring is not consent to it, so the District still must justify the search, and it cannot.[3]

## II. Compulsory review of developing student expression violates the First Amendment.[4]

### A. School ownership does not justify the restrictions on student expression.

Students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). Under *Tinker*, the District must identify grounds to forecast substantial disruption or interference with others' rights before restricting students' own expression. *Id.* at 508–09, 513–14. Under *Hazelwood*, a school may exercise editorial control over school-sponsored expression only when its decision is reasonably related to a legitimate pedagogical concern. *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 267–73 (1988). Kansas protects "the liberty of the press in student publications" and assigns responsibility for news and opinion content to student editors, and the

[3] The workplace analogy fares no better. *United States v. Angevine* concerned an adult employee's downloads on a university computer subject to announced audits. 281 F.3d 1130, 1133–35 (10th Cir. 2002). These students are teenagers who must entrust their work to the District to complete the curriculum, and in *Little Rock*, advance handbook notice did not permit routine suspicionless searches of students' belongings. 380 F.3d at 353–57.

[4] The District emphasizes that ManagedMethods ordinarily delivers what students send. ECF No. 202 at 51–55. Delivery cannot restore an interview a reporter chose to forgo or words a student left unwritten; First Amendment protection extends to gathering the information from which expression is made. *W. Watersheds Project v. Michael*, 869 F.3d 1189, 1195–97 (10th Cir. 2017).

District permits them to select coverage without administrative preapproval. K.S.A. 72-7211; SUMF ¶ 36. A student reporter's choice of sources remains an editorial decision when recorded in a school document.

Even under the District's nonpublic-forum theory, a restriction must be viewpoint neutral and reasonable in light of the forum's purpose. *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 46–49 (1983). Reporting, editing, and submitting art are the forum's intended uses. District review reached reporting tests, source materials, an incoming records spreadsheet, and photographs prepared for class. SUMF ¶¶ 17–23, 25–31. As the District's former communications director acknowledged, reporting requires confidentiality and "Gaggle was interfering with that." Boyle Dep. 63:6–14, ECF No. 193-22. A restriction that impairs the very work a forum exists to support is unreasonable by definition.

**B. Monitoring changed what E.B. reported and what H.C. wrote.**

E.B. shifted his hotline story toward the curation of an arts project and away from the hotline staff's experiences. E.B. Dep. 19:4–20:23, ECF No. 193-28. He could interview sources on personal equipment, but "every quote" and "every sentence" ultimately had to enter a shared District document for editing and grading. *Id.* at 19:14–20, 56:14–58:23. Suicide remains a current alert category. ECF No. 202 at 11–12. His editorial choice turned on what the software might flag.

After Gaggle flagged H.C.'s "Stop bullying me" email, a counselor met with him alone about what he had written. H.C. Dep. 49:1–50:24, ECF No. 193-29. He stopped sending jokes and avoided words and images he expected would attract scrutiny. *Id.* at 54:10–55:13, 61:17–62:16. ManagedMethods no longer alerts for cyberbullying, but H.C.'s account remains covered and administrators still receive safety alerts. ECF No. 202 at 11–12, 54–55. The literature false positive shows why his concern remains objective. SUMF ¶ 14.

Self-censorship establishes injury when objectively justified. *Initiative & Referendum Inst.*

*v. Walker*, 450 F.3d 1082, 1088–90 (10th Cir. 2006) (en banc). Both students traced specific changes in their speech to monitoring the District controls, and the requested injunction would redress that injury. On the merits, the District identifies no disruption their speech threatened and no pedagogical reason to subject it to continuing safety review.

