**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| JACK TELL; NATASHA TORKZABAN; MORGAN SALISBURY; OPAL MORRIS; HENRY FARTHING; SUZANA KENNEDY; NAOMI SUI PANG; ASHLYN TELL; PHOEBE MORRIS; E.B., a minor, by and through his parent and next friend CATHERINE P. BATZA, Ph.D.; and H.C., a minor, by and through his parents and next friends DANIELLE BRUNIN and ERIK CHANEY,<br><br>*Plaintiffs*<br><br>v.<br><br>LAWRENCE USD 497, a political subdivision of the State of Kansas,<br><br>*Defendant* | Case No. 2:25-cv-02428-KHV-GEB |

**<u>DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF 194)</u>**

Cameron E. Grant
Melika Harris
Andrew Gnefkow
LEWIS BRISBOIS BISGAARD & SMITH LLP
4600 Madison Ave., Suite 700
Kansas City, MO 64112
(816) 299-4255
Cameron.Grant@lewisbrisbois.com
Melika.Harris@lewisbrisbois.com
Andrew.Gnefkow@lewisbrisbois.com

*Counsel for Defendant*

Kansas City, Missouri
November 23, 2026

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. E.B. AND H.C. LACK STANDING TO SEEK PROSPECTIVE FIRST AMENDMENT RELIEF. .......... 2

II. E.B. AND H.C. HAVE NO REASONABLE EXPECTATION OF PRIVACY IN THEIR DISTRICT ACCOUNTS .......... 5

III. THE DISTRICT'S MONITORING IS REASONABLE AS A SPECIAL-NEEDS SEARCH .......... 9

A. The nature and character of the privacy intrusion is limited .......... 9

B. B. The District's interest is immediate, and its monitoring is effective .......... 11

IV. PLAINTIFFS CANNOT MAINTAIN THEIR SEIZURE, VAGUENESS, AND OVERBREADTH CLAIMS .......... 13

A. Plaintiffs concede Neither E.B. nor H.C. faces an imminent seizure .......... 13

B. Vagueness .......... 13

C. First Amendment Overbreadth .......... 14

CONCLUSION .......... 14

# TABLE OF AUTHORITIES

## Cases

*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175 (10th Cir. 2010)....... 3
*Bd. of Educ. v. Earls*, 536 U.S. 822 (2002)........................................................ 9, 11, 12
*Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986) ..................................... 13, 14
*Clapper v. Amnesty Int'l*, 568 U.S. 398 (2013) .......................................................... 5
*Clark v. United School Dist. No. 287*, 822 Fed.App. 706 (10th Cir. 2020).................... 4
*Doe ex rel. Doe v. Little Rock Sch. Dist*, 380 F.3d 349 (8th Cir. 2004) ..................... 5, 7
*Dubbs v. Head Start, Inc.*, 336 F.3d 1194 (10th Cir. 2003)..................................... 5, 7
*Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006) ) .. 3, 4
*Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) ................................................................. 3
*Mahanoy v. Area Sch. Dist. v. B.L. ex rel. Levy*, 594 U.S. 180 (2021).................. 10, 11
*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) ........................................................ 14
*New Jersey v. T.L.O.*, 469 U.S. 325, (1985)............................................................... 5
*Riley v. California*, 573 U.S. 373 (2014)................................................................ 5, 6
*Safford Unified School District No. 1 v. Redding*, 557 U.S. 364 (2009) ...................... 5
*State v. Stein*, 456 P.2d 1, 3 (Kan. 1969).................................................................... 8
*United States v. Angevine*, 281 F.3d 1130 (10th Cir. 2002) ................................ 6, 7, 8
*United States v. Hansen*, 599 U.S. 762 (2023)......................................................... 14
*United States v. Hartwell*, 436 F.3d 174 (3d Cir. 2006) ........................................... 10
*United States v. Place*, 462 U.S. 696 (1983).............................................................. 10
*Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646 (1995) .................................. 4, 5, 8, 9
*Virginia v. Moore*, 553 U.S. 164 (2008) .................................................................... 12
*Winsness v. Yocom*, 433 F.3d 727 (10th Cir. 2006)................................................... 14
*Zamora v. Pomeroy*, 639 F.2d 662 (10th Cir. 1981).................................................... 8
*Zorn v. City of Marion*, 774 F. Supp. 3d 1279 (D. Kan. 2025)................................ 6, 7