**C. E.B.'s course enrollment does not establish an uninterrupted exemption.**

In August 2026, the District admitted that both students remained subject to monitoring. RFA 86, ECF No. 193-2 at 33–34. On October 22, it admitted that ManagedMethods was configured to scan files in both accounts. RFAs 187–188, ECF No. 193-3 at 50. Polk declared on November 2 that E.B. was in an exempt unit. ECF No. 202-22 ¶¶ 12–13. Only after Plaintiffs relied on the October admission did the District move to withdraw it, attributing the error to a class that "goes by two different names." ECF No. 205-1 ¶ 18. Unless the Court permits withdrawal, the admission is "conclusively established." Fed. R. Civ. P. 36(b). And the District's explanation proves Plaintiffs' point: if E.B.'s coverage turns on which of two names an administrator assigns his class, nothing makes it absolutely clear that his coverage will not recur.[5]

E.B. must establish injury as of July 10, when he joined this action. ECF No. 101. He kept the school device for summer journalism and changed his reporting during the enrollment the District says exempted him. E.B. Dep. 52:20–53:6, ECF No. 194-12; SUMF ¶¶ 39–42. The later admissions corroborate his testimony about coverage. If the District ended an existing injury after joinder, it bears the "formidable burden" of showing that "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw*

[5] The Pretrial Order anticipated the motions to withdraw admissions and exclude compensatory damages evidence. ECF No. 200 at 39. The District accepts for this motion the facts supported by RFAs 151 and 156. ECF No. 202 at 9 n.1; ECF No. 205 at 2–6. The Rule 37(c)(1) motion concerns compensatory proof. ECF No. 204. Plaintiffs maintain their claims for compensatory damages, will oppose both motions, including the request to withdraw RFA 187, and waive no argument in response. Nominal damages remain available, at a minimum, for each completed violation. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 292 (2021).

*Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189–90 (2000). Even if E.B.'s coverage at joinder or today remains disputed, the Court can establish his coverage on the admitted dates and decide H.C.'s claims independently.

### D. The policy is substantially overbroad.

Count VIII requires comparison of the policy's unconstitutional applications with its plainly legitimate sweep. *Moody v. NetChoice, LLC*, 603 U.S. 707, 723–26 (2024). Detecting true threats, students in crisis, and unlawful images serves legitimate ends. But the same policy reaches roughly 5,800 accounts in grades six through twelve, where students write literary analyses, conduct interviews, draft stories, make art, and correspond. ECF No. 202 at 21, ¶ 56; SUMF ¶¶ 10–15, 18–31, 40–42. Those are the ordinary uses of the accounts. Requiring students to expose that work to safety review as they create it burdens a substantial amount of protected expression relative to the policy's legitimate sweep. The Court should hold the policy substantially overbroad and enter judgment on Count VIII and, at a minimum, on E.B.'s and H.C.'s as-applied claims.

## III. The District's completed seizures and speech restrictions independently violated Plaintiffs' rights.[6]

### A. Gaggle's quarantines deprived Opal and Henry of lawful photographs they needed for class.

The District admits Gaggle deprived Opal Morris and Henry Farthing of photographs that were neither pornographic nor against school policy. ECF No. 202 at 36. A seizure of property occurs whenever "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). That protection applies independently of any invasion of privacy. *Soldal v. Cook County*, 506 U.S. 56, 61–64 (1992). The

[6] Changing vendors does not erase completed violations; damages, including nominal damages, redress past injury. *Uzuegbuna*m, 592 U.S. at 292. Each completed restriction is measured by the justification the District had when it acted. *See T.L.O.*, 469 U.S. at 341.

students selected and stored the working copies to prepare assignments. Swift agreed that saving work in Drive does not itself transfer ownership under Policy JT, and the District stated in discovery that students' files "are not the property of the District." Swift 30(b)(6) Dep. 14:17–16:6, ECF No. 193-11; RFA 156, ECF No. 193-3 at 42.