## Statutes

K.S.A. 72-6312 ......................................................................................................... 12
K.S.A. 72-6313(b) ..................................................................................................... 12
K.S.A. 72-6315 ......................................................................................................... 12
K.S.A. 72-6316(a)(1)(A)............................................................................................. 12

K.S.A. 72-6316(c) .......... 12

**Other Authorities**

47 C.F.R. § 54.520(c)(1) .......... 11

Defendant Lawrence USD 497 (the "District") submits this Reply in support of its Motion for Partial Summary Judgment (ECF 194).

## INTRODUCTION

The District's motion addresses ManagedMethods only. The District's motion was narrow to begin with, and Plaintiffs' opposition narrows it further by conceding that ManagedMethods does not block or delay email, no vendor employee reviews student content, and ManagedMethods uses narrower alert categories than Gaggle; Plaintiffs argument "does not depend on denying the changes" from Gaggle to ManagedMethods (ECF 201 at 17). The Current Students also concede they cannot identify *any of their content* that has ever been flagged by ManagedMethods.[1] Along the way, Plaintiffs also concede:

- the only content ManagedMethods can quarantine is suspected child pornography (District SOF 18) (uncontroverted by Plaintiffs as to "child pornography");
- the quarantine capability is not "proof that either current student faces an imminent seizure," and Plaintiffs do not "assume that every historical Gaggle restriction will recur" (ECF 201 at 47);
- The District's prior technical difficulties implementing exemptions as to Gaggle "do not prove that ManagedMethods repeats the same defect" (ECF 201 at 18-19);
- H.C. "did not say that a teacher ordered him to stop joking, that he was punished, or that the incident changed his schoolwork or communications with teachers" (ECF 201 at 24);
- ManagedMethods does not use the bullying category under which Gaggle flagged H.C.'s email (ECF 201, response to District ¶ 14), which is "a relevant change" (ECF 201 at 24);
- the AUP "supplies notice" (ECF 201 at 30) and H.C. and his parents "sign the agreement" (ECF 201 at 31);
- the District's safety interests are "serious" and "substantial" (ECF 201 at 35, 41), and Plaintiffs "accept the seriousness" of the interventions the District described (ECF 201 at 38);
- "*Earls* does not require the least intrusive conceivable method" (ECF 201 at 38);
- CIPA requires the District to monitor minors' online activities (ECF 201 at 39); and

[1] Plaintiffs do not controvert District Statements 29-39 (*see* ECF 201 at 4).

- Plaintiffs bear the burden on overbreadth under *Moody*, and "legitimate applications" include "credible threats, serious harassment within the school's authority, and other concrete safety concerns" (ECF 201 at 45–46).

Given the undisputed facts, the District is entitled to summary judgment dismissing the Current Students' claims for declaratory and injunctive relief, which are necessarily limited to ManagedMethods. Even accepting as true that Gaggle flagged E.B.'s NATO presentation when he was in middle school, and H.C.'s joking email, the District's motion should be granted because E.B. and H.C. do not face any consequence threatened by the District's monitoring, they have no reasonable expectation of privacy in District-administered accounts they knew were subject to monitoring, and the District's automated, safety-focused screening of their accounts is reasonable under *Vernonia*, *Earls*, and *Dubbs*. [2]

## ARGUMENT

### I. E.B. AND H.C. LACK STANDING TO SEEK PROSPECTIVE FIRST AMENDMENT RELIEF.

E.B. and H.C. concede that ManagedMethods does not interfere with their communications or files.[3] To establish a First Amendment injury, E.B. and H.C. rely entirely on their claims of self-censorship that they attribute to ManagedMethods' chilling effect.