Opal recalled regaining access by the next day. Henry had to upload photographs again and for a time shifted from self-portraits to landscapes. SUMF ¶¶ 22–23; ECF No. 202 at 38–40. A suspected unlawful image may warrant prompt review, but the scope and duration of the interference must fit the danger. *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 373–77 (2009); *Place*, 462 U.S. at 709–10. Once the concern was resolved, withholding lawful photographs served no safety purpose and impeded the assignment for which the students created the work. Opal and Henry are entitled to judgment on liability under Counts III and VI or, at minimum, to rulings establishing the seizure and the limits on continued withholding. ECF No. 192 ¶ 3.

**B. Holding Natasha's email and blocking Suzana's spreadsheet restricted protected reporting.**

Natasha Torkzaban emailed her journalism adviser sitting beside her to test whether Gaggle would intercept a message about mental health. The District accepts advance notice of the test for this motion and admits that Gaggle delayed delivery for staff examination. ECF No. 202 at 9 n.1; RFA 152, ECF No. 193-3 at 41. The adviser testified, "I didn't receive it." Tholen Dep. 157:20–22, ECF No. 193-17. The District's argument that interception accomplished Natasha's objective proves Plaintiffs' point. A reporter who documents the government blocking delivery has established the restraint. The success of the test supplies no constitutional justification for imposing it.

The manner of interception compounded the restraint. *Taylor v. Roswell Independent*

*School District* upheld a preapproval policy that provided prompt decisions, written reasons, and an opportunity for review. 713 F.3d 25, 42–46 (10th Cir. 2013). Gaggle generally gave students no contemporaneous notice that it had interrupted delivery. Luckett 30(b)(6) Dep. 68:2–20, ECF No. 193-9. A student who never learns of a hold cannot seek its release. Withholding a supervised reporting communication from the adviser served no educational or safety purpose. Natasha is entitled to judgment under Count VI.

Gaggle blocked a spreadsheet sent to Suzana Kennedy under KORA after the District placed her account in its excluded journalism group. The December 9 email confirms that blocking continued after administrators stopped receiving alerts. ECF No. 193-39 at 3; RFA 153, ECF No. 193-3 at 41; Kennedy Dep. 57:14–59:2, ECF No. 193-21. Suzana likewise seeks judgment under Count VI. If vendor error leaves municipal causation for trial, the Court should establish the blocked delivery and hold that a software label could not justify withholding records sought for protected reporting. ECF No. 192 ¶ 4.

**C. The District had no grounds to forbid Ashlyn from covering this suit or Opal from discussing her questioning.**

The District was free to decline comment on this lawsuit, but not to forbid Ashlyn Tell from covering it for the student newspaper. Kansas protects “the liberty of the press in student publications,” K.S.A. 72-7211(a), and Swift agreed that pending litigation supplied no reason to keep an article from going to print, Swift 30(b)(6) Dep. 36:20–37:1, ECF No. 193-11. An informal instruction conveyed through an intermediary can restrain publication as effectively as a written order; courts “look through forms to the substance.” *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963).

The District admitted that Rials communicated a reporting restriction. ECF No. 193-2 at 10. Epperson-Ladd conveyed a prohibition to Ashlyn, and Englebrick testified that Rials

acknowledged imposing it. Honas recalled a refusal to comment, and Epperson-Ladd later believed she had misunderstood. Rials issued his August 15 clarification before the article appeared on August 19. SUMF ¶¶ 33–38; ECF No. 202 at 49. To the extent the prohibition is established, the Court should hold it unconstitutional under Count VI and reserve disputed questions of scope, authority, municipal attribution, delay, and damages. ECF No. 200 at 22, 25.

Opal testified that administrators instructed her not to discuss her questioning with classmates. Opal Morris Dep. 43:19–44:12, ECF No. 193-15. A duty of confidentiality governs what staff may disclose. It supplies no ground for silencing the student about her own experience. The District identifies no forecast of disruption or infringement of others' rights under *Tinker*. The Court should hold the instruction unconstitutional and reserve disputed questions of attribution and consequences for trial. ECF No. 192 ¶ 5.