---

[2] Plaintiffs controvert several of the District's facts because the District cited testimony from Polk's and Luckett's 30(b)(6) depositions that are not included in District Exhibits 3 and 5. The District filed its motion on November 2, 2026, at which point the District had only received uncertified copies of those deposition transcripts from Veritext. The District did not receive certified copies until November 5, 2026, after the District had filed its motion. (The depositions were taken on October 27 – the District does not know how Plaintiffs obtained certified copies of the transcripts attached to their own motion (ECF 193) at Exhibits 8 and 9.) Plaintiffs were indisputably in possession of the certified transcripts when the District filed its motion, so there could be no prejudice based on the District having not attached certain pages to its motion; Plaintiffs included some of the apparently omitted pages from their own motion, which are already in the record and can be considered (*see* Fed. R. Civ. P. 56(c)(3)); and the District does not principally rely upon statements of fact as to which pages were omitted in this Reply. Nevertheless, to complete the record, the District attaches complete copies of Polk's and Luckett's 30(b)(6) depositions as **Exhibit 18** and **19** to this Reply, and **Exhibit 20** conforms the citations in the applicable citations of fact to cite to the certified transcripts.

[3] ECF 201 at 18 (acknowledging "E.B.'s inability to identify a ManagedMethods alert") and 47 (acknowledging lack of "proof that either student faces an imminent seizure"); ECF 194 at 8-9 (District SOFs 29-39 stating that E.B. and H.C. cannot identify content flagged by ManagedMethods) (uncontroverted by Plaintiffs).

(ECF 202 at 22.) But self-censorship alone is not an injury in fact: "If all it took to summon the jurisdiction of the federal courts were a bare assertion that … one is discouraged from speaking, there would be little left of the Article III threshold in First Amendment cases." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006) (en banc); *see also Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) ("Allegations of a subjective 'chill'" do not establish objective harm or a threat of future harm.).

To establish a chilling-effect injury, a plaintiff must show a present intention to refrain from planned speech "because of a credible threat" that the government will act against the speaker. *Walker*, 450 F.3d at 1089. The chill must be "caused by an objectively justified fear of real consequences." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1183 (10th Cir. 2010). And the possible future consequences must themselves constitute "injury in fact." *Walker,* 450 F.3d at 1090.

Plaintiffs do not controvert District facts 29-39, establishing: (1) neither student is aware of any content flagged by ManagedMethods; (2) the District has disciplined neither student; and (3) when their content was previously flagged *by Gaggle*, an administrator briefly spoke with E.B. in the hallway, and a counselor met with H.C. for about ten minutes.[4]

Based on these uncontroverted facts, there are two senses in which E.B. and H.C. cannot demonstrate the requisite objective fear of "real consequences." First, there is no objective threat of any consequence at all: Plaintiffs do not dispute that ManagedMethods does not monitor for cyberbullying[5] and they do not dispute that the District does not invariably notify a student that content has been flagged, rather, the Administrator who receives the alert decides whether and how to speak with the student.[6] Combined with the

[4] ECF 194 at 8-9 (District SOFs 29-39) (uncontroverted by Plaintiffs).
[5] ECF 201 at 2, Plaintiffs' Response to District ¶ 14.
[6] ECF 194 at 6 (District SOF 19) (uncontroverted by Plaintiffs).

fact that the Current Students cannot identify *any content* they have *ever created* that ManagedMethods flagged, there is no objective basis upon which the Current Students can claim the District would impose any consequence on any speech they plan to create.

Second, even if Plaintiffs objectively feared a consequence, any such consequence would not constitute an "injury in fact." *Walker,* 450 F.3d at 1090. Even when Gaggle flagged the Current Students' prior content, they were not disciplined. And the District uses ManagedMethods only as a safety tool, not a disciplinary tool.[7] This case is similar to *Clark v. Unified School Dist. No. 287,* in which the plaintiff lacked standing because he claimed he would be asked to leave a board meeting, but he had never himself been asked to leave, and another person who engaged in similar speech was "simply asked to leave" a school open house, after finishing his hot dog, and was not "arrested and jailed …" 822 Fed.App. 706, 709 (10th Cir. 2020). Similarly here, the Current Students were never "asked to leave," so to speak, and any objective fear of harm is even weaker than the fear in *Clark* because Plaintiffs identify *no student* disciplined even through Gaggle, let alone ManagedMethods. At most, the Current Students could theoretically anticipate a private check-in with a District administrator (although that too is speculative), which would not constitute an injury in fact.