## IV. Declaratory relief and a two-account injunction would remedy the continuing violations while preserving the District's safety measures.

Damages cannot restore the confidentiality of a draft the District has examined or give a student back the opportunity to speak. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). An injunction confined to E.B.'s and H.C.'s accounts addresses that injury while preserving instructional review, lawful filtering, independently justified investigations, and emergency intervention. ECF No. 192 ¶ 8. The District already administers account exclusions, so the students' rights and the public's interest in school safety can both be protected on those terms. *See Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007).

The District predicts a loss of E-Rate funding if it cannot certify CIPA compliance. Polk Decl. ¶¶ 3–11, ECF No. 202-28. But CIPA requires only a safety policy that includes monitoring

minors' online activities and a measure that "blocks or filters Internet access" to specified visual depictions. 47 U.S.C. § 254(h)(5)(B)(i), (h)(7)(I). It prescribes no continuous search of stored essays, reporting drafts, or email, and Vignery agreed that Gaggle was not a federal or state requirement. Vignery Dep. 158:6–19, ECF No. 193-12; SUMF ¶ 43. The District already certifies compliance while exempting designated accounts, and exempting two more changes nothing.

Plaintiffs therefore request a declaration that the challenged practice is unconstitutional and a permanent injunction against continuous, suspicionless safety searches of the two students' account contents and communications awaiting delivery, including resulting alerts and restrictions. ECF No. 192 ¶ 8 preserves educational access, and ECF No. 193 at 45 specifies the certification and reporting terms. If the Court limits relief to access restrictions, the District should notify the student of any held item, have an employee review it in context, and restore it once any concern is resolved.

## CONCLUSION

Plaintiffs respectfully request that the Court grant their Motion (ECF No. 192), hold the challenged search unreasonable on its face and as applied to E.B. and H.C., enter judgment for both students on their as-applied First Amendment claims and under Count VIII, grant declaratory and injunctive relief under Counts I–II and IV–V, and enter judgment on liability under Counts III and VI and on the constitutional elements of Ashlyn's and Opal's speech claims. Alternatively, Plaintiffs request judgment on established elements under Rule 56(a) and an order under Rule 56(g) establishing the undisputed facts identified in ECF No. 192 ¶ 7. Disputed incident facts, causation, attribution, and compensatory relief should remain for trial.[7]

[7] Plaintiffs waive no claim or argument raised in ECF Nos. 193 and 201 and expressly preserve Count VII, the detention theories, and the First Amendment theory concerning dissemination of KORA records, subject to the Court's other rulings. ECF Nos. 56, 79, and 119 govern existing KORA relief.

Dated: November 23, 2026

Respectfully submitted,

**DENTONS US LLP**

By: *_/s/ Harrison M. Rosenthal_*

Mark P. Johnson (Kan. No. 22289)
Harrison M. Rosenthal (Kan. No. 28894)
Jacob S. Margolies (Kan. No. 29470)
Rebecca Hughes Parker* (NY No. 4321287)

4520 Main Street, Suite 1100
Kansas City, Missouri 64111-7700
Telephone: (816) 460-2400
Facsimile: (816) 531-7545
mark.johnson@dentons.com
harrison.rosenthal@dentons.com
jacob.margolies@dentons.com
rebeccahughes.parker@dentons.com
**Admitted Pro Hac Vice*

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2026, the foregoing was electronically filed using the Court's CM/ECF system, which will send notice to counsel of record for Defendant Lawrence USD 497:

Cameron E. Grant
Andrew J. Gnefkow
Melika Harris
Lewis Brisbois Bisgaard & Smith LLP
4600 Madison Avenue, Suite 700
Kansas City, Missouri 64112
cameron.grant@lewisbrisbois.com
andrew.gnefkow@lewisbrisbois.com
melika.harris@lewisbrisbois.com

*/s/ Harrison M. Rosenthal*
Counsel for Plaintiffs