Further, even if E.B. and H.C. faced cognizable injury, First Amendment analysis balances a school's interest in providing for student safety. *See Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 656 (1995) ("Fourth Amendment rights, no less than First and Fourteenth Amendment rights, are different in public schools … the 'reasonableness' inquiry cannot disregard the schools' custodial and tutelary responsibility for children."). If student speech suggests intervention may be necessary to protect student safety, an administrator may reasonably check in to address the concern. To the extent such intervention chills speech,

---

[7] ECF 194 at 7 (District SOF 21). Plaintiffs controvert this statement in part, but they do not identify any student who has ever been disciplined. (ECF 201 at 4, response to District SOF 21.)

it is justified – otherwise, school employees would never be able to intervene against emergencies out of fear they would misjudge the situation and incidentally chill speech. The First Amendment does not compel this outcome. To the extent ManagedMethods chills the Current Students' speech by causing them to fear a wellness check, such concerns are outweighed by the District's interest in ensuring student safety.

A plaintiff "cannot manufacture standing merely by inflicting harm on [himself] based on [his] fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 416 (2013). The Current Students have not actually suffered, and their alleged self-censorship is not based on any objective fear of, cognizable injury.

## II. E.B. AND H.C. HAVE NO REASONABLE EXPECTATION OF PRIVACY IN THEIR DISTRICT ACCOUNTS.

The Fourth Amendment only protects objectively reasonable expectations of privacy. *Vernonia*, 515 U.S. at 654. To support a reasonable expectation of privacy in District technology, the Current Students cite authority involving searches of personal belongings or a person's body.[8] The District's monitoring involves neither.[9] Instead, the District only monitors District-owned devices and its Google Workspace domain, provided to E.B. and H.C.

[8]ECF 201 at 29-30, 34, citing *New Jersey v. T.L.O.*, 469 U.S. 325, 337–39 (1985) (student's purse); *Doe ex rel. Doe v. Little Rock Sch. Dist*, 380 F.3d 349, 353–55 (8th Cir. 2004) (student's backpack); *Riley v. California*, 573 U.S. 373 (2014) (arrestee's personal cellphone content); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194 (10th Cir. 2003) (invasive physical examinations of preschool children's blood and genitals, without parental notice); *Safford Unified School District No. 1 v. Redding*, 557 U.S. 364 (2009) (strip search of a teenaged girl).

[9] Plaintiffs present two arguments to contend that they should be considered to have some possessory interest in their District-provided accounts and devices: intellectual property ownership and password protection. Neither succeeds. First, Policy JT addresses intellectual-property ownership of student work, not the account in which it is stored. (ECF 201 at 9) (additional fact 11) (ECF 201 at 34) (describing the policy). Second, the AUP instructs students to use passwords (ECF 201 at 34) ("students must safeguard its password") to protect their accounts from others. But these passwords do not prevent the District's monitoring, (ECF 194 at 4) (District SOF 40) (uncontroverted), so they cannot establish a reasonable expectation of privacy against District monitoring.

for educational use, not personal use. E.B. and H.C. acknowledge that the District provides notice that it monitors the technology it provides.[10]

The Tenth Circuit has held that notice defeats a reasonable expectation of privacy. In *United States v. Angevine*, 281 F.3d 1130 (10th Cir. 2002), a professor had no reasonable expectation of privacy in files stored on a university-owned computer because the university's policy reserved the right to view and scan files and warned users that their privacy was limited due to this monitoring. *Id.* at 1134–35. The same result follows here.

Plaintiffs present four arguments in response, none of which are viable. First, they cite *Riley v. California*, and argue they have a reasonable expectation of privacy based on the scope of information stored in their accounts. However, *Riley* addressed the warrantless search of a personal cellphone by police. 573 U.S. at 393**.** Other decisions involving electronically stored files consistently look to *ownership* of the files and whether other parties had *access* to them, not the *scope* or *character* of files stored on the devices. In *Angevine*, for example, the Tenth Circuit determined a professor had no reasonable expectation of privacy in his workplace computer given the University's *ownership* of its contents and right to search. 281 F.3d at 1134. The Tenth Circuit made no inquiry into the *character* or *scope* of information stored on the computer. *See id.*

The idea that storing expressive content on devices creates an expectation of privacy was also implicitly rejected in *Zorn v. City of Marion*, 774 F. Supp. 3d 1279 (D. Kan. 2025). There, the court rejected a journalist's claim to a reasonable expectation of privacy in her workplace computer, *id.* at 1314-16, which police seized, even though the computer presumably contained journalistic work product protected by the First Amendment. In concluding Zorn suffered no Fourth Amendment injury, the court did not address the *content*

---

[10] ECF 194 at 5 (District SOFs 11-12) (uncontroverted by Plaintiffs).

of the computer, instead focusing on whether Zorn *owned* the computer and whether she had taken any steps to secure it against unconsented searches. *Id.* at 1315-16. Similarly here, E.B. and H.C. do not own the Google Accounts, their devices, or the files stored on them; rather, the District does, and E.B. and H.C. had no means of preventing District access.[11]

Second, Plaintiffs argue that because students must use District accounts for coursework, the AUP's notice creates "manufactured" consent. (ECF 201 at 23.) But consent is only necessary when the government searches an area protected by the Fourth Amendment.[12] When a school or workplace provides its property for non-personal use, informs the person that the property will be monitored, and maintains the means of performing that search without the person's consent, that person has no reasonable expectation of privacy, and cannot deny the owner's right to search by withholding consent. For example, *Angevine* did not ask whether the professor consented to the university's monitoring policy; it held that the policy, together with the university's ownership and control of the computer, denied him a reasonable expectation of privacy. 281 F.3d at 1134–35. Here too, the property is the District's, and the AUP confirms no expectation of privacy in the use of District systems.[13]

Third, Plaintiffs argue the constant frequency of the monitoring makes it incomparable to locker searches, which happen at a "discrete moment." (ECF 201 at 32.) However, when a person has no expectation of privacy in an area searched, the Fourth Amendment provides no protection at all, regardless of the search frequency. Thus, the locker

---

[11] ECF 201 at 4-5) (District SOF 40-43) (uncontroverted by Plaintiffs).

[12] For example, consent is necessary to perform a search of someone's body—the object of the search in *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1206 (10th Cir. 2003)—because people have a reasonable expectation of privacy in their own bodies. Similarly, in *Doe ex rel. Doe v. Little Rock Sch. Dist*, 380 F.3d 349, 353–55 (8th Cir. 2004), the Eighth Circuit determined that school could perform unconsented backpack searches because students had an expectation of privacy in the contents of their backpacks, which they own.

[13] ECF 201 at 4-5 (District SOF 41-46) (material portions uncontroverted).

cases do not turn on frequency; they turn on the school's retained right to inspect property it controls, announced in advance. *Zamora v. Pomeroy*, 639 F.2d 662, 670 (10th Cir. 1981); *State v. Stein*, 456 P.2d 1, 3 (Kan. 1969). Certainly, Plaintiffs cannot have a *greater* expectation of privacy in content monitored continuously than property searched infrequently.

Finally, Plaintiffs argue the District's position would authorize limitless searching of students in school because it has "no limiting principle." (ECF 201 at 34.) But the limiting principle is clear: monitoring occurs whenever a student uses District-provided technology. Where District technology is not involved, students retain their recognized expectations of privacy. The District's position would not justify searching a student's personal email, social media, text messages, personal belongings, or body. This limiting principle is consistent with courts' evaluation of students' expectation of privacy in lockers and in the workplace: when a school or workplace loans property for non-personal use and provides notice it can inspect the property, the person using the property has no reasonable expectation of privacy.

Plaintiffs contend the workplace should be treated differently from schools because it would drastically expand government monitoring. (ECF 201 at 33.) However, the professor in *Angevine,* a public employee, was found to have no reasonable expectation of privacy in his workplace computer against his employer, a government entity. 281 F.3d at 1134–35. If a school is to be treated differently than a workplace, then the students have *less* Fourth Amendment protection, not more: "Fourth Amendment rights, no less than First and Fourteenth Amendment rights, are different in public schools than elsewhere; the 'reasonableness' inquiry cannot disregard the schools' custodial and tutelary responsibility for children." *Vernonia*, 515 U.S. at 656. Additionally, schools exercise "a degree of supervision and control that could not be exercised over free adults." *Id.* at 654–55. If employees have no reasonable expectation of privacy in employer-administered systems

subject to announced monitoring by the government, a student cannot have a greater expectation of privacy.

## III. THE DISTRICT'S MONITORING IS REASONABLE AS A SPECIAL-NEEDS SEARCH.

The special-needs inquiry weighs the privacy interest, the character of the intrusion, and the nature and immediacy of the governmental concern together with the search's efficacy. *Id.* Even if the Current Students had some expectation of privacy in their District accounts, the District's monitoring is a reasonable search because it is justified by the District's special needs in preventing suicide, self-harm, violence, and child sexual exploitation, which Plaintiffs concede are "serious" and "substantial" (ECF 201 at 35, 38, 41).

### A. The nature and character of the privacy intrusion is limited.

The search of content maintained on District property provided for educational, not personal use, implicates a considerably reduced privacy interest because it does not concern the Current Students' bodies or personal belongings. Not only is the privacy interest at stake minimal, the District has taken steps to minimize the intrusion into any privacy interest: the District limits access to the results of the monitoring to select individuals, uses the results primarily for non-disciplinary purposes, and avoids stigmatizing individual students by performing uniform monitoring.[14] (DSOF 16-21.) These measures are significant in limiting the character of the intrusion in *Bd. of Educ. v. Earls*, 536 U.S. 822, 832–34, 837 (2002).

---

[14] Plaintiffs argue that a flag "singles out a particular child for official follow-up" and therefore carries the individualized stigma that special-needs searches avoid. (ECF 201 at 43). However, in *Earls*, every student participating in extracurricular activities were tested, and some tests would inevitably come back positive, leading to individualized consequences. 536 U.S. at 833–34. Nonetheless, the Supreme Court reasoned the drug testing avoided stigmatizing students because it applied to all participants equally. *Id.* at 837. The same is true here—no student is singled out. ECF 193-11, 25:2–22 (Swift Dep.); ECF 194-13, 50:2–10 (H.C. Dep.); DSOF 2.

Nonetheless, Plaintiffs argue the District's monitoring is unjustifiably intrusive for two reasons: (1) it reaches expressive content; and (2) it monitors all content stored on District-provided student accounts. (ECF 201 at 36-37.)

Regarding the first concern, Plaintiffs ignore that the vast majority of student expressive content is never reviewed by a person because ManagedMethods first screens out content not implicating the District's concerns.[15] Initial, minimal screening that does not reveal the internal contents of a protected area has been upheld as minimally intrusive.[16] ManagedMethods works the same way. Screening is automated; no District employee sees a student's content unless the software identifies content suggesting a risk of suicide, self-harm, violence, or sexual exploitation, maintaining student privacy in the vast majority of their expressive content. To any extent Plaintiffs contend this screening is ineffective to preserve privacy because it autonomously scans every file, courts have upheld the use of magnetometers in airports though they also scan every person. *Hartwell*, 436 F.3d at 180. The key consideration is not what is *scanned* but rather what the government actually *sees*. Here, the District only reviews content that has been pre-screened for content that implicates its legitimate need to protect student safety.

Furthermore, screening all student District files is justified, even if those files are sometimes accessed from personal devices or at home, because of the District's concern in the use of its own technology, wherever that use occurs. If a student uses a personal device at home to log into a District account and circulate sexually explicit images of a classmate or to share a Google document coordinating an attack on the school, the District has a compelling interest in knowing that its technology is being used for that purpose. *Mahanoy v. Area Sch.*

---

[15] ECF 194 at 6 (District SOF 15) (uncontroverted in material part by Plaintiffs).
[16] *See United States v. Place*, 462 U.S. 696, 707 (1983) (drug dog sniff provided limited information without revealing contents of luggage); *United States v. Hartwell*, 436 F.3d 174, 180 (3d Cir. 2006) (magnetometer screened for metal without revealing contents of luggage).

*Dist. v. B.L. ex rel. Levy* recognizes exactly that interest in "material maintained within school computers." 594 U.S. 180, 188 (2021). Screening that is limited to District accounts, but which follows those accounts wherever accessed, is tailored to the District's responsibility for its own systems. Thus, the scope of the intrusion is justified.

**B. The District's interest is immediate, and its monitoring is effective.**

In evaluating the reasonableness of a special needs search, courts do not consider privacy issues in a vacuum; instead, privacy must be balanced against the needs justifying the search. *Earls*, 536 U.S. at 830. The District has a special interest in protecting its students, *id.* at 830-31, and the record shows the monitoring has allowed the District to intervene against real threat to students.[17] (**Ex. 19**, 84:15-86:8.)

Plaintiffs' emphasis on false positives (ECF 201 at 38-39) falsely equates "white noise," as the District describes it, with ineffectiveness. Every screening method generates false positives. Magnetometers signal on belt buckles but are still considered effective based on the *absence* of false *negatives*. The test is whether the search serves its purpose. *See Earls*, 536 U.S. at 834–38. Despite false positives, Plaintiffs do not allege that ManagedMethods fails to detect actual threats such as a suicide note or an email evincing a threat of violence.

Beyond safety needs, ManagedMethods allows the District to comply with CIPA, which requires the District's Internet-safety policy to include "monitoring the online activities of minors," as Plaintiffs concede (ECF 201 at 39; 47 C.F.R. § 54.520(c)(1)). While CIPA does not mandate ManagedMethods, ManagedMethods is a reasonable means of

[17] ECF 194 at 13 (District SOF 61) (uncontroverted in material part by Plaintiffs). Plaintiffs argue that the prior examples were from Gaggle. (ECF 201 at 6-7.) This argument cannot avail Plaintiffs: ManagedMethods is either equally effective, or it is less effective *because it is lesser in scope*. Either way, the District has permissibly balanced privacy versus the needs justifying the search. Furthermore, while these prior incidents occurred under Gaggle, they demonstrate that students within the District face a variety of safety risks that the District's monitoring through ManagedMethods addresses.

achieving CIPA compliance.[18] The District's monitoring is justified by its demonstrable needs.[19] On the other side of the balance, Plaintiffs offer H.C.'s decision to stop sending joke emails from his school account and E.B.'s caution, based on a presentation he prepared in middle school, each triggered by a product no longer in use (Gaggle). These concerns do not outweigh District's need to identify students who are contemplating suicide; planning violence; or being exploited, an interest Congress has made a condition to federal funding.

Although the District's special needs justify its monitoring, Plaintiffs argue that monitoring is unconstitutional because the District's exemption for student journalists shows that adviser-based "relational monitoring" is a workable, less intrusive alternative. (ECF 201 at 37-38). Reasonableness "does not require employing the least intrusive means." *Earls*, 536 U.S. at 837. And the record does not even support their premise. The exemption covers about 160 students who work under an adviser's close supervision.[20] A narrow accommodation for First Amendment-sensitive work does not show that this method could protect the District's approximately 10,000 students. Furthermore, the District's technology designee testified that leaving any students unmonitored is "extremely problematic" from a safety perspective,

---

[18] *See* ECF 202-28 (Polk Declaration in Opposition).

[19] Plaintiffs invoke K.S.A. 72-6315 and 72-6316 to argue that the District's monitoring is not justified under Kansas law. (ECF 201 at 48–49). This argument fails for two reasons. First, state law does not control what is reasonable under the Fourth Amendment. *Virginia v. Moore*, 553 U.S. 164, 171–76 (2008). Second, these statutes do not prohibit monitoring. K.S.A. 72-6315 falls within the Student Data Privacy Act. K.S.A. 72-6312. While the act does not define the term "assess," the term should be construed with the Act's other provisions. In the same sentence prohibiting the unconsented assessment of a student's emotional state, K.S.A. 72-6315 prohibits the collection of *measurable* biometric data. *See* K.S.A. 72-6313(b) (defining "biometric data" to be measurable). Additionally, K.S.A. 72-6316(a)(1)(A), (c) requires that parent consent for the collection of data through an evaluation be obtained by providing a copy of it to the parents and online, implying that assessment means a standardized test that produces measurable data. ManagedMethods is not a comprehensive assessment of student's emotional state that produces measurable data. Instead, it screens the text of District email and documents for indications of discrete threats requiring intervention.

[20] ECF 193-11, 57:11-58:10; 70:7-11 (Swift 30(b)(6) deposition attached to Plaintiffs' motion).

and that "it would be very difficult for a teacher to monitor a student's inbox." (**Ex. 18**, Polk 30(b)(6), 67:18-69:15.) These exemptions make satisfying the District's needs more difficult.[21]

When balancing the District's needs to maintain student safety and comply with federal regulations against the measured intrusion into E.B. and H.C.'s minimal privacy interest, the District's monitoring is a reasonable means of addressing its needs.

## IV. PLAINTIFFS CANNOT MAINTAIN THEIR SEIZURE, VAGUENESS, AND OVERBREADTH CLAIMS.

### A. Plaintiffs concede Neither E.B. nor H.C. faces an imminent seizure.

The District sought judgment on the current students' prospective seizure claims because ManagedMethods does not block email and can quarantine only suspected child pornography. Plaintiffs now concede that the quarantine capability is not "proof that either current student faces an imminent seizure" and that they do not "assume that every historical Gaggle restriction will recur under the present configuration." (ECF 201 at 47). Their remaining seizure arguments concern completed Gaggle-era restrictions involving former students. (*Id.* at 47-48). Those claims are not at issue. (ECF 194 at 10).

### B. Vagueness.

Plaintiffs concede they must establish an individual injury before facially challenging a policy. (ECF 201 at 27). For the reasons above, neither E.B. nor H.C. has an injury sufficient for prospective First or Fourth Amendment relief, so they may not challenge the District's policies as vague. This claim also fails on the merits. The District is not required to list every word or image that may generate an alert: "[g]iven the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational

---

[21] Nor do the exemption and some administrators' views that monitoring could interfere with journalism establish a legal injury. The Constitution sets a floor, not a ceiling, and the District has chosen to provide greater privacy protection than required.

process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 686 (1986).

**C. First Amendment overbreadth.**

Plaintiffs bear the burden under *Moody v. NetChoice, LLC*, 603 U.S. 707, 723-26 (2024), of identifying the full scope of the challenged practice and comparing its unconstitutional applications to its legitimate ones. They have not done so. Instead, they identify as legitimate the very applications ManagedMethods serves, "credible threats, serious harassment within the school's authority, and other concrete safety concerns" (ECF 201 at 45–46), and identify as illegitimate only  journalism, which is exempt, and artwork and communications burdened under Gaggle. That is not a showing that any unconstitutional applications are "substantial … relative to the [practice's] plainly legitimate sweep." *United States v. Hansen*, 599 U.S. 762, 770 (2023). Additionally, because neither E.B. nor H.C. has standing for prospective First Amendment relief, neither may pursue an overbreadth claim. *See Winsness v. Yocom*, 433 F.3d 727, 734 (10th Cir. 2006).

## <u>CONCLUSION</u>

Plaintiffs' opposition confirms that ManagedMethods does not block or delay student communications, and does not quarantine anything other than suspected child pornography. E.B. and H.C. do not demonstrate an objectively justified chill on their speech. And they have no reasonable expectation of privacy in a District account they acknowledge is subject to monitoring. The District respectfully requests that the Court grant its Motion for Partial Summary Judgment and enter judgment in the District's favor on Counts I, II, IV, V, VII, and VIII.

Respectfully submitted,

LEWIS BRISBOIS BISGAARD & SMITH, LLP

By: /s/ *Cameron E. Grant*

Cameron E. Grant, KS No. 28388
Melika Harris, KS No. 30908
Andrew Gnefkow, KS. No. 79266
4600 Madison Ave., Suite 700
Kansas City, MO 64112
Telephone: (816)299-4255
Facsimile: (816)299-4245
Cameron.Grant@lewisbrisbois.com
Melika.Harris@lewisbrisbois.com
Andrew.Gnefkow@lewisbrisbois.com

*Counsel for Defendant*